UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAYSON HUNTSMAN,

    Plaintiff,

v.

SOUTHWEST AIRLINES CO.,

    Defendant.

Case No. 19-cv-00083-PJH

**ORDER DENYING MOTION TO CHANGE VENUE**

Re: Dkt. No. 29

    Defendant Southwest Airlines Co.'s ("Southwest") motion to change venue came on for hearing before this court on July 17, 2019. Plaintiff Jayson Huntsman appeared through his counsel, Peter Romer-Friedman and R. Joseph Barton. Defendant appeared through its counsel, Brian Berry. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion, for the following reasons.

## BACKGROUND

    On January 7, 2019, Huntsman, a pilot for Southwest, filed this putative class action. The complaint states a single cause of action under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 et seq. The basis of the claim is that Southwest failed to pay employees who took short-term military leave normal wages or salaries during those periods, even though Southwest paid employees their ordinary wages or salaries during allegedly-comparable forms of leave such as jury duty, bereavement leave, and sick leave. Huntsman alleges that this practice violates USERRA § 4316(b), which he argues requires employers to provide

1 employees who take military leave the same "rights and benefits" that they provide to
2 employees who take other comparable forms of leave. See 38 U.S.C. § 4316.

The putative class is defined to include all current and former Southwest employees who, from October 14, 2004 to the present, took a leave of absence for 14 days or fewer to perform military service and did not receive regular wages or salary while on leave. Compl. ¶ 11.

Huntsman resides in Sacramento, California, and his primary workplace, or "home" airport, is Oakland International Airport. The "vast majority of Huntsman's flights originate" in Oakland. Id. ¶ 8. Southwest operates and employs people throughout the country, including at Oakland airport, and has its headquarters and principal place of business in Dallas, Texas.

On April 10, 2019, Southwest filed its motion to change venue.

## DISCUSSION

### A. Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "Before a court may transfer venue under 28 U.S.C. § 1404, it must find that: (i) the action is one that might have been brought in the transferee court and (ii) the convenience of the parties and the interest of justice favor the transfer." Thermolife Int'l, LLC v. Vital Pharm., Inc., No. CV142449RSWLAGRX, 2014 WL 12235190, at *2 (C.D. Cal. Aug. 15, 2014). The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

While there is no rigid test to determine whether a court should grant a motion to transfer, the statute identifies three factors that should be considered on a motion to

2

transfer: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice. The Ninth Circuit has articulated related considerations that courts "may consider," including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." Ctr. for Biological Diversity v. Kempthorne, Case No. 08-cv-1339-CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008).

**B. Analysis**

Regarding the threshold question, the parties agree that this action might have been brought in the Northern District of Texas. The court next considers factors relating to the convenience of the parties and witnesses, and the interest of justice.

**1. Convenience of the Witnesses**

To the extent witnesses will be necessary from the putative nation-wide class, Huntsman is the only apparent candidate at this stage. According to the parties' representations, any other potential witnesses from the putative class are more likely to reside outside of both the Northern District of Texas and the Northern District of California than within either district.

But the case concerns Southwest's company-wide employment policies. As such, witnesses who work at Southwest's Dallas headquarters are likely to be called upon to testify in some capacity. This factor is heightened by Southwest's identification of former employees who are now third-party witnesses living closer to the Northern District of Texas than this district. Southwest adequately describes the roles of those potential

3

1 witnesses and the relevant topics they are likely to discuss.  At this stage it isn't obvious
2 whether the information will in fact be necessary or non-duplicative, but Southwest has
3 satisfied its burden of identifying particular people with particular, relevant information.

The fact that Southwest operates an airline and may be able to transport witnesses more easily than other companies does not permit the court to ignore this factor.

This factor favors transfer.

### 2. The Location Where the Relevant Agreements Were Negotiated and Executed

The complaint alleges that Southwest has violated a federal statute by failing to compensate employees for military leave.  The complaint does not allege any contractual violation.  Southwest is correct that collective bargaining agreements may be relevant evidence concerning what types of employee leave Southwest funds, but it is not the sole source of such evidence or even necessarily the best source.  Moreover, Southwest is not insulated from the alleged statutory violation by a collective bargaining agreement's terms.  Wile collective bargaining agreements may provide relevant evidence in this action, they are not the subject of the dispute.

This factor neither favors nor disfavors transfer.

### 3. The State That Is Most Familiar With the Governing Law

This case alleges violations of a federal statute.  It does not raise any state law violations.  "[W]here federal law governs all claims raised, either forum is equally capable of hearing and deciding those questions."  Italian Colors Rest. v. Am. Express Co., Case No. 03-cv-3719-SI, 2003 WL 22682482, at *3 (N.D. Cal. Nov. 10, 2003) (internal quotation marks omitted).

This factor neither favors nor disfavors transfer.

### 4. The Plaintiff's Choice of Forum

Plaintiff chose to litigate in this forum.  Defendants argue that this factor does not favor this district for two reasons.  First, plaintiff lives in the Eastern District of California.

Second, this is a putative class action. Plaintiff argues that the special venue provision of the USERRA affords this factor special deference.

First, plaintiff in fact lives in the Eastern District of California, but he is a pilot who primarily flies to and from Oakland as his "home" airport. Plaintiff has an obvious and relevant relationship with this district—he filed in the district that is the primary locus of his relationship with defendant.

Second, this is a putative class action. "The plaintiff's choice is given less deference where, as here, the action is brought on behalf of a nationwide class." Italian Colors, 2003 WL 22682482, at *3; Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) ("Although great weight is generally accorded plaintiff's choice of forum, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight.") (citation omitted).

Third, this court accords plaintiff's choice of forum more weight because it arises under the USERRA, which contains an expanded venue provision.[1] See, e.g., Ellis v. Costco Wholesale Corp., 372 F. Supp. 2d 530, 536–38 (N.D. Cal. 2005) ("Where venue is governed by a more permissive standard, a plaintiff's choice is entitled to greater deference as a matter of law, even where that case is brought as a class action."), overruled in part on other grounds by Ellis v. Costco Wholesale Corp., 657 F.3d 970, 988 (9th Cir. 2011); Gelber v. Leonard Wood Mem'l For Eradication of Leprosy, Case No. 07-cv-01785-JSW, 2007 WL 1795746, at *3 (N.D. Cal. June 21, 2007). Enhanced deference is due to servicemembers' forum choices when filing under the USERRA given its special venue provision.

The fact that plaintiff asserts a putative class action, and that he asserts a claim in a permissible venue under the USERRA, counterbalance one another. As such, the

---

[1] Defendant is correct that the analysis prescribed for section 1404(a) governs the motion to change venue in spite of the fact that the case includes USERRA allegations, as the USERRA does not prohibit transfers away from a plaintiff's chosen forum. However, the USERRA's venue provision "influences the contours of the section 1404(a) analysis." See Ellis, 372 F. Supp. 2d at 537; Wellens v. Daiichi Sankyo Co., Case No. 13-cv-00581-CW, 2013 WL 3242294, at *2 (N.D. Cal. June 25, 2013).

5

1  court accords some weight to plaintiff's choice of forum.

2  This factor disfavors transfer.

### 5. The Respective Parties' Contacts With the Forum

Both parties undeniably have extensive contacts with this district. Southwest operates out of airports in this district and employs a number of people here. Plaintiff's home airport is Oakland. Both parties also have significant contact with the Northern District of Texas.

At this stage, the number of putative class members in each district is unclear. To the extent the parties' estimates are accurate, they show that both districts—as well as other districts throughout the country—are likely to have a significant number of putative class members. First, both parties limit their analysis to pilots, although the class is not limited to pilots. Second, their figures with respect to pilots mostly pertain to entire states rather than judicial districts. Third, to the extent the state boundary is a useful one, the figures show that there are many of pilots in both states.

This factor neither favors nor disfavors transfer.

### 6. The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

Defendant argues that the alleged statutory violation occurred when it created its policy that denied plaintiff pay for time devoted to the military, or when the relevant union negotiations took place and established contracts governing working conditions. Plaintiff argues that the claims arose in this district, because this is where plaintiff was owed benefits that were never paid.

This complaint alleges that an international airline has a firm-wide policy to not pay its employees, located throughout the country, for certain time spent in military service. Whether as a technical matter the claim arose where the policy was decided upon or where the paychecks were mailed (or not mailed), this factor is not instructive with respect to where this dispute should be litigated. To the extent this factor overlaps with the location of witnesses or the ease of discovery, those concerns are addressed in their

6

1 respective factors.

2     This factor neither favors nor disfavors transfer.

### 7. The Differences in the Costs of Litigation in the Two Forums

Defendant argues that costs would be lower in the Northern District of Texas because most witnesses and documents are located there. Plaintiff argues that costs will increase with a transfer because plaintiff and his lawyers (located mostly in California and Washington state) would need to travel, whereas defendant has lawyers in San Francisco and does not face that challenge.

Remaining in this district could impose some costs on witnesses that may have to travel to testify, and transferring the case to the Northern District of Texas would impose costs on plaintiff's counsel and witnesses who would have to travel to Texas. The parties' arguments concern shifting—rather than reducing—litigation costs. As such, this factor neither favors nor disfavors transfer.

### 8. The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

Southwest describes two of its former employees who were lead negotiators of certain collective bargaining agreements and who have knowledge of negotiations that informed the terms of the agreements. One of the two resides within 100 miles of the Northern District of Texas, so he could be compelled to testify in the Northern District of Texas but not in this district. Berry Decl., Dkt. 29-1 ¶¶ 4–7, Exs. 1–4. It remains unclear at this stage whether the testimony will be necessary at trial or difficult to obtain through a deposition noticed near the witness's home.

This factor favors transfer.

### 9. The Ease of Access to Sources of Proof

Defendant argues that relevant hard-copy documents related to its leave of absence policies and practices are at its headquarters in Dallas. Plaintiff argues that such records will be produced digitally, regardless of where the case proceeds.

"[C]ourts have stated that the transportation of documents generally is not

1  regarded as a burden because of technological advances in document storage and
2  retrieval." Hendricks v. StarKist Co., Case No. 13-cv-0729, 2014 WL 1245880, at *4
3  (N.D. Cal. Mar. 25, 2014); Am. Civil Liberties Union of N. California v. Burwell, Case No.
4  16-cv-03539-LB, 2017 WL 1540606, at *5 (N.D. Cal. Apr. 28, 2017) ("the location of the
5  witnesses and other evidence is no longer weighed so heavily given the modern
6  advances in communication and transportation") (internal quotation marks omitted);
7  Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998) ("This factor
8  focuses on the location of the evidence and witnesses. It is no longer weighed heavily
9  given the modern advances in communication and transportation.") (citation omitted).

A realistic understanding of modern discovery practice compels the court to consider that, to the extent there are relevant hard-copy documents that are non-duplicative, conventional discovery practice will almost certainly have the parties produce copies of such materials digitally. To the extent discoverable meeting notes are not already digitized, they can be, they can be shipped, or an on-site inspection can take place at plaintiff's expense.

Because the discovery defendant identifies under this factor concerns witnesses and paper documents, this factor is accorded little weight. Neither party argues that a physical site inspection or something similarly location-dependent is likely to be involved.

This factor favors transfer.

**10. Whether the Courts are Overburdened in Either District**

Each party argues that either the Northern District of California or the Northern District of Texas is an overburdened district that is not equipped to handle this action as expeditiously as the other (of course, the parties disagree about which district is overburdened). The parties cite various statistics about caseloads, average time to trial, and other district-wide figures.

Rather than the district-wide figures reporting on the Northern District of California as a whole, this court considers its own docket and its ability to adjudicate this matter expediently and efficiently. This court is equipped to try the case quickly and efficiently.

1 │ This factor disfavors transfer.

**11. Local Interests in the Litigation**

Defendant argues this is a local Northern District of Texas controversy because it is headquartered in Texas and employs people there. Plaintiff argues that California has an interest because Southwest employs people here and that this law affects members of the Coast Guard and other California-focused military units.

This is a nation-wide putative class-action, so districts all over the country are interested. Because Southwest operates an airline and employs individuals all over the country, its employment policies are of interest in many districts. Southwest would have every dispute brought against it by unionized employees transferred to its home district. Whatever local interest the Northern District of Texas has is not so powerful.

Moreover, both districts have an equal interest in enforcing the USERRA law. This dispute is of national significance, as it concerns whether a nation-wide employer treats military reservists as required by federal law.

This factor neither favors nor disfavors transfer.

## CONCLUSION

The majority of the factors this court considers when determining whether to grant a motion to change venue are neutral. Three favor transfer to some degree, and two others disfavor transfer. Given that the merits of transfer are either neutral or balanced, defendant has not met its burden to make a strong showing of inconvenience, and denying the motion best serves the interest of justice.

For the foregoing reasons, Southwest's motion to change venue is DENIED. Southwest's evidentiary objections are denied as moot, as the court's analysis did not require consideration of the objected-to submissions.

**IT IS SO ORDERED.**

Dated: July 19, 2019

PHYLLIS J. HAMILTON
United States District Judge

9