Vincent Cheng (CA Bar No. 230827)
vincent@blockesq.com
BLOCK & LEVITON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 968-8999

R. Joseph Barton (CA Bar No. 212340)
jbarton@blockesq.com
BLOCK & LEVITON LLP
1735 20th Street NW
Washington, DC 20009
Telephone: (202) 734-7046

Peter Romer-Friedman (*pro hac vice*)
prf@outtengolden.com
Pamela Disney (*pro hac vice*)
pdisney@outtengolden.com
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410

Matthew Z. Crotty (*pro hac vice*)
matt@crottyandson.com
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave., Suite 409
Spokane, WA 99201
Telephone: (509) 850-7011

Thomas G. Jarrard (*pro hac vice*)
LAW OFFICE OF THOMAS
JARRARD PLLC
tjarrard@att.net
1020 N. Washington Street
Spokane, WA 99201
Telephone: (425) 239-7290

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAYSON HUNTSMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>Defendant. | **Case No. 4:19-cv-00083-PJH**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:      October 9, 2019<br>Time:      9:00 a.m.<br>Location:  Oakland Courthouse,<br>              Courtroom 3, 3rd Floor<br>Judge:     Hon. Phyllis J. Hamilton |

# **TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................................ 4

LEGAL STANDARD................................................................................. 4

ARGUMENT ........................................................................................ 5

I.      USERRA Is a Unique Law That Provides Powerful Protections, and Its
        Central Purposes Are Encouraging Reservists to Serve and Preventing
        Discrimination Against Reservists............................................................ 5

II.     USERRA § 4316(b) Codified a Longstanding Equality Rule Requiring
        Workers on Military Leave to Get the Exact Same Rights and Benefits as
        Other Workers on Leave ...................................................................... 6

III.    USERRA's Text and History Are Each Clear That the "Rights and Benefits"
        Defined in § 4303(2) and Protected by § 4316(b)'s Equality Rule Cover
        Wages, Pay, and Paid Leave ................................................................ 8

IV.     Courts Have Held Wages, Pay, and Paid Leave Are "Rights and Benefits"
        and Employers Must Pay Workers on Military Leave When Workers on
        Comparable Leaves Are Paid............................................................... 15

V.      SWA's Construction of "Rights and Benefits" Is Implausibly Narrow ............. 17

VI.     Properly Applying USERRA § 4316(b)'s Equality Rule to Require Paid
        Short-Term Military Leave Under Limited Circumstances Does Not Impose
        a General Mandate to Pay for All Military Leave, Does Not Conflict With
        USERRA, and Is Not Burdensome ......................................................... 22

CONCLUSION...................................................................................... 25

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Alabama Power Co. v. Davis*,
   431 U.S. 581 (1977)....................................................................................6, 14

*Ali v. Fed. Bureau of Prisons*,
   552 U.S. 214 (2008).........................................................................................9

*Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*,
   366 F.3d 692 (9th Cir. 2004) .........................................................................18

*Blausey v. U.S. Trustee*,
   552 F.3d 1124 (9th Cir. 2009) .......................................................................11

*Boyle v. United States*,
   556 U.S. 938 (2009).........................................................................................9

*Brill v. AK Steel Corp.*,
   No. 09 Civ. 534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012) .............3, 15, 16, 17

*Brown v. Gardner*,
   513 U.S. 115 (1994)....................................................................................2, 14

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).......................................................................................14

*Chevron U.S.A. Inc. v. Echazabal*,
   536 U.S. 73 (2002).........................................................................................14

*Clarkson v. Alaska Airlines, Inc.*,
   No. 19 Civ. 5, 2019 WL 2503957 (E.D. Wash. June 17, 2019) ...................3, 16

*Dawe v. Corrections USA*,
   No. 07 Civ. 1790, 2007 WL 3125091 (E.D. Cal. Oct. 24, 2007) ...................21

*Duffer v. United Cont'l Holdings, Inc.*,
   173 F. Supp. 3d 689 (N.D. Ill. 2016) .......................................................15, 16

*Duncan v. Tyco Fire Prods.*,
   No. 16 Civ. 916, 2018 WL 3303305 (N.D. Ala. July 5, 2018)........................23

*Dworkin v. Hustler Magazine, Inc.*,
   867 F.2d 1188 (9th Cir. 1989) .........................................................................4

*Envt'l. Def. v. Duke Energy Corp.*,
   549 U.S. 561 (2007).......................................................................................20

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 19 Civ. 00083 (PJH)

*Fishgold v. Sullivan Drydock & Repair Corp.*,
    328 U.S. 275 (1946)..................................................................5, 14, 15, 20

*Fla. Right to Life, Inc. v. Lamar*,
    273 F.3d 1318 (11th Cir. 2001) ...............................................................12

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) .....................................................................4

*Gagnon v. Sprint Corp.*,
    284 F.3d 839 (8th Cir. 2002) ...................................................................13

*Gov't Emps. Ins. Co. v. Nadkarni*,
    -- F. Supp. 3d --, 2019 WL 3037562 (N.D. Cal. July 11, 2019)...............4

*Greenlaw v. United States*,
    554 U.S. 237 (2008)..................................................................................10

*Gummo v. Vill. of Depew*,
    75 F.3d 98 (2d Cir. 1996)...........................................................................5

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*,
    484 U.S. 49 (1987)....................................................................................18

*Huhmann v. Federal Express Corp.*,
    874 F.3d 1102 (9th Cir. 2017) .........................................................2, 5, 15

*Huy Thanh Vo v. Nelson & Kennard*,
    931 F. Supp. 2d 1080 (E.D. Cal. 2013).....................................................12

*Imel v. Laborers Pension Trust Fund for N. Cal.*,
    904 F.2d 1327 (9th Cir. 1990) ....................................................................5

*Keeley v. Loomis Fargo & Co.*,
    183 F.3d 257 (3d Cir. 1999)......................................................................12

*King v. St. Vincent's Hosp.*,
    502 U.S. 215 (1991)............................................................................14, 15

*Lapine v. Town of Wellesley*,
    304 F.3d 90 (1st Cir. 2002).................................................................5, 13

*Leisek v. Brightwood Corp.*,
    278 F.3d 895 (9th Cir. 2002) ......................................................................5

*Marx v. General Revenue Corp.*,
    133 S. Ct. 1166 (2013)..............................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Miller v. City of Indianapolis*,
   281 F.3d 648 (7th Cir. 2002) ................................................................23

*Monroe v. Standard Oil Co.*,
   452 U.S. 549 (1981).............................................................7, 8, 23, 24

*Montoya v. Orange Cnty. Sheriff's Dep't*,
   987 F. Supp. 2d 981 (C.D. Cal. 2013) ...................................................5

*Morton v. Mancari*,
   417 U.S. 535 (1974).............................................................................24

*Nigg v. U.S. Postal Serv.*,
   555 F.3d 781 (9th Cir. 2009) ...............................................................24

*NLRB v. SW General, Inc.*,
   137 S. Ct. 929 (2017)...........................................................................14

*Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*,
   430 U.S. 243 (1977)..............................................................................21

*Paxton v. City of Montebello*,
   712 F. Supp. 2d 1007 (C.D. Cal. 2010) .................................................7

*Petty v. Metro. Gov't of Nashville & Davidson Cty.*,
   687 F.3d 710 (6th Cir. 2012) ...............................................................22

*Pucilowski v. Dep't of Justice*,
   498 F.3d 1341 (Fed. Cir. 2007)..................................................... *passim*

*Scanlan v. American Airlines Grp., Inc.*,
   384 F. Supp. 3d 520 (E.D. Pa. 2019) ............................................ *passim*

*Sebelius v. Cloer*,
   569 U.S. 369 (2013)..............................................................................25

*Su v. M/V S. Aster*,
   978 F.2d 462 (9th Cir. 1992) ...............................................................21

*Sun v. Ashcroft*,
   370 F.3d 932 (9th Cir. 2004) ...............................................................20

*Tennessee Valley Authority v. Hill*,
   437 U.S. 153 (1978)..............................................................................12

*Thomas v. SS Santa Mercedes*,
   572 F.2d 1331 (9th Cir. 1978) .............................................................21

*Toor v. Lynch*,
    789 F.3d 1055 (9th Cir. 2015) ...................................................................................11

*UFCW Local 1500 Pension Fund v. Mayer*,
    895 F.3d 695 (9th Cir. 2018) ....................................................................................25

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*,
    484 U.S. 365 (1988)...................................................................................................18

*United States v. Missouri*,
    67 F. Supp. 3d 1047 (W.D. Mo. 2014) ...............................................3, 15, 20, 23

*United States v. Poff*,
    No. 16-30141, 2019 WL 3064444 (9th Cir. July 12, 2019).............................10, 11

*United States v. Ritchie*,
    342 F.3d 908 (9th Cir. 2003) .......................................................................................5

*Waltermyer v. Aluminum Co. of Am.*,
    804 F.2d 821 (3d Cir. 1986)............................................................... *passim*

*White v. United Airlines*,
    No. 19 Civ. 114 (July 10, 2019)...............................................................................17

**Statutes**

5 U.S.C. § 6323................................................................................................................24

10 U.S.C. § 707a..............................................................................................................21

26 U.S.C. § 6331..............................................................................................................21

38 U.S.C. § 2022..............................................................................................................22

38 U.S.C. § 4301..........................................................................................................6, 15

38 U.S.C. § 4302..............................................................................................................24

38 U.S.C. § 4303...................................................................................................... *passim*

38 U.S.C. § 4311...................................................................................................... *passim*

38 U.S.C. § 4316...................................................................................................... *passim*

38 U.S.C. § 4323..............................................................................................................22

41 U.S.C. § 353................................................................................................................21

46 U.S.C. § 596................................................................................................................21

46 U.S.C. § 10313 .............................................................................................................21

USERRA of 1994, Pub. L. No. 103-353, 108 Stat. 3149 (1994).......................................5

Veterans' Benefits Act of 2010, Pub. L. No. 111-275, 124 Stat. 2864 (2010)...............13

**Other Authorities**

20 C.F.R. § 1002.2 .............................................................................................................7

20 C.F.R. § 1002.150(b) ................................................................................................3, 7

20 C.F.R. § 1002.312(c).....................................................................................................22

156 Cong. Rec. S7656-02 (daily ed. Sept. 28, 2010)................................................12, 13

H.R. Rep. No. 103-65 (1993)....................................................................................*passim*

S. Rep. No. 103-158 (1993) .....................................................................................*passim*

Fed. R. Civ. P. 12...........................................................................................................4, 5

Black's Law Dictionary (11th ed. 2019).............................................................................18

Black's Law Dictionary With Pronunciations (6th ed. 1990).........................................19

Webster's New World Dictionary (3d College ed. 1994).....................................9, 18, 10

Webster's Ninth New Collegiate Dictionary (1986) ..........................................................9

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Jayson Huntsman ("Huntsman" or "Plaintiff"), a Southwest Airlines Co. ("SWA") pilot who has served in the Air Force Reserves since 2012, has alleged a viable, plausible claim against SWA under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4316(b). Since World War II, federal laws like USERRA have ensured that a reservist's obligation to leave a civilian job to serve in the military should not be held against him or her, and the reservist must be treated equal to other non-military employees who take leave from the same employer. Plaintiff's lawsuit is consistent with these principles and the central goals of USERRA—to encourage non-career military service and prohibit discrimination against reservists. All that Mr. Huntsman asks in this case is that if other workers get paid by SWA when they take jury duty or bereavement leave, that he and other military reservists also get paid when they take short-term military leave to serve their country in the national guard and reserves. The Court should deny SWA's Motion for Judgment on the Pleadings (ECF No. 52) ("Mot."), and allow Mr. Huntsman's claim, on behalf of himself and other SWA workers, to proceed, so that thousands of reservists can receive the rights and benefits to which they are entitled.

As described herein, Plaintiff's claim is viable. USERRA § 4316(b) expressly codified a limited equality principle ensuring that when workers take military leave they get the exact same "rights and benefits" as other employees when they take comparable non-military leaves. "Section 4316(b) . . . only requires employees on military leave to be provided with comparable rights and benefits to which those on non-military absences are entitled. If a right and benefit is not provided to an employee on a non-military related absence, the right or benefit is not due the employee on military leave." *Scanlan v. American Airlines Grp., Inc.*, 384 F. Supp. 3d 520, 527 (E.D. Pa. 2019). The "rights and benefits," defined in USERRA § 4303(2), are "extremely broad," and include wages, pay, and paid leave when workers do not perform work, such as serving in the military or performing jury duty. *Id.* at 526-28.

Plaintiff's USERRA § 4316(b) claim has three elements: (1) short-term military leave is comparable to jury duty or other leaves; (2) the employer pays workers when they take jury duty or other leaves, but not workers who take short-term military leave; and (3) wages, pay, and/or paid leave are among the many "rights and benefits" that are defined in USERRA § 4303(2) and protected by § 4316(b). *See id.* at 524-27. As in *American Airlines*, for the purpose of this motion, SWA does not

dispute that it does not provide paid leave to workers who take short-term military leave, but SWA does provide paid leave to workers on comparable leaves.  Nor does it dispute that as a matter of law workers who take military leave must receive the same "rights and benefits" as workers who take comparable leaves.  *See id.* at 524; Mot. at 4; Answer ¶¶ 34-35, ECF No. 28.  Instead, as the defendant in *American Airlines* unsuccessfully argued, SWA merely contends that as a matter of law § 4316(b)'s equality principle does not apply to wages, pay, or paid leave—*i.e.*, that wages, pay, and/or paid leave are not among the "rights and benefits" defined in § 4303(2) and protected by § 4316(b).

SWA's interpretation is wrong.  USERRA's plain language, legislative history, and purpose all demonstrate that USERRA § 4316(b) and § 4303(2) require that employees on short-term military leave must receive the same wages, pay and/or paid leave as employees on comparable leaves.

SWA's contrary interpretation ignores the history and "unambiguous text of USERRA as written by Congress." *American Airlines*, 384 F. Supp. 3d at 527.  It disregards decades of case law that Congress expressly codified when it enacted USERRA and that has guaranteed reservists equal "rights and benefits" as other workers who take leave.  SWA's interpretation disregards Congress' expressed intent that these "rights and benefits" cover the entire employment relationship, including wages, pay, and paid leave, and longstanding case law that recognizes that wages, pay, and paid military leave are "rights and benefits" under § 4303(2) and/or protected by § 4316(b).  Rather than resolving any "'interpretive doubt . . . in the veteran's favor,'" as Supreme Court and Ninth Circuit law require, *American Airlines*, 384 F. Supp. 3d at 524 (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)), SWA's argument requires selecting the narrowest possible view of the statute every step of the way.  This is especially true of SWA's claim that wages, pay, or paid leave cannot accrue.  *See id.* at 527-28 (rejecting American Airlines' identical argument that wages or pay cannot accrue).

As described herein, Congress enacted USERRA in 1994 to recodify statutory provisions that largely existed since the 1940s.  *Huhmann v. Federal Express Corp.*, 874 F.3d 1102, 1109 n.4 (9th Cir. 2017).  In doing so, it expressly codified an "equality" principle that the Third Circuit recognized and applied in *Waltermyer v. Aluminum Co. of Am.*, 804 F.2d 821, 824-26 (3d Cir. 1986): workers who take military leave must receive the same "rights and benefits" that other employees get when they take comparable types of leave.  38 U.S.C. § 4316(b); *see* S. Rep. No. 103-158, at 58 (1993) ("Senate Rpt.")

(codifying *Waltermeyer*, 804 F.2d 821); H.R. Rep. No. 103-65, at 33-34 (1993) ("House Rpt.) (same); 20 C.F.R. § 1002.150(b) (stating that an employee on military leave "must be given the most favorable treatment accorded to any comparable form of leave").

These "rights and benefits" are defined in USERRA § 4303(2), an "extremely broad" definition that covers "'the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, [or] status,'" including wages, paid leave, and other forms of pay that workers get when they do not perform work. *American Airlines*, 384 F. Supp. 3d at 526 (quoting 38 U.S.C. § 4303(2)). Indeed, Congress stated that the term "rights and benefits" in § 4303(2) encompasses "all attributes of the employment relationship." House Rpt. at 21. Reading § 4316(b)'s mandate of equal "rights and benefits" together with § 4303(2)'s definition of "rights and benefits" yields a simple conclusion. Since wages, pay, and/or paid leave are among the "rights and benefits" protected by § 4316(b), an employer must provide wages, pay, and/or paid leave to workers when they take military leave if the employer provides wages, pay, and/or paid leave to workers who take other comparable types of leave.

This is the conclusion that the Eastern District of Pennsylvania reached earlier this year in a thorough, published opinion that carefully analyzed USERRA's text and legislative history and soundly rejected all of the arguments that SWA makes in its motion here. *American Airlines*, 384 F. Supp. 3d at 523-28. And just days later, the Eastern District of Washington denied Alaska Airlines' motion to dismiss the very same claim in which the defendant made the same arguments that SWA does here. *Clarkson v. Alaska Airlines, Inc.*, No. 19 Civ. 5, 2019 WL 2503957, at *7 (E.D. Wash. June 17, 2019).

The notion that "rights and benefits" under USERRA § 4303(2) protect wages, pay, and paid military leave was not invented by Plaintiff's counsel, nor is it "implausible and exotic," as SWA asserts. Mot. at 3. Instead, this principle is well established at both the trial court and appellate levels, and it took root not long after USERRA was enacted. *See American Airlines*, 384 F. Supp. 3d at 523-28; *Alaska Airlines, Inc.*, 2019 WL 2503957, at *7; *Brill v. AK Steel Corp.*, No. 09 Civ. 534, 2012 WL 893902, at *6 (S.D. Ohio Mar. 14, 2012); *Pucilowski v. Dep't of Justice*, 498 F.3d 1341, 1344 (Fed. Cir. 2007); *United States v. Missouri*, 67 F. Supp. 3d 1047, 1050-51 (W.D. Mo. 2014).

For the vast majority of American employers, paying workers when they take short-term military leave—typically a two-week period once a year and weekend drills once a month—is not a

burden.  Not only do reservists constitute just 0.7% of the American workforce, but many companies who employ significant numbers of reservists *actually provide paid leave in excess of what is required* by § 4316(b)'s mandate to provide paid short-term military leave under limited circumstances.  That SWA employs many reservists and has failed to provide them with the same "rights and benefits" as other workers for comparable short-term leaves does not justify eliminating rights that have existed for decades to encourage non-career military service and protect reservists from discrimination.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 7, 2019, Huntsman filed a putative class action alleging that SWA has violated USERRA by failing to pay workers when they take short-term military leave while paying workers when they take comparable forms of leave, such as jury duty, bereavement leave, and sick leave. Complaint ¶¶ 3-4, ECF No. 1 ("Compl.").  He alleged that this practice violates USERRA § 4316(b)'s equality rule that requires employers to provide workers who take military leave the same "rights and benefits" as workers who take other comparable forms of leave.  *Id.* ¶ 51; 38 U.S.C. § 4316(b). Huntsman seeks to represent a national class of thousands of SWA workers who, since 2004, took military leave lasting 14 days or less and during such periods of short-term military leave did not receive pay. *Id*. ¶¶ 9, 11-13.  In its Answer, SWA admitted that it does not pay workers when they take military leave, but it does pay workers when they take other types of non-military leave, such as jury duty, bereavement leave, and sick leave.  Answer ¶¶ 2, 33, 37, 49.

## LEGAL STANDARD

"'[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog,' because the motions are 'functionally identical.'"  *Gov't Emps. Ins. Co. v. Nadkarni*, -- F. Supp. 3d --, 2019 WL 3037562, at *4 (N.D. Cal. July 11, 2019) (quoting *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).  When considering a Rule 12(c) motion, the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."  *Id.* (quoting *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)).  Judgment on the pleadings is only proper if, taking all of Plaintiff's allegations in the Complaint as true, SWA is entitled to judgment as a matter of law.  *Id.*  "Although a court generally is confined to the pleadings on a Rule 12(c) motion, '[a] court may, however, consider certain materials – documents attached to the

complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment.'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 908, 908 (9th Cir. 2003)).

## ARGUMENT

**I.     USERRA Is a Unique Law That Provides Powerful Protections, and Its Central Purposes Are Encouraging Reservists to Serve and Preventing Discrimination Against Reservists**

SWA expresses surprise that USERRA § 4316(b) requires workers who take military leave to be treated 100% equal to workers who take other types of leave. SWA Mot. at 2-4. But this requirement should come as no surprise to anyone who understands USERRA. USERRA, one of the strongest civil rights laws, has many unique features that protect reservists, to further its central goals of ensuring that reservists are not disadvantaged or discriminated against due to their military service.

In 1994, "Congress enacted USERRA in order to 'clarify, simplify, and, where necessary, strengthen the existing veterans' employment and reemployment rights provisions.'" *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (quoting *Gummo v. Vill. of Depew*, 75 F.3d 98, 105 (2d Cir. 1996) (quoting House Rpt. at 18)); *accord* USERRA of 1994, Pub. L. No. 103-353, 108 Stat. 3149, 3149 (1994) (USERRA's purpose is "to improve reemployment rights and benefits of veterans and other benefits of employment of certain members of the uniformed services").

Since the 1940s, an unbroken line of federal laws has protected servicemembers and veterans so that they can serve their country, return to their civilian jobs, and be free of discrimination based on their military status and service. *See Lapine v. Town of Wellesley*, 304 F.3d 90, 97-100 (1st Cir. 2002) (describing history of USERRA and predecessor laws); *see also Huhmann*, 874 F.3d at 1109 n.4; *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 1008 (C.D. Cal. 2013) ("USERRA . . . represents Congress' most recent effort to provide job security for past, present, and future members of the country's armed services."); *American Airlines*, 384 F. Supp. 3d at 523-24; House Rpt. at 19.

These longstanding rights "ensure that the veteran 'who was called to the colors not be penalized on his return by reason of his absence from his civilian job.'" *Imel v. Laborers Pension Trust Fund for N. Cal.*, 904 F.2d 1327, 1331 (9th Cir. 1990) (quoting *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284 (1946)). As the Supreme Court recognized, granting servicemembers reemployment rights "provides the mechanism for manning the Armed Forces of the United States."

*Alabama Power Co. v. Davis*, 431 U.S. 581, 583 (1977).  Thus, to ensure that the Armed Forces can attract and rely upon the service of non-career military reservists, Congress enacted USERRA to make it easier for civilians to serve in the military and protect reservists against discrimination vis-à-vis other workers.  The law's stated purposes are to (1) "encourage noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service[,]" (2) "minimize the disruption to the lives of persons performing service in the uniformed services[,]" and (3) "prohibit discrimination against persons because of their service in the uniformed services."  38 U.S.C. § 4301(a).

   USERRA advances these purposes with far-reaching substantive and procedural protections, many of which are unique under federal law.  USERRA applies to employers of all sizes, *id.* § 4303(4), does not require exhaustion of administrative remedies before filing suit, *id.* § 4323(a)(3)(A), has no statute of limitations, *id.* § 4327(b), and bars imposing costs on reservist plaintiffs.  *Id.* § 4323(h)(1). Among its substantive protections, USERRA bans discrimination based on military service or status in all aspects of the employment relationship, *id.* § 4311(a), prohibits retaliation, *id.* § 4311(b), requires reemployment following military leave for up to five years, *id.* § 4312(a), requires the continuation of retirement benefits for periods of military leave, *id.* § 4318, and requires that workers on military leave receive the same rights and benefits as workers who take other types of leave.  *Id.* § 4316(b).

## II.    USERRA § 4316(b) Codified a Longstanding Equality Rule Requiring Workers on Military Leave to Get the Exact Same Rights and Benefits as Other Workers on Leave

   In USERRA § 4316(b), Congress expressly codified an equality rule that had existed under its predecessor law, the Veterans Reemployment Rights Act ("VRRA"): that workers on military leave are "entitled to such other rights and benefits . . . as are generally provided by the employer of the person to employees . . . who are on furlough or leave of absence[.]" 38 U.S.C. § 4316(b).  As Congress explained when it enacted § 4316(b), this provision "would codify court decisions that have interpreted current law [VRRA] as providing a statutorily-mandated leave of absence for military service that entitles servicemembers to participate in benefits that are accorded other employees."  Senate Rpt. at 58 (1993) (citing *Waltermyer v. Aluminum Company of America*, 804 F.2d 821 (3d Cir. 1986)).  Congress similarly explained that § 4316(b) would "affirm the decision in *Waltermyer*" that reservists on military leave must receive "the most favorable treatment accorded any particular leave."  House Rpt. at 33-34.

1   In *Waltermyer*, the Third Circuit had recognized "equality as the test" for workers on military

2   leave vis-à-vis other workers on comparable types of leave, holding that a worker who took military

3   leave on a holiday was entitled to receive pay for that day on the same terms as workers who took jury

4   duty that day and still received pay for not performing any work.  804 F.2d at 824-26.  This equality

5   rule "merely establishe[d] equality for . . . reservists, not preferential treatment."  *Id.* at 825; *see*

6   *American Airlines*, 384 F. Supp. 3d at 525 (stating that *Waltermyer* held that "[p]aying plaintiff for

7   those holidays" when he was on military leave "established 'equality . . . not preferential treatment'").

8   Since the plaintiff in *Waltermyer* "was not suing for compensation for other days not worked"

9   besides holidays, the Third Circuit "limited its holding to the question of what it described as 'holiday

10   pay.'"  *American Airlines*, 384 F. Supp. 3d at 525.  But *Waltermyer's* equality principle necessarily

11   requires reservists on military leave to receive pay if workers on other types of leave like jury duty are

12   paid.  "If a reservist and [a] juror are equal, *then the reservist is not entitled to just holiday pay but to*

13   *full pay for all days not worked*, since employees absent for jury duty receive full pay."  *Waltermyer*,

14   804 F.2d at 827 (Hunter, J., dissenting) (emphasis added).

15   This equality principle is exactly how Congress explained its codification of *Waltermyer* in §

16   4316(b): reservists on military leave must receive "the most favorable treatment accorded any particular

17   leave" that other workers take, House Rpt. at 33-34, *i.e.*, they must get the fullest range of "rights and

18   benefits" offered to other workers on leave, including pay or paid leave.  The Department of Labor's

19   implementing regulations make the same point, that workers on military leave "must be given the most

20   favorable treatment accorded to any comparable form of leave."  20 C.F.R. § 1002.150(b).

21   Understanding *Waltermyer* is critical to correctly interpreting USERRA § 4316(b) and §

22   4303(2), not just because Congress specifically expressed an intent to codify *Waltermyer* in § 4316(b),

23   but also because Congress stated more generally that "case law that had developed under [USERRA's

24   predecessor] statutes remain[s] in full force and effect, to the extent it is consistent with USERRA."

25   *Paxton v. City of Montebello*, 712 F. Supp. 2d 1007, 1013 n.11 (C.D. Cal. 2010) (quoting 20 C.F.R. §

26   1002.2)); *see* House Rpt. at 19; Senate Rpt. at 40.  Yet SWA ignores *Waltermyer* and incorrectly relies

27   on dicta in *Monroe v. Standard Oil Co.*, 452 U.S. 549 (1981), which had observed that Congress gave

28   no indication in USERRA's predecessor law of a *general obligation* to pay employees when they take

military leave and give them all "incidents of employment accorded *working employees*" whenever they take military leave. *Waltermyer*, 804 F.2d at 823 (citing *Monroe*, 452 U.S. at 557) (emphasis added). What SWA misses is that in *Waltermyer*, the Third Circuit distinguished the claim of the reservist in *Monroe*, who wanted the same rights as employees who *remained working*, from Waltermyer, a reservist on military leave who wanted the same right to holiday pay as workers who took jury duty and were *not working*. 804 F.3d at 823. Also, if the court in *Waltermyer* had read *Monroe* as holding an employer is *never* obligated to pay workers who take military leave (even when other workers are paid for their comparable leaves), *Waltermyer* would not have held a reservist on military leave must get holiday *pay* on equal terms as other workers. *See American Airlines*, 384 F. Supp. 3d at 525-26.

## III.    USERRA's Text and History Are Each Clear That the "Rights and Benefits" Defined in § 4303(2) and Protected by § 4316(b)'s Equality Rule Cover Wages, Pay, and Paid Leave

As SWA appears to concede, the term of art "rights and benefits" in § 4303(2) defines the range of things in an employment relationship that § 4316(b) requires to be provided equally, since § 4316(b) incorporates the term "rights and benefits." Mot. at 11-13. But SWA erroneously argues that § 4303(2)'s definition of "rights and benefits" does not include wages, pay, or paid leave that workers get when they are not working. *Id.* To the contrary, nearly every court to interpret § 4303(2) has held that wages, pay, or paid leave are "rights and benefits" under § 4303(2)'s "extremely broad" definition. *American Airlines*, 384 F. Supp. 3d at 526; *see Pucilowski*, 498 F.3d at 1344 (§ 4303(2)'s "is given an expansive interpretation" and paid military leave is a right or benefit under § 4303(2)).

Section 4303(2) currently defines "rights and benefits" in the following manner:

> The term "benefit", "benefit of employment", or "rights and benefits" means the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2) (2019). The primary difference between the current and original versions of § 4303(2) is that the current parenthetical phrase "(*including* wages or salary for work performed)" previously read "(*other than* wages or salary for work performed)." *Compare id.*, *with* 38 U.S.C. § 4303(2) (1996). But as described below, both versions of this phrase demonstrate that "rights and

benefits" include wages, pay, and paid leave for employees who are *not* working.

**First**, § 4303(2) defines "rights and benefits" as "the terms, conditions, or privileges of employment," *without any exception*, and sets forth a number of broad, general, and non-exhaustive illustrations of "rights and benefits" that can plainly encompass wages, pay, or paid leave: "any advantage, profit, privilege, gain" that "accrues" from an employment practice or policy.  38 U.S.C. § 4303(2).[1]  When a worker receives wages or pay (for working or not working), she clearly profits, gains, and gets an advantage from her employer.  And wages or pay are the top advantage of a job and how workers gain and profit from their employment.  Indeed, wages or pay account for 68.7% of the total compensation (including fringe benefits) workers receive.  Bureau of Labor Statistics, Employer Costs for Employee Compensation, Ex. 1 to the Declaration of Peter Romer-Friedman ("Romer-Friedman Decl.").[2]  Since Congress placed the term "'any'" before these general illustrations of "rights and benefits," it "ensures that the definition has a wide reach," *see Boyle v. United States*, 556 U.S. 938, 944 (2009), and covers "whatever kind" of things that can be described as an advantage, profit, or gain, *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008).

**Second**, § 4303(2) contains a number of *specific and non-exhaustive illustrations* of "rights and benefits," and several of these illustrations describe wages, pay, or paid leave that employees receive when *they do not perform work*—"severance pay, supplemental unemployment benefits, vacations." 38 U.S.C. § 4303(2).  By definition, "severance pay" and "supplemental unemployment benefits" are paid to former employees who are no longer performing work.  Workers who take paid "vacations" are paid for not performing work.  These illustrations of severance pay, unemployment benefits, and vacations share a common trait with pay for military leave or jury duty—workers are not performing work but are still getting paid.  As Judge Bartle explained in *American Airlines*:

> *Waltermyer* . . . awarded holiday pay, that is wages for work not performed.  804 F.2d at 822.  If compensation for holidays in *Waltermyer* and for severance pay and vacations explicitly referenced in [USERRA] are merely illustrations of the definition of rights and benefits and involve pay for work not performed, we are hard pressed to understand why

---

[1] *See* Webster's Ninth New Collegiate Dictionary (1986) ("Profit" is "a valuable return; gain" or "net income usually for a given period of time"); *id.* ("Gain" is "resources or advantages acquired or increased," "act or process of gaining," or "an increase in amount, magnitude or degree"); Webster's New World Dictionary (3d College ed. 1994) ("advantage" is "favorable or beneficial circumstance").

[2] Unless otherwise indicated, all Exhibits are attached to the Romer-Friedman Decl.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 19 Civ. 00083 (PJH)

compensation for time on military leave for work not performed would not also fit within the definition.

384 F. Supp. 3d at 526.  Under the federal tax code, all of these types of payments for not working that are "rights and benefits" (severance, unemployment, vacation) are taxable W-2 wages, just like pay that workers get for military or jury duty.  IRS Publication 15, Employer's Tax Guide at 15 (Dec. 17, 2018), Ex. 2; IRS Publication 4128, Tax Impact of Job Loss at 1-2 (2015), Ex. 3.  Section 4303(2)'s many examples of wages, pay, or paid leave workers get for not performing work are inconsistent with SWA's theory that Congress implicitly exempted wages, pay, and paid leave for work not performed from § 4303(2).  Because courts should "resist attributing to Congress an intention to render a statute so internally inconsistent," the Court should reject SWA's interpretation.  *Greenlaw v. United States*, 554 U.S. 237, 251 (2008).

   **Third**, the various illustrations in § 4303(2) are illustrative, not exhaustive or exclusive. "Because [§ 4303(2)] uses the words 'including' and 'includes,' the words following 'including' and 'includes' are simply illustrative of the expansive language 'the terms, conditions or privileges of employment' which precedes the illustrations." *American Airlines*, 384 F. Supp. 3d at 526.  Congress expressly made this very direction when it enacted § 4303(2).  *See* House Rpt. at 21 (stating that § 4303(2)'s list of rights and benefits "is illustrative and not intended to be all inclusive.").

   **Fourth**, USERRA's legislative history confirms that § 4303(2)'s broad language was intended to cover *all aspects of an employment relationship*, not a subset of the rights and benefits workers get from an employer.  Congress stated that the "rights and benefits" in § 4303(2) "are broadly defined to include *all attributes of the employment relationship*."  House Rpt. at 21 (emphasis added).  Of course, the most central and important attribute of an employment relationship is receiving pay, including when a worker receives paid leave for not working (*e.g.*, vacations, jury duty, sick leave, and military leave).

   SWA argues that some of the illustrations in § 4303(2) describe things that are colloquially considered fringe benefits instead of wages, and points to an *unpublished* Ninth Circuit decision that found a list of three illustrations in a statute did not extend to other things that did not share the same characteristic of the three illustrations.  Mot. at 10-11 (citing *United States v. Poff*, No. 16-30141, 2019 WL 3064444, at *1 (9th Cir. July 12, 2019)).  Unlike *Poff*, here a number of § 4303(2)'s illustrations—

*e.g.*, vacation, severance, unemployment—*do share the same characteristic* of paying employees for not working or paid leave.  *American Airlines*, 384 F. Supp. 3d at 526.  Also, in *Poff*, the Court did not have any evidence that Congress intended the definition to extend broadly beyond the three enumerated things.  2019 WL 3064444, at *1.  In contrast, here Congress expressly stated that § 4303(2) covers "all attributes of the employment relationship," including any "advantage," "gain," or "profit," and stated that the list of illustrations is "is illustrative and not intended to be all inclusive."  House Rpt. at 21.

Moreover, an ordinary worker *would consider* paid leave to be a benefit in a colloquial way.  When an employee starts a new job and learns that she will get three weeks of paid vacation or will get paid for taking jury duty, sick leave, or military leave, her ordinary understanding would be that these are *benefits* of the job—even though she may realize these benefits as wages or pay that will be reported on a W-2 and be subject to payroll taxes.  SWA's own web site describes paid leave as one of the "other available *benefits*" for SWA's workers.  Southwest Careers, https://careers.southwestair .com/benefits, Ex. 4 (emphasis added).

*Fifth*, both the original and current phrases in § 4303(2) that mention "wages" confirm that wages, pay, and/or paid leave have always been covered by § 4303(2), and they remain so after a 2010 amendment that only sought to expand the rights of reservists under USERRA, not take them away.

The original version of § 4303(2) had a *single exemption*—"(other than wages or salary for *work performed*)"—immediately after the broad list of things that are "rights and benefits"—"any advantage, profit, privilege, gain."  38 U.S.C. § 4303(2) (1996) (emphasis added).  This express *exemption* of only "wages or salary *for work performed*" shows that Congress intended to preserve within § 4303(2) the only other type of wages or salary—wages or salary for work _not performed_ (*i.e.*, pay when a person is on leave or otherwise not working).  "When Congress provides exceptions in a statute, . . . [t]he proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth."  *Toor v. Lynch*, 789 F.3d 1055, 1061 (9th Cir. 2015) (internal citation and quotations omitted).  As the Ninth Circuit explained, "the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases not specifically excluded."  *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1132-33 (9th Cir. 2009) (holding the specific exclusion of other types of payments from "current monthly income" in the Bankruptcy Code indicated Congress' intent to *include*

---

11

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 19 Civ. 00083 (PJH)

private disability insurance benefits).  Applying this variant of the *expressio unius est exclusio alterius*

canon, the Supreme Court and circuit courts have routinely rejected efforts to imply exceptions into

statutes when the legislature has not expressly stated them.[3]

This canon is particularly apt in this context.  If Congress wanted to exclude *all* wages from §

4303(2) in 1994, it could have easily done that by stating "other than wages or salary."  Instead, in the

original version, Congress carefully excluded only "wages or salary for work performed."  To conclude,

as SWA urges, that Congress exempted *all* wages from § 4303(2) would impose a "blanket exception

[that] would fly in the face of the [] explicit exceptions articulated in [the statute]."  *Fla. Right to Life,*

*Inc. v. Lamar*, 273 F.3d 1318, 1327 (11th Cir. 2001) (refusing to imply additional exceptions beyond

the three express ones, because to imply additional exceptions would result in a "blanket exception").

Furthermore, Congress purposefully preserved wages or salary for work not performed in §

4303(2)'s definition of "rights and benefits," as it expressly stated it intended to "affirm the decision in

*Waltermyer*" that reservists on military leave must receive "the most favorable treatment accorded any

particular leave."  House Rpt. at 33-34.  *Waltermyer* held that the "rights and benefits" that must be

given equally to reservists on military leave included "holiday pay, that is wages for work not

performed." *American Airlines*, 384 F. Supp. 3d at 526 (citing *Waltermyer*, 804 F.2d at 822).  And

when non-reservist workers get paid leave for taking comparable non-military leaves like jury duty, *the*

*most favorable treatment* plainly includes the pay these workers get for not working.

In 2010, Congress amended the parenthetical phrase in § 4303(2) that refers to wages or salary

to eliminate the exemption for wages or salary for *work performed*.  As SWA concedes, it did so for the

sole purpose of clarifying that USERRA bans wage discrimination under § 4311(a) for employees who

are performing work.  Mot. at 11.  The 2010 amendment overruled an Eighth Circuit decision that held

USERRA did not bar wage discrimination.  156 Cong. Rec. S7656-02 (daily ed. Sep. 28, 2010), 2010

WL 3767475.  In *Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002), a veteran claimed he was paid

---

[3] *See, e.g.*, *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 188 (1978) (specification of limited
number of "hardship exemptions" in Endangered Species Act required presumption that "these were the
only 'hardship cases' Congress intended to exempt"); *Keeley v. Loomis Fargo & Co.*, 183 F.3d 257,
266 (3d Cir. 1999) (if a legislature places "expressed exceptions in the statute" it "indicates its intention
to exclude other exceptions," and expression of overtime exceptions for some industries but not
trucking "[evidences] the legislature's intent to include" trucking industry "within the statute's overtime
coverage."); *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1093-94 (E.D. Cal. 2013).

$1,000 less annually due to his military service. *Id.* at 853. The Court rejected his discrimination claim under § 4311(a), as § 4311(a) required his employer to have "denied him a benefit of employment," and *at that time* "the term 'benefit,' as defined by the USERRA [§ 4303(2)], specifically exclude[d] wages or salary for work performed." *Id.* To overrule *Gagnon*, Congress changed the phrase "(*other than* wages or salary for work performed)" to "(*including* wages or salary for work performed)." Veterans' Benefits Act of 2010, Pub. L. No. 111-275, 124 Stat. 2864, § 701(a) (2010) (emphasis added). Thus, wages or salary for work performed was now included in § 4303(2) rather than exempted.

Congress' sole explanation of the amendment summarized *Gagnon's* holding and stated the amendment "would amend section 4303(2) . . . to make it clear that wage discrimination is not permitted under USERRA." 156 Cong. Rec. S7656-02 (daily ed. Sept. 28, 2010). This narrow focus of the amendment is reflected in its section heading: "Clarification That USERRA Prohibits Wage Discrimination Against Members of the Armed Forces." Pub. L. No. 111-275, § 701(a). Thus, Congress solely wanted to expand § 4303(2)'s scope by "*including* wages or salary for work performed" in "rights and benefits" to bar wage discrimination under § 4311(a). It did not intend to abandon § 4316(b) and § 4303(2)'s equality rule that protects wages or pay for work not performed as "rights and benefits." If Congress had intended for the first time to exclude wages for work _not performed_, especially as applied to § 4316(b), it would have said so in the amendment. But it did not.

Moreover, as SWA concedes, the amendment's focus was on banning discrimination under § 4311(a), which bars discrimination when employees *are working*. Mot. at 11-12. It was not an effort to modify § 4316(b), which applies an equality rule to reservists and employees who are *not working*. To read the 2010 amendment as an implicit repeal of rights that had existed at least since 1994 would violate the cardinal rule that USERRA "needs to be read, not in isolation, but in the context of the history and evolution of the entire statute." *Lapine*, 304 F.3d at 97-98.

After the 2010 amendment, § 4303(2)'s reference to wages or salary still requires that wages, pay, and/or paid leave for not performing work are "rights and benefits." Even ignoring the prior history of § 4303(2) and the 2010 amendment, to expressly include wages or salary for work *performed* in § 4303(2) does not create a negative inference that Congress excluded wages or salary for work *not performed*. The *expressio unius* canon does not apply where a statute uses the word "including" to

introduce a list of one or more items, since the term "including" is "illustrative and not limitative." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). That is particularly true where Congress has expressly stated that the list of "rights and benefits" in § 4303(2) "is illustrative and not intended to be all inclusive." House Rpt. at 21; *see American Airlines*, 384 F. Supp. 3d at 526.

Indeed, the Supreme Court has often cautioned that when considering whether to apply the *expressio unius* canon, "'[t]he force of any negative implication . . . depends on context.'" *NLRB v. SW General, Inc.*, 137 S. Ct. 929, 940 (2017) (quoting *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013)). *Expressio unius* only applies when "circumstances support[] a sensible inference that the term left out must have been meant to be excluded." *Id.* (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002)). Because § 4303(2) had previously not excluded wages for work not performed since 1994, and because the 2010 amendment was solely intended to expand the rights of reservists by including wages for work performed in § 4303(2), it is not sensible to infer that Congress intended to exclude wages for work not performed. That inference would be irrational and contrary to the expressed intent of Congress in both 1994 and 2010. The 2010 amendment simply made § 4303(2) "more inclusive" and the repeated use of the words "including" and "includes" in § 4303(2) forecloses applying the *expressio unius* canon in this context. *American Airlines*, 384 F. Supp. 3d at 526.

In addition to USERRA's plain text and legislative history, the Supreme Court and Congress have made clear that any ambiguity in interpreting USERRA must be weighed in favor of reservists. Since the 1940s, the Supreme Court has held the federal reemployment rights law must be "liberally construed for the benefit of those who left private life to serve their country in its hour of great need." *Fishgold*, 328 U.S. at 285; *Alabama Power*, 431 U.S. at 584 (the liberal canon is a "guiding principle" that "govern[s] all subsequent interpretations of the re-employment rights of veterans."); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 n.9 (1991). This canon is not merely a tie breaker between two reasonably plausible arguments. Instead, any "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). This canon "remains in full force and effect," as Congress expressly stated it continues to apply to USERRA. House Rpt. at 19; *see* Senate Rpt. at 40.

Similarly, when interpreting § 4303(2) and § 4316(b) *together*, this Court must afford them the most liberal interpretation *as a whole*. As the Supreme Court has instructed, in interpreting the federal

reemployment law courts must "construe the separate provisions of the Act as parts of an organic whole and give each as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." *Fishgold*, 328 U.S. at 285; *accord King*, 502 U.S. at 221 n.9.  Here, that means resolving any ambiguity about what "rights and benefits" Congress intended to protect under § 4316(b) and § 4303(2) in favor of reservists like Plaintiff.

Finally, applying the equality rule to paid leave advances two key purposes of USERRA.  It prevents "discrimination" against reservists, since it ensures that they receive *equal treatment* to other workers who take leave.  38 U.S.C. § 4301(a)(3).  And by ensuring that reservists do not lose income that their peers receive when they take leave, it "encourage[s] noncareer service" in the military by "minimizing" one of the "disadvantages" that "results from such service." *Id.* § 4301(a)(1).

## IV. Courts Have Held Wages, Pay, and Paid Leave Are "Rights and Benefits" and Employers Must Pay Workers on Military Leave When Workers on Comparable Leaves Are Paid

A number of courts have held that wages, pay, or paid leave are "rights and benefits" under § 4303(2) based on the same statutory language and history of USERRA, its predecessor laws, and case law (including *Waltermyer*).  *See American Airlines*, 384 F. Supp. 3d at 526-27 (holding that "pay for work not performed" is among the "rights and benefits"); *Brill v. AK Steel Corp.*, No. 09 Civ. 534, 2012 WL 893902, at *6 (S.D. Ohio Mar. 14, 2012) (holding a reservist's "full salary is a benefit" that must be provided equally); *Duffer v. United Cont'l Holdings, Inc.*, 173 F. Supp. 3d 689, 703-04 (N.D. Ill. 2016) (holding "earnings" are benefits protected by § 4316(b)); *see also Huhmann*, 874 F.3d at 1112 n.9 (holding straight-time pay and overtime are non-seniority "benefits" under USERRA, as opposed to seniority benefits); *Pucilowski v. Dep't of Justice*, 498 F.3d 1341, 1334 (Fed. Cir. 2007) (holding paid military leave provided by a federal statute is one of the rights and benefits in § 4303(2)); *United States v. Missouri*, 67 F. Supp. 3d 1047, 1050-51 (W.D. Mo. 2014) (holding paid military leave provided by a federal statute is among the "benefits" protected by USERRA).  In holding that wages, pay, and paid leave are "rights and benefits," courts have observed that § 4303(2)'s definition is "extremely broad," *American Airlines*, 384 F. Supp. 3d at 526, "broadly define[d]," *Missouri*, 67 F. Supp. 3d at 1050, and "is given an expansive interpretation." *Pucilowski*, 498 F.3d at 1334 (internal quotations omitted).

Applying the principle that wages, pay, and paid leave are "rights and benefits," § 4316(b)'s equality rule requires that reservists on military leave receive the same right to wages, pay, or paid

leave that other workers get during comparable leaves.  *See American Airlines*, 384 F. Supp. 3d at 523-28 (finding viable claim that reservists on short-term military leave are entitled to receive pay when employees on jury duty receive pay); *Alaska Airlines, Inc.*, 2019 WL 2503957, at *7 (finding a triable issue on the same question); *Brill*, 2012 WL 893902, at *6 (same); *cf. Duffer*, 173 F. Supp. 3d at 703-04 (finding triable issue of whether military leave is comparable to jury duty or sick leave, and that if workers on jury duty or sick leave received earnings for past work then workers who took military leave must receive it too).  A leading USERRA treatise observes "there are circumstances under which an employee on military leave would be entitled to pay," and refers to cases applying § 4316(b)'s mandate to require paid military leave.  Kathryn Piscitelli *et al.*, The USERRA Manual § 3:5 (2018)).

In both *American Airlines* and *Brill*, courts held that requiring equal pay for workers who take short-term military leave and other comparable leaves is necessary to comply with § 4316(b)'s equality rule, and such a rule does not treat reservists more favorably than other workers.  As *Brill* explained:

> Defendant would not be providing anything it does not already provide to employees on jury duty/witness leave by paying Plaintiff his full salary for time spent on military leave. Actually, by paying an employee in this manner, Defendant would be complying with the statutory mandate to give the employee the most favorable treatment accorded any comparable form of leave.

*Brill*, 2012 WL 893902, at *6.  Likewise, in holding that § 4316(b) requires equality in pay for employees on military leave and other leaves, *American Airlines* explained:

> *§ 4316(b)(1) clearly mandates that employees on military leave be treated equally with other employees with respect to their terms, conditions, and privileges of employment*. As our Court of Appeals stated in *Waltermyer* in connection with USERRA's predecessor, "the statute establishes equality as the test." 804 F.2d at 824. That is likewise true here. *Equal treatment exists only if those employees on short-term military leave have the same rights and benefits as other employees in comparable situations*. Scanlan has plausibly alleged that he and those similarly situated have not been afforded equal treatment with other employees in comparable situations. *See Brill*, 2012 WL 893902. We see no material difference between the allegations here and those in *Waltermyer*.

*American Airlines*, 384 F. Supp. 3d at 528 (emphasis added).  Thus, while USERRA does not impose a general mandate to pay workers whenever they take military leave, § 4316(b) mandates 100% equal treatment for reservists on military leave compared to workers on comparable leaves.  *Id*

SWA cites a single slip opinion that rejected the view that § 4316(b) can mandate paid military leave.  Mot. at 13 (citing Order, *White v. United Airlines*, No. 19 Civ. 114 (July 10, 2019) ("*White*

Order")).  *White* does not analyze the text or legislative history of § 4303(2) or § 4316(b), it does not even cite, much less analyze *Waltermyer*, and it ignores prior cases that held that § 4316(b)'s equality rule applies to wages or paid leave, including *American Airlines* and *Brill*.  *See White* Order, at 3-4. Instead, the order merely states that Congress did not impose a general duty to pay workers who take military leave, and summarily concludes that Congress could not have intended § 4316(b) to require paid leave under its equality rule.  *Id*.  By bypassing USERRA's text, history, and cases applying the equality rule of *Waltermyer* and § 4316(b), and assuming Congress intended the narrowest protections for reservists, *White* violated both general principles of statutory construction and the specific canons the Supreme Court and Congress directed courts to apply when construing USERRA.  *Supra* § III.

## V.      SWA's Construction of "Rights and Benefits" Is Implausibly Narrow

SWA spends most of its brief arguing that wages cannot "accrue" and that wages are a distinct concept from benefits.  Mot at 4-10.  These arguments are not only inconsistent with the text and history of USERRA, but they also contradict the liberal interpretation that USERRA must be afforded.

SWA misconstrues the role of the term "accrues" in § 4303(2), as well as its meaning.  As a threshold matter, § 4303(2) does not require all "rights and benefits" to accrue.  Thus, Plaintiff need not show that wages, pay, or paid leave accrues.  The word "accrues" in § 4303(2) only modifies or relates to one of the several clauses in § 4303(2) that describe what things can qualify as "rights and benefits."

Section 4303(2) starts out by saying generally that "rights and benefits" "means the terms, conditions, or privileges of employment," and then proceeds to say "including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice."  38 U.S.C. § 4303(2).  Immediately after this sole clause that uses the word "accrues," § 4303(2) proceeds to identify 11 additional illustrations of what § 4303(2) further "includes" without any reference to or use of the word "accrues."  It states that "rights and benefits" "includes rights and benefits under . . . a health plan . . . severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment."  *Id.*  Some of these things, like a "health plan" or the "opportunity to select work hours" are not generally thought of as accruing, and certainly not in the way that SWA reads the term accrue.  They are merely things an employer gives an employee.  Thus, the

plain text of § 4303(2) shows it is not necessary for a term, condition, or privilege of employment to accrue from an employer's policy or practice, but if it does accrue it does fall within § 4303(2).

Even if all "rights and benefits" must "accrue" under § 4303(2), SWA is wrong that only certain fringe benefits can accrue and not wages, pay, or paid leave. Mot. at 4-8. In fact, § 4303(2) contains examples of wages, pay, and paid leave that Congress expressly said are "rights and benefits": "wages or salary," "severance pay," and "[paid] vacations." Even if the term accrues "may seem ambiguous in isolation," these examples earlier in the definition of rights and benefits make "clear" the meaning of accrues. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). Regardless of what dictionary definition applies here, it would be irrational to construe "accrues" in a way that contradicts and effectively excises the very things Congress said *do* accrue and/or qualify as "rights and benefits" in the same section. SWA's view of "accrue" would "render incomprehensible" other words in § 4303(2) that state that wages, salary, and pay are "rights and benefits." *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59 (1987). It would improperly render those examples "inconsistent or meaningless." *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n*, 366 F.3d 692, 700 (9th Cir. 2004) (internal quotation omitted). Indeed, no court has ever adopted SWA's view that the term "accrue" in § 4303(2) does not apply to wages, pay, or paid leave. And SWA makes no effort at all to attack the numerous cases that have held wages, pay, and paid leave are "rights and benefits" and *do accrue* from an employer's practice, including a recent Ninth Circuit published opinion. *See supra* § IV.

As SWA concedes, there are two dictionary definitions of the term "accrue." The first and preferred definition is "To come into existence as an enforceable claim or right; to arise." Black's Law Dictionary (11th ed. 2019); *accord* Webster's New World Dictionary (3d. College ed. 1994). The secondary definition is "To accumulate periodically; to increase over a period of time." Black's Law Dictionary (11th ed. 2019). While the first definition is more appropriate here, *American Airlines*, 384 F. Supp. 3d at 527, *both definitions* of "accrue" can easily be read to cover wages, pay, or paid leave.

When applying the preferred definition of accrue—"to come into existence as an enforceable claim or right"—it cannot be disputed that wages, pay, and paid leave come into existence from "an employment contract or agreement or an employer policy, plan, or practice." 38 U.S.C. § 4303(2).

When an employer has a policy or practice of paying an employee for not working (jury duty pay, sick leave, bereavement pay, holiday pay), that right or benefit comes into existence from that policy or practice and the employee obtains the pay by not working. The same is true when a worker is paid during military leave. She gains the right to pay by not working for her employer. Thus, "[t]he right to be paid for work not performed while on military leave comes into existence and thus accrues as an enforceable claim in the exact same way as the right to holiday pay, severance pay, or vacation pay, all for time periods when no work is performed." *American Airlines*, 384 F. Supp. 3d at 527. Moreover, when employees receive wages or pay for performing work (which is now included in § 4303(2) after the 2010 amendment), the wages or pay "come into existence as an enforceable claim or right," as the employee has worked for the employer and is owed her ordinary wages or pay.

Applying the second definition of accrue, "to accumulate periodically or be added periodically," yields the same result. Everyone who works knows that wages "accumulate periodically" and are "added periodically," as every day a person works her wages increase, they add up little by little, and they are eventually paid at the end of the pay period. Notably, the definition of the word "accumulate" focuses on gathering, piling up, or increasing things gradually that can lead to a "fortune" (*i.e.*, money). Webster's New World Dictionary (3d ed. 1994) (defining "accumulate" as "to heap up; to gather or pile up esp. little by little: AMASS < (a fortune): to increase gradually in quantity or number").

Moreover, the leading legal dictionary at the time USERRA was enacted directly tied the word "accrue" to employees' compensation and salary. Black's Law Dictionary With Pronunciations (6th ed. 1990) (defining "Accrued compensation" as "Compensation earned but not yet paid," and "Accrued salary" as "Compensation to employee which is incurred by an employer but not yet payable.").

SWA identifies other sections of USERRA where Congress used the word "accrue" to refer to specific "rights and benefits" that are more like certain fringe benefits than paid leave and argues that § 4303(2) should be read narrowly to exclude wages or pay. Mot. at 5-6. But if Congress wanted the word "accrue" to have one fixed meaning, it would have defined the term to avoid any confusion. Since it did not, each time "accrue" is used in USERRA, it should be understood in light of the context, and it must be given "as liberal a construction for the benefit of the veteran as a harmonious interplay of the separate provisions permits." *Fishgold*, 328 U.S. at 285.

The Supreme Court has cautioned not to "rigidly" infer that words have the same meaning when used in the same statute or section, and that such an inference "yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent." *Envt'l. Def. v. Duke Energy Corp*., 549 U.S. 561, 574 (2007) (internal citation and quotations omitted).  That is because "[m]ost words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section." *Id.* (internal quotations omitted); *see Sun v. Ashcroft*, 370 F.3d 932, 939-40 (9th Cir. 2004) ("review" had different meanings in same law).  Here, it is reasonable to conclude Congress used the word "accrue" in a slightly different way when referring to very different rights or benefits under USERRA.  Regardless of how the other sections of USERRA use the word "accrue," § 4303(2) specifically refers to wages, salary, pay, and other payments workers get, both when they are and are not working.  *See supra* § III.

Moreover, one of the sections that SWA identifies, USERRA § 4316(d), uses the word "accrue" in a way that *does* encompass paid military leave, the very right or benefit that Plaintiff claims is within § 4303(2) and protected by § 4316(b).  *See* Mot. at 5.  Section 4316(d) states that an employee may choose to receive pay during military leave by using "any vacation, annual, or similar leave with pay accrued by the person."  38 U.S.C. § 4316(d).  But paid military leave is a "similar leave with pay" that a reservist can use to receive pay during her military service, and it is well established that paid military leave is one of the "rights and benefits" that accrues from an employer's policy or practice under § 4303(2), just like vacation pay.  *See Pucilowski*, 498 F.3d at 1344; *Missouri*, 67 F. Supp. 3d at 1051.

Furthermore, SWA is wrong in claiming that the conventional meaning of the word "accrues" applies only to certain fringe benefits, not wages, and that wages can only be "earned" and not "accrued."  Mot. at 8-10.  Contrary to SWA's argument that courts always refer to wages as being earned and fringe benefits as accrued, the Supreme Court, Ninth Circuit, and other federal courts have routinely referred to wages as "accrued," and they have frequently referred interchangeably to wages as "accrued" or "earned," including *before* Congress enacted USERRA in 1994 and when interpreting federal and state wage laws.  *See, e.g.*, *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 247 (1977) (describing how employer paid employees both "accrued

wages and accrued vacation pay" under a union contract); *Su v. M/V S. Aster*, 978 F.2d 462, 468, 472 (9th Cir. 1992) (describing how a federal wage law required an employer to pay workers "their accrued wages" that were "'earned and unpaid'") (quoting 46 U.S.C. § 10313(e)); *Thomas v. SS Santa Mercedes*, 572 F.2d 1331, 1334-35 (9th Cir. 1978) (referring to "accrued wages" a seaman had earned in addressing his claim for "earned wages" or "accrued wages" under federal wage payment law, 46 U.S.C. § 596, and stating "his accrual of wages" ended when he stopped working); *Dawe v. Corrections USA*, No. 07 Civ. 1790, 2007 WL 3125091, at *3 (E.D. Cal. Oct. 24, 2007) (claim under § 201 of the California Labor Code for "wages earned and unpaid at the time of discharge . . . need only allege that the employer failed to pay wages that had *accrued* at the time the employer-employee relationship terminated and the amount of the *accrued* wages") (internal quotations omitted and emphasis added).

Similarly, federal laws that address topics such as wage payments, military personnel, and tax issues related to wages refer to "accrued wages" or "accrued pay" (or *both* wages and fringe benefits as "accrued"), including laws predating USERRA. *See* 41 U.S.C. § 353(c) (referring to "accrued wages and fringe benefits"); 10 U.S.C. § 707a(b)(1)-(2) (referring to "accrued pay and allowances" and "the amount of pay and allowances that is deemed to have accrued"); 26 U.S.C. § 6331(a) (referring to the "accrued salary or wages of any officer [or] employee"). Thus, it makes sense that USERRA § 4303(2) would use the words "accrue" and "wages" in the very same sentence to define "rights and benefits."

Separate from its "accrue" arguments, SWA argues that courts have often referred to "wages and benefits" as distinct concepts, and therefore this Court should superimpose the same distinction into USERRA's specific definition of § 4303(2). Mot. at 8-9. In advancing this point, SWA does not analyze the text of § 4303(2), and instead it pretends or assumes that § 4303(2)'s entire text is comprised of a single word: "benefit." *Id.* But § 4303(2) is a term of art that specifically defines "[t]he term 'benefit', 'benefit of employment', or 'rights and benefits,'" and uses *81 words* to describe what these terms of art mean. 38 U.S.C. § 4303(2). In addition to expressly identifying certain fringe benefits, § 4303(2) also expressly refers to "wages or salary"—something SWA argues is not a benefit. Likewise, § 4303(2) was specifically intended to cover "all attributes of the employment relationship." House Rpt. at 21. And its broad terms like "any advantage, profit, privilege, [and] gain" ensure that § 4303(2) extends far beyond the concept of fringe benefits. *See supra* § III. In any event, even if wages,

pay, or paid leave could not be considered a benefit (which is wrong), wages obviously are considered a "right." And both § 4303(2) and § 4316(b) protect "rights," as well as "benefits."

SWA further argues that reading § 4303(2) to include wages would be inconsistent with USERRA's remedies section, § 4323(d), which states that a "court may require the employer to compensate the person for any loss of *wages or benefits* suffered by reason of such employer's failure to comply with the provisions of [USERRA]." Mot. at 9. (Section 4324(c)(2) contains the same text for remedies against the federal government). But there is an easy explanation why § 4323(d) and § 4324(c)(2) both provide for a remedy of "any loss of *wages* or *benefits*." Workers *lose wages* when they are fired due to discrimination in violation of § 4311(a) or denied reemployment under § 4312(a). And expressly including the term "wages" in § 4323(d) and § 4324(c)(2) ensures that workers who have lost or been denied jobs in violation of USERRA can be compensated for their lost "wages" as a remedy in the form of backpay and front pay. *See* 38 U.S.C. § 4323(d)(1)(C); *see, e.g.*, *Petty v. Metro. Gov't of Nashville & Davidson Cty.*, 687 F.3d 710, 716-18 (6th Cir. 2012) (affirming award of back pay for reservist denied reemployment); 20 C.F.R. § 1002.312(c) (allowing recovery of "lost wages"). The lost "wages" an employer owes for unlawfully denying employment to a reservist address a different type of harm than the denial of the far-reaching "rights and benefits" or "benefits" that are protected by § 4303(2) and § 4316(b) *during* a period of military leave.

Moreover, § 4323(d)(1)(B)'s phrase "compensate the person for any loss of wages or benefits suffered by reason of such employer's [unlawful action]" simply re-codified the same language from the remedies section of USERRA's predecessor law, *see* 38 U.S.C. § 2022 (1993), and in doing so Congress gave no indication that this language was intended to do anything beyond allowing persons to be compensated for any violation of USERRA. There is certainly no evidence that Congress intended this language to implicitly narrow other provisions in the law. *See* House Rpt. at 38; Senate Rpt. at 69.

## VI. Properly Applying USERRA § 4316(b)'s Equality Rule to Require Paid Short-Term Military Leave Under Limited Circumstances Does Not Impose a General Mandate to Pay for All Military Leave, Does Not Conflict With USERRA, and Is Not Burdensome

SWA argues that USERRA does not impose a general mandate to pay employees whenever they take military leave and had Congress intended such a rule it would have said so expressly when enacting USERRA. Mot. at 2-3. But this argument misses the point. Plaintiff does not claim there is a

general duty to pay workers whenever they take military leave, but rather that § 4316(b) requires pay for short-term military leave when other employees on comparable leaves are paid.

First, SWA suggests that because Congress provided in USERRA § 4316(d) that reservists may use vacation time or other paid time off to receive pay during their military leave, Congress could not have intended to ever require paid leave under USERRA. *Id.* at 2. This argument wrongly assumes that under Plaintiff's view of § 4316(b) all reservists would get paid leave whenever they take military leave. In fact, many reservists would *never be entitled to paid military leave* under § 4316(b), because their employers do not pay employees who take comparable leaves. Thus, these reservists could benefit directly from § 4316(d) when they use any paid vacation when they take military leave. Likewise, even reservists like Plaintiff who are entitled to paid leave for short-term military leave under § 4316(b) would not be entitled to paid leave for longer-term military leave, because such leave is not comparable to leaves for which the employer compensates workers. They too directly benefit from § 4316(d) by using their vacation to get paid during long-term military leave periods. Thus, the limited right to paid leave in § 4316(b) is consistent with the right that Congress gave to reservists to use vacation and other paid leave when they take military leave under § 4316(d).

SWA cites cases where courts solely rejected a more specific argument that if an employer *voluntarily* gives *paid military leave* as a benefit only to reservists, the failure to follow the policy is discrimination under USERRA § 4311(a). Mot. at 2 (citing *Duncan v. Tyco Fire Prods.*, No. 16 Civ. 916, 2018 WL 3303305, at *4 (N.D. Ala. July 5, 2018), and *Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002)). But these cases do not address whether military leave must be paid if workers on comparable leaves are paid, under § 4303(2) and § 4316(b). As *American Airlines* explained, in *Duncan*, *Miller*, and *Monroe* there were no "allegations that employees absent from work for non-military reasons were treated more favorably than those who were absent on short-term military duty." *American* Airlines, 384 F. Supp. 3d at 525. The holdings in *Duncan* and *Miller* that voluntary paid military leave is not one of the "rights and benefits" protected by § 4311(a) was rejected by courts that actually analyzed § 4303(2). *Pucilowski*, 498 F.3d at 1344; *Missouri*, 67 F. Supp. 3d at 1050-51.

SWA cites *dicta* in *Monroe v. Standard Oil Co.*, 452 U.S. 549 (1981), to argue that USERRA's predecessor law did not impose a general "guarantee" of paid military leave. Mot. at 3. However,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 19 Civ. 00083 (PJH)

"*Waltermyer* discussed *Monroe* but did not find *Monroe* to be an impediment to its ruling in favor of holiday pay for an employee on short-term military leave," *American Airlines*, 384 F. Supp. 3d at 525, in part because the plaintiff in *Monroe* sought equality in rights and benefits between reservists on leave and working employees, as opposed to equality between reservists on military leave and other employees on leave. *Waltermyer*, 804 F.2d at 823. When Congress enacted § 4316(b), it expressly codified *Waltermyer* to guarantee equality in all "rights and benefits" between reservists and other employees who are on leave and not working. *Supra* § II. Thus, Congress was aware of the dicta in *Monroe* and how *Waltermyer* had distinguished *Monroe*. And it chose to codify *Waltermyer's* equality rule that in limited circumstances paid military leave may be required.

SWA also asserts that decades before USERRA was enacted, Congress passed a federal law that gives federal employees 15 days of paid military leave annually, suggesting that Congress knew how to impose a paid military leave requirement but did not in USERRA. Mot. at 3. But it is easy to reconcile the federal law that grants federal employees 15 days of paid military leave with Congress's enactment of § 4316(b)'s equality rule that in limited cases may require paid military leave for some workers.

"[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Nigg v. U.S. Postal Serv.*, 555 F.3d 781, 785-86 (9th Cir. 2009) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)). These two laws are completely consistent. USERRA specifically provides that other federal laws may establish "a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided" under USERRA. 38 U.S.C. § 4302(a). The limited paid leave that § 4316(b) may require does not stop paid leave from being given to federal employees under 5 U.S.C. § 6323(a)(1). Moreover, courts have read these laws in harmony by finding that paid military leave under § 6323 is one of USERRA's "rights and benefits." *Pucilowski*, 498 F.3d at 1344. In many cases, the 15 days of paid military leave that federal employees receive under § 6323(a)(1) would be enough to satisfy the limited obligation a federal employer may have to pay reservists for their short-term military leave under § 4316(b), as many reservists' annual duty is limited to a two-week training and 11 weekends.

SWA asserts that Congress could not have exposed employers to lawsuits of an "unparalleled magnitude" without a clearer statement that paid military leave could be required. Mot. at 3-4 (quoting

*UFCW Local 1500 Pension Fund v. Mayer*, 895 F.3d 695, 701 (9th Cir. 2018)).  But the legal

obligation at issue here is not one of "unparalleled magnitude" like the legal claim in *Mayer* that would

have cancelled "every [] contract Yahoo! ha[d] entered into for the better part of a decade."  *Mayer*, 895

F.3d at 701.  Less than 1% of employees in the U.S. labor force are reservists (about 1.1 million

reservists out of 162 million workers) and large numbers of these reservists will not be entitled to any

paid military leave under Plaintiff's view of § 4316(b).  *See* U.S. Dep't of Def., 2016 Demographics:

Profile of the Military Community 59 (2016), Ex. 5; U.S. Bureau of Labor Statistics, Employment

Situation Summary Table A. Household data, seasonally adjusted (2019), Ex. 6.  A limited obligation to

provide paid short-term military leave to such a small part of the labor force does not create liability of

"unparalleled magnitude," especially compared to legal mandates that impact the entire workforce.

Many large companies like USAA and Lockheed Martin already provide full pay or differential pay to

employees who take both short and long-term military leave.  *See* Exs. 7-8.

     In any event, a court cannot simply disregard the law because a company thinks it may have

negative consequences.  *Cf. Sebelius v. Cloer*, 569 U.S. 369, 381 (2013).  SWA offers no authority to

support the notion that because SWA employs many reservists and Plaintiff sued SWA that § 4316(b)

should be construed narrowly against the interests of 1.1 million reservists who have made great

sacrifices for their country and whose interests the statute is intended to protect.

## CONCLUSION

     For the foregoing reasons, the Court should deny SWA's Motion for Judgment on the Pleadings.

Dated: September 11, 2019

Respectfully submitted,

By: */s/ Peter Romer-Friedman*
Peter Romer-Friedman (*pro hac vice*)
prf@outtengolden.com
Pamela Disney (*pro hac vice*)
pdisney@outtengolden.com
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, DC 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410

Vincent Cheng (CA Bar No. 230827)
vincent@blockesq.com
BLOCK & LEVITON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 968-8999

R. Joseph Barton (CA Bar No. 212340)
jbarton@blockesq.com
BLOCK & LEVITON LLP
1735 20th Street NW
Washington, DC 20009
Telephone: (202) 734-7046

Matthew Z. Crotty (*pro hac vice*)
matt@crottyandson.com
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave., Suite 409
Spokane, WA 99201
Telephone: (509) 850-7011

Thomas G. Jarrard (*pro hac vice*)
tjarrard@att.net
LAW OFFICE OF THOMAS JARRARD PLLC
1020 N. Washington Street
Spokane, WA 99201
Telephone: (425) 239-7290

*Attorneys for Plaintiff and the Proposed Class*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS
Case No. 19 Civ. 00083 (PJH)