DOUGLAS J. FARMER, CA Bar No. 139646
douglas.farmer@ogletree.com
BRIAN D. BERRY, CA Bar No. 229893
brian.berry@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA 94105
Telephone: 415.442.4810
Facsimile: 415.442.4870

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JAYSON HUNTSMAN, on behalf of himself and all others similarly situated,

Plaintiff,

v.

SOUTHWEST AIRLINES CO.,

Defendant.

Case No. 4:19-cv-00083-PJH

**DEFENDANT SOUTHWEST AIRLINES CO.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Date: October 9, 2019
Time: 9:00 a.m.
Magistrate Judge: Hon. Phyllis J. Hamilton
Location: Oakland Courthouse, Courtroom 3, Third Floor

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 3

A. Plaintiff Identifies No Precedent for His Novel Claim. ..... 3

B. The District Court in *White* Correctly Rejected Plaintiff's Novel Claim. ..... 5

C. Plaintiff's Construction of Section 4303(2) Is Incoherent. ..... 7

1. Plaintiff's construction of the term "accrual" leads to absurd results. ..... 8

2. Plaintiff's construction of the term "benefits" is inconsistent with the statute. ..... 11

3. USERRA's legislative history does not save Plaintiff's fatally flawed theory. ..... 12

D. Objections to Evidence ..... 13

III. CONCLUSION ..... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Brill v. AK Steel Corp.*
No. 2:09-CV-534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012) ....................3, 4

*C.I.R. v. Lundy*,
516 U.S. 235 (1996) ....................10

*Clarkson v. Alaska Airlines, Inc.*,
No. 2:19-CV-0005-TOR, 2019 WL 2503957 (E.D. Wash. June 17, 2019)....................6, 7

*Corley v. United States*,
556 U.S. 303 (2009) ....................1, 7

*Duffer v. United Continental Holdings, Inc.*
173 F. Supp. 3d 689 (N.D. Ill. 2016)....................4, 5

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018) ....................12

*Epic Systems Corp. v. Lewis*,
138 S. Ct. 1612 (2018) ....................12

*Gagnon v. Sprint Corp.*,
284 F. 3d 839 (8th Cir. 2002) ....................8, 13

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ....................11, 12

*Huhmann v. Federal Express Corp.*,
874 F.3d 1102 (9th Cir. 2017)....................5

*Huntsman v. Sw. Airlines Co.*,
N.D. Cal. Case. No. 3:17-cv-03972-JD....................1

*Jennings v. Rodriguez*,
138 S. Ct. 830 (2018) ....................2, 8, 13

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)....................13

*Los Angeles Lakers, Inc. v. Fed. Ins. Co.*,
869 F.3d 795 (9th Cir. 2017)....................6, 12

*Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*,
430 U.S. 243 (1977) ....................9

*Pucilowski v. Dep't of Justice*,
498 F.3d 1341 (Fed. Cir. 2007) ....................5

*Rogers v. City of San Antonio*,
392 F.3d 758 (5th Cir. 2004) ....................3

*Scanlan v. Am. Airlines Grp., Inc.*,
384 F. Supp. 3d 520 (E.D. Pa. 2019).................... *passim*

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1995) ....................12

*Su v. M/V S. Aster*,
978 F.2d 462 (9th Cir. 1992) ....................9

*United States v. Poff*,
No. 16-30141, 2019 WL 3064444 (9th Cir. July 12, 2019) ....................1, 7, 12

*United States v. Missouri*,
67 F. Supp. 3d 1047 (W.D. Mo. 2014)....................5

*United States v. Town of Colorado City*,
--- F.3d -, No. 17-16472, 2019 WL 4008005 (9th Cir. Aug. 26, 2019) ....................12

*Waltermyer v. Aluminum Co. of Am.*,
804 F.2d 821 (3d Cir. 1986) ....................3, 5, 6, 7

*White v. United Airlines, Inc., et al.*,
N. D. Ill. Case No. 1:19-cv-114....................2, 6, 11, 12

*Whitman v. Am. Trucking Assocs.*,
531 U.S. 457 (2001) ....................2, 11

**Statutes**

5 U.S.C. § 6323(a)(1) ....................2, 5

38 U.S.C. § 4303(2).................... *passim*

38. U.S.C. § 4316(b).................... *passim*

38 U.S.C. § 4316(d)....................10

38 U.S.C. § 4323(d)(1)(B)....................1, 7

38 U.S.C. § 4324(c)(2) ....................1, 7

46 U.S.C. § 10313(e)....................9

**Other Authorities**

20 C.F.R. § 1002.7(c) ........................................................................................................5

156 Cong. Rec. S7656-02.....................................................................................................13

Black's Law Dictionary (6th ed. 1990) ..................................................................................9

Black's Law Dictionary (11th ed. 2019) ................................................................................9

Fed. R. Evid. 201 .................................................................................................................13

H.R. Rep. 103-165................................................................................................................12

Joint Explanatory Statement for H.R. 3219..........................................................................13

S. Rep. 103-158 ...................................................................................................................13

## I. INTRODUCTION

Plaintiff asserts that Southwest—along with every other airline that Plaintiff's counsel sued this year—should not be surprised by his theory of purported liability because "anyone who understands USERRA" should appreciate that his claim is cognizable under section 4316(b). *See* ECF 53 (Opp. at 5:6–10). This assertion is disingenuous, to say the least. Until earlier this year, no one had asserted Plaintiff's novel claim against any defendant in the 25 years since Congress enacted USERRA. Plaintiff himself filed a separate class action against Southwest under section 4316(b)'s "comparability" rule in 2017, alleging Southwest owed him and other putative class members sick leave benefits that allegedly accrued while they were on military leave. *See Huntsman v. Sw. Airlines Co.*, N.D. Cal. Case. No. 3:17-cv-03972-JD, ECF 1 (Complaint ¶ 71 ("Southwest has violated USERRA § 4316(b) by failing to provide its pilots who take short term military leave with any accrued paid sick leave while simultaneously providing accrued paid sick leave to pilots who engage in jury duty, union duty, and bereavement leave or other comparable types of leave.")). Tellingly, Plaintiff did not assert his new theory at the time.

The text of the statute leaves no doubt that Plaintiff's claim lacks merit. USERRA adopts the conventional distinction between benefits and wages, *see* 38 U.S.C. § 4303(2), while Plaintiff's construction conflates these distinct concepts. Also, Plaintiff's construction violates the canon against surplusage because USERRA repeatedly uses these terms disjunctively. *See, e.g.*, 38 U.S.C. §§ 4323(d)(1)(B) ("wages or benefits"), 4324(c)(2) (same). If wages were included in the definition of "benefits" in section 4303(2), as Plaintiff contends, Congress would not have used the terms disjunctively in other parts of the statute. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining operation of the surplusage canon in statutory construction).

In addition, given that section 4303(2) defines the term "benefits" with reference to a list of conventional fringe benefits, *see* 38 U.S.C. § 4303(2), Plaintiff's conflation of wages and benefits runs afoul of the canon that "a word is known by the company it keeps." *See United States v. Poff*, No. 16-30141, 2019 WL 3064444, at *1 (9th Cir. July 12, 2019) (statutory examples following the term "including" carry the "meaning that makes them similar."). Further, even if Congress had

included the payment of wages within the definition of "benefits" in section 4303(2), which it did not, the definition still would not cover the payment of wages for work *not performed*. The only reference to wages in section 4303(2) is a parenthetical that addresses "wages or salary for work performed." The statute does not address work "not performed." This stark textual fact cannot be ignored because Plaintiff's novel theory seeks to expand USERRA to cover wages for work "not performed," which is the exact opposite of what the statute states. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 846 (2018) (courts "certainly may not transmute existing statutory language into its polar opposite.").

Congress knew how to draft clear legislation defining the scope of an employer's obligation to pay for military leave. *See, e.g.*, 5 U.S.C. § 6323(a)(1). If Congress had intended USERRA to include wages for work not performed in USERRA's protections, it could and would have made this explicit. *See Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 468 (2001) (Congress does not "hide elephants in mouseholes.")[1]

In his Opposition, Plaintiff misstates the holdings of a series of cases in an effort to find precedent where none exists, and he endorses an incoherent construction of the statute in order to fit the square peg of his claim into the round hold of USERRA. At bottom, Plaintiff's claim is not cognizable under USERRA and should be dismissed with prejudice.

---

[1] Plaintiff suggests that Congress could have hidden his novel claim in the text of USERRA because the statute covers only military reservists, who comprise only about 1% of the U.S. workforce (or 1.1 million workers). *See* ECF 53 (Opp. at 25:4–12). But that misses the point. The question is not the magnitude of the hidden obligation in the context of the national workforce as a whole. Rather, the question is the magnitude of the hidden obligation within the statutory scheme itself. In any event, the magnitude in the national workforce is substantial. Surely Congress would not enact a statute that conceals from employers an obligation to provide paid leave to the country's 1.1 million military reservists any time they pay employees for "comparable" leave. *See* RJN, Ex. 1 (*White*, No. 1:19-cv-114, ECF No. 44 (Order dated July 10, 2019) at 4. Plaintiff cannot genuinely discount the magnitude of this purported obligation, when he alleges he has "routinely" taken military leave and seeks to represent a class of 8,000 current and former military employees who have taken military leave over the last 15 years. ECF 1 (Complaint ¶¶ 9, 11,12).

## II. ARGUMENT

### A. Plaintiff Identifies No Precedent for His Novel Claim.

Plaintiff says his claim is "well established" in the law, but he is unable to identify a single case that supports his novel theory. ECF 53 (Opp. at 3:21–24, 15:13–17:9).

Plaintiff relies heavily on *Waltermyer v. Aluminum Company of America*, a case that arose under USERRA's precursor statute. 804 F.2d 821 (3d Cir. 1986). In *Waltermyer*, the question was whether a military reservist was entitled to holiday pay when on military leave, where holiday pay was a benefit that accrued if the employee worked other days in the week of the holiday. *Waltermyer*, 804 F.2d at 822, 825 (work during a holiday week establishes "eligibility for holiday pay."). Unlike the plaintiff in *Waltermyer*, however, Plaintiff here is not trying to recover benefits that he would have received but for his military service (e.g., benefits under a policy that covers vacation, jury leave, sick leave, or bereavement leave). Rather, he is claiming that his wages are themselves a "benefit" that are owed to him. *Waltermyer* provides no support for this claim. The court in *Waltermyer* expressly stated that it was "important" to note that the plaintiff there was *not* pursuing the claim that Plaintiff asserts here (i.e., regular wages while on leave). *See id*. at 825 ("It is important, too, that work during a holiday week be seen only as establishing eligibility for holiday pay, *not compensation for the other days not worked*. . .We limit our holding to the claim to holiday pay presented here.") (emphasis added). Also noteworthy is the fact that Congress had *Waltermyer* squarely in mind when it drafted USERRA. *See Rogers v. City of San Antonio*, 392 F.3d 758, 767 (5th Cir. 2004) (discussing legislative history of USERRA that led to codification of *Waltermyer*). Yet, like the Third Circuit in *Waltermyer*, Congress chose not to recognize wages as a "benefit" protected by the statute.

Nor does *Brill v. AK Steel Corp.* support Plaintiff's novel theory. No. 2:09-CV-534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012). *Brill* was a summary judgment case that turned on whether the employer's military leave policy and jury duty policy were "comparable" under section 4316(b)(1). *Id.* at *4. There, the CBA between the employer and the union representing the plaintiff stated that an employee who had worked for the company for at least one year would

receive the difference between his military pay and his regular pay for military service of two weeks or fewer, while the employer provided full pay for jury duty. *Id.* at *2. The question for the court was whether a company that *voluntarily* provided paid military leave could pay for military leave at a lesser rate than it paid for jury duty. *Id. Brill* did not even address, let alone resolve, the question of whether USERRA covers a military employee's putative right to the payment of wages when no such right had accrued under an employment contract or policy. *Brill*, 2012 WL 893902, at *2–4.

Plaintiff also finds no support in *Duffer v. United Continental Holdings, Inc*. 173 F. Supp. 3d 689 (N.D. Ill. 2016). That case involved a dispute over allocation of a $400 million arbitration award that resolved disputes between the pilots' union and United Airlines following its merger with Continental Airlines. *Id.* at 694. The court first explained that "USERRA does not require employers to pay service members their wages during military leave periods." *Id.* The court went on to recognize the distinction between "benefits" and "wages." *Id.* Ultimately, the court could not resolve on summary judgment whether certain payments were benefits or wages, because some evidence suggested the payments should be characterized as wages (i.e., defendants treated them as wages for tax purposes) while other evidence suggested the payments included a pension contribution component, making it a benefit under USERRA. *Id.* at 701–03 ("[T]here is a factual dispute whether the $400 million payment was intended in part to compensate Continental pilots for almost four years of low pension plan contribution rates.").[2]

Similarly, Plaintiff mischaracterizes the Ninth Circuit's opinion in *Huhmann v. Federal Express Corp*. *See* ECF 53 (Opp. at 15:18–20 (citing *Huhmann*, 874 F.3d 1102, 1112 (9th Cir.

---

[2] Plaintiff claims *Duffer* "held that 'earnings' are benefits protected by § 4316(b)," *see* ECF 53 (Opp. at 15:17–19), but this mischaracterizes the opinion. As explained above, the court did not even consider whether earnings are protected benefits under section 4316(b), much less did it reach a "holding" on this issue. *Id.* at 703–04. Rather, the court found there were triable issues about whether a portion of the $400 million covered only wages or also covered underfunded pension "benefits." It then explained that *if* the payments are benefits (i.e., if they are meant to cover underfunded pension contributions), then the "comparability" analysis under section 4316(b) would apply, and for that reason proceeded to analyze whether military leave was comparable to sick leave and jury duty. *Id.* at 703–04.

2017))). In *Huhmann,* the district court granted judgment in favor of the plaintiff after concluding that his employer discriminated against him by paying him a signing bonus that was less than it would have paid him but for his military service. *Huhmann*, 874 F.3d at 1109. The Ninth Circuit affirmed the judgment because section 4303(2) expressly covers "bonuses," and it was reasonably certain that the employer would have paid the plaintiff the higher bonus but for his military service. *Id.* Contrary to Plaintiff's assertion, *Huhmann* did not involve an issue of straight-time or overtime pay, and the Court certainly did not hold that such earnings are "benefits" under USERRA. *See* ECF 53 (Opp. at 15:18–20). Plaintiff cites a footnote in *Huhmann* that simply reiterates the rule that an employer cannot discriminate against a service member when it comes to benefits like bonuses, which are "explicitly" guaranteed by the statute. *Huhmann*, 874 F.3d at 1112 n.9; 38 U.S.C. § 4303(2) (including "bonuses" in list of accruable benefits protected by statute).

Finally, neither *Pucilowski v. Department of Justice*, 498 F.3d 1341 (Fed. Cir. 2007), nor *United States v. Missouri*, 67 F. Supp. 3d 1047 (W.D. Mo. 2014), supports Plaintiff's position. Both of these cases involved federal employees' statutory right to paid military leave under 5 U.S.C. § 6323(a)(1), and that statute expressly says the right to paid leave is a benefit that "accrues" based on prior service "at the rate of 15 days per fiscal year." *See* 5 U.S.C. § 6323(a)(1); *Pucilowski*, 498 F.3d at 1344; *Missouri*, 67 F. Supp. 3d at 1050.[3]

**B. The District Court in *White* Correctly Rejected Plaintiff's Novel Claim.**

As Southwest previously explained to the Court, when Plaintiff filed his original complaint in this action in January 2019, his counsel simultaneously filed three other putative class action lawsuits against major airlines based on the same novel interpretation of USERRA § 4316(b). *See* ECF 47 (CMC statement at 4-5) (describing the *White, Scanlan,* and *Clarkson* lawsuits). The court

[3] Plaintiff also claims that a leading USERRA treatise says section 4316(b) includes a "mandate to require paid military leave." *See* ECF 53 (Opp. at 16:7–9). But no such mandate exists. It is settled law that USERRA does not require a private employer to provide paid military leave. 20 C.F.R. § 1002.7(c)("USERRA does not require an employer to pay an employee for time away from work performing service."); *Duffer*, 173 F. Supp. 3d at 699. The treatise he cites specifically refers only to the "holiday pay" benefits at issue in *Waltermyer* and other "accrued paid time-off benefits" that are not at issue here. Kathryn Piscitelli, *et al.*, The USERRA Manual § 3:5 (2018).

in *White* granted United Airlines' motion to dismiss. The court in *Scanlan* denied American Airlines' motion to dismiss. The court in *Clarkson* denied Alaska/Horizon Airlines' motion to dismiss. *Id.* This Court should follow *White* and dismiss Plaintiff's claims because the district court in that case correctly concluded that Plaintiff's claim is not cognizable under USERRA.

In *White*, the court dismissed the plaintiff's claims because it "agree[d] with Defendants' textual analysis. It is contrary to the express language of [USERRA] to hold that a business is required to pay a reservist for time not worked." RJN, Ex. 1 (*White*, No. 1:19-cv-114, ECF No. 44 (Order dated July 10, 2019), at 4 ("In short, if businesses were to be required to pay for short-term military leaves of absence simply because they offer sick days or pay for jury duty, it is this Court's view that it is within Congress's discretion to make that decision, and it has not done so under the current language in Section 4316.")). Despite the court's ruling that Plaintiff's theory is contrary to the "express language" of USERRA, Plaintiff here boldly asserts that *White* failed to analyze the statute. ECF 53 (Opp. at 17:1–2). Plaintiff then complains that *White* did not address the legislative history of USERRA or the *Waltermyer* opinion. *Id.* But ignoring the legislative history is precisely what a court *must* do where, as here, the plain text of a statute is unambiguous. *See, e.g.*, *Los Angeles Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 802 (9th Cir. 2017) ("[W]e start, as we must, with the text of the statute. . . . Our inquiry will end there as well if the text of the statute is unambiguous.") (internal brackets and citations omitted); *see infra* § II.C.

Plaintiff encourages this Court to follow the Eastern District of Pennsylvania's decision in *Scanlan*. *See* ECF 53 (Opp. at 16:22–23). This Court should not do so because *Scanlan*'s statutory construction and analysis are erroneous. There, the court failed to appreciate the difference between an accrued benefit (e.g., holiday pay and severance pay) and the purported benefit of unaccrued wages for work not performed, explaining that it could "see no material difference between the allegations here and those in *Waltermyer*." *Scanlan v. Am. Airlines Grp., Inc.*, 384 F. Supp. 3d 520, 528 (E.D. Pa. 2019). But the material difference between Plaintiff's novel theory and *Waltermyer* is plain to see. As explained above, *Waltermyer* involved holiday pay, which was a benefit that accrued if the employee worked other days in the week of the holiday. *Waltermyer*, 804 F.2d at

822, 825 (work during a holiday week establishes "eligibility for holiday pay."); *see supra* § II.A. By contrast, Plaintiff's claim here involves no benefit at all. His claim is based on the purported "benefit" of wages for work not performed, but this purported right to wages does not arise under any benefit policy. Further, the court in *Waltermyer* expressly stated that it was "important" to note that the plaintiff was *not* pursuing the claim that Plaintiff asserts here (i.e., payment for work not performed). *See Waltermyer*, 804 F.2d at 825; *see also supra* § II.A.

The third case filed by Plaintiff's counsel, *Clarkson*, is not instructive because it addressed only the issue of whether military leave and the airline's other forms of leave are "comparable" under section 4316(b)(1), which the Court could not resolve on the pleadings alone. *See Clarkson v. Alaska Airlines, Inc.*, No. 2:19-CV-0005-TOR, 2019 WL 2503957, at *7 (E.D. Wash. June 17, 2019) ("Plaintiff's Complaint does not provide sufficient evidence for the Court to make a comparability determination on the wage issue at this time."). *Clarkson* did not address the pure question of law at issue here—namely, whether Plaintiff's claim is cognizable under USERRA. *See id.*

**C. Plaintiff's Construction of Section 4303(2) Is Incoherent.**

USERRA adopts the conventional distinction between benefits and wages, and it protects benefits that "accrue" over time. *See* 38 U.S.C. § 4303(2). Plaintiff's conflation of wages and benefits defies the conventional distinction between these two terms in the employment context. It also violates the canon against surplusage because USERRA repeatedly uses these terms disjunctively, which Congress would not have done if intended the term "benefits" to encompass wages. *See, e.g.*, 38 U.S.C. § 4323(d)(1)(B) ("wages or benefits"); 38 U.S.C. § 4324(c)(2) (same); *Corley*, 556 U.S. at 314. Plaintiff's conflation of wages and benefits also runs afoul of the canon that "a word is known by the company it keeps" because section 4303(2) defines "benefits" with reference to a list of conventional fringe benefits. *See* 38 U.S.C. 4303(2); *Poff*, 2019 WL 3064444,

at *1.[4] Further, even if the term "benefits" somehow encompasses wages, which it does not, section 4303(2) still would not cover Plaintiff's claims for work not performed. Indeed, the statute references only "wages or salary for work performed." *See* 38 U.S.C. § 4303(2). The statute does not cover the "polar opposite" concept of work not performed. *See id.*; 38 U.S.C. § 4303(2); *Jennings*, 138 S. Ct. at 846 (2018).[5] Thus, USERRA's plain text shows that Plaintiff's claim is not cognizable under the statute.

**1. <u>Plaintiff's construction of the term "accrual" leads to absurd results.</u>**

Plaintiff's principal argument is that he need not show that wages accrue under the meaning of the section 4303(2) because the term "accrues" purportedly "modifies or relates to only one of the clauses in § 4303(2)." ECF 53 (Opp. at 17:16–17). Plaintiff provides no explanation whatsoever for this assertion. *See id.* He can offer no plausible construction of section 4303(2) that supports his theory because the examples of accruable benefits in section 4303(2) are all conventional fringe benefits (i.e., health benefits, pension benefits, stock ownership benefits, and the like). *See* 38 U.S.C. § 4303(2).

Plaintiff also mischaracterizes Southwest's position, which results in a series of convoluted strawman arguments. *See* ECF 37 (Opp. at 17:1–18:19). For instance, he argues that Southwest's construction of the term "accrue" must be incorrect because a "health plan" is not a benefit that accrues. ECF 53 (Opp. at 17:26–27). But Plaintiff is engrafting his own nonsense onto the statute. The statute refers to the accrual of a benefit "under" a health plan; it does not refer to the accrual *of* a health plan. *See* 38 U.S.C. § 4303(2). Similarly, he suggests it would be "irrational" to assign the normal accrual-based meaning of "benefits" to section 4303(2) because some of the statute's

[4] Plaintiff tries to explain why Congress used the terms "wages" and "benefits" separately in other sections of USERRA. ECF 53 (22:3-17). But his argument is self-defeating because it underscores the fact that Congress appreciated the difference between wages and benefits. *See id.*

[5] Also, it is indisputable that the term "wages" in section 4303(2) refers to the protection of wage "rates," not the payment of wages. *See* ECF 52 (Mot. at 11–12 (explaining express congressional intent to abrogate the wage discrimination ruling in *Gagnon v. Sprint Corp.*, 284 F. 3d 839, 853 (8th Cir. 2002)).

enumerated benefits do not accrue (e.g., severance pay and vacation time). *See* ECF 53 (Opp. at 18:6-11). In reality, it is beyond dispute that an employee can accrue vacation time or severance pay—it happens all the time.

Plaintiff asserts the term "accrue" in section 4303(2) means "[t]o come into existence as an enforceable claim or right; to arise," rather than "to accumulate or be added periodically." *See* ECF 53 (Opp. at 18:20–25 (citing Black's Law Dictionary (11th ed. 2019) and *Scanlan*, 384 F. Supp. 3d at 527).[6] First, section 4303(2) plainly uses the term "accrue" in the conventional sense that it has in the employment context, given the list of fringe benefits that follow the term "accrue" in section 4303(2). *See* 38 U.S.C. § 4303(2). Second, even Plaintiff's preferred definition of "come into existence" reduces to the conventional definition in the employment context because the term "accrues" appears in the context of the fringe benefits identified in section 4303(2), and those fringe benefits come into existence periodically or by way of accumulation.[7] Third, it is revealing that Plaintiff is forced into absurd positions when trying to explain his construction. For instance, he resorts to describing a policy of paying for jury duty or sick leave as a "policy of paying an employee for not working," and he says the employee "gains the right to pay by not working for her employer." *See* ECF 53 (Opp. 19:4–10). This is total nonsense. An employer does not provide paid leave *because* the employee is not working. Rather, it pays for future leave because the

[6] Plaintiff also notes that Black's Law Dictionary (6th ed. 1990) defines "accrued compensation" as "compensation earned but not yet paid." ECF 53 (Opp. at 19:18–21). This definition does not help Plaintiff because Plaintiff's theory is that section 4303(2) somehow covers compensation that was not earned and did not accrue based on past service.

[7] It does not help Plaintiff's cause to cite authorities that use the term "accrued wages" (or some variant), when the context makes clear the authority is referring to wages that were earned for work performed, as opposed to the nonexistent concept of accrued wages for work not performed, which is at issue here. *See* ECF 53 (Opp. 20:21–21:17). For instance, *Su v. M/V S. Aster*, 978 F.2d 462, 472 (9th Cir. 1992) used the term "accrued wages" in reference to a seaman's rights under 46 U.S.C. § 10313(e), which applies to "wages earned and unpaid." Similarly, *Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 247 (1977) also involved earned wages.

employee has accrued the right to receive paid leave in the past.[8] By the same token, an employee does not gain the right to paid leave by not working. Rather, based on past service, the employee accrues the right to receive future pay for periods of leave.[9] All of Plaintiff's linguistic contortions flow from his incoherent position that "wages for work not performed" is a benefit. This further demonstrates why his position must be rejected.

Plaintiff tries to circumvent the canon that the same term should be interpreted consistently within the same statute. He suggests that the Court should ignore this canon because it is supposedly "reasonable to conclude Congress used the word 'accrue' in a slightly different way when referring to very different rights or benefits under USERRA." *See* ECF 53 (Opp. at 19:22–20:12). But Plaintiff provides no reason whatsoever for the Court to depart from "the normal rule . . . that identical words used in different parts of the same act are intended to have the same meaning." *C.I.R. v. Lundy*, 516 U.S. 235, 250 (1996). Plaintiff cites section 4316(d) as a purported example of USERRA's varied use of the term "accrue." *See* ECF 53 (Opp. at 20:13–20). But section 4316(d) simply says that an employer must permit an employee on military leave to use any "vacation, annual, or similar leave with pay accrued by the person before the commencement of such service." 38 U.S.C. § 4316(d). Nothing in this section suggests Congress used the term "accrue" in any way that differs from section 4303(2) (i.e., its ordinary meaning in the employment context).

---

[8] For this reason, Plaintiff finds no support in his observation that Southwest's website describes paid adoption leave as a benefit. *See* ECF 53 (Opp. at 11:11–13); *see also infra* at § II.D (Objections to Evidence).

[9] Accordingly, the *Scanlan* court erred in its conclusion that "the right to be paid for work not performed while on military leave comes into existence and thus accrues as an enforceable claim in the exact same way as the right to holiday pay, severance pay, or vacation pay, all for time periods when no work is performed." *See Scanlan*, 384 F. Supp. 3d at 527.

**2. Plaintiff's construction of the term "benefits" is inconsistent with the statute.**

According to Plaintiff, the term "benefits" or "rights and benefits" in section 4303(2) includes wages, pay, or paid leave. [10] ECF 53 (Opp. at 9:2–14). Plaintiff cites a statistic from the Bureau of Labor Statistics that says "wages or pay account for 68.7% of the total compensation (including fringe benefits) workers receive." *Id.* His point is that that section 4303(2) must include wages because wages are so valuable to an employee. But this argument is self-defeating. When drafting USERRA, Congress was well aware that wages are valuable to employees. It is inconceivable that Congress nevertheless would include 10 enumerated fringe benefits in section 4303(2) yet fail to include wages as a "benefit" if it intended the definition to cover wages. *See Whitman*, 531 U.S. at 468 (Congress does not "hide elephants in mouseholes."); RJN, Ex. 1 (*White*, No. 1:19-cv-114, ECF No. 44 (Order dated July 10, 2019), at 4 ("In short, if businesses were to be required to pay for short-term military leaves of absence simply because they offer sick days or pay for jury duty, it is this Court's view that it is within Congress's discretion to make that decision, and it has not done so under the current language in Section 4316.").

Plaintiff observes that section 4303(2) includes "severance pay, supplemental unemployment benefits, [and] vacations." He then argues that his claim is cognizable under USERRA because an employer pays these benefits out "when workers are not performing work." ECF 53 (Opp. at 9:15–21). Yet each of these examples is a traditional fringe benefit that accrues during employment. To defend his position, Plaintiff is again forced to take the absurd position that "[w]orkers who take paid 'vacations' are paid for not performing work." ECF 53 (Opp. at 9:19–20); *see also id.* at 10:4–9 (reiterating his position that workers "get [benefits] for not performing work"). When a company provides paid time off to an employee, however, it does so because an employee has accrued that benefit in the past, not because the employee is not working (i.e., "for

[10] USERRA expressly defines "rights and benefits" to mean the same thing as "benefits." 38 U.S.C. § 4303(2).

not performing work”). Thus, these enumerated benefits in section 4303(2) provide no support for Plaintiff’s position that the payment of wages for not working is *itself* a “benefit.”

Plaintiff tries to explain away Congress’s decision to exclude “wages” from section 4303(2) by noting that the definition contains a non-exhaustive list. ECF 53 (Opp. at 10:12–17 (*citing Scanlan*, 384 F. Supp. 23d at 526)). As Southwest explained in its opening brief, however, the guiding interpretive canon when faced with a list of examples is that “a word is known by the company it keeps.” *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995). A court applies this canon because the court should give the items in the list “the meaning that makes them similar.” *Poff*, 2019 WL 3064444, at *1; *Gustafson*, 513 U.S. at 574–75.[11] Because wages are different in kind from the various fringe benefits enumerated in section 4303(2), the proper conclusion is that wages are excluded. The *Scanlan* court erred in concluding otherwise. *See* 384 F. Supp. 23d at 526.

**3. <u>USERRA’s legislative history does not save Plaintiff’s fatally flawed theory.</u>**

Despite the fact that the text of USERRA unambiguously excludes his claim, Plaintiff invokes USERRA’s legislative history in an effort to find support for his meritless theory. ECF 53 (Opp. at 10:18–11:13). His recourse to legislative history fails for several reasons.

First, “legislative history is not the law.” *United States v. Town of Colorado City*, --- F.3d ---, No. 17-16472, 2019 WL 4008005, at *5 (9th Cir. Aug. 26, 2019) (quoting *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1631 (2018)). The text of a statute controls if a statute is unambiguous. *Los Angeles Lakers, Inc.*, 869 F.3d at 802 (9th Cir. 2017); RJN, Ex. 1 (*White*, No. 1:19-cv-114, ECF No. 44 (Order dated July 10, 2019), at 4 (dismissing plaintiff’s USERRA claim based on plain language of statute without recourse to legislative history)).

Second, Plaintiff asks the Court to conclude that wages are “benefits” under section 4303(2) by citing legislative history, despite the fact that these historical records do not say that wages are

[11] Plaintiff argues at length that the *exclusio unius* canon does not apply where a statute uses the word “including.” ECF 53 (Opp. at 13:24–14:16). This is a strawman argument because Southwest did not invoke this canon. Rather, the applicable canon is that “a word is known by the company it keeps.” *See Poff*, 2019 WL 3064444, at *1; *Gustafson*, 513 U.S. at 574–75.

benefits. This silence is significant because "[i]f the text is clear, it needs no repetition in the legislative history; and if the text is ambiguous, silence in the legislative history cannot lend any clarity." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495 n.13 (1995)).

Third, the House and Senate reports both differentiate between "wages" and "benefits." H.R. Rep. 103-165, at 38 (referring to "any loss of wages or benefits"); *id.* at 39 ("[T]he payment of back wages or lost benefits, by itself, does not constitute prejudice in the laches context."); S. Rep. 103-158, 38, 69, 88.

Fourth, Plaintiff argues that the 2010 amendments did not affect the viability of his claim because section 4303(2) has always covered work "not performed." *See* ECF 53 (Opp. at 12:12–15:5). Although it is true that the 2010 amendments do not address the claims at issue in this case,[12] it is telling that Congress amended section 4303(2) in 2010 and made no mention of protections for work *not performed*. More importantly, there is simply no merit to Plaintiff's assertion that section 4303(2) covers his claim. As explained above, it is inconceivable that Congress would have excluded wages from the enumerated list of "benefits" if it intended section 4303(2) to cover wages. *See supra* at § II.C.2. USERRA simply does not recognize Plaintiff's bizarre, made-for-litigation concept of "wages for work not performed" as an employment benefit. *See* 38 U.S.C. § 4303(2); *Jennings*, 138 S. Ct. 830, 846 (2018).

**D. Objections to Evidence**

Southwest objects to Exhibit Nos. 4, 7 and 8 attached to Plaintiff's Request for Judicial Notice (ECF 53-1). Exhibit 4 purports to be a page from Southwest's website. Exhibit 7 purports to be a page from a website operated by the "Military Times, Best for Vets: Employers 2019." Exhibit 8 purports to be a page from Lockheed Martin's website. Plaintiff cites not the fact of the existence

---

[12] As explained above, the purpose of the 2010 amendment was to abrogate the Eighth Circuit's opinion in *Gagnon*, a pay equity case, by clarifying that an employer cannot commit wage discrimination by paying an employee a lower wage rate due to his military service. *See* Joint Explanatory Statement for H.R. 3219, as amended, 156 Cong. Rec. S7656-02, 2010 WL 3767475 (Sept. 28, 2010).

of these webpages, but the contents of these webpages. The contents of these webpages are not the proper subject of judicial notice. *See* Fed. R. Evid. 201; *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.")

**III. CONCLUSION**

For the foregoing reasons, the Court should grant Southwest's motion for judgement on the pleadings and dismiss Plaintiff's complaint with prejudice because his claim is not cognizable under USERRA.

DATED: September 18, 2019

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Brian D. Berry*
DOUGLAS J. FARMER
BRIAN D. BERRY

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

40046915.1