**Pages 1 - 26**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Phyllis J. Hamilton, Judge

| | |
|---|---|
| JAYSON HUNTSMAN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, )<br><br>Plaintiff, )<br><br>VS. )<br><br>SOUTHWEST AIRLINES CO., )<br><br>Defendant. ) | **NO. CV 19-00083-PJH** |

Oakland, California
Wednesday, November 27, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:

      OUTTEN AND GOLDEN LLP
      601 Massachusets Avenue NW
      Suite 200W
      Washington, DC  20001
      **BY:  PETER ROMER-FRIEDMAN, ESQUIRE**

      THOMAS G. JARRARD
      1020 North Washington Street
      Spokane, WA  99203
      **BY:  THOMAS G. JARRARD, ESQUIRE**

For Defendant:

      OGLETREE, DEAKINS, NASH, SMOAK &
      STEWART, P.C.
      One Market Plaza - Suite 1300
      San Francisco, CA  94105
      **BY:  BRIAN D. BERRY, ESQUIRE**

Reported By:    Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                Official Reporter

| | |
|---|---|
| 1 | **Wednesday - November 27, 2019**                              **9:22 a.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | **---oOo---** |
| 4 | **THE CLERK:**  Calling Civil Matter 19-0083-PJH, Huntsman |
| 5 | vs. Southwest Airlines Company. |
| 6 | Counsel, please step forward and state your appearances. |
| 7 | **THE COURT:**  All right.  Appearances. |
| 8 | **MR. JARRARD:**  Thomas Jarrard on behalf of Jayson |
| 9 | Huntsman, Your Honor. |
| 10 | **THE COURT:**  All right.  Good morning. |
| 11 | **MR. ROMER-FRIEDMAN:**  Good morning, Your Honor.  Peter |
| 12 | Romer-Friedman for the plaintiff as well. |
| 13 | **THE COURT:**  Good morning. |
| 14 | **MR. BERRY:**  Good morning, Your Honor.  Brian Berry on |
| 15 | behalf of defendant, Southwest Airlines. |
| 16 | **THE COURT:**  All right.  Good morning. |
| 17 | This matter is on for a hearing on the defendant's motion |
| 18 | for judgment on the pleadings. |
| 19 | I reviewed the papers.  Was there something in addition |
| 20 | that you wished to add or emphasize, counsel? |
| 21 | **MR. BERRY:**  No, nothing to add, Your Honor.  Just by |
| 22 | way of emphasis, as you know, before the Court is our motion |
| 23 | for judgment on the pleadings that relates to a statutory |
| 24 | interpretation of certain provisions of USERRA. |
| 25 | It's the defendant's view that this is a |

straightforward -- a straightforward textual analysis resolves the question before the Court, and we've put in a number of different rationales based on statutory canons to reach that conclusion.

One is that Section 4303(2) -- 4303(2) -- which is the definition of "rights and benefits," nowhere mentions wages or salaries except in one parenthetical, and where it does mention it, it specifically says "wages or salary for work performed." And plaintiff's Complaint is not seeking wages or salary for work performed.  It's seeking wages or salary for work not performed while Mr. Huntsman was on military leave.

Secondly, Section 4303(2), the same definition.  When it defines the rights and benefits that are protected under USERRA, it does so with reference to conventional benefits such as severance pay, insurance, stock benefits.  We've cited the Ninth Circuit case in *Poff*, which is a recent criminal case, that addresses statutory interpretation when you have the term "including" followed by a list of terms.  And what the Ninth Circuit explained is that the interpretive canon requires the Court to interpret that series such that it's a genus and that there is a family resemblance.

And here the ten different itemized -- the ten different items in the statutory definition are conventional benefits. It does not include salary or pay.

THE COURT:  Well, I find it really interesting that in

1　this list that you are relying upon is something called

2　"vacation."  How is vacation a benefit of employment but

3　military leave is not?

4　　　　**MR. BERRY:**  So vacation -- the *Waltermyer* case -- and

5　I think we're going to have an opportunity to discuss that

6　today -- I think is very similar to this.  It's an issue of

7　holiday pay, but holiday pay, like vacation pay, can accrue

8　over time.  You work a certain number -- you work six months,

9　you work eight months, whatever the case may be, and you become

10　entitled to vacation or military -- I'm sorry -- vacation or

11　holiday pay.

12　　　　But critically in this case, Mr. Huntsman is not trying to

13　recover under holiday pay or a vacation-pay policy.  He says

14　that military leave is similar to bereavement leave and is

15　similar to jury leave, but he's not trying to -- he's not

16　saying that because of his military service, he was denied the

17　benefits of military -- sorry -- of bereavement leave or denied

18　the benefits of jury pay.

19　　　　If you look at the *Waltermyer* case, that was a case where

20　the plaintiff said, "I'm being denied my accrued rights for

21　holiday pay, whereas other employees who had involuntary leaves

22　are not denied that right."  So the right that accrued is under

23　a separate policy.

24　　　　Here there is no policy.  Southwest does not have a policy

25　that -- they're not saying that Southwest has failed to pay

1    them for periods -- while they were on military leave for

2    periods of bereavement leave or jury duty.  They're saying that

3    because jury duty and bereavement leave provide for some pay,

4    therefore Southwest must pay for military leave, but that's

5    nowhere to be found in *Waltermyer*.

6              **THE COURT:**  Okay.  Is that it?

7              **MR. BERRY:**  No, Your Honor.

8        To press on, Section 4303(2) also defines the items in

9    terms of -- in terms of benefits that accrue, again, which is a

10   term of art.  Pay does not accrue over time.  The right to pay

11   for work not performed is not an accruable -- recognized

12   accruable benefit.

13       And other parts of --

14             **THE COURT:**  But all of the benefits listed in that

15   section that you just referred to aren't necessarily those that

16   accrue over time.  Location of employment?  The ability to

17   select the hours you wish to work or the location of your

18   employment -- of employment is considered a benefit.  That

19   doesn't accrue.

20             **MR. BERRY:**  It --

21             **THE COURT:**  That's likely to be available to an

22   employee on the first day.

23             **MR. BERRY:**  But they accrue by virtue of working.  You

24   accrue them under a separate policy.

25       So here what we're talking about is pay, salary for work

1    not performed.  That is something that cannot accrue.

2        The plaintiff is not seeking -- like in *Waltermyer*, the

3    plaintiff is not seeking recovery under a separate policy

4    saying that the but-for cause of why he didn't -- didn't

5    receive his pay was because he was on military leave.  And the

6    but-for cause is if he would have been at work, he would have

7    received holiday pay.  If he would have been at work, he would

8    received jury duty pay.  If he would have been at work, he

9    would have received bereavement duty pay.

10        That's not the argument here, and that is what is at issue

11    in *Waltermyer*.  And, in fact, the court in *Waltermyer*

12    specifically said that it is not concluding that the defendant

13    is responsible for paying days outside of holiday pay.  And

14    that is what got codified into USERRA, including that

15    exclusion.

16        I think what's telling is that when plaintiff says that

17    *Waltermyer* is the key to this case, the key to understanding

18    4316 -- and this is a statement of opposition, page 7, line 21.

19    Plaintiff says, "Understanding *Waltermyer* is critical to

20    understanding Section 4316(b)."  The citation in that paragraph

21    is to the dissenting opinion, and the dissenting opinion is

22    saying, of course, that the majority -- that the opinion of the

23    court got it wrong, and the opinion of the court disagrees with

24    this dissenting opinion's analysis.

25        So the codification of *Waltermyer* was not the codification

of a dissenting opinion that was attacking the opinion of the court, which is how the analysis flows in plaintiff's -- in plaintiff's brief.

**THE COURT:**  Okay.  Thank you.

Response?

**MR. ROMER-FRIEDMAN:**  Thank you, Your Honor.  I will try to address Mr. Berry's point briefly.

As a general matter, I would emphasize that it's interesting that the defendants start -- they essentially try to cherry-pick small little words like "accrue" and the kind of title of the term of art, 4303(2), without looking at the overall context of the language or all of the words in the relevant statutory provisions.

So I think we agree that the question here is whether there is a limited equality principle in USERRA; that is, if you give any rights and benefits to people who are not working and who are not on military leave, that the -- what rights and benefits do you have to give to people on military leave.

4303(2), I think we agree, is the definition of the term "rights and benefits" and -- or "benefit" as well, as it's used in the statute, and that is the statutory definition that the Court has to apply here.

And we have -- when you are thinking about interpreting USERRA in general, of course ordinary canons apply to interpreting USERRA of statutory interpretation, but we also

1   have this 80-year history of construing it broadly, liberally

2   in favor of the service member, and so that means trying to

3   construe all of the parts together as broadly as possible.

4         So when we are looking at 4303(2), you start with the

5   language.  And this is, perhaps -- as I think Judge Bartle

6   noted in the American Airlines case -- this is potentially one

7   of the most broad, expansive definitions that Congress could

8   come up with about what are rights and benefits.

9         The Federal Circuit said that in the *Pucilowski* case, that

10  it was an expansive definition.  Several other courts have

11  observed, when they have looked at 4303(2), the same.  The word

12  "including" is used three or four times in 4303(2).  There is

13  no exclusion there, and it states generally terms -- "rights

14  and benefits are any terms, conditions, or privilege of

15  employment, including any advantage, profit, gain."  Without

16  exception. Right?

17        So these -- it's hard to think of anything, whether you're

18  looking at -- you know, we think generically, full stop,

19  getting paid for not working, paid leave, is a benefit that

20  anyone would think.  You know, when your law clerks sign up to

21  work for the year, they understand from day one how many days

22  of paid leave they'll get.  You know, they can -- they view

23  that as one of the benefits or certainly a right or a benefit

24  of working for you or any other employer in America.

25        And that's essentially what Judge Bartle observed, which

1   is if you're getting paid not to work, whether it's holiday pay

2   or jury duty or bereavement leave, it's a benefit of

3   employment.

4       And so I think, you know, when we start to get down into

5   the weeds of what the parenthetical means, we certainly have, I

6   think, a very straightforward answer for what that means, but I

7   think it really is the defendant's obligation or burden here to

8   demonstrate that all of these lists, all of these dozens of

9   illustrations of rights and benefits that somehow excludes paid

10  leave -- and as you noted, Your Honor, vacation, things like

11  severance, these are things that you get for not working, and a

12  lot of the -- you know, we certainly disagree with what the

13  word "accrue" means, how broadly or narrowly to understand it,

14  but, yeah, where you're going to work, the location, the hours

15  of work, these are things you get on day one.  They just come

16  from -- they exist from the employment relationship.  The same

17  way that I think the Third Circuit noted in *Waltermyer*, the

18  holiday pay just comes from being a worker, like so many other

19  things that we get.  So --

20       **THE COURT:**  It's only the extent of it that changes

21  with length of service.

22       **MR. ROMER-FRIEDMAN:**  Correct.  And, frankly, you know,

23  there are employees that might say, including the federal

24  government, you get X number of days of paid military leave or

25  paid vacation in the fiscal year or in the calendar year, and

then there are some -- some employers might say you accrue or
you get one or two days per month of vacation, but there is no
indication in this -- in the provision that it's somehow
limited to one type of vacation pay or one type of severance
pay.  If you get fired from your job, they might give you
severance pay to waive all of your claims, and it may have
nothing to do with how many years or months you've worked at
the company.

So I think what the defendants are arguing here is that --
what defendant is arguing is -- I think if you look at the
*United Airlines* opinion where Judge Norgle, in a cursory way,
rejected the claims of our other clients, the same claim.

They're essentially looking for a -- to impose a clear
statement rule in interpreting USERRA.  In other words, they
say well, if you -- if Congress wanted to impose a big mandate
for paid military leave, it would have said so clearly and
unmistakably.  Right?  And there are certain instances in which
the courts apply that kind of a clear statement rule, but if
you look at the Ninth Circuit's and the Supreme Court's
jurisprudence and the House and the Senate's report recodifying
USERRA in 1994, they made clear that the most liberal
interpretation for each word and the words in the different
provisions of USERRA needs to be applied, and so I think, you
know, to me the burden here is on the defendants to show that
it's -- that there is -- that there is clearly not a right

1    here.  And if you -- because any ambiguity under the *Brown* case

2    in the Supreme Court -- any ambiguity goes to the plaintiff.

3    It's not just a tiebreaker.  It's any plausible interpretation

4    that we advance should be adopted by the Court.

5        And I think it's very notable that the defendant here does

6    not even discuss at all the legislative history.  There is rich

7    legislative history, not just in general in USERRA, but on

8    these provisions.  If you look at the House Report at page 21,

9    the House says that all -- that 4303(2) is intended to cover

10   all attributes of the employment relationship.  What are some

11   of the most key attributes of the employment relationship?

12   Getting paid, getting vacation.  These are the key things that

13   people ask about, inquire about, when they're going to take a

14   job.  It's not somehow that the health plan or that only things

15   that they view as conventional fringe benefits are the -- are

16   kind of viewed as rights and benefits.

17       You know, in addition, if you look at, you know -- I think

18   Mr. Berry makes, I think -- I'm not sure that I saw it in the

19   brief, but I think it's an interesting argument he makes about

20   *Waltermyer*.  At its core, *Waltermyer* adopts the principle that

21   was consistent -- at least the Third Circuit saw was consistent

22   with the Supreme Court's prior decision in *Monroe*, and that is

23   equality is the test.  Right?  That if anyone goes on leave for

24   non-military reasons, a leave that could be viewed as

25   comparable to the military leave, they have to get the same

benefits, not more.  I think the courts have been very clear.

USERRA is not a veteran's preference or a service member's preference statute, but they have to have full equality.  And what does full equality mean?  It means if you accrue a vacation when you're on jury duty or if you get paid, you know, pay for that day, you should get paid on military leave.

It's also, I think -- if you look at the case law in -- even starting about ten years after -- actually about nine years after USERRA in the Federal Circuit's case in *Butterbaugh* that was reaffirmed in *Pucilowski*, military leave and paid military leave has been uniformly considered to be a right or benefit under 4303(2), just like vacation.  So the notion that getting paid for not working is not a right or benefit is just contrary to what in the *United States vs. Missouri* case they said was well-settled law.

And we maybe didn't make this explicit, Your Honor, but the United States -- the DOJ that enforces the USERRA law on behalf of service members in conjunction with the Department of Labor in the *United States vs. Missouri* case advanced our position, which is that paid leave -- paid military leave is a right or benefit under 4303(2).  So I think here, you know, we're very much consistent with what has been a bipartisan approach by Congress and the enforcement agencies.

I think the parenthetical -- I don't know if you're interested in the parenthetical point, but I think the *Poff*

case that Mr. Berry referenced, that's an unpublished Ninth
Circuit opinion, and if you look at Supreme Court and other
Ninth Circuit cases -- and we've cited some -- if you look at
the statute 4303(2) as it is today, using the word "include"
with several illustrations is not intended to exclude others.
You don't apply the *expressio unius* in that instance.

And, in fact, if that were the rule, a generic matter, it
can't be the rule here where Congress said -- I think it's page
34 or -- 34 of the House Report.  We cite it in the brief.
Congress said this -- I'm sorry.  It was page 21.

It said that 4303(2) -- the illustrations are meant to be
just that, illustrations, not exhaustive.  Right?  So we would
be completely ignoring the explicit will and stated will of
Congress on that point if we went there.

And so the current version I don't think could be read to
say that by including wages for work performed that you
necessarily exclude wages for work not performed.  But I think
more important than the current version, you have to go back to
the genesis of the law, 1994, and see that the parenthetical
originally excluded only wages for work performed.  It did not
exclude wages for work not performed.

And to the extent that we look at paid leave as wages for
work not performed, I think it was -- you know, there you could
apply the *expressio unius* -- in fact, you have to under
controlling law.  If you have an exception, if you have a list

1    of exceptions, the Ninth Circuit has said repeatedly and other

2    courts of appeal have said repeatedly that to have three

3    exceptions or four exceptions necessarily means that other

4    exceptions cannot be implied.  Right?  So if you exclude the

5    trucking industry but you don't -- by, you know -- explicitly

6    exclude the garment industry, the garment industry doesn't get

7    an exclusion.

8         And so the only thing that they can argue is somehow that

9    this -- the -- that -- the transforming of the exception for

10   wages for work not performed into including wages for -- I'm

11   sorry.  The exception for wages -- previously the exception for

12   work performed was changed to including wages for work

13   performed.  The only thing that they can argue is that somehow

14   Congress, by getting more specific about what it wanted to

15   include -- right -- essentially getting paid for performing

16   work -- that it intended to kind of eliminate rights that

17   existed before.  And the legislative history is clear.  You

18   know, Congress was not trying to constrict the law.  It was

19   trying to expand it.  If you look at every time 4303(2) has

20   been amended since 1994, it has been an expansion.  And while

21   it may not be an implicit repeal, like under *Morton vs.*

22   *Mancari*, it's pretty similar to that.  To understand the 2010

23   amendment to this parenthetical, to -- even though Congress

24   said it was an expansion, they view it as essentially taking

25   away rights.

1    And so I think at the end of the day, you know, we can't,

2    in a statute that's so -- in a provision that is so broad, we

3    can't assume that Congress wanted to take away rights that

4    existed.

5    And it's completely consistent, Your Honor, with the

6    equality principle.  Right?  If you look at 4316(b), the

7    provision that requires the same rights and benefits to be

8    given to service members on military leave and others on

9    non-military leave, they didn't just say, "We're codifying

10   Waltermyer."  They adopted express language for the first time

11   under this law that used the term "rights and benefits" and

12   created this new broad definition in 4303(2).

13   I think if Congress meant to drive such a big hole through

14   the statute and create inequality in pay, they would have said

15   something as opposed to what they did do, which is said, "We

16   apply the equality rule of *Waltermyer*."

17   And I think -- on the dissent point that Mr. Berry makes,

18   I think he misconstrues what we're saying about the dissent.

19   Right?  So in *Waltermyer*, the court says, "We're applying this

20   equality rule to holiday pay.  You have to give the same

21   holiday pay to people on jury duty and military duty."  And

22   then what the dissent says is if you're really -- and so the

23   majority then says, "We're not addressing kind of ordinary paid

24   leave for all the days you're out because the plaintiff didn't

25   raise that issue."  They reserved the question because it

wasn't raised.  The dissent then says, "Look, if you're serious, majority, about this equality principle, you would have to extend it from the -- from holiday pay to -- to kind of all rights and benefits."

And so we're not saying that Congress explicitly was citing or codifying the dissent's version, but there are lots of times when a dissenting judge is not -- may disagree with the holding but is trying to say what she or he believes the majority's holding to mean.

I think it's not clear exactly what *Waltermyer* said, but Judge Bartle, who is sitting under the Third Circuit in Philadelphia, believed that there's not a meaningful way to distinguish those two things.

Let me make sure I covered his points.

I think -- yeah.  I think the accrual point that Mr. Berry makes I think is answered by -- I think your question was the right one, which is a lot of these things that are in 4303(2) have nothing to do with the idea of accrual in general, and there are three clauses.  Accrual only appears in the second clause.  But even so, you have to either apply the -- even if accrual is required, you have to apply either the first definition of "accrual," which is to come into existence by virtue of the employment or the -- you know, the practice, or, you know -- and I think that's obviously satisfied because wages, paid leave, they all come into existence by virtue of

the employment relationship.  And then even the more specific

definition, which we think is wrong and Judge Bartle rejected

in the *American Airlines* case, accumulate over time is

something that you certainly -- you know, you get because you

worked there over time and you get the benefit, including, you

know, the context of things like vacation pay, jury duty pay.

You get it because you have worked there for some period of

time.

And I just think we don't even have to really get to the

parenthetical because the Court could easily construe all of

these illustrations to mean that paid leave is a benefit.  And

that's what we're talking about.

There is nothing in the cases that they've cited that make

this point that Mr. Berry makes about *Waltermyer*, that the

employer has to give a particular right to the military service

member for it to be a right or benefit.  In fact, if you did

that, the employer could always just say, "We don't give any

rights or benefits to the service member," and it would

complete -- completely defeat the purpose of the equality rule.

And, you know, at the end of the day, Your Honor, I think

we're left with this clear statement rule that they're trying

to propose versus the liberal canon that Congress codified --

recodified and that the Supreme Court has repeatedly applied,

and to do that, I don't think you can simply just say well,

there hadn't been a recognized prior right for people to get

1  paid all the time under USERRA.  You have to understand *Monroe*

2  as what it was, which was a decision where the Supreme Court

3  said we're not going to give -- we're not going to give

4  everyone the same benefits because they're on military leave as

5  people who are working.  Right?

6      *Waltermyer* clarifies that paradigm and says equality for

7  those on military leave and those on comparable non-military

8  leave, that's the rule.  And if you look at, I think, the --

9  other courts have done this.  In the *Brill vs. AK Steel* in Ohio

10  District Court, the court basically said salary or wages is a

11  benefit, and if you're giving -- if jury duty is comparable to

12  military duty, which we have accepted for the purposes of this

13  motion -- they've conceded or at least they haven't objected to

14  that but raise that -- then the salary or the wages are the

15  benefit that the service member is entitled to.

16      So the idea that we've made this up out of whole cloth is

17  just simply not the case.  And two out of the three district

18  court judges who have looked at this question in this year in

19  light of all this history have said that my clients are right

20  and that service members have a right to full equality when it

21  comes to short-term military leave.  This is a limit

22  obligation.  I think it's ultimately -- I don't think we can

23  assume that Congress would create a big exception without

24  saying so simply because there might be some effect on

25  employers that hire a lot of military service members.

1    We didn't cite the language in our brief, but the *Imel*,

2    I-M-E-L, case in the Ninth Circuit in 1990 said that you can't

3    look at the financial cost on the employer when you're talking

4    about a service member's right under the statute.  You just

5    have to apply the text.  And as Judge Bartle pointed out in

6    *American Airlines*, he felt that the text was unambiguous in

7    favor of the service member.  If it's not, we certainly think

8    the Court is compelled by *Fishgold* and its progeny to rule in

9    favor of my client here in the putative class.

10    If we're wrong -- if we are somehow wrong about Congress's

11    intent -- you know, I'm not sure we could go back and find

12    exactly what it was -- Congress can fix the law.  Right?

13    That's the whole point of the *Fishgold* canon, is when Congress

14    wasn't clear enough, you rule in favor of the service member.

15    This is a statute.  It's not the Constitution.  They can go

16    back and fix it.

17         **THE COURT:**  All right.  Thank you.

18    Briefly, response.

19         **MR. BERRY:**  Thank you, Your Honor.

20    I think that Mr. Romer-Friedman's starting point is the

21    equality principle from *Waltermyer*, and I think the discussion

22    that he has about the equality principle fundamentally

23    misunderstands *Waltermyer* and fundamentally misunderstands

24    4303(2).

25    What *Waltermyer* says is that when -- if there is a benefit

1    policy in place, then when individuals are on military leave or

2    on other forms of leave, they need to be treated equally with

3    respect to that leave policy.  In that case, it's a holiday

4    policy, a holiday-pay policy.

5         What *Waltermyer* doesn't say is that any time an employer

6    provides paid leave for any form of comparable leave, it must

7    therefore provide paid leave for military pay.  It's not in

8    *Waltermyer*.

9         So what's happening with this new round of cases, this one

10   and the ones that he and his clients have filed in other

11   district courts, is an attempt to expand the equality principle

12   as it's stated in *Waltermyer* to not just cover specific

13   benefits policy but to essentially say that any time an

14   employer offers -- offers paid leave for any form of -- for any

15   form of, quote/unquote, comparable leave, it therefore must do

16   it for military leave.  That is a novel theory that is not in

17   *Waltermyer* and it's not in the case -- in the subsequent cases

18   that he cited.

19        Mr. Romer-Friedman talks a lot about the legislative

20   history.  I think we all agree that you don't get to

21   legislative history when a text is unambiguous, and here the

22   text of the statute is unambiguous.

23        And it is important, although Mr. Romer-Friedman says that

24   we're cherry-picking words in the statute -- it's part of our

25   obligation and the Court's obligation in understanding a

statute to look carefully at its language.  And it's
inconceivable that a statute that specifically says that an
employer does not need to provide paid military leave would go
on to have -- to create a -- the 4316 portion, this
comparability portion, and never mention the word "pay" or
"wages."  It's just -- as we've explained in the papers, that
is -- even Mr. Romer-Friedman I think put some evidence into
the -- into the record by way of judicial notice that pay and
wages are something like 67, 70 percent of all of the
remuneration that employees may expect.

In light of that, it's inconceivable that Congress would
say, "You employers have no obligation to pay for military
leave, but in certain instances, you need to not discriminate
against employees when they are -- when they receive certain
benefits if you're providing those benefits for other forms of
leave," and then among that forgot to say, "Oh, and by the way,
one of those is paying these folks while they're on military
leave."  So it's just not plausible that Congress would do
that.

In any event, we don't get to the legislative history
because the text itself is quite clear.  There is no mention of
pay, there is no mention of wages, other than the parenthetical
which addresses payment for work performed.  It does not
address payment for work not performed.

This was -- if Your Honor takes a look at the *White*

1    opinion, this is the Eastern District of Illinois case with

2    United Airlines, and this is one of the three cases to date

3    that went in the defendant's -- defendant's way.

4        The district judge there, Judge Norgle, relies exclusively

5    on that.  He said, "Let's look at the Texas statute and if the

6    Texas statute is clear, we don't need to go any further."  And

7    this is a statute that does not require paid -- employers to

8    pay for military leave.  And 4316 itself only mentions wages

9    and salary once, and it does so in the context of saying "work

10   performed."  Therefore, the -- the face of the statute itself

11   does -- excludes their claim.

12       And all of the policy protections that plaintiffs talk

13   about are, you know, three, four levels down on the

14   interpretive scale that the Court goes through in terms of

15   construing a statute, and we never get there.  The Court can't

16   use, you know, language from the legislative history saying

17   that service members need to be protected and that the statute

18   should be interpreted broadly to rewrite the statute, and this

19   is, you know, basic -- basic statutory construction.  And we

20   never get to the point of resolving an ambiguity in the statute

21   because the face of the statute makes clear that plaintiff's

22   claims are not cognizable.

23       And I would, you know, encourage the Court to look

24   carefully at *Waltermyer* and the difference between the equality

25   principle as it is applied to a specific benefit like holiday

pay.  And the court is saying, "Here is a policy that provides for holiday pay.  Are military folks and other folks who are taking leave treated equally with respect to that policy?"  That's the question, and that's what 4316 covers.

That is not what plaintiffs are arguing here.  They are saying that the equality principle is something entirely different.  That if you ever provide paid leave for any kind of comparable -- for any kind of comparable leave to military, you therefore must pay for military leave.  That is not in *Waltermyer*.

And to date, the -- USERRA has been around for 25 years, as Mr. Romer-Friedman mentions.  There are precursor statutes that are around for many, many years before that, a Vietnam era one, a World War II era one.  And these are all brand new claims.  Congress had no idea, if this is what Mr. Romer-Friedman is saying, that in 1994 or in subsequent amendments that it -- that what plaintiff is saying could be true.  That it is -- that there is a requirement under USERRA for employers to pay all -- for all short-term military leave simply because they may pay for bereavement leave or jury duty.  It's not in the statute and it's not in the history.  It's not in the precursor statutes either.

One thing that bears mentioning as well is that Congress amended the statute several times, and it did so in 2010 with its eyes expressly focused on this parenthetical that says

1    "work performed."  And with an eye to that specific

2    parenthetical, it did not go on to say "or work not performed"

3    or limit it just to say, you know, "all wages" or anything else

4    it could have done if it wanted to expand 4316 to include work

5    not performed.

6         And it's telling that in 1994 when it codified *Waltermyer*

7    that it didn't expand 4316.  It never mentioned pay or wages

8    except by way of pay or wages for work performed.  And then in

9    subsequent amendments, it never expanded it either.  These are

10   all brand new claims, and I think, Your Honor, Judge White got

11   it right in the -- in the *United* case.  I would encourage

12   Your Honor to look at the reasoning there.  It's pure textual

13   analysis.  It doesn't get into the legislative history.

14        **THE COURT:**  All right.

15        I have listened to these same arguments on multiple

16   occasions:  At the last motion hearing; at the case management

17   conference.  You're going round and round.  Fundamentally you

18   disagree, obviously, on the statutory interpretation of USERRA,

19   and so it's up to me to determine which interpretation that you

20   all proffer I agree with.

21        Having looked at this again for the third time very

22   closely, for me, I cannot accept your argument because your

23   argument is based upon the notion that if the policy that the

24   employer has gives paid leaves of absence, if it -- in and of

25   itself, it's a policy that does not amount to a benefit, even

1    if it does afford paid leaves of absence.  That is not in and

2    of itself a benefit.

3        I can't accept that on the basis of my interpretation of

4    4303(2).  It is a benefit, in my view.

5        And I don't -- I don't view the plaintiff's argument at

6    all as advancing the notion that -- of some general right to

7    payment of wages during a military leave.  What they're arguing

8    is that there's a general policy -- if there's a general policy

9    of an employer to pay for leaves that are comparable to

10   military leave, then military -- short-term military leave must

11   be compensated.  I think that's the more reasonable

12   interpretation.  Whether or not it's correct or not, the Ninth

13   Circuit ultimately will weigh in on this, but I'm not persuaded

14   by your arguments at all.

15       I think it's actually fairly simple.  There is a factual

16   issue, of course, as to whether or not the leaves are

17   comparable, and that's for the trier of fact.  I'm not even

18   sure that's something that can be resolved on summary judgment.

19   That's for the trier of fact as to whether or not they are

20   comparable.

21       But I totally reject your argument, counsel, having heard

22   it now three times.

23       All right.  I'm ruling in favor of the plaintiff on this

24   case, which means your motion for judgment on the pleadings is

25   denied.  We are going to go forward and litigate this case.

1          **MR. JARRARD:**  Thank you, Your Honor.

2          **THE COURT:**  See you next time, and Happy Thanksgiving.

3          **MR. JARRARD:**  You, too.

4          **MR. BERRY:**  Thank you, Your Honor.

5               (Proceedings adjourned at 9:58 a.m.)

1

2

3                       CERTIFICATE OF REPORTER

4           I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:    Thursday, December 12, 2019

8

9     *Pamela Batalo Hebel*

10    _____
      Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
      U.S. Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25