Michael Scimone (*pro hac vice*)
mscimone@outtengolden.com
Michael Christopher Danna (*pro hac vice*)
mdanna@outtengolden.com
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060

R. Joseph Barton (CA Bar No. 212340)
jbarton@blockesq.com
BLOCK & LEVITON LLP
1735 20th Street NW
Washington, DC 20009
Telephone: (202) 734-7046
Facsimile: (617) 507-6020

*Attorneys for Plaintiff and the Proposed Class*
*(Additional Counsel on Following Page)*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| JAYSON HUNTSMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>Defendant. | Case No. 4:19-cv-00083-PJH<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Hearing Date:  January 27, 2021<br>Hearing Time:  9:00 a.m.<br>Courtroom:  3 |

Vincent Cheng (CA Bar No. 230827)
vincent@blockesq.com
BLOCK & LEVITON LLP
610 16th Street, Suites 214-216
Oakland, CA 94612
Telephone: (415) 968-8999
Facsimile: (617) 507-6020

Matthew Z. Crotty (*pro hac vice*)
matt@crottyandson.com
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave., Suite 409
Spokane, WA 99201
Telephone: (509) 850-7011

Peter Romer-Friedman (*pro hac vice*)
peter@guptawessler.com
GUPTA WESSLER
1900 L Street NW, Ste 312
Washington, DC 20036
Telephone: (202) 888-1741

Thomas G. Jarrard (*pro hac vice*)
LAW OFFICE OF THOMAS JARRARD PLLC
1020 N. Washington Dr.
Spokane, WA 99201
Telephone: (425) 239-7290

*Attorneys for Plaintiff and the Proposed Class*

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Wednesday, January 27, 2021, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of this Court, located at 1301 Clay Street, Oakland, CA 94612, Plaintiff Jayson Huntsman, individually and on behalf of all others similarly situated ("Plaintiff"), will and hereby does move this Court for the following relief with respect to his Motion for Class Certification:

1.      Certification of the following Class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3):  current or former employees of Southwest Airlines Co. who, during their employment with Southwest at any time from October 10, 2004 through the date of judgment in this action, have taken short-term military leave from their employment with Southwest (*i.e.*, military leave that lasted 14 days or fewer) and were subject to a collective bargaining agreement, except for employees subject to the agreement between Southwest and Transport Workers Union Local 550 covering meteorologists;

2.      Appointment of Plaintiff Jayson Huntsman as Representative of the Class;

3.      Appointment of Plaintiff's counsel Michael J. Scimone of Outten & Golden LLP and R. Joseph Barton of Block & Leviton LLP as Co-Lead Class Counsel and Plaintiff's other counsel as additional Class Counsel.

In support of this Motion, Plaintiff submits the attached Memorandum of Points and Authorities in Support of Motion for Class Certification, the Declaration of Michael J. Scimone and the exhibits attached thereto, and the Declarations of R. Joseph Barton, Peter Romer-Friedman, Thomas G. Jarrard, and Matthew Z. Crotty.

A Proposed Order is attached to this Notice of Motion and Motion.

Dated:   October 21, 2020
         New York, NY

Respectfully submitted,

 */s/ Michael J. Scimone*
Michael J. Scimone*
Michael C. Danna*
OUTTEN & GOLDEN LLP
685 Third Ave., 25th Floor
New York, NY 10017
Tel: (212) 245-1000
Email: mscimone@outtengolden.com

Email: mdanna@outtengolden.com

R. Joseph Barton (CA Bar No. 212340)
BLOCK & LEVITON LLP
1735 20th Street NW
Washington, DC 20009
Tel: (202) 734-7046
Email: joe@blockesq.com

Vincent Cheng (CA Bar No. 230827)
BLOCK & LEVITON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415) 968-8999
Email: vincent@blockesq.com

Peter Romer-Friedman*
GUPTA WESSLER PLLC
1900 L St. NW, Suite 312
Washington, DC 20036
Tel: (202) 888-1741
Email: peter@guptawessler.com

Matthew Z. Crotty*
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave., Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
Email:matt@crottyandson.com

Thomas G. Jarrard*
LAW OFFICE OF THOMAS G.
JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Fax: (509) 326-2932
Email: Tjarrard@att.net

* Admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed
Class*

Motion for Class Certification
CASE NO. 4:19-cv-00083-PJH

## **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND ....................................................................................................2

      A.    Procedural Background.................................................................................2

      B.    The Proposed Class.....................................................................................2

      C.    Factual Background .....................................................................................2

            1.    Southwest's Workforce.....................................................................2

            2.    Southwest Maintains Common Leave Benefits that Do Not
                  Include Paid Short-Term Military Leave.............................................4

            3.    Southwest Provides All Employees With Paid Leave for
                  Comparable Leave Types ................................................................4

                  a.    Jury Duty Leave ....................................................................5

                  b.    Bereavement Leave................................................................5

                  c.    Sick Leave.............................................................................6

III.  ARGUMENT ........................................................................................................6

      A.    Legal Standard ...........................................................................................6

      B.    Plaintiff's Claims Satisfy Rule 23(a) ............................................................7

            1.    The Class Is Both Sufficiently Numerous and Ascertainable.....................7

            2.    There Are Common Questions of Law and Fact That Will
                  Drive the Resolution of Plaintiff's and Class Members' Claims................8

            3.    Plaintiff's Claims Are Typical of the Class Claims................................11

            4.    Plaintiff and Plaintiff's Counsel Will Adequately Protect the
                  Interests of the Class ......................................................................12

      C.    Plaintiff's Claims Satisfy Rule 23(b)(3) ......................................................13

            1.    Common Questions Predominate Over Individual Issues .........................14

            2.    Plaintiff Satisfies Superiority ...........................................................15

IV.   CONCLUSION....................................................................................................17

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                **Page(s)**

3

*Allen v. Hyland's Inc.*,

4
    300 F.R.D. 643 (C.D. Cal. 2014) ............................................................................12

5

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,

6
    568 U.S. 455 (2013) ..................................................................................................7

7

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .........................................................................7, 8, 16

8

*Clarkson v. Alaska Airlines Inc.*,

9
    19 Civ. 5, 2020 WL 4495278 (E.D. Wash. Aug. 4, 2020) ............................. *passim*

10

*Daniel F. v. Blue Shield of Cal.*,
    305 F.R.D. 115 (N.D. Cal. 2014) ...............................................................................8

11

*Hanlon v. Chrysler Corp.*,

12
    150 F.3d 1011 (9th Cir. 1988) ..................................................................... 11, 13-14

13

*Huntsman v. S.W. Airlines Co.*,

14
    19 Civ. 83, 2019 WL 3254212 (N.D. Cal. July 19, 2019) .......................................16

15

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ..................................................................................11

16

*Leyva v. Medline Indus. Inc.*,

17
    716 F.3d 510 (9th Cir. 2013) ....................................................................................15

18

*McGuire v. Dendreon Corp.*,

19
    267 F.R.D. 690 (W.D. Wash. 2010) ................................................................... 12-13

20

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ....................................................................................12

21

*Parsons v. Ryan*,

22
    754 F.3d 657 (9th Cir. 2014) ....................................................................................11

23

*Paxton v. City of Montebello*,

24
    712 F. Supp. 2d 1017 (C.D. Cal. 2010) ....................................................................10

25

*Scanlan v. American Airlines Grp., Inc.*,
    384 F. Supp. 3d 520 (E.D. Pa. 2019) ..........................................................................9

26

*Scholl v. Mnuchin*,

27
    No. 20 Civ. 5309, 2020 WL 5702129 (N.D. Cal. Sept. 24, 2020) .............. 7, 12, 13

28

*Stockwell v. City & Cty. of San Francisco*,
  No. 08 Civ. 5180, 2015 WL 2173852 (N.D. Cal. May 8, 2015) ...........................................12

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) ...............................................................................................8

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)......................................................................................................14, 15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................................................6, 7, 8

*Walker v. Life Ins. Co. of the Sw.*,
  953 F.3d 624 (9th Cir. 2020) ...............................................................................................14

*Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*,
  No. 05 Civ. 2320, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006)....................................7, 11

*Wolin v. Jaguar Land Rover N.A., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ..........................................................................................15, 16

**Other Authorities**

20 C.F.R. § 1002.150(b) ..............................................................................................................9

38 U.S.C. § 4316(b) ................................................................................................. *passim*

Fed. R. Civ. P. 23 .................................................................................................... *passim*

## MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

## I.     INTRODUCTION

Plaintiff Jayson Huntsman, a pilot for Southwest Airlines Co. ("Southwest") who served in the Air Force Reserves from 2012 to 2020, seeks to certify a class consisting of current and former employees of Southwest who are covered by certain collective bargaining agreements ("CBAs") and who took short-term military leave from October 2004 through the present. Under Southwest's system of benefits, which are identical in all material respects across the Class, Southwest provides Plaintiff and other Class Members paid leave for periods of jury service, bereavement, or illness, but does not provide paid leave for short-term military leave – *i.e.*, military leaves of 14 days or less – to serve their country in the U.S. military, reserves, or National Guard.  Because the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4316(b), entitles Plaintiff and Class Members taking military leave to the same benefits afforded to other employees who take comparable paid leaves, the Complaint alleges that Southwest's policy violates the protections of USERRA.  This single claim is based on the same legal theory and materially the same facts for the entire Class.

This is precisely the type of case where a class action is appropriate.  Plaintiff's challenge to Southwest's paid leave policy raises common questions of law and fact, the answers to which will drive the resolution of this litigation.  Southwest offers materially the same leave benefits to all employees.  Pursuant to this policy, Plaintiff and Class Members have been injured in a similar way – they have been deprived of paid leave when they serve in the military, while employees are afforded that benefit for other comparable forms of leave.  Plaintiff seeks certification of his claim under Federal Rule of Civil Procedure ("Rule") 23(b)(3) for liability and damages.  Whether Southwest's policy violates USERRA is a common question that can be answered in common for all Class Members using common evidence.  Accordingly, this claim is ideally suited for class certification and class resolution.  Plaintiff respectfully requests that he be appointed as the Class Representative, and that his counsel be appointed as Class Counsel.

## II.     BACKGROUND

### A.     Procedural Background

Plaintiff brought this action on behalf of himself and similarly-situated Southwest employees, alleging that Southwest's policy of refusing to provide paid leave for periods of short-term military service violates USERRA because Southwest provides paid leave for other comparable short-term absences from work.  ECF No. 1 (Compl.).  After the Court denied Southwest's motion to transfer venue, ECF No. 38, Southwest moved for judgment on the pleadings, ECF No. 52.  After oral argument, the Court denied the motion.  ECF No. 59.  At the hearing, the Court described Plaintiff's claim as follows: "What [Plaintiff is] arguing is that there's a general policy – if there's a general policy of an employer to pay for leaves that are comparable to military leave, then military – short-term military leave must be compensated.  I think that's the more reasonable interpretation."[1]

### B.     The Proposed Class

Plaintiff seeks certification of the following Class: current or former employees of Southwest Airlines Co. who, during their employment with Southwest at any time from October 10, 2004 through the date of judgment in this action, have taken short-term military leave from their employment with Southwest (*i.e.*, military leave that lasted 14 days or fewer)[2] and were subject to a CBA, except for employees subject to the agreement between Southwest and Transport Workers Union Local 550 covering meteorologists.

### C.     Factual Background

#### 1.     Southwest's Workforce

Southwest is one of the largest domestic airlines in the United States.  Southwest organizes its employees into six work groups: Flight Operations, In Flight, Customer Support and Services, Ground Operations, Tech Operations, and Network Operations Center.[3]  Each

---

[1]     Nov. 27, 2019 Hr'g Tr. (attached as Ex. 1) at 25:7-20.  Unless otherwise stated, all exhibits are attached to the Declaration of Michael J. Scimone in Support of Plaintiff's Motion for Class Certification ("Scimone Decl.").

[2]     Southwest distinguishes between short-term military leave and long-term military leave for administrative purposes.  Nelson Tr. (attached as Ex. 2) at 75:2-8; *see also id.* at 74:3-18.

[3]     *See* Scimone Decl. ¶ 11.

work group includes employees who are represented by unions and are subject to CBAs, as well as additional "non-contract" employees who are not represented by a union.[4]

The following table identifies the categories of employees within each of the work groups, sorted by which union's CBA applies to them.  The unions whose CBAs are included in the class definition ("Covered CBAs") are identified in boldface:

| **Work Group** | **Job Titles** | **Number of employees[5]** | **Unions** |
|---|---|---|---|
| Flight Ops | Pilots | 9,100 | **SWAPA** |
| | Flight Instructors | 95 | **SAPIA, TWU Local 557** |
| | Flight Simulator Technicians | 45 | **IBT Local 19** |
| In Flight | Flight Attendants | 15,775 | **TWU Local 556** |
| Customer Support & Services | Customer Representatives | 2,860 | **IAM District 142** |
| | Source of Support Representatives | | |
| Ground Ops | Customer Service Agents | 4,000 | |
| | Ramp Agents | 18,000 | **TWU Local 555** |
| | Operations Agents | | |
| | Provisioning Agents | | |
| | Freight Agents | | |
| Tech Ops | Appearance Technicians | 200 | **AMFA** |
| | Facilities Maintenance Technicians | 40 | |
| | Mechanics & related Employees | 2,400 | |
| | Material Specialists (f/k/a Stock Clerks) | 300 | **IBT Local 19** |
| Network Operations Center | Dispatchers | 390 | **SAEA, TWU Local 550** |
| | *Meteorologists* | *10* | *TWU Local 550* |
| *Non-Contract* | | *10,000* | *N/A (policy handbook)* |

---

[4]   *Id.* ¶ 12.

[5]   *Id.* ¶ 13.

In total, Southwest employs approximately 63,215 workers, 53,205 of whom are subject to one of the Covered CBAs.[6]  Over 8,000 of Southwest's employees have served or are actively serving in the military.[7]

### 2. Southwest Maintains Common Leave Benefits that Do Not Include Paid Short-Term Military Leave.

Southwest does not provide a paid leave benefit for employees who take short-term leaves to perform military service.[8]  This is true, uniformly, for all Southwest employees, regardless of work group, job title, or whether they are represented by a union.[9]  This has been true for all employees dating back through October 2004.[10]  While employees are able to use accrued vacation time "to continue pay through the period of military service" as required under USERRA, *see* SWA Guidelines at 12-3,[11] Southwest offers no separate paid leave benefit to be used during periods of short-term military leave.[12]

### 3. Southwest Provides All Employees With Paid Leave for Comparable Leave Types.

In contrast, Southwest does provide several forms of separate paid leave for its employees who take other periods of absence from work, including for jury service,

---

[6]      *Id.* ¶ 14.

[7]      Answer ¶ 12.

[8]      Answer ¶¶ 2, 26, 32, 33, 36, 49 ("Defendant admits that it has not paid regular salary or wages to employees while they were on military leave, regardless of length[.]").

[9]      *See* Southwest Guidelines for Employees ("SWA Guidelines") (attached as Ex. 3) at 12-3 ("Employees are not paid regular pay during military duty."); *see also id.* at 12-10 ("A Military Leave of Absence is without pay and without income benefits."); Southard Tr. (attached as Ex. 4) at 56:20-23 (testifying that "[m]ilitary leave has always been unpaid" under SWAPA CBA); Rea Tr. (attached as Ex. 5) at 77:10-17 (testifying to same under TWU Local 556 CBA); Jordan Tr. (attached as Ex. 6) at 46:6-10, 63:18-21 (same under TWU Local 555 and IAM District 142 CBAs); Munguia Tr. (attached as Ex. 7) at 69:2-8, 69:21-25, 70:11-15, 70:19-23, 71:8-11 (same under AMFA and IBT Local 19 CBAs); Ireland Tr. (attached as Ex. 8) at 38:8-15 (same under SAPIA and TWU Local 557 CBAs); Wheatley Tr. (attached as Ex. 9) at 38:2-3 (same under IBT Local 19 CBA); Hickl Tr. (attached as Ex. 10) at 32:2-6 (same for SAEA and TWU Local 550 CBAs); Nelson Tr. at 26:12-23 (same for all non-contract employees).

[10]     *See* Southard Tr. at 57:17-19; Rea Tr. at 81:7-9; Munguia Tr. at 69:9-11, 70:2-4, 70:16-18, 71:12-19; Ireland Tr. at 39:25, 40:1-4; Wheatley Tr. at 38:4-6; Hickl Tr. at 33:8-11; Nelson Tr. at 28:19-25, 29:12-16.

[11]     *See also Job Rights for Veterans and Reserve Component Members*, U.S. Dept' of Labor, https://www.dol.gov/agencies/vets/programs/userra/userra_fs.

[12]     *See* Southard Tr. at 57:6-10; Rea Tr. at 80:1-10; Jordan Tr. at 49:24-25, 50:2-3, 64:9-13; Hickl Tr. at 33:3-6; Nelson Tr. at 27:13-17.

bereavement, or illness.[13]

### a.    Jury Duty Leave

When employees are called to serve on a jury, Southwest provides employees with "their regular compensation for time spent on jury duty."[14]  Southwest's policies recognize that employees "have a civic responsibility and have to respond and fulfill it."[15]  This form of paid leave is offered uniformly to all Southwest employees subject to a Covered CBA.[16]  Paid leave for jury service is a distinct benefit that is separate from accrued vacation or other forms of paid time off.[17]  Southwest has consistently provided paid leave for jury service since October 2004.[18]

### b.    Bereavement Leave

Southwest also provides employees with up to four paid days off to spend time grieving after the loss of a family member.[19]  This benefit is provided uniformly to all Southwest employees subject to a Covered CBA,[20] and is separate from accrued vacation or other forms of paid time off.[21]  Southwest has consistently provided paid bereavement leave back through

---

[13]     Answer ¶¶ 2, 26, 32, 33, 37, 49 ("Defendant . . . admits that it has paid regular salary or wages to employees on certain other types of approved leave, including jury duty leave, bereavement leave, and sick leave[.]").

[14]     SWA Guidelines at 11-4.

[15]     Nelson Tr. at 39:12-14; *see also* SWA Guidelines at 11-4 (stating that jury duty is an "important civic responsibility").

[16]     *See* Southard Tr. at 32:12-24; Rea Tr. at 71:19-25, 72:2-3; Jordan Tr. at 42:14-19, 61:24-25, 62:2-4; Munguia Tr. at 63:22-25, 64:24-25, 65:2-3, 66:8-14, 67:4-11, 67:21-25, 68:5-6; Ireland Tr. at 36:2-7; Wheatley Tr. at 30:3-13, 31:1-4; Hickl Tr. at 29:17-21.

[17]     *See* Southard Tr. at 37:23-25, 38:2-7; Rea Tr. at 73:24-25, 74:2-3; Munguia Tr. at 64:5-10, 65:4-6, 66:15-17, 67:12-14; Ireland Tr. at 33:25, 34:1-3; Wheatley Tr. at 31:11-22; Hickl Tr. at 30:21-25.

[18]     *See* Southard Tr. at 38:25, 39:2-6; Rea Tr. at 74:7-13; Jordan Tr. at 44:21-25, 63:2-6; Munguia Tr. at 64:14-16, 65:4-6, 66:22-24, 67:18-20; Ireland Tr. at 32:17-25, 33:1; Wheatley Tr. at 32:1-10; Hickl Tr. at 31:2-12.

[19]     *See* SWA Guidelines at 11-4 ("[T]he Company will grant an active Employee up to four days leave with pay.").

[20]     *See* Southard Tr. at 45:9-14; Rea Tr. at 61:23-25, 62:2-3; Jordan Tr. at 38:12-16, 58:24-25, 59:2-3, 61:2-8 (testifying that the same bereavement policy applies to all Southwest employees "whether they are covered by an agreement or not"); Munguia Tr. at 56:3-5, 57:10-13, 59:12-15, 60:9-12, 62:17-23; Ireland Tr. at 33:11-20; Wheatley Tr. at 32:19-22; Hickl Tr. at 27:16-19.

[21]     *See* Southard Tr. at 47:25, 48:2-13; Rea Tr. at 69:12-16; Jordan Tr. at 38:17-20, 59:4-7; Munguia Tr. at 56:6-9; Ireland Tr. at 33:25, 34:1-3, 34:12-16; Wheatley Tr. at 32:23-25, 33:1; Hickl Tr. at 27:20-25.

October 2004.[22]  Southwest provides bereavement leave to its employees separate from other forms of paid leave because "it's not a time that is usually a time away from work where you're recharging," and employees have no control or choice over when they will need to take it.[23]

### c.   Sick Leave

Finally, Southwest provides employees with accrued paid time off to use during periods of illness or injury that prevent them from performing their job responsibilities.  This policy applies uniformly to all Southwest employees subject to a Covered CBA.[24]  Southwest permits employees to use accrued sick leave in very limited other circumstances apart from their own illness or injury, including to extend a bereavement leave or to take care of a dependent.[25]  Apart from these circumstances, use of sick time is limited to cases involving actual medical need, because "the intent of sick pay was for the employee's illness" and not employees "extending their weekends or . . . basically just not coming to work."[26]  Southwest has consistently provided paid sick time back through October 2004.[27]

## III.   ARGUMENT

### A.   Legal Standard

The Court may certify a class if the requirements of Federal Rule 23(a) are met, along with one of the prongs of Rule 23(b).  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011);

---

[22]     *See* Southard Tr. at 48:16-18; Rea Tr. at 65:11-16; Jordan Tr. at 39:22-25, 40:1-13, 60:2-11; Munguia Tr. at 56:21-23, 57:10-13, 59:12-15, 60:9-12; Ireland Tr. at 35:10-14; Wheatley Tr. at 34:10-20; Hickl Tr. at 28:19-25.

[23]     Nelson Tr. at 37:3-25, 38:2; *see also* Rea Tr. at 68:25-69:2 (across work groups, bereavement leave is offered for similar reasons because "bereavement is bereavement").

[24]     *See* Southard Tr. at 49:3-6; Rea Tr. at 50:22-25; Jordan Tr. at 32:6-9, 54:23-25; Munguia Tr. at 38:2-4, 45:20-23, 47:2-5, 48:16-19; Ireland Tr. at 27:23-25, 28:1-3; Wheatley Tr. at 35:5-13; Hickl Tr. at 24:21-23.

[25]     *See* Rea Tr. at 63:23-25, 64:2-5; Jordan Tr. at 32:10-16, 32:21-25, 34:7-9, 48:16-25, 49:2-14, 55:2-8, 55:16-25, 56:2-4; Hickl Tr. at 24:24-25, 25:2-25.

[26]     Jordan Tr. at 34:2-3; Wheatley Tr. at 36:5-12 (describing "abuses" of sick leave benefit); *see also* Nelson Tr. at 50:5-10 ("personal illness, injury, pregnancy, those things . . . it would have to be for one of those reasons"); Ireland Tr. at 28:4-12, 29:20-24, 30:3-13; Munguia Tr. at 40:8-25, 41:2-5, 46:7-10, 47:12-16, 49:2-5; Hickl Tr. at 26:8-19 (leave intended for when medical condition would interfere with ability to perform duties).

[27]     *See* Southard Tr. at 51:16-20; Rea Tr. at 56:5-8, 56:23-25, 57:2-3; Jordan Tr. at 36:16-25, 57:16-20; Munguia Tr. at 38:24-25, 39:2-3, 41:9-12, 47:17-18, 49:6-21; Ireland Tr. at 32:17-25, 33:1; Wheatley Tr. at 37-8-10; Hickl Tr. at 26:20-24.

*see also Scholl v. Mnuchin*, No. 20 Civ. 5309, 2020 WL 5702129, at *4-5 (N.D. Cal. Sept. 24, 2020) (Hamilton, J.).  Although "a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Dukes*, 564 U.S. at 351) (quotation marks omitted); *see also id.* at 466 ("Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

## B.   Plaintiff's Claims Satisfy Rule 23(a).

Rule 23(a) requires that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Together, these requirements seek to "limit the class claims to those fairly encompassed by the named plaintiff's claims." *Dukes*, 564 U.S. at 349 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).

### 1.   The Class Is Both Sufficiently Numerous and Ascertainable.

The first requirement of Rule 23(a) is that the class be "so numerous that joinder of all members [would be] impracticable." Fed. R. Civ. P. 23(a)(1).  Here, "'[i]mpracticable' does not mean 'impossible,' and a plaintiff only need establish the difficulty or inconvenience of joining all members of the class to meet the numerosity requirement." *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. 05 Civ. 2320, 2006 WL 2642528, at *4 (N.D. Cal. Sept. 14, 2006) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)).  "While there is no fixed number that satisfies the numerosity requirement, courts often find that a group greater than 40 members meets such requirement." *Scholl*, 2020 WL 5702129, at *22 (citing cases); *Clarkson v. Alaska Airlines Inc.*, 19 Civ. 5, 2020 WL 4495278, at *4 (E.D. Wash. Aug. 4, 2020) (certifying USERRA § 4316(b) claim on behalf of paid leave class).  Additionally, while not a "prerequisite to class certification," *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121,

1133 (9th Cir. 2017), courts often consider whether "an identifiable and ascertainable class

exists," *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 120 (N.D. Cal. 2014) (Hamilton, J.).

To satisfy this requirement, "the class definition must be sufficiently defined so that the members

of the class can be ascertained by reference to objective criteria." *Id.* at 122 (citing *In re Cathode*

*Ray Tube (CRT) Antitrust Litig.*, No. MDL 1917, 2013 WL 5429718, at *6 (N.D. Cal. June 20,

2013)); *Briseno*, 844 F.3d at 1132 (stating that Rule 23 does not require that "the identity of class

members can be ascertained with perfect accuracy at the class certification stage") (quoting

*Mullins v. Direct Digital LLC*, 795 F.3d 654, 670 (7th Cir. 2015)).

Here, the Class easily surpasses the 40-person threshold to satisfy numerosity.  Based on

corporate testimony and information in Southwest's Answer in this litigation, Plaintiff estimates

that the number of Class Members – *i.e.*, employees who have taken short-term military leave

from October 2004 through the present who are subject to a Covered CBA – is over 6,700

individuals.[28]  Southwest's personnel data identifies the individuals who have taken short-term

military leave while employed by Southwest, and can identify which CBA, if any, they are

subject to.[29]  Using this data, determining whether someone is a member of the Class is a

straightforward analysis using objective criteria.  For this reason, Plaintiff also easily satisfies the

ascertainability considerations for class certification.

### 2.   There Are Common Questions of Law and Fact That Will Drive the Resolution of Plaintiff's and Class Members' Claims.

Rule 23(a) also requires that there are "questions of law or fact common to the class."

Fed. R. Civ. P. 23(a)(2).  "[A] single [common] question" will satisfy Rule 23(a)(2).  *Dukes*, 564

U.S. at 359; *see also Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016).  The

existence of "a general policy" or a "uniform employment practice" satisfies Rule 23(a)(2).

*Dukes*, 564 U.S. at 355.

Here, there are common merits questions that apply to the Class:  (1) whether paid leave

is a "right and benefit" that must be provided equally under USERRA § 4316(b); (2) whether

---

[28]   Scimone Decl. ¶ 15.

[29]   *Id.* ¶ 16.

short-term military leave is comparable to jury duty, bereavement leave, or sick leave;
(3) whether Class Members who have taken short-term military leave have been treated less
favorably than those who take comparable forms of leave; (4) whether Southwest's practice of
refusing to give the same "rights and benefits" of paid leave to Class Members on short-term
military leave violated USERRA § 4316(b); and (5) whether Southwest can prove its affirmative
defense that it acted in good faith to comply with USERRA.

First, whether paid leave is one of the "rights and benefits" in USERRA § 4303(2) that is
protected by § 4316(b) is a common legal question that will have the same answer for all Class
Members.  The Court has already answered this common question in the affirmative,
determining that paid leave is such a "benefit" under USERRA.[30]  A court in the Eastern District
of Washington recently certified a class bringing similar USERRA paid leave claims and found
that this common legal question satisfied commonality.  *See Clarkson*, 2020 WL 4495278, at *4.

Second, whether short-term military leave is comparable to other forms of paid leave
offered by Southwest is, as the Court previously stated, a "fairly simple" merits question that will
apply to all employees.[31]  Under USERRA § 4316(b), employers are required to provide
"employees on military leave . . . with comparable rights and benefits to which those on non-
military absences are entitled."  *Scanlan v. American Airlines Grp., Inc.*, 384 F. Supp. 3d 520,
527 (E.D. Pa. 2019).  Under the federal regulations implementing USERRA, the primary factors
that determine comparability are the average duration, purpose, and ability to choose when to
take the leave.  *See* 20 C.F.R. § 1002.150(b).  Because Southwest offers the same paid jury,
bereavement, and sick leave benefits to all Class Members, *see supra* Section II.C.2-3, Plaintiff
will provide common evidence as to each of these factors, regardless of any Class Members'
work group or job title.  The purpose of the leave will be common to all Class Members, as the
purpose of each leave category is inherent in the benefit itself – *i.e.*, the purpose of jury leave is
to appear for jury duty, the purpose of bereavement leave is to grieve the loss of a loved one, and

---

[30]    *See* Nov. 27, 2019 Hr'g Tr. at 25:4.

[31]    *See* Nov. 27, 2019 Hr'g Tr. at 25:15-20 ("There is a factual issue, of course, as to whether or not the leaves are comparable.").

the purpose of sick leave is to attend to medical needs.  These facts are not specific to any work group, but common to all employees.  Similarly, the ability to choose when to take the leave (*i.e.*, the voluntariness of the leave) will be demonstrated using common evidence because the unplanned nature of a jury summons, death of a family member, or illness will not differ between employees in different job titles or work groups.  The average-duration factor is a common issue as well.  While this is primarily a data-driven inquiry that will be answered at the merits stage after further data discovery, *see* ECF No. 77 (Stipulation re Data Discovery), Southwest applies the same time limitations to each leave type for all employees with little or no variation – *i.e.*, it pays for each day of jury service regardless of length, it pays up to four days of bereavement leave, and it pays for sick leave up to the number of accrued days.  As for short-term military leave, the average duration will fall somewhere between 1 and 14 days.

The third and fourth issues – whether Southwest violated USERRA – will be legal questions that apply to Plaintiff and all Class Members following a determination whether short-term military leave is comparable to leaves for jury duty, bereavement, and illness.

Finally, Southwest's defense that it acted in "good faith" to comply with USERRA is a common legal question.  Southwest raised this defense as to "Plaintiff and the putative class members," and therefore appears to concede that it is a common issue.[32]  Although the text of USERRA does not describe a "good faith" standard, it does incorporate a "willfulness" standard related to liquidated damages, which courts have interpreted to be analogous with the willfulness standard under the Age Discrimination in Employment Act.  *See Paxton v. City of Montebello*, 712 F. Supp. 2d 1017, 1020-21 (C.D. Cal. 2010).  Under that standard, an employer acts willfully when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Id.*  Here, although Southwest has not yet offered any evidence to support the contention that it acted in good faith, the steps that it took to design employment policies that comply with USERRA would presumably be common to the Class – it is unlikely, for example, that Southwest would perceive a risk that its policies were lawful as to pilots, but

---

[32]     *See* Answer at 12 (Twenty-Third Affirmative Defense) ("Plaintiff and the putative class members are not entitled to pre-judgment interest because Defendant acted in good faith[.]").

1    fail to appreciate the same risk for flight attendants.

2         Because there are common legal and factual issues that will be resolved with general,

3    Class-wide evidence, Plaintiff satisfies commonality.

4              **3.    Plaintiff's Claims Are Typical of the Class Claims.**

5         Rule 23 also requires that the "claims or defenses of the representative parties [be] typical

6    of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As a general matter, the

7    typicality analysis "tends to merge" with commonality. *Whiteway*, 2006 WL 2642528 at *6

8    (citing *Gen. Tel. Co.*, 457 U.S. at 158 n.13). "Under the rule's permissive standards,

9    representative claims are 'typical' if they are reasonably co-extensive with those of absent class

10   members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir.

11   2014). "Typicality refers to the nature of the claim or defense of the class representative, and not

12   to the specific facts from which it arose or the relief sought." *Id.* (quoting *Hanon v.*

13   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Typicality is established if

14   "representative claims are . . . reasonably co-extensive with those of absent class members; they

15   need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

16   1988). "[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed

17   against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[T]ypicality

18   is not primarily concerned with whether each person in a proposed class suffers the same type of

19   damages[.]").

20        Here, Plaintiff's claims are typical of Class Members' claims because they arise from a

21   consistent, uniform set of practices that apply to all Southwest employees, regardless of their job

22   title, work group, or union representation.[33] Southwest does not provide paid leave to Plaintiff or

23   any other Class Member for short-term military leave, despite providing paid leave benefits to

24   those same employees when they take leave to perform jury service, for bereavement, or for

25   illness. As Plaintiff's claim is aimed at the same categories of leave, which Southwest treats

26   ────────────────
     [33]     The district court in *Clarkson* concluded that the plaintiff's claims in that case were not

27   typical of the claims of employees in other work groups and at another employer because the
     evidence showed that "the comparative forms of leave varied by non-pilot employee groups and
28   by employer." 2020 WL 4495278, at *5. Here, there is no such variation between employees.
     *See supra* Section II.C.

identically, and Plaintiff's claim is based on the same comparability analysis as the claims of the Class, then Plaintiff's claims are typical of those of the Class.

### 4.   Plaintiff and Plaintiff's Counsel Will Adequately Protect the Interests of the Class.

To determine whether a representative plaintiff will adequately represent a class, courts must resolve two questions:  "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Scholl*, 2020 WL 5702129, at *23-24 (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).  "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting 1 William B. Rubenstein et al., *Newberg on Class Actions* § 3.58 (5th ed. 2011)).  "Generally, representation will be found to be adequate when the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by interests antagonistic to the remainder of the class."  *Stockwell v. City & Cty. of San Francisco*, No. 08 Civ. 5180, 2015 WL 2173852, at *6 (N.D. Cal. May 8, 2015) (Hamilton, J.).

Here, neither Plaintiff nor Plaintiff's counsel have any conflicts of interest with the Class. Plaintiff shares a common interest with Class Members in that they all suffered, and continue to suffer, the same type of injury – denial of a paid leave benefit for short-term military leaves. Thus, Plaintiff similarly shares an interest in vigorous prosecution of the USERRA claim in this case, as he stands to benefit from a liability finding in the same way as Class Members.

Plaintiff and Plaintiff's counsel have also vigorously prosecuted this action to date. Plaintiff has worked closely with counsel on each step of the litigation and their discovery efforts, provided documents to counsel, reviewed the Complaint, has answered discovery requests and produced documents, and will sit for a deposition.[34]  *See Allen v. Hyland's Inc.*, 300 F.R.D. 643, 663 (C.D. Cal. 2014) (adequacy requirement satisfied where plaintiffs "made themselves available for depositions and demonstrated familiarity with the case"); *McGuire v.*

---

[34]    Scimone Decl. ¶ 17.

*Dendreon Corp.*, 267 F.R.D. 690, 697 (W.D. Wash. 2010) (same where plaintiff "is willing to spend as much time as necessary to see the litigation through").

Plaintiff's counsel also meet the requirements for appointment as Class Counsel under Rules 23(a)(4) and 23(g).  *See Scholl*, 2020 WL 5702129, at *24 (analyzing adequacy for class counsel under Rule 23(g)).  Courts assess adequacy of counsel by analyzing:  "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions or other complex litigation and the type of claims in the litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class."  *Id.*  Plaintiff's counsel easily meet these factors.  Plaintiff's counsel have vigorously litigated this matter, including successfully opposing Southwest's motions to change venue and for judgment on the pleadings, participating in hearings related to these motions, reviewing hundreds of documents and dozens of personnel data spreadsheets, and taking nine 30(b)(6) depositions.[35]  Plaintiff's proposed Co-Lead Class Counsel – Outten & Golden LLP and Block & Leviton LLP – have extensive experience litigating employment class actions, including USERRA claims such as the paid leave claims in this case.[36]  Plaintiff's other counsel also have extensive experience litigating employment class actions.[37]  *See Clarkson*, 2020 WL 4495278, at *5 ("Plaintiff's counsel have significant experience litigating class action and USERRA cases.").  Plaintiff's counsel are prepared to commit the resources necessary to successfully litigate this matter on behalf of the Class going forward.[38]

**C.   Plaintiff's Claims Satisfy Rule 23(b)(3).**

 "To qualify for certification under [Rule 23(b)(3)], a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: (1) common questions must 'predominate over any questions affecting only individual members,' and (2) class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  *Hanlon*, 150 F.3d

---

[35]    Scimone Decl. ¶ 18; Decl. of R. Joseph Barton ("Barton Decl.") ¶ 17.

[36]    Scimone Decl. ¶¶ 4-10; Barton Decl. ¶¶ 2-16.

[37]    Decl. of T. Jarrard ("Jarrard Decl.") ¶¶ 4-15; Decl. of P. Romer-Friedman ("Romer-Friedman Decl.") ¶¶ 3-18; Decl. of M. Crotty ("Crotty Decl.") ¶¶ 3-9.

[38]    Scimone Decl. ¶ 19.

at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).  Here, the requirements of Rule 23(b)(3) are satisfied.

### 1.  Common Questions Predominate Over Individual Issues.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  It focuses on the "relationship between the common and individual issues." *Id.*  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (quoting 7A Wright, Miller & Kane, Fed. Prac. & Proc. § 1778 (2d ed. 1986)); *see Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) (affirming Rule 23(b)(3) certification). The question is "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49, at 195–196 (5th ed. 2012)).  "An individual question is one where members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.*

For the single claim alleged in the Complaint, common questions of liability will predominate over any individual issues.  The common issues of whether paid leave is a "right and benefit" under USERRA § 4316(b); whether short-term military leave is comparable to other leaves; whether Class Members have been treated less favorably than employees who take comparable forms of leave; whether Southwest's benefit policies violated USERRA § 4316(b); and whether Southwest acted in good faith will all turn on common evidence.  As addressed above in Section III.B.2, these legal and factual questions will be resolved for Plaintiff and all Class Members because Southwest applies functionally identical leave benefits to all employees subject to the Covered CBAs.  The common facts that will answer these inquiries predominate over any individualized issues, because even if Plaintiff or any other Class Member attempted to bring an individual USERRA claim, the same facts would likely be used to resolve the

1    comparability analysis.  *See Tyson Foods*, 136 S. Ct. at 1046.

2         These common issues go directly to whether Plaintiff can establish liability on his claim.

3    No individualized issues will impact the liability determination.  Nor will damages issues defeat

4    predominance.  *See, e.g.*, *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he

5    amount of damages is invariably an individual question and does not defeat class action

6    treatment.") (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).  Here, as in *Leyva*,

7    a common approach to ascertaining damages for Class Members will be possible using a

8    common damages methodology, by examining data reflecting each Class Member's periods of

9    short-term military leave during the Class period and determining what wages they would have

10   received had they continued working during such leave.  *See id.* ("[P]laintiffs must be able to

11   show that their damages stemmed from the defendant's actions that created the legal liability.").

12   This issue will largely be determined by Southwest's data productions in this case, which are still

13   ongoing and on which the parties will continue to confer.  *See* ECF No. 77 (Stipulation re Data

14   Discovery).

15        Because liability questions and damages calculations involve common evidence and a

16   common methodology, Plaintiff satisfies predominance.

17                    **2.    Plaintiff Satisfies Superiority.**

18        Superiority measures whether "a class action is superior to other available methods for

19   fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Superiority

20   "requires the court to determine whether maintenance of this litigation as a class action is

21   efficient and whether it is fair."  *Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168, 1175-76

22   (9th Cir. 2010).  Rule 23(b)(3) directs the Court to consider four factors to evaluate whether a

23   class action is superior to other methods of adjudication: (1) the class members' interests in

24   controlling litigation, (2) the nature and extent of other litigation concerning the same

25   controversy, (3) the desirability of concentrating the litigation of the claims in this forum, and

26   (4) the difficulties of managing the case as a class action.  Fed. R. Civ. P. 23(b)(3).  Here, all four

27   superiority factors favor class certification.

28        The first factor is met "[w]here recovery on an individual basis would be dwarfed by the

cost of litigating on an individual basis." *Wolin*, 617 F.3d at 1175-76.  Because individual Class Members' recovery – *i.e.*, lost wages from periods of unpaid short-term military leave – may be small in comparison to the costs of litigation, class adjudication of these issues serves Class Members' interests. *See Clarkson*, 2020 WL 4495278, at *6 (finding "class adjudication would serve the interests of individual class members for whom the potential recovery may be small in comparison to the costs of litigation").  Class Members also benefit from remaining anonymous in a class action, rather than risking their reputations and careers by bringing individual lawsuits in their own names.  Second, Plaintiff is not aware of any pending litigation against Southwest on the same issues.[39]  Third, this Court has already determined that this District is an appropriate venue. *Huntsman v. S.W. Airlines Co.*, 19 Civ. 83, 2019 WL 3254212, at *5 (N.D. Cal. July 19, 2019).  Not only does Plaintiff work in this District, but because Southwest operates a sizeable hub in this District, a significant number of the Class Members are located in this District. *Id.* at *3, 5; *see also Clarkson*, 2020 WL 4495278, at *6 (finding non-headquarters district was "an appropriate forum given the extent of Defendants' business in this state and the number of class members who reside in this district.").

Finally, this case does not present manageability concerns.  Even if it did, there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno*, 844 F.3d at 1128 (citing *Mullins*, 795 F.3d at 663 and *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (Sotomayor, J.) (listing management tools)).  In this case, liability will be based on common, generally applicable evidence, including corporate documents and corporate testimony, as well as Southwest's production of personnel data. *See Clarkson*, 2020 WL 4495278, at *6 (finding superiority element satisfied in USERRA paid leave class action involving similar claim). Following a liability finding, damages could be determined using a Class-wide methodology. Nothing in this case is so complex that it would be unmanageable as a class action at trial. Accordingly, a class action is a superior method of resolving this claim on behalf of the Class.

---

[39]      Scimone Decl. ¶ 20.

1

## IV.     CONCLUSION

2

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the Class

3

pursuant to Rules 23(a) and 23(b)(3), appoint Plaintiff as the Class Representative, and pursuant

4

to Rule 23(a)(4) and 23(g) appoint Outten & Golden LLP and Block & Leviton LLP as Co-Lead

5

Class Counsel and Plaintiff's other counsel as additional Class Counsel.

6

Dated:     October 21, 2020                           Respectfully submitted,
           New York, NY

7

 _/s/ Michael J. Scimone_____
Michael J. Scimone*

8

Michael C. Danna*
OUTTEN & GOLDEN LLP

9

685 Third Ave., 25th Floor
New York, NY 10017

10

Tel: (212) 245-1000
Email: mscimone@outtengolden.com

11

Email: mdanna@outtengolden.com

12

R. Joseph Barton (CA Bar No. 212340)
BLOCK & LEVITON LLP

13

1735 20th Street NW
Washington, DC 20009

14

Tel: (202) 734-7046
Email: joe@blockesq.com

15

16

Vincent Cheng (CA Bar No. 230827)
BLOCK & LEVITON LLP

17

100 Pine Street, Suite 1250
San Francisco, CA 94111

18

Tel: (415) 968-8999
Email: vincent@blockesq.com

19

20

Peter Romer-Friedman*
GUPTA WESSLER PLLC

21

1900 L St. NW, Suite 312
Washington, DC 20036

22

Tel: (202) 888-1741
Email: peter@guptawessler.com

23

24

Matthew Z. Crotty*
CROTTY & SON LAW FIRM, PLLC

25

905 W. Riverside Ave., Suite 404
Spokane, WA 99201

26

Tel: (509) 850-7011
Email:matt@crottyandson.com

27

28

Thomas G. Jarrard*
LAW OFFICE OF THOMAS G.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JARRARD LLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
Fax: (509) 326-2932
Email: Tjarrard@att.net

* Admitted *pro hac vice*

*Attorneys for Plaintiff and the Proposed Class*