UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAYSON HUNTSMAN,

             Plaintiff,

    v.

SOUTHWEST AIRLINES CO.,

             Defendant.

Case No.  19-cv-00083-PJH

**ORDER GRANTING MOTION FOR CLASS CERTIFICATION AND DENYING MOTION TO FILE UNDER SEAL**

Re: Dkt. No. 78, 84

      Plaintiff Jayson Huntsman's ("plaintiff") motion for class certification came on for hearing before this court on January 28, 2021.  Plaintiff appeared through his counsel, Michael Scimone.  Defendant Southwest Airlines Co. ("Southwest" or "defendant") appeared through its counsel, Brian Berry.  Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion, for the following reasons.

## BACKGROUND

      On January 7, 2019, plaintiff filed a putative class action complaint ("Compl.") alleging a single cause of action against Southwest for a violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 et seq.  Dkt. 1.  In particular, plaintiff alleges that defendant violated title 38 U.S.C. § 4316(b), by failing to pay its employees when they take short-term military leave, while paying workers when they take comparable forms of leave, such as for jury duty leave, bereavement leave, and sick leave.  Compl. ¶¶ 3–4.

      Plaintiff is a pilot for Southwest who served in the Air Force Reserves from 2012 to

United States District Court
Northern District of California

2020 and during that period he took short-term military leave from Southwest to fulfill his military duty obligations. Id. ¶ 9. Huntsman seeks to represent a national class defined as:

> current or former employees of Southwest Airlines Co. who, during their employment with Southwest at any time from October 10, 2004 through the date of judgment in this action, have taken short-term military leave from their employment with Southwest (i.e., military leave that lasted 14 days or fewer) and were subject to a [collective bargaining agreement ("CBA")], except for employees subject to the agreement between Southwest and Transport Workers Union Local 550 covering meteorologists.

Mtn. at 2 (footnote omitted).

Southwest organizes its employees in six separate work groups that are represented by eleven different unions and have different CBAs governing the terms of employment. The approximate composition and union representation of each work group is as follows:

| Work Group | Job Titles | Number of employees | Unions |
|---|---|---|---|
| Flight Ops | Pilots | 9,100 | SWAPA |
| | Flight Instructors | 95 | SAPIA, TWU Local 557 |
| | Flight Simulator Technicians | 45 | IBT Local 19 |
| In Flight | Flight Attendants | 15,775 | TWU Local 556 |
| Customer Support & Services | Customer Representatives | 2,860 | IAM District 142 |
| | Source of Support Representatives | | |
| Ground Ops | Customer Service Agents | 4,000 | |
| | Ramp Agents | 18,000 | TWU Local 555 |
| | Operations Agents | | |
| | Provisioning Agents | | |
| | Freight Agents | | |
| Tech Ops | Appearance Technicians | 200 | AMFA |

| | Facilities Maintenance Technicians | 40 | |
| --- | --- | --- | --- |
| | Mechanics & related Employees | 2,400 | |
| | Material Specialists (f/k/a Stock Clerks) | 300 | IBT Local 19 |
| Network Operations Center | Dispatchers | 390 | SAEA, TWU Local 550 |
| | *Meteorologists* | *10* | *TWU Local 550* |
| *Non-Contract* | | *10,000* | *N/A (policy handbook)* |

Declaration of Michael J. Scimone ("Scimone Decl."), Dkt. 79, ¶ 12.  Southwest employs

approximately 63,215 workers, of which 53,205 are subject to a CBA.  Id. ¶ 14.  The

10,010 non-contract employees and the meteorologists are not members of the proposed

class.  Separately, over 8,000 of Southwest's employees have served or are actively

serving in the U.S. military.  Compl. ¶ 12; Dkt. 28 ("Answer") ¶ 12.

Plaintiff alleges (and defendant admits) that it does not provide a paid leave

benefit for employees who take short-term military leave to perform military service.

Compl. ¶¶ 2, 26, 32–33, 36, 49; Answer ¶¶ 2, 26, 32–33, 36, 49.  This policy applies to all

Southwest employees, regardless of work group, job title, or union representation.  Mtn.

at 4 n.9.  Plaintiff now moves for certification of the proposed class.

## DISCUSSION

### A.    Legal Standard

To maintain a class action, a proposed class must satisfy Rule 23(a)'s numerosity,

commonality, typicality, and adequacy of representation requirements.  Fed. R. Civ.

P. 23(a).  If all four prerequisites of Rule 23(a) are satisfied, the court then determines

whether to certify the class under one of the three subsections of Rule 23(b), which

requires plaintiff to show: (1) a risk of substantial prejudice from separate actions, (2) that

declaratory or injunctive relief benefitting the class as a whole would be appropriate, or

(3) that common questions of law or fact common to the class predominate and that a

class action is superior to other methods available for adjudicating the controversy at

issue.  Fed. R. Civ. P. 23(b)(1)–(3).

United States District Court
Northern District of California

1  The party seeking class certification bears the burden of proof in demonstrating

2  that he has satisfied all four Rule 23(a) requirements and that his action falls within one of

3  the three types of actions permitted under Rule 23(b).  Zinser v. Accufix Research Inst.,

4  Inc., 253 F.3d 1180, 1186 (9th Cir. 2001).  "Before certifying a class, the trial court must

5  conduct a rigorous analysis to determine whether the party seeking certification has met

6  the prerequisites of Rule 23."  Mazza v. Am. Honda Motor Co. Inc., 666 F.3d 581, 588

7  (9th Cir. 2012).  To the extent there are "any factual disputes necessary to determine" a

8  Rule 23 criterion, a district court is required to resolve them.  Ellis v. Costco Wholesale,

9  657 F.3d 970, 983 (9th Cir. 2011) ("[T]he district court was required to resolve any factual

10  disputes necessary to determine whether there was a common pattern and practice that

11  could affect the class as a whole.  If there is no evidence that the entire class was subject

12  to the same allegedly discriminatory practice, there is no question common to the

13  class.").

14  **B.    Analysis**

15      **1.    Rule 23(a)**

16          **a.    Numerosity**

17  Rule 23(a)(1) requires that a proposed class be so numerous that joinder of all

18  members is impracticable.  Fed. R. Civ. P. 23(a)(1).  While there is no fixed number that

19  satisfies the numerosity requirement, courts often find that a group greater than 40

20  members meets such requirement.  Californians for Disability Rights, Inc. v. Cal. Dep't of

21  Transp., 249 F.R.D. 334, 346 (N.D. Cal. 2008); Hernandez v. Cnty. of Monterey, 305

22  F.R.D. 132, 152–53 (N.D. Cal. 2015) ("A class or subclass with more than 40 members

23  'raises a presumption of impracticability based on numbers alone.'" (citation omitted)).  A

24  court may make "common-sense assumptions and reasonable inferences" when

25  analyzing numerosity.  West v. Cal. Servs. Bureau, Inc., 323 F.R.D. 295, 303 (N.D. Cal.

26  2017) (citing The Civil Rights Educ. & Enforcement Ctr. v. RLJ Lodging Trust, 2016 WL

27  314400, at *6 (N.D. Cal. Jan. 25, 2016)).

28  Here, plaintiff asserts that there are over 6,700 members in the class.  Mtn. at 8.

United States District Court
Northern District of California

Plaintiff derived this number by dividing the 8,000 Southwest employees who have served or are actively serving in the military by the total number of Southwest employees, 63,215, to determine that approximately 12.66 percent of all Southwest employees have served or are serving in the military.  Scimone Decl. ¶ 15.  Plaintiff then multiplied the 12.66 percent by the total number of individuals subject to a covered CBA, 53,205, which results in an estimated 6,733 individuals.  Id.

Significantly, defendant does not contest plaintiff's numerosity contention and, in approving a settlement agreement between this same plaintiff and defendant resolving similar USERRA claims, Judge Donato noted that the settlement class numbered some 1,999 class members and potential class members.  Huntsman v. Southwest Airlines Co. ("Huntsman I"), No. 17-cv-3972-JD, Dkt. 57 at 4 (N.D. Cal. Oct. 4, 2019).  That class included only pilots who took short-term military leave so the class in this case, comprising not just pilots but other work groups, is necessarily greater.[1]

The court finds that plaintiff meets the numerosity requirement.

### b.    Commonality

Rule 23(a)(2) requires questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Under this requirement, plaintiff must "demonstrate that the class members have suffered the same injury," not merely violations of "the same provision of law."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349–50 (2011).  Given that, plaintiff's claims "must depend upon a common contention" such that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  "What matters to class certification . . . is not the raising of common questions—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Id. (citation

---

[1] It is not clear that the actual number of class members will reach 6,733 individuals because the 8,000 employees who have served or are actively serving in the military likely includes veterans, i.e., those who have served, and did not take military leave. Nonetheless, the court is satisfied the actual number of class members easily surpasses the 40-member threshold.

1   omitted); see also Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) ("'An

2   individual question is one where members of a proposed class will need to present

3   evidence that varies from member to member,' while a common question is one where

4   'the same evidence will suffice for each member to make a prima facie showing [or] the

5   issue is susceptible to generalized, class-wide proof.'" (alteration in original) (citation

6   omitted)).

7   　　　　To that end, the Ninth Circuit has explained that, under the commonality

8   requirement, "plaintiffs need not show that every question in the case, or even a

9   preponderance of questions, is capable of classwide resolution.  So long as there is even

10   a single common question, a would-be class can satisfy the commonality requirements of

11   Rule 23(a)(2)."  Wang v. Chinese Daily News, Inc., 737 F.3d 538, 544 (9th Cir. 2013).

12   "Whether a question will drive the resolution of the litigation necessarily depends on the

13   nature of the underlying legal claims that the class members have raised."  Jimenez v.

14   Allstate Ins. Co., 765 F.3d 1161, 1165 (9th Cir. 2014) (citation omitted).

15   　　　　Starting with the underlying legal claims, plaintiff's claim arises under 38 U.S.C.

16   § 4316(b)(1), which provides:

17   　　　　　　[A] person who is absent from a position of employment by
　　　　　　reason of service in the uniformed services shall be— . . .
18   　　　　　　entitled to such other rights and benefits not determined by
　　　　　　seniority as are generally provided by the employer of the
19   　　　　　　person to employees having similar seniority, status, and pay
　　　　　　who are on furlough or leave of absence under a contract,
20   　　　　　　agreement, policy, practice, or plan in effect at the
　　　　　　commencement of such service or established while such
21   　　　　　　person performs such service.

22   38 U.S.C. § 4316(b)(1).  The U.S. Department of Labor's ("DOL") has promulgated

23   regulations implementing USERRA that explain that employees on military leave must be

24   given "the most favorable treatment accorded to any comparable form of leave."  20

25   C.F.R. § 1002.150(b).  The regulation also provides three non-exclusive factors to

26   consider whether two forms of leave are comparable:

27   　　　　　　In order to determine whether any two types of leave are
　　　　　　comparable, the duration of the leave may be the most
28   　　　　　　significant factor to compare.  For instance, a two-day funeral

United States District Court
Northern District of California

> leave will not be "comparable" to an extended leave for service in the uniformed service.  In addition to comparing the duration of the absences, other factors such as the <u>purpose of the leave</u> and the <u>ability of the employee to choose when to take the leave</u> should also be considered.

<u>Id.</u> (emphasis added).

Turning to plaintiff's commonality arguments, he advances five common questions of law or fact.  The first question is whether paid leave is a "right and benefit" that must be provided equally under USERRA § 4316(b).  Mtn. at 8.  In response, defendant argues that this question has no bearing on the commonality analysis because it is a pure question of law that affects all employers equally and has already been answered by the court.  Opp. at 10.

Rule 23(a)(2)'s commonality requirement applies to both questions of law and questions of fact.  Defendant has not cited any authority for the proposition that a pure question of law that affects all employers subject to USERRA somehow precludes the question from being common to all class members.  In considering a class certification motion in a case with similar factual and legal allegations, the district court in <u>Clarkson v. Alaska Airlines, Inc.</u>, 2020 WL 4495278, at *4 (E.D. Wash. Aug. 4, 2020), found the same legal issue, i.e., "whether paid leave is one of the 'rights and benefits' that must be provided equally to employee on military leave under USERRA" was common to all class members and that finding alone satisfied Rule 23(a)(2).  Nor is the court persuaded that a finding made before final judgment in the case removes it from consideration at the class certification stage. Other courts have indicated that an issue that has been "conceded or otherwise resolved does not mean that it ceases to be an 'issue' for the purposes of the predominance analysis."  <u>In re Nassau Cnty. Strip Search Cases</u>, 461 F.3d 219, 228 (2d Cir. 2006) (citing <u>Waste Mgmt. Holdings, Inc. v. Mowbray</u>, 208 F.3d 288, 299 (1st Cir. 2000)).  That a resolved issue can still impact the predominance analysis implies that it also can be a common issue.

Plaintiff's second common question is whether short-term military leave is comparable to jury duty, bereavement leave, or sick leave.  Mtn. at 8–9.  Plaintiff points to

United States District Court
Northern District of California

1    two facts that demonstrate a uniform employment practice.  Southwest offers the same

2    paid jury, bereavement, and sick leave benefits to all class members regardless of work

3    group or job title and it does not provide paid military leave to any class member.  In

4    opposition, defendant advances three arguments against plaintiff's second common

5    question.

6                    i.      **Whether Plaintiff's Definition of "Short-Term" Military**

7                            **Leave is Common**

8            First, defendant argues that plaintiff's definition of "short-term" military leave is not

9    common across the class, its work groups, or throughout the proposed class period.

10   Opp. at 5.  For example, by its agreement with the pilot union, Southwest published a

11   military handbook in November 2014, Declaration of Brian D. Berry ("Berry Decl."), Ex. 3

12   to Ex. E, Dkt. 85-5, at 76,[2] that defined short term military leave as service in the

13   uniformed service for less than thirty-one days, id., Ex. E, Dkt. 85-5, at 53:7–54:7; id., Ex.

14   4 to Ex. E, Dkt. 85-5, at 82 (Flight Operations Military Handbook).  Southwest did not

15   begin coding short-term as fourteen days for pilots until November 2016.  Id., Ex. E, Dkt.

16   85-5, at 53:7–56:4.  Additionally, the customer sales & support representative work group

17   only uses a single code for military leave of any duration with no distinction between

18   short-term and long-term military leave.  Id., Ex. G, Dkt. 85-5, at 29:21–30:22.  The same

19   is true for flight instructors.  Id., Ex. J, Dkt. 86, at pp. 56–57, 46:14–47:25.  Dispatchers

20   code military leave over 30 days as extended military leave without distinguishing short-

21   term as 14 or fewer days.  Id., Ex. L, Dkt. 86, at pp. 99–100, 38:20–39:2.  Because

22   "short-term military leave" lacks a common definition across work groups and over time,

23   defendant argues there is no commonality of class members' claims.  Opp. at 6.

24           In reply, plaintiff argues that Southwest's argument regarding a common definition

25   of "short-term" is actually a merits issue that speaks to how he framed his USERRA

26   claim, that is, whether he can challenge only Southwest's failure to pay for short-term

27   _____

28   [2] Pin citations to the declarations filed in support of the parties' briefs refer to the
     electronically stamped ECF page numbers.

military leave as opposed to all military leave.  Reply at 2.

The court begins with the observation that, if plaintiff had placed no limitation on his class definition of military leave, then comparing duration of leave would be a relatively straightforward exercise.  In a case cited by defendant, a district court compared the average length for military leave, on the one hand, and sick leave and jury duty leave, on the other and determined for purposes of summary judgment that the leave duration was not comparable.  See Hoefert v. Am. Airlines, Inc., 438 F. Supp. 3d 724, 739–41 (N.D. Tex. 2020).  This illustrates that plaintiff could present common evidence by compiling the total average military leave duration of any length and comparing it with the total average sick, jury duty, and bereavement leave of any duration.

The parties dispute whether there is sufficient evidence available such that plaintiff can further narrow his definition of military leave to short-term military leave and in this respect, the answer is not particularly clear.  For example, plaintiff cites evidence that the pilots, flight attendants, and ground ops and tech ops work groups all code short-term military leave as 14 or fewer days. Dkt. 79-4 at 54:25—55:2–6 (pilots); Dkt. 79-5 at 75:6–8 (flight attendants); 79-2 at 74:3–18 (ground ops and tech ops).  Added together, these work groups comprise 49,815 employees out of a total 53,205 employees who are covered by a CBA or approximately 94 percent of potential class members.  At the hearing, however, counsel for defendant pointed out that this seemingly high percentage is deceptive because the definition was not in place for the entire class period.  As stated in the opposition, Southwest did not begin coding "short-term" military leave as 14 days or fewer for pilots until 2016.  Opp. at 5.

It is not clear at this stage whether the evidentiary issues raised by defendant with regard to how Southwest codes its military leave for each work group will undermine plaintiff's ability to generate common answers apt to drive resolution of the litigation. Assuming that Southwest did not code short-term military leave for pilots as 14 or fewer days until 2016 and no other data regarding short-term leave is available from 2004 to

1   2016, then that lack of evidence may complicate plaintiff's claim on the merits because

2   he will not be able to compare short-term military leave to other similar types of leave.

3   E.g., Reply at 4 & n.9 (proposing to compare short-term military leave with short-term sick

4   leave).  But, plaintiff will still be able to compare the average duration of military leave to

5   the average duration of other types of leave and that comparison will drive resolution of

6   whether or not the types of leaves are comparable.

7                          ii.         **Whether Different CBA Rules Governing Employee**

8                                      **Scheduling Defeats Commonality**

9                  Second, defendant explains that it treats an employee's absence from work as a

10   "leave" only if the absence conflicts with the employee's work schedule.  Opp. at 6.

11   Because the various CBAs governing the work groups have different levels of control and

12   flexibility over scheduling, defendant contends there is no common evidence concerning

13   an employee's ability to take leave.  Id.  For example, pilots have a monthly bidding

14   process based on seniority.  Berry Decl., Ex. A, Dkt. 84-9, at 59:25–60:5.  Once a

15   monthly schedule is assigned, pilots can trade flights with other pilots, with some

16   restrictions.  Id., Ex. A, Dkt. 84-9 at 61:17–63:4; 71:7–11.  Conversely, non-pilots have

17   different CBAs and less flexible levels of control over work schedules.  Opp. at 7.  For

18   example, dispatchers bid on work schedules annually and have a repeating cycle of days

19   on and off.  Berry Decl., Ex. L, Dkt. 86, at pp. 93–94, at 21:16–22:25; id., Ex. 3 to Ex. L,

20   Dkt. 86, at 111–12, 116–22.

21                  The regulation implementing USERRA provides that one factor to consider is "the

22   ability of the employee to choose when to take the leave."  20 C.F.R. § 1002.150(b).  The

23   parties differ on whether the ability to choose refers to the event causing the leave itself,

24   e.g., an employee usually chooses when to take vacation leave but does not choose

25   when he or she gets sick, or to the ability of an employee to arrange and rearrange his or

26   her work schedule around the event causing the leave such that the employer counts the

27   absence as leave.

28                  Defendant's argument regarding the voluntariness factor is without merit.  In

Waltermyer v. Aluminum Co. of America, 804 F.2d 821, 825 (3d. Cir. 1986), the Third Circuit held that employees on military leave were entitled to holiday pay because the employees' union contract provided for holiday pay for employees performing jury duty, testifying in court, and taking sick leave.  In discussing the ability of the employees' ability to choose, the court recognized that employees "whose absence during the holiday week is involuntary and through no fault of their own receive holiday pay. . . . In those instances the government compels the employees' attendance and the worker, presumably, does not choose when to comply with this obligation." Id.  The court then compared those absences to military training, stating "[p]articlarly important is the fact that the guardsmen have no individual voice in selecting the weeks they will be on active duty.  Military superiors set the time for training which is both compulsory and short." Id.

Waltermyer's discussion of voluntariness indicates that the appropriate measure of voluntariness is whether the employee has control over the absence.  Indeed, in the final rule promulgating 20 C.F.R. § 1002.150(b), DOL summarized Waltermyer as follows: "the court found that because military leave was similarly involuntary, it was comparable to other types of involuntary absences from work and should be afforded the holiday pay." Uniformed Services Employment and Reemployment Rights Act of 1994, As Amended, 70 Fed. Reg. 75,246, 75,264 (Dec. 19, 2005).  Thus, in comparing the ability of the employee to choose when to take the leave, the appropriate focus is whether the absence is voluntary or involuntary, not the level of control an employee has selecting his or her work schedule.

Defendant also argues an employee's ability to choose when to take leave impacts the duration factor.  Opp. at 6.  For example, a pilot and a mechanic who both serve in the military for seven days likely will take military leave of different durations because the pilot has much more flexibility in choosing his or her work schedule compared to the mechanic.

USERRA requires employers to provide "such other rights and benefits not determined by seniority as are generally provided by the employer of the person to

United States District Court
Northern District of California

1   employees having <u>similar seniority, status, and pay</u> who are on furlough or leave of

2   absence under a contract, agreement, policy, practice, or plan . . . ."  38 U.S.C.

3   § 4316(b)(1)(B) (emphasis added); <u>see also</u> 20 C.F.R. § 1002.150(a) ("The non-seniority

4   rights and benefits to which an employee is entitled during a period of service are those

5   that the employer provides to <u>similarly situated</u> employees by an employment contract,

6   agreement, policy, practice, or plan in effect at the employee's workplace." (emphasis

7   added)).  As plaintiff's counsel admitted at the hearing, USERRA requires pilots to be

8   compared against other pilots, flight attendants would be compared against flight

9   attendants, and so on.

10       With that merits-focused consideration in mind, the duration of short-term military

11  leave compared to other forms of paid leave is susceptible to common proof.  As

12  discussed above, plaintiff can compute and compare the average duration of leaves for

13  similarly situated employees.  While that may later dictate the need for subclasses, it

14  does not defeat a finding of commonality.

15              **iii.       Whether CBA-Specific Terms for Sick Leave Accrual**

16                          **Defeats Commonality**

17       Third, defendant asserts that paid sick leave is an accrual-based benefit with

18  different accrual rates and caps on accrual determined by the different covered CBAs.

19  Opp. at 9.  Because of these differences in sick leave accrual, defendant contends that

20  there cannot be a common answer to whether paid sick leave is comparable to military

21  leave.  <u>Id.</u> at 10.  Plaintiff responds that all class members have received paid sick leave,

22  regardless of work group, throughout the entire class period.  Reply at 5.  According to

23  plaintiff, the comparability factors can be evaluated with common evidence such as

24  payroll data, corporate documents, and testimony.  <u>Id.</u>

25       Defendant's argument is not persuasive for a few reasons.  First, as it details in

26  the opposition, Southwest's sick leave policies are common to all employees within each

27  work group, which would permit comparison across similarly situated employees.

28  Second, by definition, all leave that is a "right and benefit" under USERRA is accrual

1   based.  See 38 U.S.C. § 4303(2).  Whether that leave accrues upon employment, in the

2   case of military leave, or after working a certain period of time, in the case of sick leave,

3   does not impact how Southwest accounts for leave that has already occurred.  That is,

4   Southwest has already recorded the instances of sick leave, which can be averaged and

5   then compared to military leave.  It may be the accrual rates and caps on sick leave

6   mean that Southwest employees took less sick leave than if Southwest did not restrict

7   sick leave, but that simply means the average sick leave is shorter in duration, a fact that

8   may benefit defendant in the duration comparison.

9        Third, the fact that sick leave accrues after the period of work can also be viewed

10   as a merits question speaking to the purpose of the leave.  For example, in Hoefert, 438

11   F. Supp. 3d at 739, the court compared sick leave to military leave and noted that "the

12   purposes are different because military absences are forward looking, whereas sick leave

13   is backward looking."  While military leave "is provided as the need arises," sick leave "is

14   provided (accrues or is earned) based on past days worked."  Id.  Similarly, in Duffer v.

15   United Continental Holdings, Inc., 173 F. Supp. 3d 689, 705 (N.D. Ill. 2016), the district

16   court indicated that sick leave had a different purpose than military leave, the former was

17   "compensation for past work."

18                    iv.        Commonality Conclusion

19        Plaintiffs remaining three questions do not meet the commonality requirement

20   because they either parrot USERRA or address an affirmative defense that does not

21   speak to whether the class members have suffered the same injury.  See Dukes, 564

22   U.S. at 349–50 ("Any competently crafted class complaint literally raises common

23   questions. . . . Is that an unlawful employment practice?  What remedies should we get?

24   Reciting these questions is not sufficient to obtain class certification." (quotation marks

25   and citations omitted)).

26        Nonetheless, plaintiff has identified two common questions that are likely to drive

27   resolution of the litigation.  The first is a pure question of law.  The second is a question

28   of fact and Southwest has raised plausible concerns that the evidence used to answer

United States District Court
Northern District of California

1    the duration question may not be common.  Nonetheless, in Dukes, id. at 355, the

2    Supreme Court has indicated that "a uniform employment practice" can "provide the

3    commonality needed for a class action."  In this case, Southwest maintains uniform

4    practices for each work group because it provides paid leave for certain types of leave

5    and denies paid leave for military leave.

6            Accordingly, plaintiff meets the commonality requirement of Rule 23(a)(2).

7                    **c.      Typicality**

8            Rule 23(a)(3) requires that the claims of the named plaintiff be typical of those of

9    the proposed class.  Fed. R. Civ. P. 23(a)(3).  "The test for typicality 'is whether other

10   members have the same or similar injury, whether the action is based on conduct which

11   is not unique to the named plaintiffs, and whether other class members have been injured

12   by the same course of conduct.'"  Sandoval v. Cnty. of Sonoma, 912 F.3d 509, 518 (9th

13   Cir. 2018) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).

14   "Typicality refers to the nature of the claim or defense of the class representative, and not

15   to the specific facts from which it arose or the relief sought."  Hanon, 976 F.2d at 508

16   (citation omitted).

17          It is evident that the nature of Huntsman's claim is the same as any other class

18   member because each class member has been denied payment for short-term military

19   leave.  Similar to class members, Huntsman alleges that he "has routinely taken short-

20   term military leave," Compl. ¶ 9, and Southwest does not pay employees who have taken

21   short-term military leave, id. ¶ 2.

22          Defendant argues that plaintiff's claim is barred by res judicata because he could

23   have raised this same claim in Huntsman I but failed to do so.  Opp. at 11–13.

24   Defendant's argument is not to the contrary for two reasons.  First, defendant has not

25   established that res judicata, if successful, would even reach plaintiff's claims.  Claim

26   preclusion requires "(1) an identity of claims, (2) a final judgment on the merits, and (3)

27   privity between parties."  Howard v. City of Coos Bay, 871 F.3d 1032, 1039 (9th Cir.

28   2017) (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322

F.3d 1064, 1077 (9th Cir. 2003)).  "[T]he claim preclusion 'inquiry is modified in cases where the earlier action was dismissed in accordance with a release or other settlement agreement.'" Wojciechowski v. Kohlberg Ventures, LLC, 923 F.3d 685, 689 (9th Cir. 2019) (quoting U.S. ex rel. May v. Purdue Pharma L.P., 737 F.3d 908, 913 (4th Cir. 2013)).  In such cases, "[a] settlement can limit the scope of the preclusive effect of a dismissal with prejudice by its terms." Id. (quoting U.S. ex rel. Barajas v. Northrop Corp., 147 F.3d 905, 911 (9th Cir. 1998)).

In the first case between Huntsman and Southwest, Huntsman I, No. 17-cv-3972-JD (N.D. Cal.), the parties entered into a settlement agreement and the terms of that settlement agreement determine whether plaintiff released his subsequent claim in this case.  That settlement agreement only released claims that "(1) arise from or relate to the accrual of Sick Leave during periods of Short-Term Military Leave . . . , or (2) arise from or relate to employee or employer contributions to Class Members' 401(k) accounts." Supplemental Declaration of Michael Scimone ("Scimone Supp. Decl."), Dkt. 91-4, Ex. 3, § XIV.  In contrast, plaintiff's claim here is that Southwest failed to pay employee wages and/or salaries during periods of short-term military leave.  Compl. ¶ 33.  It is plausible that there is no overlap between the settlement agreement and plaintiff's claims such that the present USERRA claim was not released in the prior action, though the court makes no finding on the merits of defendant's res judicata affirmative defense as it goes to the merits of plaintiff's claim.

Second, even if defendant's res judicata defense applies, that would not necessarily defeat certification.  As stated by the Ninth Circuit, "[d]efenses unique to a class representative counsel against class certification only where they 'threaten to become the focus of the litigation.'" Rodriguez v. Hayes, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508).  It is not clear at this stage whether this defense is likely to become the focus of the litigation, but given the narrow scope of the settlement agreement, defendant has not demonstrated that the res judicata defense necessitates a finding that plaintiff is atypical.  See Kihn v. Bill Graham Archives, LLC, 445 F. Supp. 3d

234, 247 (N.D. Cal. 2020) (determining that affirmative defenses required more factual and legal development before finding they threatened to become focus of litigation).

The court finds that plaintiff's claim is typical of the proposed class's claims.

### d.    Adequacy

Rule 23(a)(4) requires that the representative party will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit has set forth a two-part test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir. 2003).

Additionally, Rule 23(g) requires that a district court appoint class counsel for any class that is certified and further lists the following four factors relevant to such appointment: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions or other complex litigation and the type of claims in the litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g).  A court may also consider the proposed counsel's professional qualifications, skill, and experience, as well as such counsel's performance in the action itself.  In re Emulex Corp., 210 F.R.D. 717, 720 (C.D. Cal. 2002) (citations omitted).

With respect to plaintiff's adequacy to serve as class representative, defendant argues that he is not adequate because he lacks knowledge of the terms of CBAs for the non-pilot work groups.  Opp. at 14.  According to defendant, plaintiff admitted that he has no knowledge about how schedules work for the other work groups, the terms of the other CBAs, whether other work groups distinguish between "short-term" and "long-term" military leave, or whether other work groups have similar handbooks as pilots.  Id.

Defendant's argument that plaintiff lacks the requisite knowledge to represent other class members is not persuasive.  The facts here are easily distinguishable from cases such as Koenig v. Benson, 117 F.R.D. 330, 337 (E.D.N.Y. 1987), where the

1    plaintiff demonstrated "an alarming unfamiliarity with the suit," or McPhail v. First

2    Command Financial Planning, Inc., 247 F.R.D. 598, 612 (S.D. Cal. 2007), where one

3    plaintiff "never recalled seeing the First Amended Complaint" and "did not recognize the

4    names of her attorneys or their respective law firms," and the other plaintiff was deployed

5    overseas and never sat for a deposition.  Plaintiff testified that he is "comfortable

6    representing any individual . . . who's taken short-term military leave for Southwest

7    Airlines," because he is "familiar with USERRA."  Scimone Supp. Decl., Ex. 2 at 106:11–

8    21.  Indeed, plaintiff Huntsman is familiar with the broad contours of a USERRA claim

9    because he previously was class representative in a prior USERRA case against

10   Southwest.  See Huntsman I, No. 17-cv-3972-JD.

     Defendant does not oppose the second prong of the Rule 23(a)(4) analysis, that

12   is, whether plaintiff and his counsel will vigorously prosecute this action on behalf of the

13   class.  Nor does defendant oppose plaintiff's choice for co-lead class counsel.  Co-lead

14   class counsel, Outten & Golden LLP and Block & Leviton LLP, have experience in and

15   knowledge regarding litigating employment class action cases.  Scimone Decl. ¶¶ 4–10;

16   Declaration of R. Joseph Barton, Dkt. 80; Declaration of Peter Romer-Friedman, Dkt. 81;

17   Declaration of Thomas G. Jarrard, Dkt. 82; Declaration of Matthew Crotty, Dkt. 83.  Their

18   performance in this action to date has been sufficient, including successfully litigating a

19   motion to transfer venue and a motion for judgment on the pleadings.

20   Thus, plaintiff meets the adequacy prong of Rule 23(a) and co-lead class counsel

21   meet the Rule 23(g) requirements.

22   **2.     Rule 23(b)(3)**

23   Once a plaintiff satisfies Rule 23(a), he or she may maintain a class action under

24   Rule 23(b)(3) if the court finds that "the questions of law or fact common to class

25   members predominate over any questions affecting only individual members," and "a

26   class action is superior to other available methods for fairly and efficiently adjudicating

27   the controversy."  Fed. R. Civ. P. 23(b)(3).

28

United States District Court
Northern District of California

1

### a.    Predominance

2    "The predominance inquiry under Rule 23(b)(3) tests whether proposed classes

3    are sufficiently cohesive to warrant adjudication by representation."  In re Hyundai & Kia

4    Fuel Economy Litig., 926 F.3d 539, 557 (9th Cir. 2019) (quoting Amchem Prods., Inc. v.

5    Windsor, 521 U.S. 591, 623 (1997)).  "It presumes that the existence of common issues

6    of fact or law have been established pursuant to Rule 23(a)(2), and focuses on whether

7    the common questions present a significant aspect of the case and they can be resolved

8    for all members of the class in a single adjudication."  Id.  "[I]f so, there is clear

9    justification for handling the dispute on a representative rather than on an individual

10   basis."  Id.

11   The predominance analysis is "far more demanding than Rule 23(a)'s commonality

12   requirement."  Amchem Prods., 521 U.S. at 623–24.  But the rule "does not require a

13   plaintiff seeking class certification to prove that each element of their claim is susceptible

14   to classwide proof," so long as one or more common questions predominate.  Castillo v.

15   Bank of Am., NA, 980 F.3d 723, 730 (9th Cir. 2020) (quoting Amgen Inc. v. Conn. Ret.

16   Plans & Tr. Funds, 568 U.S. 455, 469 (2013)).

17   "Considering whether 'questions of law or fact common to class members

18   predominate' begins, of course, with the elements of the underlying cause of action."

19   Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011) (quoting Fed. R.

20   Civ. P. 23(b)(3)).  In this case, plaintiff alleges a single cause of action for violation of title

21   38 U.S.C. § 4316(b)(1).  Compl. ¶¶ 46–53.  In alleging a section 4316(b)(1) violation, a

22   plaintiff must show the following elements: (1) that he or she is absent from a position of

23   employment; (2) that absence is by reason of service in the uniformed services; and (3)

24   that he or she was denied other rights and benefits not determined by seniority and

25   generally provided by the employer to other employees who are furloughed or on a leave

26   of absence and who have similar seniority, status, and pay.  The two common issues

27   identified by plaintiff address two aspects of the third element: whether paid leave is a

28   right and benefit; and whether short-term military leave is comparable to other forms of

United States District Court
Northern District of California

1    paid leave.

2         The Ninth Circuit has held that "predominance in employment cases is rarely

3    defeated on the grounds of differences among employees so long as liability arises from

4    a common practice or policy of an employer." Senne v. Kansas City Royals Baseball

5    Corp., 934 F.3d 918, 938 (9th Cir. 2019) (quoting 7 Newberg on Class Actions § 23:33

6    (5th ed. 2012)).  "Although the existence of blanket corporate policies is not a guarantee

7    that predominance will be satisfied, such policies 'often bear heavily on questions of

8    predominance and superiority'." Id. (quoting In re Wells Fargo Home Mortg. Overtime

9    Pay Litig., 571 F.3d 953, 958 (9th Cir. 2009)).  The comparability analysis required by

10   USERRA implicates Southwest's policies, which uniformly deny paid military leave to its

11   various work groups and uniformly pay them for other types of leave.

12        Defendant advances three arguments against predominance.  First, Southwest

13   argues that it has a laches defense against plaintiff and class members that have slept on

14   their rights.  Opp. at 15.  Second, individual inquiries into each employee's military

15   service dates will predominate.  Id. at 18.  Third, plaintiff has failed to provide a damages

16   model because he has testified that military leave records are flawed and inaccurate.  Id.

17   at 20–21.  The court discusses each in turn.

18                    i.      **Laches**

19        According to defendant, laches involves an individualized inquiry into whether a

20   plaintiff or putative class member had notice that his or her rights were purportedly

21   violated, and those individualized inquiries defeat predominance.  Opp. at 16.  "'Laches is

22   an equitable time limitation on a party's right to bring suit,' resting on the maxim that 'one

23   who seeks the help of a court of equity must not sleep on his rights.'" Jarrow Formulas,

24   Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002) (citations omitted).  To

25   establish a laches defense, a defendant must prove "unreasonable delay by the plaintiff

26   and prejudice to itself." Couveau v. Am. Airlines, Inc., 218 F.3d 1078, 1083 (9th Cir.

27   2000) (citation omitted).

28        As a general matter, courts must consider affirmative defenses in undertaking the

1   predominance analysis.  2 Newberg, § 4:55.  There are two competing considerations.

2   On the one hand, the mere existence of affirmative defenses "does not compel a finding

3   that individual issues predominate over common ones."  Williams v. Sinclair, 529 F.2d

4   1383, 1388 (9th Cir. 1975); see also Senne, 934 F.3d at 938 ("A proposed (b)(3) class

5   may be certified as long as 'one or more of the central issues in the action are common to

6   the class and can be said to predominate . . . even though other important matters will

7   have to be tried separately, such as damages or some affirmative defenses peculiar to

8   some individual class members.'" (alteration in original) (quoting Tyson Foods, 136 S. Ct.

9   at 1045)).  On the other hand, "a class cannot be certified on the premise that [the

10  defendant] will not be entitled to litigate its . . . defenses to individual claims."  Dukes, 564

11  U.S. at 367.

12         Synthesizing these two requirements together, as long as a defendant is able to

13  assert individualized defenses at a later stage, the mere existence of such a defense

14  does not defeat certification.  See 2 Newberg, § 4:55; see also Kivett v. Flagstar Bank,

15  333 F.R.D. 500, 506 (N.D. Cal. 2019) ("[C]ourts traditionally have been reluctant to deny

16  class action status under Rule 23(b)(3) simply because affirmative defenses may be

17  available against individual members." (alteration in original) (quoting Rodman v.

18  Safeway Inc., 2015 WL 2265972, at *3 (N.D. Cal. May 14, 2015)); Nitsch v. Dreamworks

19  Animation SKG Inc., 315 F.R.D. 270, 313 (N.D. Cal. 2016); Herrera v. LCS Fin. Servs.

20  Corp., 274 F.R.D. 666, 681 (N.D. Cal. 2011).

21         The circumstances in which an affirmative defense defeats certification are limited

22  to situations in which the affirmative defenses are unusually important or are coupled with

23  other individual issues.  2 Newberg, § 4:55.  This latter consideration was present in the

24  two cases Southwest cites in support of its laches theory where the defendants pleaded

25  several affirmative defenses that could not be adjudicated through common facts or

26  evidence.  See Valenzuela v. Union Pac. R.R. Co., 2017 WL 679095, at *14 (D. Ariz.

27  Feb. 21, 2017), In re SFPP Right-of-Way Claims, 2017 WL 2378363, at *17–18 (C.D.

28  Cal. May 23, 2017).

1   This case does not have the same considerations as <u>Valenzuela</u> or <u>In re SFPP</u>

2   because defendant only identifies one potential affirmative defense for the predominance

3   inquiry.  Even if defendant had that information available, the district court in <u>Kelly v. City</u>

4   <u>and County of San Francisco</u>, 2005 WL 3113065, at *3 (N.D. Cal. Nov. 21, 2005),

5   recognized that there is "no authority for defendants' claim that each element of the

6   laches analysis will require a fully individualized inquiry."  Rather, "common evidence

7   will . . . almost certainly be involved in the laches analysis."  <u>Id.</u>

8   In sum, there are sufficient safeguards at later stages of this litigation to permit

9   defendant to assert a laches defense against individual class members and/or plaintiff.

10  <u>See</u> <u>Jimenez</u>, 765 F.3d at 1168 (affirming class certification where "the district court was

11  careful to preserve [the defendant's] opportunity to raise any individualized defense it

12  might have at the damages phase of the proceeding").

13  <p style="text-align:center"><strong>ii.        Individual Inquiries into Military Service Dates</strong></p>

14  Defendant states that plaintiff routinely took military leave from Southwest on

15  dates that were not reflected in his military service records.  Opp. at 18.  In written

16  discovery responses and at his deposition, plaintiff stated that he performed military

17  service on days that were included in Southwest's leave records but were not reflected in

18  the Air Force's service records.  <u>Id.</u>  According to defendant, plaintiff also testified that

19  Southwest's leave records were "flawed" and "inaccurate."  <u>Id.</u> at 19.  Based on these

20  factual issues, defendant argues that individual inquiries into military service dates will

21  predominate.  <u>Id.</u> at 18.

22  Southwest's arguments implicate two separate elements of plaintiff's USERRA

23  claim.  Whether plaintiff actually performed military service on the days he claims speaks

24  to whether plaintiff was "absent from a position of employment <u>by reason of service in the</u>

25  <u>uniformed services</u>."  38 U.S.C. § 4316(b)(1) (emphasis added).  Whether Southwest's

26  own payroll records are inaccurate or flawed goes to the comparability analysis required

27  by section 4316(b)(1).

28  With regard to the first argument, Southwest has identified 14 days in 2017 and

<div style="writing-mode:vertical">United States District Court<br>Northern District of California</div>

1   2018 during which plaintiff took military leave from Southwest and for which the military

2   has no record of plaintiff performing military service.  Opp. at 18.  According to defendant,

3   this apparent discrepancy undermines plaintiff's claim that he should be paid for those

4   days he was performing military service.  Id.  Plaintiff disputes that contention and has

5   proffered various explanations why the military records do not accurately reflect these

6   days.  See, e.g., Berry Decl., Ex. C.  He also argues that there is no requirement that

7   plaintiffs with USERRA claims must independently verify the accuracy of an employer's

8   payroll and leave records.  Reply at 12.

9          Defendant's argument is not persuasive because USERRA does not require

10  persons who serve less than 31 days to submit documentation to their employer upon

11  return from a leave of absence.  See 38 U.S.C. §§ 4312(e), (f), 4316(e)(2); see also 20

12  C.F.R. § 1002.121 ("Is the employee required to submit documentation to the employer in

13  connection with the application for reemployment?  Yes, if the period of service exceeded

14  30 days and if requested by the employer to do so.").  Similarly, the military is generally

15  required to verify an employee's absence, regardless of duration, due to uniformed

16  service to civilian employers, but only upon the employer's request.  See Dep't of Def.

17  Instruction 1205.12, at 9,

18  https://www.esgr.mil/Portals/0/Volunteer%20Resources/ombudsman%20services/5%20y

19  ear%20exemption%20USERRA%20policy%20memos/Department%20of%20Defense%2

20  0Instruction%20120512p.pdf?ver=2019-04-19-102455-327 (Feb. 24, 2016).  As stated by

21  defendant's counsel at the hearing, Southwest does not routinely request verification of

22  its employee's period of military service and only verified in this case because plaintiff

23  sued the company.

24         Moreover, defendant has not persuasively demonstrated that plaintiff would need

25  to present evidence that varies from class member to member.  Assuming plaintiff had no

26  justification[3] for taking military leave from Southwest for the 14 days defendant identified

27  _____

28  [3] It may be the case that plaintiff had a valid reason why each of the 14 days was not
    reported by the Air Force such that he was justified in taking military leave from

United States District Court
Northern District of California

1   in 2017 and 2018, plaintiff's military service records confirm that he did serve on 47 out of

2   a total 61 days on which he took military leave from Southwest.[4]  Declaration of John

3   Freed ("Freed Decl."), Dkt. 84-5, ¶ 2 (explaining that Exhibit 1 includes a chart "that

4   identifies Jayson Huntsman's military leaves Southwest in 2017 and 2018"); see Dkt. 84-

5   5; Ex. 1 at 4.  In other words, the discrepancies identified by defendant amount to twenty-

6   three percent (14 divided by 61) of all military leave days in 2017 and 2018.  While not

7   insignificant, a 23 percent error rate—inferred from one data point, i.e., one employee—

8   does not support a conclusion that class members will need to present individualized

9   evidence to support their military service.

10          Defendant's second argument is that plaintiff has testified that Southwest's own

11   military leave records are "flawed" and "inaccurate."  Southwest has not demonstrated

12   that plaintiff's statements, selectively pulled from his deposition testimony, discredits its

13   own payroll records to such an extent that the records are unreliable as common

14   evidence.  For example, plaintiff testified that he "performed military duty on days off

15   showing on my SWA records that are not annotated accordingly" and responded in the

16   affirmative to the question: "And so in that regard Southwest's records are inaccurate? "

17   Berry Decl., Ex. A, Dkt.84-9, at 257:19–25.  These quotes give no indication of how

18   pervasive the potential flaws might be.[5]  Nor is it clear how pervasive those flaws might

19

20   _____

Southwest.  This goes to the merits of plaintiff's individual claim and the court makes no
21   finding on this issue.

[4] It is not clear whether the number of unverified days is in fact 14 days.  Of the 14 days
22   Southwest identifies in its opposition, Opp. at 18 n.12, three are not marked on its own
records as days on which plaintiff took military leave, which instead yields only 11 days.
23   Compare Freed Decl., Ex. 1, Dkt. 84-6 at 4 with Berry Decl., Ex. C, Dkt. 84-11.  Whether
the true number is 14 days or 11 days does not substantively alter the quantitative
24   element of the analysis.

[5] Defendant cites Exhibit C to the Berry Declaration where plaintiff has identified
25   instances where his military service record displayed dates that were not recorded on
Southwest's leave record.  Defendant has made no attempt to quantify the extent of the
26   supposed inaccuracies and from a brief review of Exhibit C there are a handful of days
from June 2012 to May 2020 for which the Air Force has records, but Southwest does
27   not.  Berry Decl., Ex. B at 7–13 (Air Force records), Ex. C (plaintiff's excel chart of
discrepancies).  There is one exception where a 21-day period of service is missing from
28   Southwest's payroll data, which might support defendant's argument, but it has not put
forward a quantitative analysis of the errors in its own payroll data.

United States District Court
Northern District of California

United States District Court
Northern District of California

be when applied to the class as a whole because defendant only focuses on plaintiff's records.

Southwest records when its employees take leave and those records specify whether that leave is sick, jury duty, bereavement, or military leave. Those records are reliable enough to permit a comparison of the different types of leave on a class-wide basis and the individual issues identified by defendant do not overcome the common issues. If, however, plaintiff were to rely on records other than Southwest's to prove leave days taken, the court would likely be forced to reconsider this determination.

### iii.     Damages Model

Citing plaintiff's testimony that Southwest and the military's records are "inaccurate" and "flawed," defendant argues that plaintiff cannot also claim those records are reliable for calculating damages. Opp. at 21. Defendant also argues this case is similar to others that have denied certification because the plaintiffs in those cases failed to show that the damages stemmed from the defendant's actions that created the legal liability. Id. In response, plaintiff states that he has described a common methodology to calculate damages based on periods of leave reported in Southwest's payroll records during the class period. Reply at 13. Plaintiff points out that defendant does not argue that the damages approach is flawed, only that defendant questions the reliability of the records based on the apparent errors in plaintiff's military service records. Id.

Levya v. Medline Industries Inc., 716 F.3d 510 (9th Cir. 2013), guides the damages model analysis in employment cases. There, the Ninth Circuit reversed a denial of class certification where the district court had determined that the damages inquiry would be highly individualized. Id. at 513. On appeal, the Circuit noted that damages determinations are individualized in nearly all wage-and-hour class actions and that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." Id. at 513–14. The Levya court acknowledged the principle from the Supreme Court's decision in Comcast Corp. v. Behrend that the plaintiff must show that his or her damages "stemmed from the defendant's actions that created the legal

24

1   liability." Id. at 514 (citing Comcast Corp. v. Behrend, 569 U.S. 27, 38 (2013)).  The Ninth

2   Circuit approved a damages model (and distinguished Comcast) where the defendant's

3   computerized payroll and time-keeping database would enable the court to accurately

4   calculate damages and related penalties for each claim.  Id.

5       Here, plaintiff has alleged only one claim for violation of USERRA and if plaintiff is

6   able to prove liability, then such a finding would mean that Southwest was liable for any

7   unpaid military leave.  Indeed, plaintiff's requested relief would include requiring

8   Southwest to pay the compensation that plaintiff and class members should have

9   received for periods of short-term military leave.  Compl., Prayer for Relief.  Defendant's

10  computerized payroll information records military leave and serves as a reasonable

11  measure of damages for unpaid military leave.  Additionally, defendant's attempt to

12  undermine the reliability of its own records with plaintiff's testimony that it solicited, and it

13  injected into this case is unpersuasive.

14      In sum, the common issues identified by plaintiff, whether paid leave is a "right and

15  benefit" under 38 U.S.C. § 4316(b) and whether short-term military leave is comparable

16  to other forms of paid leave, can be resolved on a classwide basis.  Because plaintiff's

17  USERRA claim turns on Southwest's generally applicable policies, predominance is met.

18  See Senne, 934 F.3d at 938.

19          **b.      Superiority**

20      The superiority prong of Rule 23(b)(3) requires a court to determine "whether the

21  objectives of the particular class action procedure will be achieved in the particular case."

22  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1023 (9th Cir. 1998), overruled on other

23  grounds by Dukes, 564 U.S. at 338.  Rule 23(b)(3) provides four factors to evaluate

24  superiority: (1) the class members' interests in controlling litigation, (2) the nature and

25  extent of other litigation concerning the same controversy, (3) the desirability of

26  concentrating the litigation of the claims in this forum, and (4) the difficulties of managing

27  the case as a class action.  Fed. R. Civ. P. 23(b)(3).

28      Significantly, defendant does not contest any of plaintiff's superiority contentions.

United States District Court
Northern District of California

25

1    As to the first factor, "[w]here recovery on an individual basis would be dwarfed by the

2    cost of litigating on an individual basis, this factor weighs in favor of class certification."

3    Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations

4    omitted).  This factor is similar to the commonality test; underlying both tests "is a

5    concern for judicial economy."  Id.  Plaintiff meets that standard here since the cost of

6    litigating to recover the brief periods of time for which an employee takes short-term

7    military leave (i.e., less than 2 weeks) are substantial relative to the individual relief.

8    Neither party has identified other litigation against Southwest on the same issue and this

9    court has already denied defendant's motion to transfer venue.  Finally, neither party has

10   identified any manageability concerns.

11          The court finds plaintiff satisfies the superiority element and further finds that

12   plaintiff meets all the requirements to certify a class.

13          **3.      Motion to File Under Seal**

14          Concurrent with its opposition to the motion for class certification, defendant

15   moves to file certain documents under seal.  Dkt. 84.  Defendant seeks to seal Exhibits A

16   through C of the Berry Declaration, Dkts. 84-9 to 84-11; a portion of the Freed

17   Declaration along with Exhibits 1 and 2 to that declaration, Dkts. 84-5 to 84-7; and those

18   portions of its opposition brief that refer to material from the aforementioned Berry and

19   Freed Declarations, Dkt. 84-3.  Plaintiff designated these materials as "confidential" under

20   the parties' protective order and has not filed any response or opposition to the motion.

21          Neither party has complied with Civil Local Rule 79-5.  Specifically, an

22   administrative motion to file under seal must be accompanied by a declaration

23   establishing that the documents sought to be filed under seal, or portions thereof, are

24   sealable.  Civ. L.R. 79-5(d)(1)(A).  Defendant did not file such a declaration.  Defendant

25   has also failed to indicate, by highlighting or other clear method, the portions of the

26   unredacted opposition brief that have been omitted from the redacted version of the brief.

27   Civ. L.R. 79-5(d)(1)(D).  The redacted and unredacted versions of the opposition brief

28   also fail to display the proper notation as required by Local Rule 79-5(d)(1)(C) and (D).

United States District Court
Northern District of California

1      Additionally, where, as here, a submitting party (defendant) seeks to file under

2  seal a document designated as confidential by a designating party (plaintiff) within four

3  days of the filing of the motion to file under seal, the designating party must file a

4  declaration establishing that all of the designated material is sealable.  Civ. L.R. 79-

5  5(e)(1).  Plaintiff has failed to do so.

6      Turning to the merits of defendant's motion, there is a general presumption in

7  favor of public access to federal court records.  Nixon v. Warner Commc'ns, Inc., 435

8  U.S. 589, 597 (1978).  "[T]he proponent of sealing bears the burden with respect to

9  sealing.  A failure to meet that burden means that the default posture of public access

10 prevails."  Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1182 (9th Cir. 2006).

11     When a request to seal documents is made in connection with a motion, the court

12 must determine whether the parties are required to overcome that presumption with

13 "compelling reasons" or with "good cause."  A party seeking to seal materials submitted

14 with a motion that is "more than tangentially related to the merits of the case"—regardless

15 whether that motion is "technically dispositive"—must demonstrate that there are

16 compelling reasons to keep the documents under seal.  Ctr. for Auto Safety v. Chrysler

17 Grp., LLC, 809 F.3d 1092, 1101–02 (9th Cir. 2016).  Conversely, if the motion is only

18 tangentially related to the merits, "a 'particularized showing," under the 'good cause'

19 standard of Rule 26(c) will 'suffice[] to warrant preserving the secrecy of sealed discovery

20 material attached to non-dispositive motions." Kamakana, 447 F.3d at 1180 (alteration in

21 original) (quoting Foltz v. State Farm. Mut. Auto. Ins. Co., 331 F.3d 1122, 1135, 1138 (9th

22 Cir. 2003)).  Generally, courts in the Ninth Circuit apply the compelling reasons standard

23 to class certification motions.  See A.B. v. Pac. Fertility Ctr., 441 F. Supp. 3d 902, 906

24 (N.D. Cal. 2020); Yan Mei Zheng v. Toyota Motor Corp., 2019 WL 6841324, at *1 (N.D.

25 Cal. Dec. 16, 2019) (collecting cases); Racies v. Quincy Bioscience, LLC, 2017 WL

26 6405612, at *2 (N.D. Cal. Dec. 15, 2017).

27     Here, the information sought to be sealed includes plaintiff's personal information

28 relating to his leaves of absence from Southwest, his military service records, tax and

United States District Court
Northern District of California

United States District Court
Northern District of California

1   financial information related to his military service, and other sensitive personal

2   information.  Dkt. 84 at 2.  Defendant argues that plaintiff has designated these materials

3   as confidential under the parties' protective order.  Of course, such a designation, without

4   more, is insufficient to demonstrate a compelling reason to seal that document.  See Civ.

5   L.R. 79-5(d)(1)(A) ("Reference to a stipulation or protective order that allows a party to

6   designate certain documents as confidential is not sufficient to establish that a document,

7   or portions thereof, are sealable.").

8        Defendant also argues that certain employment records can be sealable.  Dkt. 84

9   at 1.  The cases defendant cites, e.g., San Diego Trolley, Inc. v. Superior Ct., 87 Cal.

10   App. 4th 1083, 1097 (Ct. App. 2001); Lee v. Pep Boys-Manny Moe & Jack of Cal., 2015

11   WL 9268118, at *4 (N.D. Cal. Dec. 21, 2015), deal with California's constitutional right to

12   privacy of an employee's personnel records, which in turn is defined as those files that

13   the employer maintains relating to the employee's performance or to grievances

14   concerning the employee, Cal. Labor Code § 1198.5.  None of the cases cited deal with

15   dates of military service or anything similar.  The only plausible material to be sealed

16   relates to plaintiff's personal financial information, i.e., his IRS form W-2s.  See Pension

17   Plan for Pension Tr. Fund for Operating Eng'rs v. Giacalone Elec. Servs., Inc., 2015 WL

18   3956143, at *10 (N.D. Cal. June 29, 2015); In re Wachovia Corp. "Pick-a-Payment"

19   Mortg. Mktg. & Sales Practices Litig., 2014 WL 2905056, at *4–5 (N.D. Cal. June 26,

20   2014).

21        A review of each document to be sealed confirms that, aside from the personal

22   financial information, the material does not meet the compelling reasons standard or is

23   not narrowly tailored.  With regard to Exhibit C to the Berry Declaration, the Freed

24   Declaration and Exhibits 1 and 2 to the Freed Declaration, neither defendant nor plaintiff

25   have cited a case or proffered a compelling reason for the proposition that past dates of

26   military service are sealable.  With regard to Exhibit A to the Berry Declaration, defendant

27   has made no attempt to narrowly tailor the material to be sealed.  See Civ. L.R. 79-5(b).

28   Exhibit B to the Berry Declaration meets the compelling reason standard with respect to

United States District Court
Northern District of California

1   plaintiff's tax information but does not with regard to his dates of service.  The photos

2   taken by plaintiff when he was on an Air Force base may be sealable if they tend to

3   reveal sensitive information, but defendant has not made any particular argument as to

4   the photos.

5   In sum, both the submitting party and the designating party have procedural

6   obligations under the Civil Local Rules with which they have failed to comply.  The

7   justification proffered by defendant generally does not meet the compelling reasons

8   standard, except as articulated above.  The court is cognizant of the fact that, even

9   though defendant has filed the motion to file under seal, it is plaintiff who has designated

10  this material as confidential.  Accordingly, the court will deny the motion without prejudice

11  so that the parties may refile the motion in accordance with the procedural and

12  substantive issues identified above.

13                              **CONCLUSION**

14  For the reasons stated, the court GRANTS plaintiff's motion for class certification.

15  The court DENIES WITHOUT PREJUDICE defendant's motion to file under seal.

16  Defendant may refile its motion to file under seal within fourteen days of the date on

17  which this order is filed.

18          **IT IS SO ORDERED.**

19  Dated: February 3, 2021

20                                              /s/ Phyllis J. Hamilton

21                                              PHYLLIS J. HAMILTON
                                                United States District Judge

22

23

24

25

26

27

28