DOUGLAS J. FARMER, CA Bar No. 139646
douglas.farmer@ogletree.com
BRIAN D. BERRY, CA Bar No. 229893
brian.berry@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
One Embarcadero Center, Suite 900
San Francisco, CA 94111
Telephone: (415) 442-4810
Facsimile: (415) 442-4870

KRISTIN S. HIGGINS *(Pro Hac Vice)*
kristin.higgins@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
8117 Preston Road, Suite 500
Dallas, TX 75225
Telephone: (214) 987-3800
Facsimile: (214) 987-3927

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAYSON HUNTSMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST AIRLINES CO.,<br><br>Defendant. | Case No. 4:19-cv-00083-PJH<br><br>**DEFENDANT SOUTHWEST AIRLINES CO.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STAY** |

## I. INTRODUCTION

Southwest has established that its Rule 23(f) petition raises serious legal questions on which it has a reasonable probability of success. Coupled with the massive discovery and litigation costs associated with the post-certification phase of this case, and the absence of any harm to Plaintiff or the public, it is clear that a stay is appropriate.

Plaintiff's Opposition does not move the needle in his favor on any of the factors that inform a motion to stay pending resolution of a Rule 23(f) petition and interlocutory appeal. Rather than confront the actual issues presented by Southwest's motion, the Opposition evades them. It mischaracterizes the core arguments in Southwest's Rule 23(f) petition. It misconstrues the privacy interests of class members. It fails to reckon with the real cost and extent of class discovery, and it pretends that Plaintiff has a keen interest in the speedy resolution of his claims despite having waited years to bring them. Thus, the Court should grant Southwest's motion and stay this case.

## II. ARGUMENT

### A. The Strength of Southwest's Rule 23(f) Petition Warrants a Stay

The core of Plaintiff's Opposition is his speculation that the "[t]he Ninth Circuit is not likely to grant Southwest's petition for interlocutory appeal." Opp. at 1. But his guesswork is irrelevant because Southwest need not prove that the Ninth Circuit is more likely than not to grant the petition. Although Southwest believes the Ninth Circuit will likely grant the petition, it is enough for Southwest's petition to have "a reasonable probability or fair prospect of success," to present "a substantial case on the merits," or to raise "serious legal questions." *See Leiva-Perez v. Holder*, 640 F.3d 962, 964–70 (9th Cir. 2011)).

Southwest's petition clearly satisfies this standard. *See* Mot. at 1-3. The petition explains that the Order's predominance analysis reverses the burden of proof and disregards Southwest's right to contest absent class members' claims. Petition at 14-15. The petition also explains that the Order improperly defers until a later date the question of whether issues involving military service and Southwest's laches defense will predominate at trial. *Id.* at 15-19. And the petition explains that the Order's conclusion on commonality disregards Southwest's workgroup-specific defenses

to the "comparability" analysis under USERRA's section 4316(b).  Petition at 9-10.  These are legal questions of the type that are appropriate for interlocutory review under Rule 23(f).  *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005).

For his part, Plaintiff says "all of Southwest's arguments concern the application of law to facts," and then argues on that basis that a stay would be inappropriate.  Opp. at 4 (citing *Chamberlan*, 402 F.3d at 959).  But this is an obvious strawman argument.  At the heart of Southwest's petition are questions regarding the burdens of proof under Rule 23, the necessity of answering the Rule 23 questions at the certification stage rather than deferring them to a later stage, and the intersection of the Rule 23 requirements with the "comparability" analysis under section 4316(b) of USERRA.  Contrary to Plaintiff's assertion, these questions are not a matter of merely applying law to facts.[1]

In addition, the strength of Southwest's petition is bolstered by the *Clarkson* court's class certification order, which rejected a proposed class that covered multiple workgroups under similar circumstances.  *See Clarkson v. Alaska Airlines Inc.*, 2020 WL 4495278, at *5 (E.D. Wa. Aug. 4, 2020).  This kind of intra-circuit split presents a serious legal question.  *E.g.*, *Williams v. Warner Music Grp. Corp.*, No. 2:18-cv-09691 RGK (PJWx), 2020 WL 2303099, at *2 (C.D. Cal. Apr. 14, 2020); *Brown v. Wal-Mart Stores*, No. 5:09-cv-03339, 2012 WL 5818300, at *3 (N.D. Cal. Nov. 15, 2012).

**B.     The Balance of Hardships Strongly Favors a Stay**

As Southwest explained in its opening brief, the balance of hardships strongly favors staying the case due to the significant discovery and litigation burdens that Southwest now faces, the massive costs of expert discovery, the burden to third parties, and the potential for confusion and unnecessary privacy incursions related to the class notice process.  Mot. at 3-5.

---

[1] In a footnote, Plaintiff claims Southwest "misquotes" *In re Apple & ATTM Antitrust Litig.*, No. C 07-05152 JW, 2010 WL 11489069, at *3 (N.D. Cal. Sept. 15, 2010). Opp. at 1 n.1.  But what he really means, as he explains later in his footnote, is only that he disagrees with Southwest that its Rule 23(f) petition raises a significant legal question or presents a question of first impression.  *See* Opp. at 1 n.1.  That hardly amounts to a misquotation and, as explained above, Plaintiff's entire argument here is predicated on making a series of strawmen out of the actual grounds for appeal that Southwest articulates in its petition.

Plaintiff claims that most of the work associated with class notice is complete simply because he prepared a first draft of a Class Notice form and conducted some initial discussions with Southwest about it. Opp. at 4. He then claims to be unaware of any burden that Southwest will shoulder related to the administration of class notice. *Id.* But Plaintiff is well aware that the class notice process requires Southwest to update its data collection across all the relevant workgroups, conduct workgroup-specific data analyses to identify the potential members of the class, compare the data analyses with opposing counsel's analyses and resolve any discrepancies, and then collect the contact information for the class members. All of this amounts to a substantial burden.

In addition, issuing class notice would create a real risk of confusion among class members. This is an important consideration that weighs heavily in favor of a stay. *See* Mot. at 3 (citing *Senne v. Kansas City Royals Baseball Corp.*, No. 14-cv-00608-JCS, 2017 WL 5973487, at *3 (N.D. Cal. May 5, 2017) ("There is a possibility that class members will be confused if class notices are issued before the Ninth Circuit has resolved the pending petitions and then have to be modified or retracted as a result of rulings by the Ninth Circuit, a result that will harm Plaintiffs.")). Plaintiff does not disagree. *See* Opp. at 6.

In a footnote, Plaintiff discounts the class members' privacy interests by arguing that class members are now their clients. Opp. at 4 n.2. But this begs the question of the propriety of a stay during the pendency of a Rule 23(f) petition and any appeal. Indeed, the Ninth Circuit may decide that some or all of the class members are not properly in the class, in which case their private information would have been disclosed unnecessarily. Also, contrary to Plaintiff's suggestion, the problem is not the "protection" of class members' personal information. *See* Opp. at 4 n.2. Rather, the problem is the unnecessary disclosure of their private information in the first place. *See Brown*, 2012 WL 5818300, at *4.

Plaintiff's baseless discounting of Southwest's discovery and litigation burdens fares no better. Courts recognize that unnecessary expert fees, discovery, and litigation expenses favor a stay. *See, e.g.*, *Gray v. Golden Gate Nat. Recreational Area*, No. C 08-00722 EDL, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011) ("Defendants have shown that they would suffer substantial harm if this action is not stayed pending appeal and the Court is later reversed on the

issue of class certification, resulting in substantial time and resources being spent on the litigation, particularly expert discovery, dispositive motions and trial preparation on class claims."); *Romero v. Securus Techs., Inc.*, 383 F. Supp. 3d 1069, 1075 (S.D. Cal. 2019) (reasoning that "the prospect of substantial, unrecoverable time and resources spent on class discovery weighs in [the movant]'s favor").[2]  Courts are especially inclined to find that pretrial litigation costs amount to irreparable harm "in employment law class actions in particular."  *Pena v. Taylor Farms Pac., Inc*., No. 2:13-CV-01282-KJM-AC, 2015 WL 5103157, at *4 (E.D. Cal. Aug. 31, 2015) (citing *Brown*, 2012 WL 5818300, at *4–5).

Plaintiff has no genuine response to the fact that Southwest will incur hundreds of thousands of dollars in expert fees that may be wasted if the Ninth Circuit reverses of modifies the certification order.  *See* Mot at 4; Berry Decl. ¶ 6.  Plaintiff's only response is to note that "expert discovery is many months away."  Opp. at 5.  While it is true that the expert disclosure *deadline*, which has not yet been set, is surely many months away, the substantial work needed to meet that deadline obviously cannot wait absent a stay.  In this regard, Plaintiff's reliance on *Bally* and *Bradberry* is misplaced.  In *Bally*, the court recognized that while litigation expenses "[g]enerally" (a word Plaintiff omits from the quotation) do not demonstrate irreparable harm, the expense of *class* litigation may involve a sufficient hardship to justify a stay.  No. 18-cv-04954-CRB, 2020 WL 3035781, at *5 (N.D. Cal. June 5, 2020) (citing *Gray*, 2011 WL 6934433, at *3).  Litigation expenses did not support a stay in *Bally* because "most discovery" had already occurred.  *Id*.  That is certainly not the case here.  Similarly, the *Bradberry* court held only that "some" pretrial litigation costs did not irreparably harm to the movant, and it denied the motion to stay "without prejudice to refiling if discovery becomes burdensome."  No. C 06 6567 CW, 2007 WL 2221076, *4-5 (N.D. Cal. Aug. 2, 2007).  Discovery here will plainly be extensive and burdensome, and the

---

[2] *See also, e.g.*, *Evans v. Wal-Mart Stores, Inc*., No. CV 17-07641-AB (KK), 2019 WL 7169794, at *4 (C.D. Cal. Oct. 23, 2019) ("[T]he balance of hardships factor tilts in Defendant's favor because Defendant will likely incur unnecessary and burdensome litigation costs absent a tempo-rary stay pending Ninth Circuit review of a 23(f) Petition[.]"); *Finder v. Leprino Foods Co*., No. 1:13-cv-02059-AWI-BAM, 2017 WL 1355104, at *4 (E.D. Cal. Jan. 20, 2017) (finding that "the time to be expended on resolving questions of certification, further dispositive motions practice, giving putative class members notice of claims, and settlement discussions, all over claims that may be mooted by resolution of the appeal" favored stay).

1  burden is not limited to the Parties and the Court. It will also place a burden on third-party

2  departments of the federal government in responding to a subpoena for class members' military

3  service and pay records. *See* Mot at 2-5; Berry Decl. ¶¶ 3-6.

4       For his part, Plaintiff suggests a stay will cause him harm because he "has sought discovery

5  that would be just as relevant to his own USERRA claim as it would be to those of the Class."

6  Opp. at 5. This argument is a non-sequitur. It does not follow that *all* discovery should proceed

7  simply because *some* discovery is relevant to his individual claim. Tellingly, he cites no authority

8  for this position. And his further vague suggestion that the parties would engage in the same

9  discovery if this were a single-plaintiff case is simply untrue. *See id.* It ignores the practical

10 realities of class litigation, the scope of the class, Rule 26's proportionality standard, and the fact

11 that "[t]he difference in litigation expenses between a two-party case and a class action is

12 substantial." *Richards v. Ernst & Young LLP*, No. C-08-04988 RMW, 2012 WL 92738, at *3

13 (N.D. Cal. Jan. 11, 2012) (quoting *Del Rio v. CreditAnswers, LLC*, No. 10cv346-WQH BLM, 2010

14 WL 3418430, at *4 (S.D. Cal. Aug. 26, 2010)).[3]

15      In any event, a stay will not deprive him of his single-plaintiff discovery in the event that

16 the class is decertified. The only issue is timing. The class period stretches back some 17 years to

17 October 2004. If time were of the essence, Plaintiff or another class member would have filed this

18 suit many years ago. *See* Mot. at 4-5. But Plaintiff omitted his claim for compensation for his

19 military leaves when he filed his prior lawsuit against Southwest in 2017, despite making the same

20 "comparability" argument under USERRA. He would have raised his paid leave claims in that

21 lawsuit if delay caused hardship to him. Thus, his own litigation conduct belies his current

22 position.

---

[3] Southwest disagrees with Plaintiff's assertion that his pending discovery requests related to Southwest's data systems would be proper in a single-plaintiff case. *See* Opp. at 5. Nor does it make sense from a case management and economy perspective to bifurcate discovery at this stage and allow some of his purported single-plaintiff discovery to proceed while class discovery is stayed. *See* Opp. at 5. It would be highly inefficient for the Parties to engage in single-plaintiff discovery now, which will likely include litigation over the proper scope of that discovery, only to revisit these issues after the Rule 23(f) petition and any appeal are resolved.

**C.    The Public's Interest in Resolution of Important Issues and Judicial Economy Outweigh Plaintiff's Purported Interest in the Speedy Resolution of His Claims**

Regarding the public interest factor, Plaintiff contends that "no resources will be conserved because the 23(f) petition will likely be denied." Opp. at 6 (citing *Bally* and *Bradberry*). As an initial matter, this argument conflates the public interest factor with the first factor regarding the merits of the Rule 23(f) petition (and again misstates the applicable legal standard on the first factor). In addition, *Bradberry* provides no support for Plaintiff's argument here because *Bradberry* was a consumer fraud case in which the defendant allegedly "schemed to cheat its customers by charging them for cell phone services." 2007 WL 2221076, at *1. Because the public was unaware of the alleged fraud, the court concluded that "[a] delay of proceedings will allow any harm to the putative class members to continue, and therefore may materially affect the public interest in vindicating the rights of consumers." *Id*. at *5. But this is not a fraud case, and it does not involve members of the public at large. The class members here, along with the labor unions that represent them, have known that Southwest does not pay for military leave since the beginning of the class period 17 years ago (and longer). This fact also cuts against Plaintiff's contention that the public has an interest in the speedy resolution of this case. If the public had an interest in the resolution of this case, Plaintiff could and should have filed it much sooner. The public's interest in resolution of the important issues raised by Southwest's Rule 23(f) petition, along with the efficient use of judicial resources, outweighs Plaintiff's purported newfound interest in the speedy resolution of his claims.

**III.    CONCLUSION**

For the foregoing reasons, Southwest respectfully requests that this Court grant the Motion and issue an order staying all proceedings before this Court in this matter pending disposition of Southwest's Rule 23(f) petition and, if that petition is granted, pending disposition of Southwest's appeal.

SOUTHWEST'S REPLY BRIEF IN SUPPORT OF MOTION TO STAY

DATED: March 8, 2021

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Brian D. Berry*
    DOUGLAS J. FARMER
    BRIAN D. BERRY
    KRISTIN S. HIGGINS

Attorneys for Defendant
SOUTHWEST AIRLINES CO.

46305748.1