1
2
3
4
5

Michael J. Scimone (*pro hac vice*)
Michael C. Danna (*pro hac vice*)
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.:      (212) 245-1000
Email:    mscimone@outtengolden.com
Email:    mdanna@outtengolden.com

6
7
8
9
10

Alina Pastor-Chermak
(CA State Bar No. 335889)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Tel.:      (415) 638-8800
Email:  apastor-chermak@outtengolden.com

11
12
13
14

R. Joseph Barton (CA State Bar No. 212340)
**THE BARTON FIRM LLP**
1633 Connecticut Avenue NW, Suite 200
Washington, DC 20009
Tel.:      (202) 734-5458
Email:    jbarton@thebartonfirm.com

15

*Attorneys for Plaintiff and the Class*
*(Additional Counsel on Following Page)*

16
17

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF CALIFORNIA**

18
19
20

JAYSON HUNTSMAN, on behalf of
himself and all others similarly situated,

Plaintiff,

21

v.

22
23

SOUTHWEST AIRLINES CO.,

Defendant.

24
25
26
27
28

Case No. 19-cv-00083-JSC

**PLAINTIFF'S NOTICE OF MOTION AND**
**MOTION FOR PRELIMINARY APPROVAL**
**OF CLASS ACTION SETTLEMENT**

Date:          November 20, 2025
Time:          10:00 a.m.
Location:     Courtroom 8 – 19th Floor
Judge:         Hon. Jacqueline Scott Corley

Complaint Filed:      January 7, 2019

Thomas G. Jarrard (admitted *pro hac vice*)
**LAW OFFICE OF THOMAS G. JARRARD, PLLC**
1020 N. Washington Street,
Spokane, WA 99201
Tel.:     (425) 239-7290
Email:    tjarrard@att.net

Peter Romer-Friedman (admitted *pro hac vice*)
**PETER ROMER-FRIEDMAN LAW**
1629 K Street, NW, Suite 300
Washington, DC 20006
Tel.:     (202) 355-6364
Email:    peter@prf-law.com

Matthew Z. Crotty (admitted *pro hac vice*)
**RIVERSIDE NW LAW GROUP, PLLC**
905 West Riverside Avenue, Suite 208
Spokane, WA 99201
Tel.:     (509)850-7011
Email:    mzc@rnwlg.com

*Attorneys for Plaintiff and the Class*

## <u>NOTICE OF UNOPPOSED MOTION</u>

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on November 20, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of this Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, before the Honorable Jacqueline Scott Corley, Plaintiff Jayson Huntsman hereby does and will move the Court to: (1) modify the definition of the Class; (2) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23; (3) appoint Proposed Class Representative David Cash as the Class Representative and ILYM Group, Inc. as Settlement Administrator; (4) set appropriate deadlines; (5) approve the proposed class notice and forms; and (6) schedule a final approval hearing.

Plaintiff makes this unopposed motion on the grounds that the Settlement is the product of protracted, zealous, arm's-length, good-faith negotiations; the Settlement is fair, adequate, and reasonable and within the range of possible final approval; and should be preliminarily approved, as discussed in the attached memorandum.

This motion is based upon this Notice of Motion for Preliminary Approval of Class Action Settlement; the following Memorandum; the accompanying Declaration of Michael J. Scimone; a Proposed Order: (1) Preliminarily Approving Proposed Settlement, (2) Modifying the Settlement Class Definition, (3) Appointing Class Representative, Class Counsel, and Settlement Administrator, (4) and Setting Hearing for Final Approval; the Court's record of this action; all matters of which the Court may take notice; and such oral or documentary evidence presented at the hearing on the motion.

## **TABLE OF CONTENTS**

I.    History and Status of the Case ............................................................2

    A.    The Claim and Relief Requested ...........................................2

    B.    Factual Background & Procedural History............................3

    C.    Terms of the Settlement ........................................................4

II.    The Proposed Settlement and Plan of Allocation Merit Preliminary Approval..............5

    A.    The Settlement is a Result of Arm's Length, Informed, and Non- Collusive

       Negotiations. ........................................................................5

    B.    The Settlement Has No Obvious Deficiencies.....................7

    C.    The Settlement Falls Within the Range of Possible Approval and Does Not

       Provide Preferential Treatment to Any Member. ................9

III.    The Court Should Modify the Class Definition...........................................12

IV.    Proposed Class Representative David Cash is Adequate and Should Be Appointed to

    Represent the Modified Class. ......................................................13

V.    The Notice and Plan of Notice Should be Approved....................................15

    CONCLUSION...................................................................17

Pltf's Notice of Mot. And Mot. For Prelim.
Approval of Class Action Settlement

# TABLE OF AUTHORITIES

**CASES**                                         **Page(s)**

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ..................................................................... 6

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008) .................................................................... 6

*Anderson-Butler v. Charming Charlie Inc.*,
   No. 14 Civ. 1921, 2015 U.S. Dist. LEXIS 99154
   (E.D. Cal. July 29, 2015) .................................................................................. 8

*Bennett v. SimplexGrinnell LP*,
   2015 U.S. Dist. LEXIS 53622 (N.D. Cal. Apr. 22, 2015) ............................... 10

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................... 7

*Chen v. W. Digital Corp.*,
   No. 19 Civ. 00909 JLS, 2020 U.S. Dist. LEXIS 268083 (C.D. Cal. Apr. 3, 2020) ....... 10

*Clarkson v. Alaska Airlines Inc.*,
   No. 19 Civ. 5, 2020 U.S. Dist. LEXIS 138838 (E.D. Wash. Aug. 4, 2020) .................. 7

*Clarkson v. Alaska Airlines*,
   59 F.4th 424 (9th Cir. 2023) ............................................................................ 11

*Dixon v. Cushman & Wakefield W., Inc.*,
   No. 18 Civ. 05813 JSC 2021 U.S. Dist. LEXIS 164001 (N.D. Cal. Aug. 30, 2021) ....... 6

*Gatchalian v. Atl. Recovery Sols., LLC*,
   No. 22 Civ. 04108-JSC 2023 U.S. Dist. LEXIS 205823 (N.D. Cal. Nov. 16, 2023) ..... 11

*G.F. v. Contra Costa Cnty.*,
   No. 13 Civ. 03667, 2015 U.S. Dist. LEXIS 100512 (N.D. Cal. July 30, 2015) ..........6

*Haley v. Delta Air Lines, Inc.*,
   No. 21 Civ. 01076-SEG (N.D. Ga.) ...................................................................10

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .....................................................................13-14

*Lyon v. U.S. Immigr. & Customs Enforcement*,
   308 F.R.D. 203 (N.D. Cal. 2015) ................................................................... 12

*Maciel v. M.A.C. Cosmetics*,
   No. 23 Civ. 03718, 2025 U.S. Dist. LEXIS 142205 (N.D. Cal. July 24, 2025) ........... 5, 9

-ii-

Case No. 19-cv-00083-JSC       Pltf's Notice of Mot. And Mot. For Prelim.
Approval of Class Action Settlement

*Myrick v. City of Hoover*,
   69 F.4th 1309 (11th Cir. 2023) ........................................................................... 11

*Nado v. John Muir Health*,
   No. 24 Civ. 01632-AMO, 2025 U.S. Dist. LEXIS 117984
   (N.D. Cal. June 20, 2025) ................................................................................... 15

*Naro v. Walgreen Co.*,
   No. 22 Civ. 03170-JST, 2025 U.S. Dist. LEXIS 129683
   (N.D. Cal. July 8, 2025) ...............................................................................5-6, 9

*In re Netflix Privacy Litig.*,
   No. 11 Civ. 00379 EJD, 2013 U.S. Dist. LEXIS 37286
   (N.D. Cal. 2013) .................................................................................................. 7

*Nevarez Forty Niners Football Co., LLC*,
   326 F.R.D. 562 (N.D. Cal. 2018) ...................................................................... 12

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................... 5

*Oliveira v. Language Line Servs.*,
   767 F. Supp. 3d 984 (N.D. Cal. 2025) ............................................................... 15

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 943 (9th Cir. 2015) ....................................................................... 14, 15

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ............................................................................. 13

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) ........................................................................ 16

*Scanlan v. American Airlines*,
   102 F.4th 164 (3d Cir. 2024) ............................................................................. 11

*Scanlan v. American Airlines*,
   No. 18 Civ. 4040 (E.D. Pa.) ............................................................................... 11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................. 14

*Stockwell v. City & Cnty. of San Francisco*,
   No. 08 Civ. 5180, 2015 U.S. Dist. LEXIS 61577
   (N.D. Cal. May 8, 2015) .................................................................................... 14

-iii-

Case No. 19-cv-00083-JSC                         Pltf's Notice of Mot. And Mot. For Prelim.
                                                Approval of Class Action Settlement

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................ 5, 9

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*,
    593 F.3d 802 (9th Cir. 2010) .................................................................................. 12

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) .................................................................................... 5

*Vasquez v. Coast Valley Roofing*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) .................................................................... 9

*Vinh Nguyen v. Radient Pharms. Corp.*,
    No. 11 Civ. 406, 2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) .................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................................. 13

*White v. United Airlines*,
    No. 19 Civ. 00114 (N.D. Ill.) .................................................................................. 10

*Wilburg v. iVueit, LLC*,
    No 24 Civ. 02642-AMO, 2025 U.S. Dist. LEXIS 166103 (2025) ................................. 8

*In re Zynga Sec. Litig.*,
    No. 12 Civ. 04007 JSC, 2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27, 2015) ....... 6

**FEDERAL STATUTES**

Title 38 U.S.C. § 4316(b)(1) ....................................................................................... 2

**FEDERAL RULES**

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 13

Fed. R. Civ. P. 23(c)(2)(B)(i) ..................................................................................... 16

**FEDERAL REGULATIONS**

Title 20 C.F.R. § 1002.150(b) ...................................................................................... 2

**FEDERAL REGULATIONS**

Title 20 C.F.R. § 1002.150(b) ...................................................................................... 2

Plaintiff Jayson Huntsman and Proposed Class Representative David Cash move this Court to enter an order under Rule 23 of the Federal Rules of Civil Procedure:

1.  Preliminarily approving the Settlement Agreement between Plaintiff and Defendant as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

2.  Approving the proposed Class Notice and the plan for dissemination of notice to the Class as satisfying the requirements of Rule 23(c)(2) and (e)(1);

3.  Preliminarily approving the proposed Plan of Allocation;

4.  Modifying the Class definition as described in this Motion;

5.  Appointing Plaintiff David Cash as a Class Representative;

6.  Appointing the Settlement Administrator; and

7.  Setting the following dates and deadlines under Rule 23(d) and (e) of the Federal Rules of Civil Procedure:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to provide notice to the Class | 21 days after Preliminary Approval or February 13, 2026; whichever is later |
| Deadline for Class Counsel to file motion for award of attorneys' fees and costs Motion for Service Award for Class Representative(s) | 60 days after Preliminary Approval |
| Last day for Class Members to submit objections to the Settlement | 60 days after Notice is sent |
| Last day for Class Counsel to file Motion for Final Approval of Settlement | At least 14 days after the objection deadline |
| Final Approval Hearing | At least 160 days after the Preliminary Approval Motion is filed |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Plaintiff Jayson Huntsman and Proposed Class Representative David Cash respectfully submit this Memorandum in support of their motion to preliminarily approve the proposed Class Action Settlement.  The Settlement represents the result of more than six years of hard-fought litigation.  Defendant Southwest has agreed to pay $18.5 million to the Class and provide significant programmatic relief in the form of an industry-leading paid military-leave benefit for the next five years.  Given the uncertainty of establishing both liability and damages, this represents an excellent result for the Class and the Settlement should be preliminarily approved by the Court.

I.    **History and Status of the Case**

       A.    **The Claim and Relief Requested**

Plaintiff Jayson Huntsman filed this action on behalf of himself and similarly situated Southwest employees, alleging that Southwest's policy of refusing to provide paid leave for periods of short-term military leave violates USERRA because Southwest provides paid leave for other comparable short-term absences from work.  ECF No. 1 (Compl.).  Plaintiff's claim arises under USERRA § 4316(b)(1), which provides that:

> a person who is absent from a position of employment by reason of service in the uniformed services shall be (A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1).

The Complaint alleges that jury duty, bereavement leave, and sick leave, which are paid leaves for Southwest employees, are comparable to short-term military leave in terms of duration, purpose, and the ability of pilots to choose when to take the leaves.  *See* 20 C.F.R. § 1002.150(b).  Because Southwest pays employees who take those comparable leaves, Huntsman and Cash seek equivalent paid leave for employees who take short-term military leave (defined here as leaves of 14 days or less).  Compl. ¶ 42.

### B.    Factual Background & Procedural History

Plaintiff filed his Complaint on January 7, 2019.  ECF No. 1.  Shortly thereafter, Southwest moved to transfer venue, which the Court denied.  ECF No. 38.  On August 28, 2019, Southwest moved for judgment on the pleadings, arguing that under USERRA § 4303(2) – the definitions section – compensation was not a "right or benefit" of employment.  ECF No. 52.  After oral argument, the Court denied Southwest's motion, opining at the hearing that: "What [Plaintiff is] arguing is that there's a general policy – if there's a general policy of an employer to pay for leaves that are comparable to military leave, then military – short-term military leave must be compensated. I think that's the more reasonable interpretation."  ECF No. 59.

Litigation then proceeded through nearly two years of substantial merits discovery. Scimone Decl. ¶ 12.  Plaintiff then moved for class certification, which the Court granted on February 3, 2021.[1]  ECF No. 95.  Southwest sought an interlocutory appeal, and the District Court stayed proceedings pending the outcome of the petition.  ECF No. 112.  The Ninth Circuit denied Southwest's petition the next day.

Among its other defenses, Southwest sought a damages defense of offset based on the pay that servicemembers received from the military.  Plaintiff did not oppose that defense, and the Parties stipulated to issue a joint subpoena to the U.S. Department of Defense ("DOD") and U.S. Department of Homeland Security ("DHS") seeking pay and personnel data.  The resulting data production, which included records for more than 2,700 identified Class members, took nearly three years.  Scimone Decl. ¶ 13.  While those subpoenas were

---

[1]    The Class proposed for settlement purposes differs slightly from that previously certified by the Court.  The modified settlement Class consists of all current or former employees of Southwest Airlines Co. who, during their employment with Southwest at any time from October 10, 2004 through January 1, 2026, have taken short-term military leave from their employment with Southwest (i.e., military leave that lasted 14 days or fewer) and were subject to a CBA, except for employees subject to the agreement between Southwest and Transport Workers Union Local 550 covering meteorologists ("Paid Leave Class"). Settlement Agreement ("Agmt") § I.F.

pending, the Parties continued through substantial fact discovery, including more than a dozen depositions and eight expert reports. *Id.*

After the close of discovery, Southwest moved to decertify the class. The motion was fully briefed, complete with a sur-reply, when the Parties agreed to attend mediation in an attempt to settle the case. ECF Nos. 199, 201, 202.

The Parties attended an all-day, in-person mediation session on January 20, 2025 with Hunter Hughes, a professional mediator with expertise in employee benefits class actions. Scimone Decl. ¶ 16. The Parties reached a conditional agreement on monetary relief, but agreed to continue negotiations on programmatic relief. The Parties were unable to reach agreement at a second virtual mediation session with Mr. Hughes, who subsequently made a mediators' proposal that both Parties accepted. *Id.* ¶ 17.[2]

### C.    Terms of the Settlement

The proposed settlement provides significant monetary and non-monetary benefits for the Class. Southwest will pay $18.5 million dollars into a Settlement fund to cover Court-approved expenses, attorneys' fees, and service awards, plus administration costs, with the remaining funds distributed to the Class according to a Court-approved plan of allocation. Agmt. §§ I.E, VII. In addition, beginning in 2026, Southwest will provide servicemember employees with up to ten days of paid short-term military leave per calendar year. *Id.* § IV(1)(a). The daily pay will be an approximation of the difference between the employee's Southwest pay and their military pay, with a minimum amount of $30 per day.[3] *Id.*

---

[2]    Plaintiff Jayson Huntsman retired from the military during the pendency of this case, depriving him of standing to seek programmatic relief. Accordingly, Proposed Class Representative David Cash, a current Southwest employee and Reservist, attended the second mediation session. Mr. Cash approved the mediator's proposal on programmatic relief and has signed the Settlement Agreement as a proposed Class Representative. Scimone Decl. ¶ 21.

[3]    To minimize administrative burden, the Southwest component of pay will be based on a standardized daily pay rate, which is similar to how Southwest values daily leave for other benefits; and the military pay will be based on standard drill tables issued by the armed services and the employee's rank and years of service at the start of the calendar year. Scimone Decl. ¶ 24.

1    § IV(1)(b).  Southwest will provide this benefit for a minimum of five years.  *Id.* § IV.

2    **II.    The Proposed Settlement and Plan of Allocation Merit Preliminary Approval.**

3        As a matter of public policy, settlement of disputes is strongly favored.  *Util. Reform*

4    *Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  This is especially

5    true in class actions.  *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688

6    F.2d 615, 625 (9th Cir. 1982).

7        The request for preliminary approval only requires an "initial evaluation" of the

8    fairness of the proposed settlement.  Manual for Complex Litigation § 21.632 (4th ed. 2004).

9    The purpose of preliminary approval is to determine "whether to direct notice of the

10   proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing."

11   William B. Rubenstein et al., Newberg on Class Actions § 13:10 (5th ed. 2013).  As approval

12   is only preliminary, it only requires a limited review of the proposed settlement.  *Id.*

13   Preliminary approval is appropriate if "the proposed settlement appears to be the product of

14   serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

15   improperly grant preferential treatment to class representatives or segments of the class, and

16   falls within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d

17   1078, 1079 (N.D. Cal. 2007) (quoting *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157

18   F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)); *see also Maciel v. M.A.C. Cosmetics*, No. 23

19   Civ. 03718, 2025 U.S. Dist. LEXIS 142205, at *8 (N.D. Cal. July 24, 2025) (citing Fed. R.

20   Civ. P. 23(e)(2)) ("Preliminary approval of a settlement is appropriate where a court makes a

21   preliminary finding that (1) the class representatives and class counsel have adequately

22   represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided

23   for the class is adequate[;] and (4) the proposal treats class members equitable relative to

24   each other.")

25       A.    **The Settlement is a Result of Arm's Length, Informed, and Non-
                Collusive Negotiations.**

26   "The proposed settlement need not be ideal, but it must be fair and free of collusion,

27   consistent with counsel's fiduciary obligations to the class."  *Naro v. Walgreen Co.*, No. 22

28

1   Civ. 03170-JST, 2025 U.S. Dist. LEXIS 129683, at *3-4 (N.D. Cal. July 8, 2025) (citing

2   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring

3   of compromise; the question we address is not whether the final product could be prettier,

4   smarter or snazzier, but whether it is fair, adequate and free from collusion.")).  Again, "a full

5   fairness analysis is unnecessary" at preliminary approval.  *Alberto v. GMRI, Inc.*, 252 F.R.D.

6   652, 665 (E.D. Cal. 2008) (citation omitted).

7         The fact that experienced counsel have diligently pursued discovery is evidence that

8   a settlement is non-collusive.  *See, e.g., In re Zynga Sec. Litig.*, No. 12 Civ. 04007 JSC, 2015

9   U.S. Dist. LEXIS 145728, at *9 (N.D. Cal. Oct. 27, 2015) ("The use of a mediator and the

10  presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in

11  negotiating a settlement.'"); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal.

12  2007) (a court evaluating preliminary approval must be satisfied the parties "have engaged in

13  sufficient investigation of the facts to enable the court to intelligently make an appraisal of

14  the settlement") (cleaned up)).  In this case, the Parties did not reach a settlement until after

15  several years of discovery.  Class Counsel obtained and reviewed thousands of pages of

16  discovery, a substantial volume of electronic data from both Defendant and DOD, answers to

17  six sets of interrogatories, and responses to 44 requests for admission.  Scimone Decl. ¶ 14.

18  Class Counsel also took 16 fact and 30(b)(6) witness depositions of Defendant.  *Id.* ¶ 15.

19  Plaintiff also took the depositions of Defendant's quantitative expert, Darin Lee.  *Id.*  Class

20  Counsel defended the deposition of Mr. Huntsman and four other Class Members, as well as

21  depositions of two experts, David Breshears and Daniel Akins, who produced five reports

22  before the Parties began mediation.  *Id.*

23        The assistance of a neutral mediator in the settlement negotiations further shows that

24  the negotiations were non-collusive.  *See G.F. v. Contra Costa Cnty.*, No. 13 Civ. 03667,

25  2015 U.S. Dist. LEXIS 100512, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he

26  assistance of an experienced mediator in the settlement process confirms that the settlement

27  is non-collusive"); *Dixon v. Cushman & Wakefield W., Inc.*, No. 18 Civ. 05813 JSC, 2021

28  U.S. Dist. LEXIS 164001, at *10, 28 (N.D. Cal. Aug. 30, 2021).  Mr. Hughes assisted the

1  Parties through two extended mediation sessions, which were followed by further adversarial

2  negotiations over key terms over the course of several weeks.  Scimone Decl. ¶¶ 16-17.

3  The opinion of experienced class action attorneys may also be considered on

4  preliminary approval.  *See In re Netflix Privacy Litig.*, No. 11 Civ. 00379 EJD, 2013 U.S.

5  Dist. LEXIS 37286, at *23 (N.D. Cal. 2013) (citing *In re Omnivision Techns., Inc.*, 559 F.

6  Supp. 2d 1036, 1043 (N.D. Cal. 2009) ("The recommendations of plaintiffs' counsel should

7  be given a presumption of reasonableness."))).  As another court recently acknowledged,

8  Class Counsel "have significant experience litigating class action and USERRA cases."

9  *Clarkson v. Alaska Airlines Inc.*, No. 19 Civ. 5, 2020 U.S. Dist. LEXIS 138838, at *5, 16

10  (E.D. Wash. Aug. 4, 2020).  Class Counsel believe that the proposed Settlement is an

11  excellent result for the Class.  Scimone Decl. ¶ 29.

12  As a product of extensive negotiations aided by a neutral professional mediator and

13  conducted by informed and experienced counsel over six years of hard-fought litigation and

14  negotiation, the Settlement Agreement is the product of informed, vigorous, arms-length

15  bargaining.

16  **B.      The Settlement Has No Obvious Deficiencies.**

17  Courts also consider at preliminary approval whether the agreement has any obvious

18  deficiencies, such as unfairly preferential treatment of class representatives or of segments of

19  the class, or excessive compensation of attorneys.  Newberg on Class Actions § 11:25 (4th

20  ed. 2010).  The Ninth Circuit has advised courts to be concerned (a) "when counsel receive a

21  disproportionate distribution of the settlement, or when the class receives no monetary

22  distribution but class counsel are amply rewarded"; (b) "when the parties negotiate a 'clear

23  sailing' arrangement providing for the payment of attorneys' fees separate and apart from

24  class funds, which carries 'the potential of enabling a defendant to pay class counsel

25  excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of

26  the class'"; or (c) "when the parties arrange for fees not awarded to revert to defendants

27  rather than be added to the class fund."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

28  935, 947 (9th Cir. 2011) (internal quotations omitted).

1    None of those issues exist here.  The Settlement provides for prompt payment to

2   Class Members out of a $18.5 million Settlement Fund.  Agmt. § V(1).  Any award of

3   attorneys' fees to Class Counsel[4] will be in an amount approved by the Court, *id.* § IX(1),

4   and there is no clear-sailing provision in the agreement.  *See Wilburg v. iVueit, LLC*, No. 24

5   Civ. 02642-AMO, 2025 U.S. Dist. LEXIS 166103, at *11-12 (N.D. Cal. Aug. 26, 2025) (no

6   clear-sailing arrangement where attorneys' fees will come from the settlement and defendant

7   has not committed to support fee application).  As shown above, the negotiations leading to

8   the settlement were at arm's length, and any amount of the Settlement Fund not awarded in

9   fees, expenses, or service awards[5] or paid in taxes will be distributed to the Class.[6]  Agmt.

10  § VII(3); *Wilburg*, 2025 U.S. Dist. LEXIS 166103, at *12 (citing *In re Bluetooth*, 654 F.3d at

11  948).

12    At this point, the question is merely whether the agreement is preliminarily fair, and

13  this agreement would pass muster even if Southwest had agreed not to oppose Class

14  Counsel's request for fees.  In *Anderson-Butler v. Charming Charlie Inc.*, No. 14 Civ. 1921,

15  2015 U.S. Dist. LEXIS 99154 (E.D. Cal. July 29, 2015), the court preliminarily approved a

16  settlement despite a clear-sailing provision, and declined to "evaluate the fee award at

17  length" in "considering whether the settlement is adequate," because "[i]f the court, in ruling

18  on the fees motion, finds that the amount of the settlement warrants a fee award at a rate

19  lower than what plaintiffs' counsel requested" the court had the power to reduce the award

20  accordingly.  *Id.* at *11, 28.  Likewise, the specific amounts of attorneys' fees in this

---

21

22  [4]    Class Counsel's current estimated lodestar for this case is $3,577,431.00 from
     3,903.27 billed hours, and their costs are $707,314.30, including $603,034.87 in expert fees.

23  Scimone Decl. ¶ 37.  If the Court were to award one-third of the gross Settlement to Class
     Counsel today, this would reflect a multiplier of approximately 1.72.

24  [5]    Plaintiff intends to request service awards for both Plaintiff and Proposed Class
     Representative David Cash, not to exceed $25,000 each, to compensate them for their

25  investment in this case.  Agmt. § IX.2.  Plaintiff has participated in this case for more than
     five years, which included attending mediations, sitting for his deposition, and reviewing

26  settlement agreements; similarly, Cash has followed the progress of this case, participated in
     mediation, and reviewed settlement agreements, all of which was crucial to finalizing the

27  Settlement Agreement.  Scimone Decl. ¶ 26.

28  [6]    In other words, no Settlement funds will revert to Southwest.

settlement and any class representative incentive award can be reserved on this preliminary

approval motion to the final approval hearing and the discretion of the Court. *See also*

*Maciel*, 2025 U.S. Dist. LEXIS 142205, at *12 (noting that fee award will be revisited at

final approval).

**C.    The Settlement Falls Within the Range of Possible Approval and Does Not Provide Preferential Treatment to Any Member.**

While the Court's ultimate assessment of whether to approve the settlement depends

on many factors, at preliminary approval, the court must only be satisfied that the settlement

"falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp.

2d at 1079 (quoting *Schwartz*, 157 F. Supp. 2d at 570 n.12); *Naro*, 2025 U.S. Dist. LEXIS

129683, at *3-4. "To determine whether a settlement amount falls within the range of

reasonableness, courts primarily consider plaintiffs' expected recovery balanced against the

value of the settlement offer." *Vasquez v. Coast Valley Roofing*, 670 F. Supp. 2d 1114, 1125

(E.D. Cal. 2009). The instant Settlement Agreement provides that $18.5 million will be paid

into a Settlement Fund for the Class. Agmt. § V(1). Based on the 2,791 identified class

members, that results in a net average value of $4,421 per Class Member. Scimone Decl.

¶ 23. This per-class-member recovery is within the range of other USERRA class

settlements. *E.g. Beanland v. Fed. Express Corp.*, No. 22 Civ. 672-MAK, Final Order

Approving Class Action Settlement (Aug. 1, 2023) (approving USERRA § 4316(b)(1) class

settlement of $1.5 million for 4,020 class members, or $373.13 per class member) (Ex. 1);

*Clarkson v. Alaska Airlines et al.*, No. 19 Civ. 0005-TOR, Order Granting Final Approval of

Class Action Settlement (Jan. 15, 2025) ("Clarkson Settlement") (approving USERRA

§ 4316(b)(1) class settlement of $4.75 million for 532 class members, or $8,928 per class

member) (Ex. 2); *Tsui et al. v. Walmart*, No 20 Civ. 12309-MPK, (approving USERRA class

settlement of $10 million for 7,500 class members, or $933 per class member) (Exs. 3, 4).

The maximum Class recovery that Plaintiff's expert calculated was $70,909,611 through

2021, using jury leave as a comparator (before prejudgment interest). Scimone Decl. ¶ 28.

The recovery diminished depending on the comparator: Plaintiff's expert calculated

$64,549,612 in damages using bereavement leave as a comparator, and $24,931,560 using sick leave as a comparator (both through 2021 and before prejudgment interest). *Id.* The $18.5 million recovery therefore represents 74.2% of the lowest damages scenario and 26% of the highest.[7] That significantly exceeds the results achieved in other employment class action settlements approved in this Circuit. *E.g. Chen v. W. Digital Corp.*, No. 19 Civ. 00909 JLS, 2020 U.S. Dist. LEXIS 268083, at *11-12, 34-35 (C.D. Cal. Apr. 3, 2020) (preliminarily approving settlement that was 10.8% to 15.9% of maximum damages in employment case); *Bennett v. SimplexGrinnell LP*, No. 11 Civ. 01854-JST, 2015 U.S. Dist. LEXIS 53622, at *5, 7 (N.D. Cal. Apr. 22, 2015) (preliminarily approving settlement that was 30% of maximum damages in wage and hour case). Even without considering other factors, this Settlement represents an excellent result.

The result is even stronger in light of the industry-leading programmatic relief Plaintiff obtained. Southwest's agreement to provide ten days of paid military leave per year is significant given that the only other airline to settle similar claims agreed to only four days of paid leave. *See* Ex. 2 (Clarkson Settlement). And Southwest's competitors United Airlines, American Airlines, and Delta Airlines continue to defend similar claims, without having agreed to paid leave in any amount. *See White v. United Airlines*, No. 19 Civ. 00114 (N.D. Ill.); *Scanlan v. American Airlines*, No. 18 Civ. 4040 (E.D. Pa.); *Haley v. Delta Air Lines, Inc.*, No. 21 Civ. 01076-SEG (N.D. Ga.).[8] Southwest's benefit, which will be provided for a period of five years under the agreement, provides servicemembers at Southwest with the most robust military leave benefits of any major airline. Agmt. § IV.

Southwest requests, as part of the settlement, that the Court enter a factual finding that this programmatic relief is "commensurate" with the paid-leave benefits that Southwest provides for the comparator leaves, based on the summary statistics prepared by both Parties'

---

[7]    The proposed settlement is 29% of the recovery using bereavement leave as a comparator.

[8]    None of these pending USERRA cases against airlines will be affected by this proposed Settlement, nor does Plaintiff know of any other case where the proceedings could be altered by this proposed Settlement. Scimone Decl. ¶ 31.

Pltf's Notice of Mot. And Mot. For Prelim.
Approval of Class Action Settlement

1    experts that are set forth in Exhibit B to the settlement agreement.  Plaintiff takes no position

2    on this request.

3        Although Plaintiff is convinced of the strength of his case, it is not without risk.

4    Southwest's motion for decertification was pending when the Parties entered settlement

5    negotiations.  Since then, a court has decertified a USERRA paid-leave class in a case against

6    American Airlines, and while the plaintiff in that case seeks an appeal pursuant to Rule 23(f),

7    it has not yet been granted, showing the risk that Plaintiff faced here.  *Scanlan v. American*

8    *Airlines*, No. 18 Civ. 4040, Order Granting Motion to Decertify the Classes (Aug. 20, 2025).

9    To date, no USERRA paid-leave class has proceeded to trial, Scimone Decl. ¶ 31, although

10   two have ended in summary judgment for the defendants (later reversed on appeal, *see*

11   *Clarkson v. Alaska Airlines*, 59 F.4th 424, 433, 436-37 (9th Cir. 2023); *Scanlan v. American*

12   *Airlines*, 102 F.4th 164 (3d Cir. 2024)) and one in summary judgment for the plaintiffs.  *See*

13   *Myrick v. City of Hoover*, 69 F.4th 1309, 1320 (11th Cir. 2023).  At trial, a jury could have

14   concluded that no comparator leave is comparable to short-term military leave, or that some

15   but not all short-term military leaves were comparable.  With an absence of prior precedent

16   or any kind of road map to a trial victory, trial in this case would have been inherently risky.

17       Had Plaintiff prevailed at trial and maintained class certification, Defendant would

18   almost certainly have appealed, including on class certification.  Any recovery for the Class

19   would thus likely have taken years to make its way to class members.  The Settlement avoids

20   these risks and provides the Class with immediate relief.

21        Finally, no Class Member or group of Class Members will receive unduly favorable

22   treatment under the terms of the Settlement.  *Gatchalian v. Atl. Recovery Sols., LLC*, No. 22

23   Civ. 04108-JSC, 2023 U.S. Dist. LEXIS 205823, at *22 (N.D. Cal. Nov. 16, 2023) (this

24   Court finding no preferential treatment and preliminarily approving settlement where all

25   class members will receive the same *pro rata* distribution from the settlement fund).  The

26   Plan of Allocation contemplates that the settlement proceeds will be divided between Class

27   Members *pro rata* based on the amount of their claim, which is based on their rate of pay and

28   dates of short-term military leave.  Agmt. § VII.3.  And "courts recognize that an allocation

-11-

1   formula need only have a reasonable, rational basis, particularly if recommended by

2   experienced and competent counsel." *Vinh Nguyen v. Radient Pharms. Corp.*, No. 11 Civ.

3   406, 2014 U.S. Dist. LEXIS 63312, at *5, 12-13 (C.D. Cal. May 6, 2014) (internal quotation

4   marks and modifications omitted).  The Settlement certainly passes that threshold.

5   Additionally, while the Class Representatives can apply for a service award, the amount, if

6   any, will be decided by the Court.  Agmt. § IX(1).

7           There is one category of potential Class Members whose military leave data is no

8   longer available for the full class period.[9]  To capture potential Class Members in this group,

9   Southwest reviewed personnel files to identify people who had some military affiliation, and

10  cross-referenced those findings with data provided by the military to confirm their status as

11  servicemembers.  Scimone Decl. ¶ 25.  This group consists of 197 people, but it is unclear

12  whether any of them took a qualifying military leave.  *Id*.  Their class notice will inform

13  them that they are currently credited with no military leave for settlement purposes, but they

14  will receive a claim form that allows them to certify that they took short-term military leave

15  in one or more years.  If they so certify, they will be credited with an imputed amount based

16  on average awards to other employees in their work group.  Agmt. § III.2.

17  **III.    The Court Should Modify the Class Definition.**

18          "[D]istrict courts have broad discretion to modify class definitions." *Nevarez Forty*

19  *Niners Football Co., LLC*, 326 F.R.D. 562, 575 (N.D. Cal. 2018) (citations omitted); *United*

20  *Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th

21  Cir. 2010).  In doing so, they apply the same Rule 23 requirements used for an initial class

22  certification.  *Lyon v. U.S. Immigr. & Customs Enforcement*, 308 F.R.D. 203, 210-11 (N.D.

23  Cal. 2015).  Here, Plaintiff requests a modified Paid Leave Class definition that only changes

24  the end of the class period from "through the date of judgment in this action" to "January 1,

25  _____

26  [9]      Military leave data for Ground Ops and Tech Ops employees is available as far back
    as January 1, 2005, leaving a ten-week gap at the start of the class period, which starts on
27  October 10, 2004.  There are 153 employees whose employment includes time in this gap
    period.  Data for Dispatchers and Flight Instructors is only available from 2014 to the
28  present.  There are 44 employees whose employment dates fall within this gap period.

2026," which still meets the requirements of both Rule 23(a) and Rule 23(b)(3).

Rule 23(a) requires numerosity, commonality, typicality, and adequacy, all of which are still met by the Paid Leave Class. Fed. R. Civ. P. 23(a). As the prior Class Certification Order previously found, the thousands of people in this modified Class satisfy the numerosity requirement. ECF No. 95 (Order Granting Mot. for Class Certification) at 4-5. The same common questions that drove the litigation exist as to the settlement Class – whether 1) Plaintiff's definition of "short-term" military leave is common; 2) different CBA rules governing employee scheduling defeats commonality; and 3) CBA-specific terms for sick leave accrual defeats commonality – and Southwest's "uniform employment practice" of denying all Class Members pay for military leave met the commonality requirement. *Id.* at 13-14; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011) ("[A] uniform employment practice [can] provide the commonality needed for a class action.") The proposed modification to the Class definition does not change the common questions or the uniform employment practice that previously satisfied commonality, nor does it change the fact that those common issues predominate over individualized ones. And the same is true for Rule 23(a)'s typicality and superiority requirements. The typicality and adequacy requirements, as applied to Proposed Class Representative David Cash, are addressed below.

## IV.    Proposed Class Representative David Cash is Adequate and Should Be Appointed to Represent the Modified Class.

David Cash's claims are typical of the Class's claims and he will adequately represent the interests of the class. The Court should thus appoint him as a Class Representative.

Rule 23 requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). "[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[T]ypicality is not primarily concerned with whether

-13-

1  each person in a proposed class suffers the same type of damages[.]")  As this Court found to

2  be true of Plaintiff Jayson Huntsman in certifying the original class, Cash's claims are typical

3  of Class Members' claims because they arise from a uniform set of practices applied to all

4  Southwest employees, regardless of their job title or work group.  Southwest has not

5  provided paid military leave to Cash or any other Class Member, though it offered paid sick,

6  bereavement, and jury duty leave to those same employees.  As Cash's claim is based on the

7  same leave comparability analysis as the claims of the Class, his claims are typical of the

8  Class's claims.

9      Separately, courts ask two questions to evaluate whether a class representative is

10  adequate under Rule 23: "(1) do[es] the representative plaintiff[] . . . have any conflicts of

11  interest with other class members and (2) will the representative plaintiff[] . . . prosecute the

12  action vigorously on behalf of the class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir.

13  2003).  "Only conflicts that are fundamental to the suit and that go to the heart of the

14  litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement."  *In re*

15  *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting 1 William B.

16  Rubenstein et al., Newberg on Class Actions § 3.58 (5th ed. 2011)).  "Generally,

17  representation will be found to be adequate when . . . the class representatives are not

18  disqualified by interests antagonistic to the remainder of the class."  *Stockwell v. City & Cnty.*

19  *of San Francisco*, No. 08 Civ. 5180, 2015 U.S. Dist. LEXIS 61577, at *6, 18 (N.D. Cal. May

20  8, 2015).  Cash has no such conflicts of interest with the Class.

21      Cash has been added to support the programmatic relief encompassed within the

22  proposed settlement.  As to this claim, he shares a common interest with Class Members

23  because he is both a current Southwest employee and a current reservist in the U.S. military,

24  who regularly takes short-term military leave from his employment at Southwest.  He

25  therefore has suffered, and in the absence of this settlement would continue to suffer, the

26  same injury as other members of the Class who will take short-term military leave in the

27  future: denial of pay for short-term military leaves.  Scimone Decl. ¶ 22.  Cash stands to

28  benefit from the Proposed Settlement in the same capacity as Class Members, thus he has

-14-

every incentive to advocate for the most advantageous settlement.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 ("As to [whether the class representative will prosecute vigorously], the relevant inquiry is whether the plaintiffs maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation.") (internal quotation marks omitted).  Cash also participated in a mediation session that led to this settlement, reviewed drafts of the settlement agreement, and has been following this case even before becoming involved as a Proposed Class Representative.  Scimone Decl. ¶ 21; *see* ECF No. 95 (Order Granting Mot. for Class Certification) at 16-17 (reasoning that Plaintiff Jayson Hunstman was an adequate representative because he was "familiar with USERRA," was comfortable representing the class, and had prior experience with USERRA litigation).

## V.    The Notice and Plan of Notice Should be Approved.

"Where a court preliminarily approves a settlement, it must 'direct notice in a reasonable manner to all class members who would be bound by the proposal.'"  *Nado v. John Muir Health*, No. 24 Civ. 01632-AMO, 2025 U.S. Dist. LEXIS 117984, at *18 (N.D. Cal. June 20, 2025) (quoting Fed. R. Civ. P. 23(e)(1)(B)).  A proper notice should (1) describe the facts underlying the action and the class, (2) describe the terms of the settlement, (3) disclose any benefits provided to class representatives, (4) provide information regarding attorney's fees, (5) state the time and place of the final hearing, (6) provide counsel's contact information and instructions on how to object and/or make inquiries, and (7) explain the procedure for allocation.  Manual for Complex Litigation, supra, § 21.312; *see Nado*, 2025 U.S. Dist. LEXIS 117984, at *18 (approving notice that provided such information); *Oliveira v. Language Line Servs.*, 767 F. Supp. 3d 984, 1004 (N.D. Cal. 2025) (same).  Here, the proposed Class notice provides information on all of these subjects.  *See* Settlement Agreement Ex. A.  Rule 23(c)(2)(B) requires that the notice inform class members of "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a

-15-

1    class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  The

2    proposed notice to the Class meets all these requirements.  *See* Settlement Agreement Ex. A.

3           Notice here will be by U.S. Mail, in *addition* to email, text, and posting on a

4    dedicated website.  Agmt. § III(3).  "[N]otice by first class mail ordinarily satisfies rule

5    23(c)(2)'s requirement that class members receive 'the best notice practicable under the

6    circumstances."  *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir.

7    1992); *see* Manual for Complex Litigation, *supra*, § 21.311 (explaining that individual notice

8    via mail is preferred).  The notice here goes beyond this baseline, meeting the requirements

9    of Rule 23, and should be approved.

10          Class Counsel solicited bids for class notice and administration services through a

11   competitive process.  Class Counsel solicited responses to a request for proposals from four

12   settlement administration services vendors, of which four submitted bids.  Scimone Decl.

13   ¶ 32.  Class Counsel recommends the appointment of ILYM Group, Inc. ("ILYM"), which

14   submitted a bid not to exceed $17,500, the lowest price offered from a settlement

15   administrator.  *Id.* ¶ 33.  ILYM's comparably modest fees, which include providing all three

16   forms of notice guaranteed by the proposed Settlement, will be paid from the Settlement

17   Fund.  Agmt. § VIII.3.  ILYM will also prepare and disseminate the Class Action Fairness

18   Act (CAFA) Notice in accordance with Sections XIII.1-2 of the Settlement Agreement.  *Id.*

19   § VIII.2.k.  Co-lead Class Counsel Outten & Golden LLP have worked with ILYM to manage

20   several settlements over the past two years and consistently found ILYM to be efficient and

21   professional.  Scimone Decl. ¶ 34.  ILYM has numerous security protocols in place to

22   safeguard Class data, including an encrypted secure portal for transmitting Class data,

23   firewalls, and audits of data privacy policies by third-party vendors; it also maintains a

24   disaster response plan for security breaches, collects data only to the extent necessary for

25   settlement administration, and maintains insurance in case of administrator errors.  *Id.*  The

26   Court should appoint ILYM as the Settlement Administrator.

27

28

-16-

Case No. 19-cv-00083-JSC                    Pltf's Notice of Mot. And Mot. For Prelim.
                                            Approval of Class Action Settlement

## **CONCLUSION**

For the forgoing reasons, the Court should grant Plaintiff's motion to preliminarily approve the proposed Settlement.

Respectfully submitted,

Dated: September 25, 2025        By:   */s/ Michael J. Scimone*

Michael J. Scimone (admitted *pro hac vice*)
Michael C. Danna (admitted *pro hac vice*)
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.:      (212) 245-1000
Email:    mscimone@outtengolden.com
Email:    mdanna@outtengolden.com

Alina Pastor-Chermak (CA State Bar No. 335889)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Tel.: (415) 638-8800
Email: apastor-chermak@outtengolden.com

R. Joseph Barton (CA State Bar No. 212340)
**THE BARTON LLP**
1633 Connecticut Avenue NW, Suite 200
Washington, DC 20009
Tel.:      (202) 734-5458
Email:    jbarton@thebartonfirm.com

Thomas G. Jarrard (admitted *pro hac vice*)
**LAW OFFICE OF THOMAS G. JARRARD, PLLC**
1020 N. Washington Street,
Spokane, WA 99201
Tel.:      (425) 239-7290
Email:    tjarrard@att.net

Peter Romer-Friedman (admitted *pro hac vice*)
**PETER ROMER-FRIEDMAN LAW**
1629 K Street, NW, Suite 300
Washington, DC 20006
Tel.:      (202) 355-6364
Email:    peter@prf-law.com

-17-

Matthew Z. Crotty (admitted *pro hac vice*)
**RIVERSIDE NW LAW GROUP, PLLC**
905 West Riverside Avenue, Suite 208
Spokane, WA 99201
Tel.:    (509)850-7011
Email:    mzc@rnwlg.com

*Attorneys for Plaintiff and the Class*

-18-

Case No. 19-cv-00083-JSC                    Pltf's Notice of Mot. And Mot. For Prelim.
Approval of Class Action Settlement

1

## CERTIFICATE OF SERVICE

2
3
4
5

        I hereby certify that on September 25, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent electronically to all registered parties by operation of the Court's electronic filing system.

6
7
8
9
10
11

                        */s/ Michael J. Scimone*
                        Michael J. Scimone
                        **OUTTEN & GOLDEN LLP**
                        685 Third Avenue, 25th Floor
                        New York, NY 10017
                        Tel.: (212) 245-1000
                        Fax: (646) 509-2060
                        Email: mscimone@outtengolden.com

                        *Admitted Pro Hac Vice*

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-19-