# Exhibit 1

1

2 <center>**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**</center>

3

4 JAYSON HUNTSMAN, on behalf of
himself and all others similarly
5 situated,                                    Case No. 3:19-cv-00083-JSC

                                              **CLASS ACTION SETTLEMENT**
6      *Plaintiff*,                           **AGREEMENT**

7 v.

8 SOUTHWEST AIRLINES CO.,

9      *Defendant*.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**Table of Contents**

INTRODUCTION.................................................................................................... 1

RECITALS.............................................................................................................. 1

   I.    DEFINITIONS ............................................................................. 3

   II.   CLASS CERTIFICATION ........................................................... 7

   III.  CLASS NOTICE .......................................................................... 7

   IV.  NON-MONETARY SETTLEMENT TERMS AND
        PROCEDURES ............................................................................. 9

   V.   MONETARY SETTLEMENT & SETTLEMENT FUND.................. 12

   VI.  DISTRIBUTIONS FROM THE SETTLEMENT FUND..................... 13

   VII.  PLAN OF ALLOCATION ........................................................... 14

   VIII. SETTLEMENT ADMINISTRATION.......................................... 16

   IX.  PAYMENT OF FEES, SERVICE AWARDS, AND
        REIMBURSEMENT OF COSTS AND EXPENSES............................ 18

   X.   NO ADMISSION OF WRONGDOING OR INFIRMITY OF
        CLAIMS ..................................................................................... 19

   XI.  APPROVAL................................................................................. 20

   XII.  RESTRICTIONS ON DEFENDANT'S CONTACT WITH CLASS
        MEMBERS.................................................................................. 23

   XIII. ISSUANCE CLASS ACTION FAIRNESS ACT NOTICE ................. 24

   XIV. RELEASES ................................................................................. 24

   XV.  EFFECT OF DISAPPROVAL, CANCELLATION, OR
        TERMINATION.....................................

   XVI. MISCELLANEOUS PROVISIONS ........................................... 28

i

**INTRODUCTION**

Subject to approval by the United States District Court for the Northern District of California, this Class Action Settlement Agreement is entered into by and among Plaintiff Jayson Huntsman and Proposed Class Representative David Cash (together, "Class Representatives"), individually and on behalf of the Class, as herein defined, and Defendant Southwest Airlines Co. ("Southwest"), to settle claims against Defendant, subject to the terms and conditions below.  All capitalized terms shall have the meaning ascribed to them by Section I of this Settlement Agreement.

**RECITALS**

A.      Plaintiff Jayson Huntsman filed the original Complaint on January 7, 2019, docketed as Civil Action No.: 3:19-cv-00083 in the United States District Court for the Northern District of California, asserting claims on behalf of himself and a class of current and former employees of Southwest under the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

B.      Southwest answered the Complaint on April 10, 2019.  Dkt. No. 28.

C.      Southwest filed a Motion to Change Venue on April 10, 2019, which was denied on July 19, 2019.  Dkt. Nos. 29 & 38.

D.      Southwest filed a Motion for Judgment on the Pleadings on August 28, 2019, which was denied on November 27, 2019.  Dkt. Nos. 52 & 59.

E.      Plaintiff filed a Motion for Class Certification on October 21, 2020.  Dkt. No. 78.  The Court granted the motion on February 3, 2021, certifying a class of current or former employees of Southwest Airlines Co. who, during their employment with Southwest at any time from October 10, 2004 through the date of judgment in this action, took short-term military

1  leave from their employment with Southwest (i.e., military leaves that lasted
2  14 days or fewer) and were subject to a collective bargaining agreement
3  ("CBA"), except for employees subject to the CBA between Southwest and
4  Transport Workers Union Local 550 covering meteorologists.  Dkt. No. 95.

5      F.    Southwest filed a Rule 23(f) petition to the Ninth Circuit Court
6  of Appeals, which the Ninth Circuit denied on March 10, 2021.  Dkt. No.
7  114.

8      G.    Southwest moved to decertify the Class on October 29, 2024.
9  Dkt. No. 199.  The Parties reached this settlement before the Court ruled on
10 the motion.

11     H.    The Parties conducted an all-day in-person mediation on January
12 20, 2025, with the assistance of mediator Hunter R. Hughes, which was
13 attended by Plaintiff Jayson Huntsman, a representative of Southwest, and the
14 Parties' respective counsel.  The Parties agreed to schedule a second mediation
15 session focused on nonmonetary terms at a later date.

16     I.    The Parties met for a second all-day virtual mediation session on
17 January 30, 2025 with Mr. Hughes.  This session was attended by Plaintiff
18 Jayson Huntsman, proposed class representative David Cash, and a
19 representative of Southwest, in addition to the Parties' respective counsel.  The
20 Parties did not reach a resolution during this second session.

21     J.    Following the Parties' second mediation session, the mediator made a
22 proposal on monetary and nonmonetary terms, which the Parties subsequently
23 accepted.

24     K.    Class Counsel have concluded that the terms of this Settlement are
25 fair, reasonable, adequate and in the best interests of the proposed Class, and they,
26 along with the Class Representatives, have agreed to settle the Action on the terms
27 set forth herein.

1    L.    Southwest denies the material allegations asserted in the Action and

2    denies any wrongdoing or liability whatsoever, and states that it is entering into

3    the Settlement to avoid the cost, disruption, and uncertainty of litigation.  The

4    Class Representatives likewise enter into the Settlement to achieve finality and a

5    fair recovery for the Class, and do not concede any infirmity in their claims.

6    M.    The Parties desire to promptly and fully resolve and settle with

7    finality all of the claims of the Complaint on the terms set forth herein and

8    subject to the approval of the Court.

9    **I.    DEFINITIONS**

10    A.    "Action" means the lawsuit entitled *Jayson Huntsman v. Southwest*

11    *Airlines Co.*, docketed as Civil Action No. 3:19-cv-0083-JSC in the United States

12    District Court for the Northern District of California.

13    B.    "Class Representatives" refers to Jayson Huntsman and David Cash.

14    C.    "Southwest CBAs" refers to the collective bargaining agreements

15    governing the employment of the Class Members.

16    D.    "CAFA" means the Class Action Fairness Act.

17    E.    "Cash Settlement Amount" means eighteen million five hundred

18    thousand dollars ($18,500,000.00) to be paid by or on behalf of Defendant.

19    This is an all-in payment.

20    F.    "Class" means a settlement class of all current or former employees of

21    Southwest who, during their employment with Southwest at any time from

22    October 10, 2004 through January 1, 2026, have taken short-term military leave

23    from their employment with Southwest (i.e., military leave that lasted 14 days or

24    fewer) and were subject to a CBA, except for employees subject to the agreement

25    between Southwest and Transport Workers Union Local 550 covering

26    meteorologists.  This settlement class definition modifies the certified class

27    definition only by adding the end date of January 1, 2026.

SETTLEMENT AGREEMENT        3

1    G.    "Class Counsel" means R. Joseph Barton of The Barton Firm LLP;

2  Matthew Crotty and Kacy Tellessen of Riverside NW Law Group PLLC; Peter

3  Romer-Friedman of Peter Romer-Friedman Law; Thomas G. Jarrard of the Law

4  Office of Thomas Jarrard PLLC; and Michael Scimone and Michael Danna of

5  Outten & Golden LLP.

6    H.    "Class Member" means an individual who is a member of the Class.

7    I.    "Class Notice" means a form of notice provided to the Class

8  Members that complies with the requirements of this Settlement Agreement,

9  Fed. R. Civ. P. Rule 23, and is approved by the Court. The Class Notice will be

10 in a form substantially similar to Exhibit A.

11    J.    "Class Notice Packet" means the Class Notice and any other forms

12 approved or directed by the Court.

13    K.    "Class Representatives" means Plaintiff and David Cash, if appointed by

14 the Court.

15    L.    "Co-Lead Class Counsel" means R. Joseph Barton of The Barton

16 Firm LLP and Michael Scimone of Outten & Golden LLP.

17    M.   "Complaint" refers to the Complaint filed in the Action (Dkt. No. 1).

18    N.    "Court" refers to the United States District Court for the Northern

19 District of California.

20    O.    "Defendant" means Southwest Airlines Co.

21    P.    "Defense Counsel" means Brian D. Berry of Morgan, Lewis & Bockius

22        LLP.

23    Q.    "Effective Date" means the date this Settlement Agreement becomes

24 effective, which will be 31 days after entry of final approval of the settlement, if

25 no appeal or other request for appellate relief is filed.  If any form of appellate

26 relief is sought, the Effective Date will be 31 days after a final resolution that

27 preserves the material terms of the Settlement and after all opportunities for further

SETTLEMENT AGREEMENT        4

1    appellate relief are extinguished.

2        R.    "Escrow Account" means a qualified settlement fund established by

3    the Settlement Administrator in the name of the "Southwest Military Paid Leave

4    Settlement Fund" into which the Cash Settlement Amount will be paid.

5        S.    "Expense Award" will have the meaning set forth in Section IX.1 of

6    this Settlement Agreement.

7        T.    "Fee Award" will have the meaning set forth in Sections IX.1-2 of this

8    Settlement Agreement.

9        U.    "Final Approval Motion" means the motion to be filed by Class

10   Counsel requesting that the Court grant final approval of the Settlement pursuant

11   to Fed. R. Civ. P. 23(e).

12       V.    "Final Approval Order" means the Order and Final Judgment,

13   substantially in the form of an Order described in Section XI.2 of this Settlement

14   Agreement.

15       W.    "Non-Appealable" means an order entered by the Court that is no

16   longer subject to appeal, which will occur: (i) if no appeal is taken, on the date

17   on which the time to appeal (including any extension of time) has expired; or

18   (ii) if any appeal is taken, on the date on which all appeals, including any

19   petitions for rehearing or re-argument, petitions for rehearing *en banc*, and

20   petitions for writ of *certiorari* or any other writ, or any other form of review,

21   have been finally disposed of, such that the time to appeal (including any

22   extension of time) has expired, in a manner resulting in an affirmance of the

23   Final Approval Order.

24       X.    "Parties" or "Settling Parties" means collectively Class

25   Representatives, individually and on behalf of the Class, and Defendant.

26       Y.    "Party" refers to any of the Parties.

27       Z.    "Plan of Allocation" means the plan for distribution of the

SETTLEMENT AGREEMENT          5

1   proceeds of the Settlement Fund as proposed by Class Counsel to be

2   approved by the Court.

3       AA.   "Preliminary Approval Order" means  an order from the Court,

4   substantially in the form described in Section XI.1.

5       BB.   "Plaintiff" means Jayson Huntsman.

6       CC.   "Plaintiff's Counsel" means The Barton Firm LLP, Outten & Golden

7   LLP, Riverside NW Law Group, PLLC, the Law Office of Thomas G. Jarrard

8   LLC, and Peter Romer-Friedman Law PLLC.

9       DD.   "Releasees" means Southwest Airlines Co.  and each of its past,

10  present and/or future, officers, directors, managers, employees, agents,

11  representatives, attorneys, insurers, partners, investors, shareholders, members,

12  administrators, parent companies, subsidiaries, affiliates, divisions, predecessors,

13  successors, and/or assigns, in their personal, individual, official, and/or corporate

14  capacities.

15      EE.   "Service Awards" has the meaning afforded it by Section IX.

16      FF.   "Settled Claims" means the Settled Class Claims as well as other

17  claims released pursuant to this Settlement as provided in Section XIV.

18      GG.   "Settled Class Claims" means the claims that the Class will release

19  pursuant to this Settlement as provided in Section XIV.1.

20      HH.   "Settlement" means the settlement and compromise of this Action as

21  provided for in this Settlement Agreement.

22      II.   "Settlement Administrator" means any person appointed by the

23  Court, who is to be responsible for, among other things, providing the Class

24  Notice Packet to Class Members, preparing and issuing CAFA notice, and

25  assisting with the administration of the Settlement.

26      JJ.   "Settlement Agreement" means this Class Action Settlement

27  Agreement and any accompanying Exhibits, including any subsequent

SETTLEMENT AGREEMENT        6

1    amendments thereto and any Exhibits to such amendments.

2        KK.    "Settlement Fund" means the Cash Settlement Amount plus any

3    earnings and interest thereon, minus any Court-approved deductions and

4    expenses.

5        LL.    "Tax" or "Taxes" means any and all taxes, fees, levies, duties, tariffs,

6    imposts, and other charges of any kind (together with any and all interest,

7    penalties, additions to tax and additional amounts) imposed by any governmental

8    authority.

9        MM.  "Net Settlement Amount" means the remaining settlement funds

10   available for distribution to Class Members after the following disbursements are

11   made from the Settlement Fund: (1) the Fee Award; (2) the Expense Award; (3)

12   the Service Awards; and (4) any payments to the relevant taxing authorities.

13       NN.    "Proportionate Settlement Share" is a ratio to determine the specific

14   allocation of Settlement Fund proceeds distributed to Class Members.

15   **II.    CLASS CERTIFICATION**

16       **1.    Modification of the Class Definition**.  As part of or along with

17   the Motion for Preliminary Approval, Class Counsel will request that the current

18   class definition be amended as described in Section I.F.

19       **2.    Appointment of Additional Class Representative**.  As part of

20   or along with the Motion for Preliminary Approval, Class Counsel will request that

21   the Court appoint David Cash as an additional class representative.

22       **3.    Non-Opposition.**  Defendant will not oppose the modification

23   of the Class Definition (as specified above), for settlement purposes only.

24   **III.   CLASS NOTICE**

25       **1.    Provision of Class Notice**.  The Settlement Administrator

26   shall provide notice of the proposed Settlement to the Class Members by the

27   date in the Court's Preliminary Approval Order, but no earlier than February 13,

1  2026.

2  **2. Contents**. The Class Notice will contain: a brief description of

3  the claims advanced by the Class; a summary of the terms of the Settlement

4  Agreement; the maximum amount of attorneys' fees and costs that Class Counsel

5  will seek; a description of the proposed Plan of Allocation of the Settlement Fund

6  to the Class; the Parties' non-admission of liability or infirmity; and information

7  about the Final Approval Hearing, in a form substantially similar to **Exhibit A.**

8  The Parties acknowledge that some potential Class Members

9  have been identified who may have taken a qualifying military leave during a

10  period for which Southwest no longer has military leave records for their

11  workgroup. These potential Class Members will receive a claim form with their

12  notice that will allow them to certify that they took short-term military leave in

13  one or more years for which Southwest no longer has military leave records for

14  their workgroup. That form is included as **Exhibit D**.

15  **3. Method of Providing Class Notice.** The Settlement

16  Administrator will send the Class Notice to each individual Class Member: (a) by

17  mailing via first class U.S. Mail; (b) by posting the Class Notice (and other

18  documents filed in the litigation) on a dedicated website approved in form and

19  substance by the Parties; and (c) by email and text message, with a link and/or QR

20  code to the website.

21  **4. Undeliverable Notices.** In the event that a Class Notice sent

22  by U.S. Mail is returned as undeliverable, the Settlement Administrator will

23  make reasonable efforts to obtain a valid mailing address and promptly resend

24  the Class Notice to the Class Member by U.S. Mail.

25  **5. Class Data.** By no later than February 6, 2026, Defendant will,

26  to the extent not already disclosed, provide the Settlement Administrator and

27  Class Counsel with the following contact information in electronic form for each

SETTLEMENT AGREEMENT    8

Class Member, to the extent such information is reasonably available in Defendant's files: (1) name; (2) Employee ID number; (3) last known personal mailing address; (4) last known personal telephone number(s); and (5) last known personal email address.  By February 6, 2026, Defendant will also provide an updated list containing Class Member Social Security numbers to the Settlement Administrator.  Defendant will also provide other information reasonably requested by Class Counsel or the Settlement Administrator.

   **6. Declaration About Class Notice.**  Within 30 days after the date on which Notice is required to be sent, the Settlement Administrator will file a declaration with the Court confirming that the Notice and related information was sent in accordance with the Preliminary Approval Order.

**IV. NON-MONETARY SETTLEMENT TERMS AND PROCEDURES**

   Defendant will prospectively provide an annual allotment of paid military leave to employees at Southwest as provided in this section.  Southwest will provide this allotment for a period of five full calendar years, starting no later than January 1st of the year after final approval of the settlement, as long as there are at least 90 days between final approval and January 1.  If Southwest implements the programmatic change by January 1, 2026, then the 2026 calendar year will count toward the five years even if final approval is not entered as of that date.  After the conclusion of this five-year period, Southwest may terminate this benefit, provided that it shall provide at least 30 days' prior notice to Class Counsel.

   a.  Each employee shall receive up to 10 days of Differential Pay (as defined in Section IV.b) for military leave per calendar year in every year (or part thereof) that the employee is employed.  This allotment will be granted on the first day of the calendar year.

   b.  The Differential Pay provided for each day of paid military leave shall be calculated once annually and will not change based on any changes in

an employee's military position, military pay rates, Southwest position, or Southwest pay rates during the year. For employees who are hired by Southwest or join the military after January 1 of a year, their Differential Pay will be based on the same annual calculation for that year according to their position at Southwest and military rank and years of service when the employee is hired by Southwest or joins the military. The Differential Pay shall be calculated based on the difference between (i) the employee's daily rate of pay at Southwest as of January 1 of the year and (ii) the employee's military pay for two drills based on their rank and years of service as of January 1 of that year.[1] For Pilots and Flight Attendants, the daily rate of pay at Southwest shall be based on a daily rate of 6.5 TFP. Other employees' daily rate of pay at Southwest will be based on their regular hourly pay for a regular workday (e.g. 8 or 10 hours). Regardless of the calculation, each eligible employee will receive at least $30 per leave day in Differential Pay.

c.      After being hired by Southwest, a Pilot will become eligible for paid military leave after completing their First Officer qualification training.

d.      The annual allotment of 10 paid military leave days must be used each calendar year or they will be forfeited. There will be no carryover to the next calendar year and no payout for unused days.

e.      To qualify for paid military leave, the employee or an authorized military officer must notify Southwest of the employee's military service dates in advance, unless military necessity prevents it or it is otherwise impossible or unreasonable due to national security reasons. The employee or an authorized military officer should provide this notice as far in advance as is reasonable under the circumstances, which is at least 30 days prior to the service dates when the

---

[1]      Drill pay rates will be based on the Reserve Component Drill Pay tables published by the Defense Finance and Accounting Service, *available at* https://www.dfas.mil/militarymembers/payentitlements/Pay-Tables/Reserve-Drill-Pay/.

SETTLEMENT AGREEMENT        10

service dates are known to the employee more than 30 days in advance.  The Parties

recognize that, due to the possibility of changes in the timing of military service,

updates to the dates of military service may need to be made after an employee

provides the notification described above.  In such cases, Southwest will promptly

update its records to reflect such changes when it receives such updates from a

servicemember.

    f.   To qualify for paid military leave, the employee also must,

after completing the military service, submit (a) a copy of the Leave and Earning

Statement from the Department of Finance and Accounting that covers the dates of

the military service.  If the Leave and Earnings Statement does not reflect the

military service dates, the employee must also submit either (a) a statement

showing retirement credit for the dates of service (e.g., PCARS), or (b) a letter from

an authorized military officer that verifies the service dates and briefly describes the

nature of the service sufficient to explain why the dates do not appear on the Leave

and Earnings Statement.  The documentation described in this Section should be

submitted to Southwest within a reasonable amount of time.

    g.   The paid-leave benefit will not be paid unless and until the

requirements of Section IV(e) and IV(f) are satisfied.

    h.   These paid military leave provisions will apply only to this

paid military leave benefit.  Employees' ability to take unpaid military leave (in

accordance with USERRA and the terms of the Southwest CBA, as applicable) will

not be affected by this paid military leave benefit.

    i.   Although the paid-leave benefit will cover military leave

days whether the leave is for short-term military leave or longer military leaves, the

Parties understand and agree that, with the exception in Paragraph IV(j) below, the

Settlement is not intended to provide a recurring annual paid-leave benefit for

employees while they are on a continuous military leave extending over one year.

SETTLEMENT AGREEMENT  11

1  For example, if an employee takes a military leave from July 1, 2026 to August 1,
2  2027, the paid leave benefit will apply to the military leave days in 2026 (subject to
3  the 10-day annual cap) but not in 2027.

4         j.  An employee who is on an extended military leave that exceeds
5  one year due to an involuntary activation under 10 U.S.C. § 12302 or § 12304(b)
6  will receive the paid-leave benefit in two consecutive years (up to the 10-day
7  annual cap).  For example, an employee who is involuntarily activated under one of
8  these sections, and goes on military leave from July 1, 2026 to June 1, 2028, will
9  receive the paid-leave benefit (subject to the 10-day annual cap) for 10 days in 2026
10  and 10 days in 2027, but none of the days in 2028.

11         k.  Except as provided in Section IV(j) above, an employee who is on
12  military leave in excess of 1 year shall become ineligible for additional paid leave
13  benefits after their period of extended leave, until the employee returns to work at
14  Southwest, at which point the employee will be eligible for the paid leave benefit
15  prospectively for future leaves.

16  **V.    MONETARY SETTLEMENT & SETTLEMENT FUND**

17         **1.    Payment of Cash Settlement Amount.**  Defendant will pay
18  the Cash Settlement Amount of eighteen million five hundred thousand
19  dollars ($18,500,000.00) into the Escrow Account within 14 days after the
20  Effective Date.

21         **2.    Custody of Settlement Fund.**  The Settlement Fund held in the
22  Escrow Account will be a qualified settlement fund administered in accordance
23  with the terms of this Settlement Agreement and the Orders of the Court.

24         **3.    Management of the Settlement Fund.**  The Settlement
25  Administrator will have the sole right and duty to manage the Settlement Fund in
26  compliance with the terms of the Final Approval Order, at the direction of the
27  Parties.  Any earnings or interest earned by the Settlement Fund will become part

1    of the Settlement Fund.

2        **4.    Qualified Settlement Fund.**  The Settlement Fund shall be

3    established as a "qualified settlement fund" for federal income tax purposes under

4    Treas. Reg. § 1.468B-1 at the earliest date possible.

5    **VI.    DISTRIBUTIONS FROM THE SETTLEMENT FUND**

6        **1.    Distributions from the Settlement Fund.**  Within 14 days after

7    the Escrow Account is funded, the Settlement Administrator will make the

8    following distributions from the Settlement Fund: (1) the Fees Award; (2) the

9    Expense Award; (3) the Service Awards; (4) the costs of settlement administration

10   previously incurred; and (5) any payments to the relevant taxing authorities.  The

11   remaining funds shall be known as the "Net Settlement Amount."

12       **2.    Distribution to Class Members.**  Within 14 days after the

13   Escrow Account is funded, the Settlement Administrator will distribute the Net

14   Settlement Amount to Class Members pursuant to the Plan of Allocation described

15   in Section VII of this Settlement Agreement.

16       **3.    Tax Liability.**  Each Class Member who receives any recovery

17   under this Settlement Agreement is responsible for any associated Taxes, except

18   that Defendant agrees to pay 100% of the employer's share of any applicable

19   payroll taxes in addition to and separate from the Cash Settlement Amount.

20   Plaintiff, on behalf of himself and the Class Members, acknowledges and agrees

21   that he has not relied upon any advice from Defendant or Class Counsel as to the

22   taxability of the payments received pursuant to this Settlement Agreement.  For

23   purposes of the amounts paid pursuant to Sections V and VI of this Settlement

24   Agreement, 50% of the amounts paid to Class Members shall be treated as Form

25   W-2 wages for the purposes of withholding all applicable local, state and federal

26   Taxes, and 50% shall be treated as Form 1099 remuneration separate and distinct

27   from lost wages.

SETTLEMENT AGREEMENT        13

1      **4.**   Notwithstanding any treatment of payments as wages under this

2  Section VI of this Settlement Agreement for tax purposes, this Settlement does

3  not give rise to any obligation to retroactively recalculate or retroactively adjust

4  pension, retirement benefits, or any other benefit plans whose benefits are

5  determined based on total compensation under any plans now in effect.  Payments

6  to Class Members from the Settlement Fund will not be eligible for purpose of

7  calculating employer contributions to any retirement plans, including 401(k) plans,

8  other benefit plans based on total compensation, or for any bonus payments at

9  Southwest.

10  **VII.  PLAN OF ALLOCATION**

11      **1.**   **Plan of Allocation.**  Subject to approval and/or modification by

12  the Court, the Settlement Fund proceeds to be distributed to Class Members will

13  be allocated based on a ratio to be calculated by the Settlement Administrator

14  based on their proportional share of the total estimated damages in the case, as

15  follows.

16        a.    All leaves for Class Members for whom damages were

17  calculated in the Supplemental Report produced by David Breshears on May 3,

18  2024 (Damages Report) will be credited to Class Members who took those

19  leaves by crediting those Class Members with the amount shown for each Class

20  Member in the "Jury Based: Wages Due Less DOD Base" column in Exhibit 2

21  to the Damages Report – which is the amount of wages that, according to Mr.

22  Breashears' analysis, would have been earned by each Class Member for each

23  short-term military leave using jury leave as a comparator minus the amount of

24  their base pay from the military based on records provided by the Department of

25  Defense.

26        b.    Leaves taken by Class Members after the date of the

27  joint subpoena issued to the Department of Defense in the course of the

SETTLEMENT AGREEMENT    14

1  Litigation will be credited with damages using the same methodology used in

2  the Damages Report, except that, due to the Parties' lack of access to DOD

3  records, the base damages will be offset by a percentage amount equal to the

4  average amount of the offset applied to that Class Member's work group in the

5  Damages Report.  These amounts will be provided to the Settlement

6  Administrator by Class Counsel.

7          c.        Any Class Member who certifies that they took short-

8  term military leave pursuant to Section III.2. above will be credited with

9  damages equal to the average yearly damages for other employees in their work

10  group for each year in which they certify that they took military leave and in

11  which Southwest no longer has military leave records for their workgroup.

12          d.        The amounts credited to all Class Members under

13  Sections VII.1.a. through c. above will be added together to arrive at the Total

14  Damages, and the amount credited each individual Class Member will be divided

15  by the Total Damages.  This ratio shall become each Class Member's

16  "Proportionate Settlement Share."  Each Class Member's Proportionate

17  Settlement Share shall then be multiplied by the Net Settlement Amount to

18  determine that Class Member's share of the Settlement Fund.

19          **2.**    **No Claim Based on Distribution in Accordance with the**

20  **Plan of Allocation.**  Class Members will not have any claim against Plaintiff,

21  Defendant, counsel to any of the foregoing (including Class Counsel), the

22  Settlement Administrator, or other individuals involved in the distribution under

23  the Plan of Allocation, based on any distributions of the Settlement Fund made

24  substantially in accordance with this Settlement Agreement, the Plan of

25  Allocation, or as otherwise authorized by the Court.

26          **3.**    **Unclaimed Funds and Redistribution.** Any unclaimed funds

27  shall be redistributed to participating Class Members who accepted payment on a

1  *pro rata* basis.  If redistribution is not economically feasible in the judgment of
2  the Parties in consultation with the Settlement Administrator, the remaining funds
3  will be distributed to a *cy pres* beneficiary jointly selected by the Parties.[2]

4  **VIII. SETTLEMENT ADMINISTRATION**

5        **1.    Appointment of Settlement Administrator.**  The Parties shall
6  propose a Settlement Administrator who will be approved and appointed by the
7  Court to administer the Settlement and will report to the Parties and the Court.
8  The Settlement Administrator will have experience providing notice to Class
9  Members and administering settlements in employment class action settlements
10  and settlement funds.  The Settlement Administrator shall not be any business
11  with, or in which any Party or their counsel (or the firm of such counsel) has, any
12  personal relationship or financial interest.  The Parties and their counsel will
13  reasonably cooperate with the Settlement Administrator to facilitate providing
14  Class Notice and other settlement-related information.

15        **2.    Settlement Administrator's Responsibilities.**  The Settlement
16  Administrator will undertake the following tasks to administer this Settlement
17  consistent with the Orders of the Court and such other procedures required by the
18  Court or as directed by Class Counsel:

19              a.        Distribute the Class Notice Packet to the Class
20  Members in accordance with this Settlement Agreement and any order of the
21  Court and undertake to trace and re-mail all undeliverable Class Notice Packets
22  or other reasonable steps to locate missing Class Members;

23              b.        Provide information on any new addresses to Class
24  Counsel; Provide Class Counsel and Defense Counsel with copies of any requests
25  for exclusion or objections to the Settlement (to the extent such requests or

26

27  [2]    For example, if the cost of redistribution would exceed the amount to be
redistributed, this would be deemed economically infeasible.

SETTLEMENT AGREEMENT        16

1    objections are not filed with the Court);

2              c.     Respond to questions from Class Members or refer Class
3    Members to Class Counsel for responses;

4              d.     Maintain and staff a toll-free phone number and a web site
5    until six (6) months after distributions of the Settlement Fund have been made to
6    Class Members;

7              e.     File with the Court a declaration confirming compliance
8    with the procedures approved by the Court for providing notice to the Class;

9              f.     Calculate the amount of the Net Settlement Amount to be
10   allocated to each Class Member entitled to payment by name and amount;

11             g.     Calculate, for any payments to be made to Class
12   Members, amounts that must be reported as income, withhold any applicable
13   payroll taxes, determine the employer's share of taxes, and as necessary, remit
14   such funds to the appropriate taxing authorities, along with any associated tax
15   reporting, return and filing requirements;

16             h.     Distribute payments of the settlement proceeds to Class
17   Members, consistent with instructions from Class Counsel and the Plan of
18   Allocation;

19             i.     Monitor the Settlement Fund and file all informational
20   and other tax returns necessary or advisable with respect to the Settlement Fund
21   (including without limitation the returns described in Treas. Reg. Section
22   1.468B-2(k));

23             j.     Ensure that Class Data is used solely for the
24   administration of this Settlement and is shared only with any persons or entities
25   employed by the Settlement Administrator or for purposes of the administration of
26   this Settlement.  Because the list contains personal information, the Settlement
27   Administrator shall maintain the list securely and in confidence, maintaining the

1  strictest standards of data privacy;

2      k.      Prepare and provide the CAFA Notice in accordance with
3  this Sections XIII.1-2 of this Settlement Agreement;

4      l.      Any other responsibilities set forth in this Settlement
5  Agreement and any other responsibilities agreed to by the Settling Parties related
6  to administration of the Settlement and consistent with the orders of the Court or
7  any other responsibilities ordered by the Court.

8      **3.  Class Notice Costs and Expenses.**  All costs and expenses for
9  the Class Notice and the Settlement Administrator will be paid from the
10  Settlement Fund.

11  **IX.  PAYMENT OF FEES, SERVICE AWARDS, AND REIMBURSEMENT**
12      **OF COSTS AND EXPENSES**

13      **1.  Attorneys' Fees & Expenses from the Settlement Fund.**
14  Class Counsel will file a motion for attorneys' fees and reimbursement of
15  litigation expenses and costs from the Settlement Fund, and Class
16  Representatives will file a motion for a service award to be paid from the
17  Settlement Fund.  Prior to the deadline for Class Members to object to the
18  Settlement Agreement, Class Counsel will file a motion with the Court for an
19  award from the Settlement Fund of: (a) attorneys' fees ("Fee Award"), (b)
20  expenses, including all amounts paid to the Settlement Administrator ("Expense
21  Award"); and (c) service awards for Class Representatives (the "Service
22  Awards").  Any Fee Award, Expense Award or Service Award will be paid
23  solely from the Settlement Fund and is subject to the Court's approval at the
24  Final Approval Hearing. All Fee Awards, Expense Awards, and Service Awards
25  will be reported on an IRS Form 1099.

26      **2.  Limitation on Requested Awards.**  Class Counsel will not
27  seek attorneys' fees more than one-third of the Cash Settlement Amount, plus

SETTLEMENT AGREEMENT      18

1 reimbursement of reasonable out-of-pocket costs, both of which are subject to

2 the Court's approval. Plaintiff's request for Service Awards for the Class

3 Representatives will not exceed $25,000 each.

4       **3.   Non-Materiality of Award of Attorneys' Fees and**

5 **Reimbursement of Expenses to Settlement.** In the event that the Court refuses

6 to award attorneys' fees or allow reimbursement of expenses/costs, in whole or in

7 part, or if any such award is rejected or modified on appeal, such rejection or

8 modification will not constitute a material modification of this Settlement

9 Agreement, will not void this Settlement Agreement, and will not provide a basis

10 for any Party to withdraw from this Settlement Agreement.

11       **4.   Payment of Fees/Expenses to Class Counsel.** The Fee Award

12 and the Expense Award to be paid pursuant to this Section will be paid as directed

13 by Class Counsel. Defendant will not have any input as to the division of such

14 fees and expenses among Plaintiff's Counsel.

15       **5.   Timing of Payment of Attorneys' Fees and Reimbursement of**

16 **Expenses.** In the event that there is no appeal of the Final Judgment of the

17 Settlement, but an appeal solely of a Fee Award or an Expense Award (or a

18 portion thereof), (a) Class Counsel will be entitled to a disbursement of such

19 expenses/costs as to which there is no appeal or the amount which is not contested

20 on appeal, if those amounts are ascertainable; and (b) such an appeal will not

21 prevent the Settlement from becoming Non-Appealable nor prevent or delay

22 distribution of the Settlement Fund to Class Members. Any added administrative

23 expenses that may arise from a disbursement to Class Counsel or a distribution to

24 Class Members during the pendency of the appeal shall be paid from the Settlement

25 Fund.

26 **X.   NO ADMISSION OF WRONGDOING OR INFIRMITY OF CLAIMS**

27       **1.   No Admission by Defendant.** This Settlement Agreement

SETTLEMENT AGREEMENT     19

embodies a compromise of disputed claims and nothing in the Settlement Agreement will be interpreted or deemed to constitute any finding of wrongdoing by Defendant or give rise to any inference of liability in this or any other proceeding. This Settlement Agreement will not be offered or received against Defendant as an admission by any Party with respect to the truth of any fact alleged by Plaintiff or the validity of any claim asserted in the Action or of any liability, negligence, fault, or wrongdoing of any such Party.

**2. No Admission by Plaintiff or the Class.** This Settlement Agreement is not, nor may it be deemed to be or used as an admission or evidence of any infirmity in the claims asserted by Plaintiff and Class Members.

**3. Use of Settlement Agreement.** This Settlement Agreement may be used in such proceedings as may be necessary to consummate or enforce this Settlement Agreement or the Final Approval Order, and any Party may file this Settlement Agreement and/or the Final Approval Order in any action that may be brought against it to support a claim, a defense, or a counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, offset, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, or in any action that may be brought to enforce any claim pursuant to this Settlement Agreement.

**XI.    APPROVAL**

**1. Preliminary Approval Order.** Class Counsel, on behalf of the Class, will move the Court to enter a Preliminary Approval Order ("Preliminary Approval Motion"). The Preliminary Approval Motion will seek an Order in a form agreed upon by the Settling Parties which will propose among other things:

(a)    Appointment of David Cash as Class Representative in addition to Plaintiff;

(b)    Modification of the definition of the Class as previously

SETTLEMENT AGREEMENT        20

1    certified by the Court to the definition set forth in this Settlement Agreement;

2                    (c)    Preliminary Approval of the Settlement as set forth in

3    this Settlement Agreement, subject to further hearing and final approval under Fed.

4    R. Civ. P. 23(e);

5                    (d)    Approval of the form of Class Notice, substantially in

6    the form agreed upon by the Parties, and of the manner of distribution and

7    publication, consistent with this Settlement Agreement, Fed. R. Civ. P. Rule 23,

8    and the requirements of due process;

9                    (e)    Authorization of the payment of Settlement

10   Administration expenses out of the Settlement Fund;

11                   (f)    Preliminary Approval of the Plan of Allocation;

12                   (g)    Appointment of the Settlement Administrator;

13                   (h)    Deadlines by which all objections to the Settlement must

14   be made and a deadline for requests for exclusion to be filed;

15                   (i)    Provide that any objections or requests for exclusion that

16   are not filed with the Court will be submitted to the Court;

17                   (j)    A schedule for a hearing date for the Court to

18   determine whether the Settlement Agreement should be finally approved as fair,

19   reasonable, and adequate, and whether an Order finally approving the Settlement

20   Agreement should be entered ("Final Approval Hearing");

21                   (k)    Deadlines for filing a Final Approval Motion, Class

22   Counsel's application for a Fee and Expense Award, and Plaintiff's application for

23   a Service Award;

24                   (l)    That the Final Approval Hearing may be continued from

25   time to time by Order of the Court if necessary, and without further notice to the

26   Class;

27                   (m)    Requiring Defendant to produce the Class Data required

SETTLEMENT AGREEMENT          21

1  pursuant to this Settlement Agreement to the extent that such data are reasonably
2  available and within its possession, custody or control;

3           (n)     Approval of the CAFA notice distributed by the
4  Settlement Administrator; and

5           (o)     That Defendant makes an unopposed request for a
6  factual finding that the programmatic relief provided for in Section IV of this
7  Settlement Agreement is commensurate with the paid-leave benefits that
8  Defendant provides for the comparator leaves, based on the summary statistics
9  prepared by both parties' experts that are set forth in **Exhibit B**.

10          **2.    Final Approval of the Settlement.**  If the Court preliminarily
11  approves this Settlement (and none of the conditions to terminate this
12  Settlement Agreement occur), Class Counsel will file a Final Approval Motion,
13  which will seek entry of a proposed Final Approval Order in a form to be
14  agreed upon by the Settling Parties.  The proposed Final Approval Order will,
15  among other things, request that the Court order and/or find:

16          (a)     Final Approval of the Settlement of the claims of the Class
17  set forth in this Settlement Agreement;

18          (b)     The Settlement is fair, reasonable, and adequate to the
19  Class pursuant to Fed. R. Civ. P. 23(e);

20          (c)     Final Approval of the Plan of Allocation;

21          (d)     Dismissal of the Action against Defendant with prejudice;

22          (e)     That Plaintiff and the Class will be deemed conclusively
23  to have released and waived any and all Settled Class Claims against Defendant as
24  provided in this Settlement Agreement;

25          (f)     The Parties and the Class are barred and permanently
26  enjoined from prosecuting any and all Settled Claims, as provided in this
27  Settlement Agreement, against any Releasee;

SETTLEMENT AGREEMENT          22

1          (g)    Determine Class Counsel's request(s) for a Fee Award,

2 Expense Award, and the Class Representatives' request for Service Awards;

3          (h)    Retain exclusive jurisdiction, without affecting the finality

4 of the Order entered, over: (i) implementation of this Settlement Agreement; (ii)

5 disposition of the Settlement Fund and distributions from the Settlement Fund; and

6 (iii) enforcement and administration of this Settlement Agreement, including the

7 non-monetary terms;

8          (i)    The Settlement Administrator provided timely notice to

9 the appropriate state and federal officials as required by CAFA; and

10          (j)    The programmatic relief provided for in Section IV of this

11 Settlement Agreement is commensurate with the paid-leave benefits that Defendant

12 provides for the comparator leaves.

13          3.    **Request for Findings.**  Although Plaintiffs and Class

14 Members will not oppose the Court's entry of a finding that the programmatic

15 relief provided for in Section IV of this Settlement Agreement is commensurate

16 with the paid-leave benefits that Defendant provides for the comparator leaves,

17 they shall have no burden to affirmatively argue for or support it.  Should the Court

18 decline to include this finding in the Final Approval Order, all other terms of the

19 Settlement Agreement shall continue to apply with full force and effect.

20 **XII.**   **RESTRICTIONS ON DEFENDANT'S CONTACT WITH CLASS**

21          **MEMBERS**

22          **1.**   **Defendant's Contact with Class Members.**  Prior to the date

23 Final Approval has been entered, Defendant, Defendant's Counsel, or any person

24 acting on behalf of Defendant or Defendant's Counsel will not initiate

25 communications with any Class Member about this Action or Settlement except (a)

26 with the prior written consent of Class Counsel (b) as provided in this Section or

27 (c) as allowed by the Court (including Court-approved communications).

SETTLEMENT AGREEMENT     23

**2.    Communications Initiated by Class Members.**  To the extent that a Class Member initiates any communication with Defendant, Defendant's Counsel, or persons acting on their behalf about this Action or the Settlement prior to the date the Final Approval Order has been entered, Defendant or Defense Counsel will respond by advising the Class Member to contact the Settlement Administrator or Class Counsel.  Notwithstanding the restrictions in XII.1 and XII.2, Defendant may communicate about the programmatic terms of the settlement with Class Members who are managers or administrators and are reasonably necessary to prepare for the implementation of the programmatic terms of the settlement, provided that such communications do not involve the merits of the case or the settlement.

**XIII.  ISSUANCE OF CLASS ACTION FAIRNESS ACT NOTICE**

**1.    CAFA Notice.**  Pursuant to CAFA, the Settlement Administrator will prepare and provide the CAFA Notice, including the notices to the United States Department of Justice and to the Attorneys General of all states in which the Class Members reside, as specified by 28 U.S.C. § 1715, within ten days after this Settlement Agreement is filed with the Court.

**2.    CAFA Notice Provided to Class Counsel.**  The Settlement Administrator will provide Class Counsel with a copy of the CAFA Notice and materials that it sends within three business days after such notices have been sent.

**XIV.  RELEASES**

**1.    Release by the Class Representatives and Class Members.** Upon the Effective Date**,** the Class Representatives and the Class Members who have not opted out (including their heirs, executors, administrators, successors, and assigns) will fully and finally release the Releasees from all claims or causes of action, whether in law or equity, whether known or unknown, that were or

1  could have been pled based on the identical factual predicate in the Complaint,

2  including any claim under USERRA Section 4316(b) for damages, prospective

3  relief, or any other form of relief arising from or based on short-term military

4  leaves taken from October 10, 2004 through January 1, 2026 ("Settled Class

5  Claims").

6             **2.   General Release by Class Representatives.**

7         (a)   **General Release.**  Upon the Effective Date, in exchange for

8  their Service Awards and the other terms and conditions of this Settlement, the

9  Class Representatives, on behalf themselves and their heirs, executors,

10  administrators, successors, and assigns, fully and finally release the Releasees

11  from all claims, obligations, demands, actions, rights, charges, suits, debts,

12  causes of action, and liabilities against the Releasees, of whatever kind and

13  nature, character, and description, whether in law or equity, whether sounding in

14  tort, contract, federal, state and/or local law, statute, ordinance, regulation,

15  common law, or other source of law or contract, whether known or unknown,

16  and whether anticipated or unanticipated, from the beginning of time through

17  the Effective Date, including, but not limited to, all claims arising from or

18  related to their employment with Southwest under any federal, local or state

19  statute or regulation, provided, however, that notwithstanding the foregoing,

20  nothing contained in this release shall in any way diminish or impair (i) any

21  claims they may have that cannot be waived under applicable law, (ii) their

22  rights under this Agreement, or (iii) their rights to vested benefits under

23  employee benefit plans.  This general release includes, but is not limited to, a

24  release of all claims under USERRA; Title VII of the Civil Rights Act of 1964,

25  42 U.S.C. §§ 2000(e) *et seq*.; the Age Discrimination in Employment Act, 29

26  U.S.C. §§ 621 *et seq*., as amended by the Older Workers Benefit Protection Act

27  of 1990; Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; the

Equal Pay Act of 1963, 29 U.S.C. § 206 and the Lilly Ledbetter Fair Pay Act;
the Sarbanes-Oxley Act of 2002; the Dodd-Frank Wall Street Reform and
Consumer Protection Act; the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et
seq.*; the Consolidated Omnibus Budget Reconciliation Act of 1985, 42 U.S.C.
S 1395(c); Executive Order 11141; Section 503 of the Rehabilitation Act of
1973, 29 U.S.C. §§ 701, *et seq.*; the Employee Retirement Income Security Act
of 1974, 29 U.S.C. § 1001, *et seq.*; the Americans with Disabilities Act; the
Worker Adjustment and Retraining Notification Act; the Family and Medical
Leave Act; the National Labor Relations Act; the Immigration Reform and
Control Act; the Occupational Safety and Health Act; the Fair Credit Reporting
Act; the California Fair Employment and Housing Act, Cal. Govt. Code §
12940 *et seq.*; the California Family Rights Act, Cal. Govt. Code § 12945.2; the
California Labor Code, including but not limited to Section 132a, Sections 200
*et seq.* and Sections 1025 *et seq.*, as well as the Private Attorneys General Act;
the California Government Code; the California Constitution; California Unfair
Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; any amendments to
the foregoing statutes; and any other laws and/or regulations relating to
employment, compensation or employment discrimination in any state where
they have performed work or would have standing to assert a claim.

(b) **Section 1542 Waiver.** Class Representatives expressly
waive all rights under Section 1542 of the Civil Code of the State of California
(or any other state or federal statute or provisions of similar effect), which
provides as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
THAT THE CREDITOR OR RELEASING PARTY DOES NOT
KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT
THE TIME OF EXECUTING THE RELEASE, AND THAT, IF
KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY
AFFECTED HIS OR HER SETTLEMENT WITH THE**

SETTLEMENT AGREEMENT        26

**DEBTOR OR RELEASED PARTY."**

Class Representatives expressly acknowledge and agree that this Settlement Agreement shall extend and apply to all unknown, unsuspected and unanticipated injuries and that they may later discover claims or facts in addition to or different from those which they now know or believe to exist with regard to the subject matter of this Settlement Agreement, and which if known or suspected at the time of executing this Settlement Agreement, may have materially affected its terms. Nevertheless, Class Representatives waive any and all Claims that might arise as a result of such different or additional claims or facts.

(c) **Right to File Charge or Participate in Agency Investigation.** Nothing herein shall prevent Class Representatives from filing a charge or complaint with the Equal Employment Opportunity Commission ("EEOC") or similar federal or state agency (such as the California Civil Rights Department) or impair their ability to participate in any investigation or proceeding conducted by such agency.

(d) **No Claim for Sexual Abuse or Harassment**. Class Representatives acknowledge that they have not made any claims or allegations related to sexual harassment or sexual abuse and none of the payments set forth herein are related to sexual harassment or sexual abuse.

(e) **ADEA Time to Review and Revocation Period**. Class Representatives understand and agree that they are waiving and releasing any rights they may have under the Age Discrimination in Employment Act (ADEA), and that this waiver and release is knowing and voluntary. Class representatives understand and agree that this waiver and release does not apply to any rights or claims that may arise under the ADEA after the Effective Date of this Settlement Agreement. Class Representatives understand and acknowledge that the consideration given for this waiver and release is in addition to anything of value to which they were

SETTLEMENT AGREEMENT          27

already entitled.  Class Representatives further understand and acknowledge that they hereby are and have been advised by this writing that:

1. They have each been given twenty-one (21) calendar days after the date they received this Agreement ("21-day Consideration Period") within which to review and consider it, to discuss it with an attorney of their own choosing, and to decide whether or not to sign it. Southwest hereby advises Class Representatives to consult with an attorney of their own choosing during this 21-day Consideration Period, and Class Representatives acknowledge that they have consulted with their attorney(s) prior to signing this Settlement Agreement;

2. Class Representatives have seven (7) days following their execution of this Settlement Agreement to revoke this Settlement Agreement by delivering or transmitting written notice of revocation to Counsel for Defendant.

3. If Class Representatives choose to execute this Agreement before the 21-day Consideration Period has elapsed, they do so knowingly and voluntarily, and without any duress or undue influence.

(f) **Right to Enforce Settlement.**  Notwithstanding the foregoing or any other language in this Settlement Agreement, the Settling Parties are not releasing Claims to enforce this Settlement Agreement.

## XV.   REPRESENTATIONS

1. **No Current Retention.**  Class Counsel represent that they have not been retained to represent any clients in any claim against Defendant under USERRA § 4316(b) (other than the Class Representatives with respect to this Action).

2. **No Unfiled Claims.**  Class Counsel represent that they do not have

SETTLEMENT AGREEMENT        28

1   any present intent to file any claim under USERRA § 4316(b) against Southwest.

2       **3.     No Intent to Seek Clients.** Class Counsel represent that they do

3   not have any present intent to seek out any client to pursue a claim under USERRA

4   § 4316(b) against Southwest.

5   **XVI.   CONDITIONS OF SETTLEMENT**

6       **1.     Court Approval**. Each of the following is an express

7   condition of Settlement: (a) the Class definition is modified to substantially

8   correspond to the one set forth in this Settlement Agreement; (b) the Class Data that

9   Defendant produced during this litigation materially reflects the information in its

10  records; (c) the Preliminary Approval Order is entered substantially in the form

11  required by this Settlement Agreement; (d) the Final Approval Order is entered

12  substantially in the form required by this Settlement Agreement; and (e) the Final

13  Approval Order becomes Non-Appealable.

14      **2.     Effect of Modification of the Class Definition**. In the event that

15  the Court does not modify the Class substantially similar to the definition as set

16  forth in this Settlement Agreement, Co-Lead Class Counsel and Defendant will

17  have the right to withdraw from this Settlement so long as the notice of the exercise

18  of such right is provided to the Court and the opposing Party within 14 days after

19  the date on which the Court issues such order. In the event that either Co-Lead

20  Class Counsel or Defendant provides a Termination Notice pursuant to Section

21  XVII.1 based on the modification of the class definition and the Parties fail to reach

22  agreement as provided under Section XVII.2, any dispute concerning this provision

23  will be submitted to the Court, which (along with any appellate court) will have sole

24  authority to resolve that dispute.

25      **3.     Effect of Opt-Outs.** If the number of Class Members who timely

26  and validly request exclusion as determined by the Settlement Administrator (the

27  "opt-outs") exceeds 2% of the total number of Class Members, Defendant will have

the right to either (a) withdraw from and void this Settlement or (b) reduce the Cash Settlement Amount by the *pro rata* share allocated to non-participating class members in excess of 2% based on the method of allocation.  To exercise this right, Defendant must provide notice to Class Counsel within 14 days after the Settlement Administrator provides a final count of the opt-outs following the close of the opt-out period.  In the event that the number of opt-outs exceeds 2% and Defendant exercises its right to reduce the Cash Settlement amount on a *pro rata* basis (as described above), any dispute concerning the percentage of opt-outs or the amount of the reduction will be submitted to the Court, which (along with any appellate court) will have sole authority to resolve that dispute.

**4.    Non-Conditional Matters.**  None of the following are conditions of the Settlement: (a) Court approval of any Service Award; (b) Court approval of the Fee Award or Expense Award; or (c) Court approval of the proposed Plan of Allocation.

**XVII. EFFECT OF TERMINATION & WITHDRAWAL**

**1.    Right to Terminate.**  In the event that one of the Conditions of Settlement in Section XVI is not satisfied, either Co-Lead Class Counsel or Defendant shall have the right to withdraw from and seek to void this Settlement under the conditions set forth in this Settlement Agreement by providing written notice to counsel for all other Parties to the Settlement within fourteen days (14) days after the event prompting the right to terminate ("Termination Notice").

**2.    Effectiveness of Termination Notice.**  The Termination Notice will become effective to void the Settlement Agreement only if the Settling Parties fail to reach a written agreement within 30 days of the Termination Notice to modify this Settlement Agreement to resolve the issue and have not agreed to further extend the time to reach agreement to modify this Settlement Agreement.

1      **3.**     **Effect of Withdrawal.**  In the event that a Termination Notice

2 becomes effective, the Settling Parties will not be released from the claims asserted

3 in this Action; this Settlement Agreement will be void *ab initio*; the Parties'

4 positions, rights, and responsibilities will be deemed to have reverted to their

5 respective status in this Action as of January 20, 2025, and the Parties will proceed

6 in all respects as if this Settlement Agreement never existed.

7 **XVII.  MISCELLANEOUS PROVISIONS**

8      **1.**     **Confidentiality.**  The Parties shall keep the terms of this

9 Settlement Agreement confidential until the Preliminary Approval Motion is filed

10 with the Court (except as otherwise agreed by the Parties).  The Parties agree not to

11 publicize the terms of this Settlement to any person prior to moving for preliminary

12 approval; however, Class Counsel may inform potential settlement administrators

13 about the terms subject those persons agreeing to keep the terms confidential.

14      **2.**     **Destruction of Confidential Information.** In addition to the

15 archival copies of documents to which Counsel for any Party is entitled to retain

16 pursuant to Paragraph 13 of the Protective Order (ECF No. 34), Plaintiffs' Counsel

17 and Class Counsel may maintain the Class data used to provide Class Notice or to

18 calculate Distributions of the Settlement Fund to the Class following Final

19 Disposition, but such materials will remain subject to the terms of the Protective

20 Order.  Additionally, the Settlement Administrator may maintain the Class Data

21 used to provide Class Notice or to calculate distributions of the Settlement Fund to

22 the Class for one year following final disposition of the Action, on the condition

23 that the Settlement Administrator agrees to and does maintain such materials

24 subject to the terms of the Protective Order.

25      **3.**     **Tax Obligations and Tax Advice.**  No opinion or advice

26 concerning the Tax consequences of the Settlement Agreement has been given or

27 will be given by counsel involved in the Action to the Class, nor is any

SETTLEMENT AGREEMENT     31

representation or warranty in this regard made by virtue of this Settlement
Agreement.  The Tax obligations of the Class and the determination thereof are the
sole responsibility of each Class Member, and it is understood that the Tax
consequences may vary depending on the particular circumstances of each Class
Member.  Likewise, the Tax obligations of Southwest are the sole responsibility of
Southwest.

   **4.    Binding Effect.**  This Settlement Agreement will be binding
upon, and inure to the benefit of, the successors, assigns, executors, administrators,
affiliates, heirs, spousal beneficiaries, and legal representatives of the Settling
Parties, provided, however, that no assignment by any Settling Party will operate
to relieve such Party of its obligations hereunder.

   **5.    Good Faith.**  The Settling Parties: (a) acknowledge that it is their
intent to consummate this Settlement; (b) agree to exercise their best efforts and to
act in good faith to cooperate to the extent necessary to effectuate and implement
all terms and conditions of this Settlement Agreement; and (c) agree to exercise
their best efforts and to act in good faith to cooperate to the extent necessary to
obtain the fullest possible participation of all Class Members in any Settlement.
The Settling Parties and their counsel agree to cooperate fully with one another in
seeking entry of the Preliminary Approval Order and Final Approval Order.  The
Settling Parties also agree to promptly execute and/or provide such documentation
as may be reasonably required to obtain preliminary and final approval of this
Settlement.

   **6.    Modification.**  This Settlement Agreement may be amended or
modified only by written instrument signed by Co-Lead Class Counsel on behalf
of Plaintiff and the Class and by Defense Counsel on behalf of Defendant or
their respective successors in interest and to the extent that such modifications
are made after approval by the Court and such modification is material, after the

1  Court has approved such modification.

2    **7.  Representations.**  This Settlement Agreement constitutes the

3  entire agreement among the Settling Parties, and no representations, warranties,

4  or inducements have been made to any Party concerning this Settlement

5  Agreement other than the representations, warranties, and covenants contained

6  and memorialized in such documents.

7    **8.  Authorization.**  Each signatory to this Settlement Agreement

8  represents that they are authorized to enter into this Settlement Agreement on

9  behalf of themselves or the respective Parties they represent.

10    **9.  Counterparts.**  This Settlement Agreement may be executed

11  in one or more original, photocopied, or facsimile counterparts.   All executed

12  counterparts and each of them will be deemed to be one and the same

13  instrument.

14    **10.  Governing Law.**  All terms of this Settlement Agreement will be

15  governed by and interpreted according to the laws of the State of California

16  without regard to its rules of conflicts of law and in accordance with the laws of

17  the United States.

18    **11.  Waiver.**  The waiver by one Party of any breach of this

19  Settlement Agreement by any other Party will not be deemed a waiver of any other

20  breach of this Settlement Agreement.  The provisions of this Settlement

21  Agreement may not be waived except by a writing signed by the affected Party, or

22  counsel for that Party, or orally on the record in court proceedings.

23    **12.  Continuing Jurisdiction.**  The Final Approval Order will provide

24  that the Court will have continuing jurisdiction over this Settlement.

25    **13.    Enforcement of this Agreement.**  In the event that any Party

26  to this Agreement believes that another Party to this Agreement has breached the

27  terms of this Agreement, that Party will notify the alleged breaching Party and

1  Counsel in writing setting forth the nature of the breach and the requested method
2  to cure the breach at least 14 days prior to filing any litigation to enforce the terms
3  of the Settlement Agreement (and if the allegedly breaching Party is a Class
4  Member, regardless of whether that Class Member has separate counsel,
5  Defendant must also notify Class Counsel in writing).  In the event that the
6  allegedly breaching Party fails to cure the alleged breach as set forth in the written
7  notification after 14 days, the other Party may then file an action to enforce the
8  Settlement Agreement.

9       **14. Extensions.**  The Settling Parties reserve the right, subject to the
10  Court's approval, to request any reasonable extensions of time that might be
11  necessary to carry out any of the provisions of this Settlement Agreement.

12       **15. Evidentiary Effect.**  Neither this Settlement Agreement nor the
13  Settlement, nor any negotiation, nor act performed, nor document executed, nor
14  proceedings held pursuant to or in forbearance of this Settlement Agreement or
15  the Settlement, even if this Settlement Agreement is cancelled or terminated: (a)
16  is, or may be deemed to be, or may be used as an admission of, or evidence of the
17  validity of any Settled Claims, or of any wrongdoing, negligence,
18  misrepresentation, violation, or liability of any Settling Party; (b) is, or may be
19  deemed to be, or may be used as an admission of, or evidence of any infirmity in
20  the Complaint or claims asserted by Plaintiff and the Class; or (c) is, may be
21  deemed to be, or may be used as an admission of, or evidence of, any fault or
22  omission of any Settling Party in any civil, criminal, or administrative proceeding
23  in any court, administrative agency, or tribunal, including in this Action.  This
24  Settlement Agreement may be used in such proceedings as may be necessary to
25  consummate or enforce this Settlement Agreement, the Settlement, or the Final
26  Approval Order; and any Settling Party may file this Settlement Agreement and/or
27  the Final Approval Order in any action to support a defense or counterclaim based

1  on principles of *res judicata*, collateral estoppel, release, good faith settlement,

2  judgment bar, offset,  or any other theory of claim preclusion or issue preclusion

3  or similar defense or counterclaim.

4  **16.  Final and Complete Resolution.**  The Settling Parties intend

5  this Settlement Agreement to be a final and complete resolution of all disputes

6  between them with respect to this Action.  The Settlement compromises claims

7  which are contested and will not be deemed an admission by any Settling Party as

8  to the merits of any claim or defense.  The Settling Parties agree that the amount

9  paid to the Settlement Fund and the other terms of the Settlement Agreement were

10  negotiated in good faith at arm's length by the Settling Parties and reflect a

11  settlement that was reached voluntarily after consultation with competent legal

12  counsel.

13  The Parties and their respective counsel agree to and affirm the terms of this

14  Settlement Agreement:

15

16  Dated:

17  September 25, 2025

18

19

20  Agreed to by:

21

22  _____
    Jayson Huntsman,
23  Plaintiff and Class Representative

24

25  _____
    David Cash,
26  Class Representative

27

Brian D. Berry
Monica N. Ratajczak
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415-442-1000
brian.berry@morganlewis.com
monica.ratajczak@morganlewis.com

SETTLEMENT AGREEMENT        35

1  on principles of *res judicata*, collateral estoppel, release, good faith settlement,

2  judgment bar, offset,  or any other theory of claim preclusion or issue preclusion

3  or similar defense or counterclaim.

4      **16. Final and Complete Resolution.**  The Settling Parties intend

5  this Settlement Agreement to be a final and complete resolution of all disputes

6  between them with respect to this Action.  The Settlement compromises claims

7  which are contested and will not be deemed an admission by any Settling Party as

8  to the merits of any claim or defense.  The Settling Parties agree that the amount

9  paid to the Settlement Fund and the other terms of the Settlement Agreement were

10 negotiated in good faith at arm's length by the Settling Parties and reflect a

11 settlement that was reached voluntarily after consultation with competent legal

12 counsel.

13      The Parties and their respective counsel agree to and affirm the terms of this

14 Settlement Agreement:

15

16 Dated: September 25, 2025

17

18 Agreed to by:

19

20

21 _____
   Jayson Huntsman,
22 Plaintiff and Class Representative

23

24 _____
   David Cash,
25 Class Representative

26

27 _____
   Michael J. Scimone

_____
Brian D. Berry
Monica N. Ratajczak
Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415-442-1000
brian.berry@morganlewis.com
monica.ratajczak@morganlewis.com

Drew Frederick

SETTLEMENT AGREEMENT        35

monica.ratajczak@morganlewis.com

_____

Michael J. Scimone
(admitted *pro hac vice*)
Michael Danna
(admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue 25th Floor
New York, NY 10017
Tel: (212) 245-1000
mscimone@outtengolden.com
mdanna@outtengolden.com

R. Joseph Barton
Cal Bar. No. 212340
THE BARTON FIRM LLP
1633 Connecticut Ave. N.W.
Suite 200
Washington, DC 20009
Tel: (202) 734-7046
jbarton@thebartonfirm.com

Peter Romer-Friedman
(admitted *pro hac vice*)
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street, NW, Suite 300
Washington, DC 20006
Tel: (202) 355-6364
peter@prf-law.com

Matthew Z. Crotty (WSBA #39284)
RIVERSIDE NW LAW GROUP, PLLC
905 W. Riverside Ave. Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
mzc@rnwlg.com

Thomas G. Jarrard (WSBA #39774)
LAW OFFICE OF THOMAS JARRARD,
PLLC
1020 N. Washington St.

Drew Frederick
Morgan, Lewis & Bockius LLP
1400 Page Mill Road
Palo Alto, CA 94304
Tel: 650-843-4000
andrew.frederick@morganlewis.com

*Attorneys for Defendant*

_____
Chris Maberry
Southwest Airlines Co.

SETTLEMENT AGREEMENT        36

1    Tel: (425) 239-7290
     tjarrard@att.net
2
3    *Attorneys for Class Representatives and the*
     *Class*
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

SETTLEMENT AGREEMENT        37

# Exhibit A: Notice to Class Members



# Notice of Proposed Class Action Settlement
## *Authorized by the U.S. District Court*

| You are receiving this notice because Southwest's records show that you took short-term military leave (i.e., 14 days or fewer) between October 10, 2004 and January 1, 2026. | There is a $18,500,000 settlement available to eligible employees.<br><br>As part of a proposed class settlement, you are entitled to a payment of approximately $[net amount]* | What you should do now:<br><br>1. Read this notice.<br><br>2. Decide whether to participate in the settlement. |

Important things to know:

- If you take no action, you will be bound by the settlement, you will receive the approximate amount shown above, and your rights will be affected.

- The Settlement was preliminarily approved by the Court on [date], but the Court still needs to finally approve the settlement. Settlement payments will be made if the Court finally approves the settlement. Please be patient.

- You can learn more at: [website].

---

\*     If the amount here is $0.00, see "What Do I Do Next?" below.

2

# About This Notice

## What is this case about?

A current Southwest employee filed a case, *Huntsman v. Southwest Airlines Co.*, claiming that Southwest has violated the Uniformed Services Employment and Reemployment Rights Act (USERRA) by not providing paid leave to employees who took short-term military leave (i.e., military leaves of 14 days or fewer) while paying employees for other allegedly comparable forms of leave, like jury duty, bereavement leave, or sick leave.

Southwest denies that it did anything wrong and disagrees that military leave is comparable to other forms of leave.  The Court has not decided this case in favor of either side.  Both sides settled the claims to avoid the risk and expense of litigation.

You can learn more at: [**website**].

## Why did I get this notice?

Southwest's records show that you are likely part of the proposed settlement class.  People are eligible to be part of the settlement if they are current or former employees of Southwest and, during their employment with Southwest at any time from October 10, 2004 through January 1, 2026, took short-term military leave from their employment with Southwest (i.e., military leave that lasted 14 days or fewer) and were subject to a collective bargaining agreement. Employees subject to the agreement between Southwest and Transport Workers Union Local 550 covering meteorologists are not part of this settlement class.

The Court authorized this notice to you because you have the right to know about a proposed class action settlement that affects your rights, and about all of your options, before the Court decides whether to finally approve the settlement.  This notice explains the case, your legal rights, and what benefits are available.

3

## What do I do next?

Read this notice to understand the settlement.  Then, decide if you want to:

| | |
|---|---|
| **DO NOTHING (OR SUBMIT A CLAIM) AND GET A PAYMENT** | If the court grants final approval of the settlement, you will be sent a settlement check in the amount of approximately $[**net amount**], and you will release claims against Southwest as described in this Notice.<br><br>If the amount above is $0.00, then you may have taken military leave during a period when Southwest no longer has military leave records for your workgroup.  You need to complete the enclosed claim form to verify whether you took short-term military leave during one of those periods.  If you submit the form, you will be credited with an amount based on the years in which you certify that you took leave.  You will be bound by the settlement even if you do not submit a claim form.<br><br>If you would prefer to receive your settlement payment electronically, you can choose to do so by visiting this website: [EMAIL VERSION: www.[website].com] / [MAILED VERSION: www.[website].com AND QR CODE]. |
| **EXCLUDE YOURSELF ("OPT OUT")** | You will receive no payment from this settlement and you will not release your claims against Southwest as described in this notice. |
| **OBJECT** | Tell the Court why you don't like the settlement (or any part such as attorneys' fees, expenses or the service awards) but remain a part of the settlement class and give up the ability to sue Southwest for released claims as described in this Notice. |

Read on to understand the specifics of the settlement and what each choice would mean for you.

4

## What are the most important deadlines?

Your deadline to object or opt out: **[date]**
Settlement approval hearing: **[date]**

# About the Lawsuit

## What does the settlement provide?

Without admitting any wrongdoing, Southwest has agreed to pay $18,500,000 into a settlement fund.  This money will be divided among members of the settlement class, after the following are deducted: (1) attorneys' fees , (2) expenses incurred in the lawsuit; (3) the cost of settlement administration; and (4) service awards for the two class representatives (Jayson Huntsman and David Cash).  All of these amounts must first be approved by the Court.  Class Counsel will not seek more than one third of the settlement as fees.  Class Counsel has spent more than ___ hours in the case.  Class Counsel will not seek more than $ ____ in expenses.  The settlement administration expenses are expected to be $ ____.  Plaintiff intends to request a service award of $ ___ for each of the two class representatives.

Your estimated share of the settlement, if you choose to participate, would be approximately $[net amount]. This amount may vary depending on what the Court approves as fees, expenses or service awards

## How is my payment calculated?

The amount of your payment depends on:

- The approximate wages you would have earned from Southwest during each period of leave, minus the approximate wages you earned from your military service.

- The Settlement Administrator will do the same calculation for other class members and then divide your amount by the total amount for all class members to calculate your portion of the total settlement amount.

5

- The Settlement Administrator will then multiply the result of this division by the remainder of the Settlement Amount after costs and attorneys' fees are removed.  This determines your settlement payment.

- The Settlement Amount reflects a compromise of disputed claims. That means you will not be getting the full wages described in the first step above; you will be getting a proportional percentage of the Settlement Amount.

Based on the allocation formula that has been approved by the Court, you will receive a settlement payment of approximately $[**NET AMOUNT**], based on the above calculation.

One-half (1/2) of your settlement payment will be treated as wages and subject to withholdings and deductions (paid on a W2) and one-half (1/2) will be treated as non-wage compensation with no taxes withheld (paid on a 1099).  Settlement payments made to Class Members will not be subject to matching contributions or included as benefits-eligible earnings under any of Southwest's benefits plans, bonus programs, or compensation policies.

*The lawyers cannot advise you on taxes associated with this payment. Please seek your own personal tax advice.*

## Do I have a lawyer in this case?

In a class action settlement, the Court appoints lawyers to represent the class and its members.  For this settlement, the Court has appointed the following lawyers:

Michael J. Scimone
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
SouthwestSettlement@outtengolden.com

R. Joseph Barton
THE BARTON FIRM LLP
1633 Connecticut Ave. N.W.
Suite 200
Washington, DC 20009
Telephone: (202) 734-7046
SouthwestUSERRA@thebartonfirm.com

Alina Pastor-Chermak
Outten & Golden LLP
1 California St., 12th Floor

6

San Francisco, CA 94111
Telephone: (415) 688-6174
[SouthwestSettlement@outtengolden.com](SouthwestSettlement@outtengolden.com)

These are the lawyers who represented the Plaintiff in the case and negotiated the settlement.  The lawyers' fees will be paid from the settlement fund in an amount approved by the Court.  **You will not have to pay the lawyers directly.**  You do not need to retain your own lawyer, but you are free to do so at your own expense.

## Are there more details about the settlement?

This notice summarizes the proposed settlement.  More details are in the settlement agreement.  To get a copy of the settlement agreement please visit:

[insert QR code for mailing/link for email]

To get answers to your questions, contact the Settlement Administrator at [contact info] or Class Counsel at [contact info].

## What happens next in this case?

The Court will hold a fairness hearing to decide whether to finally approve the settlement.  The hearing will be held at:

**Where:** [Courthouse name and address].

**When:** [**time**] on [**date**].

Because a class action settlement decides the rights of all members of the proposed class, the Court must give final approval to the settlement before it can take effect.  Payments will only be made if the Court grants final approval of the settlement.

You don't have to attend, but you may at your own expense. You may also ask the Court for permission to speak and express your opinion about the settlement.  If the Court does not approve the settlement, it will be void and the case will continue.  The date of the hearing may change without further notice to members of the class.  To learn more and confirm the hearing date, go to [**website**].

7

# Option 1: Do Nothing (or submit a claim), Get a Payment, and Release Claims

## How do I participate in the settlement?

**If you wish to participate in the settlement and receive payment, you do not need to take any action.** If the Court grants final approval of the settlement, you will receive a settlement payment of approximately $**[NET AMOUNT]** by mail.

If the amount above is $0.00, then you may have taken military leave during a period when Southwest no longer has military leave records for your workgroup. You need to complete the enclosed claim form to verify whether you took short-term military leave during one of those periods. If you submit the form, you will be credited with an amount based on the years in which you certify that you took leave. You will be bound by the settlement even if you do not submit a claim form. If you would like to receive your payment electronically, you may elect to do so by going to this website to select your payment option: [EMAIL VERSION: www.[website].com] / [MAILED VERSION: www.[website].com AND QR CODE]. If your mailing address has changed, please contact the Settlement Administrator or update your address online at the same website.

## What happens if I participate in the settlement?

If you do not opt out, you will release the Released Class Claims against Southwest and others (as defined in the settlement agreement). This means you cannot sue, continue to sue, or be part of any other legal action against Southwest that was or could have been pled based on the identical factual predicate in the Complaint, including any claim under USERRA Section 4316(b) for damages, prospective relief, or any other form of relief arising from or based on short-term military leave that you took from October 10, 2004 through January 1, 2026.

8

## When will I receive the money?

At the Court's hearing on [date], the Court will decide whether to finally approve the settlement.  This date may change without further notice to class members.  Please check [settlement website] to confirm that the date has not changed.

If the Court grants final approval, and the approval order is not appealed, settlement checks and electronic payments are anticipated to be distributed approximately two months after the Court grants final approval.  Please be patient and update the settlement administrator if your contact information changes.

# Option 2: Exclude Yourself ("Opt Out")

## What if I don't want to be part of this settlement?

You can opt out of the settlement.

If you opt out, you will not receive payment and cannot object to the settlement.  However, you will not be bound or affected by anything that happens in this case and may be able to file your own case.  You will not release any claims.

## How do I opt out?

To opt out of the settlement, you must submit an opt out statement to the settlement administrator by [**date**] at their address listed under "Key Resources" below.

You must include your name, address, telephone number, and a statement indicating your intent to opt out, such as "I opt out of the Southwest wage and hour settlement."

# Option 3: Object to the Settlement

## What if I disagree with the settlement?

9

If you disagree with any part of the settlement but don't want to opt out, you may object.  You must give reasons why you think the Court should not approve the settlement and say whether your objection applies to just you, a part of the class, or the entire class.  The Court will consider your views.  The Court can only approve or deny the settlement — it cannot change the terms of the settlement — but it can modify the allocation of the settlement.  You may, but don't need to, hire your own lawyer to help you.

To object, you must send a letter to the Settlement Administrator that:

1.  is postmarked by [**date**];

2.  includes the case name and number *Huntsman v. Southwest Airlines Co.,* Case No. 19-cv-00083-JSC

3.  includes your full name, address and telephone number, and email address;

4.  states the reasons for your objection;

5.  says whether either you or your lawyer intend to appear at the final approval hearing and your lawyer's name; and

6.  includes your signature.

Mail the letter to the settlement administrator as listed below under "Key Resources."

# Key Resources

## How do I get more information?

This notice summarizes the settlement approval. There are more details in the case documents. To get a copy of the case documents or get answers to your questions:

- contact the lawyers who represent the class (information below)

- visit the case website at [**website**].

10

| Resource | Case Information |
|---|---|
| **Case website** | [website] |
| **Toll Free Number** | [phone number] |
| **Settlement Administrator** | [Case Administrator]<br>[Street Address]<br>[City, State, Zip Code]<br>[Phone Number] |
| **Class Counsel** | Outten & Golden LLP<br>[insert phone number]<br>SouthwestSettlement@outtengolden.com<br><br>The Barton Law Firm LLP<br>(202) 734-7046 Telephone<br>SouthwestUSERRA@thebartonfirm.com |
| **Court (DO NOT CONTACT)** | U.S. District Court for the Northern District of California<br>450 Golden Gate Ave<br>San Francisco, CA 94102 |

11

# Exhibit B

**Exhibit 10 to Supplemental Expert Report of Darin Lee, PhD (May 31, 2024)**

### EXHIBIT 10: SUMMARY STATISTICS RELATING TO LEAVE DURATION (BRESHEARS DATASET)

| Summary Statistics: Duration (days) | Military | Jury Duty | Bereavement | Sick Leave |
|---|---|---|---|---|
| Maximum Leave Duration | 14 | 80 | 34 | 956 |
| 99th Percentile Leave Duration | 13 | 8 | 7 | 14 |
| 95th Percentile Leave Duration | 10 | 4 | 4 | 6 |
| Average Leave Duration | 4.2 | 2.0 | 3.1 | 2.9 |
| Average Leave Duration (Excluding >99th percentile) | 4.1 | 1.9 | 3.0 | 2.5 |
| Average Leave Duration (Excluding >95th percentile) | 3.7 | 1.7 | 2.9 | 2.3 |
| Standard Deviation of Leave Duration | 2.9 | 1.6 | 1.2 | 6.0 |
| Median Leave Duration | 3.0 | 2.0 | 3.0 | 2.0 |
| Mode Leave Duration | 2.0 | 1.0 | 3.0 | 3.0 |

| Summary Statistics: Total Leave Days per Employee | Military | Jury Duty | Bereavement | Sick Leave |
|---|---|---|---|---|
| Maximum Total Leave Days | 1,367 | 154 | 51 | 1,511 |
| 99th Percentile Total Leave Days | 790 | 19 | 18 | 401 |
| 95th Percentile Total Leave Days | 506 | 9 | 12 | 287 |
| Average Total Leave Days | 139.5 | 3.3 | 5.7 | 92.9 |
| Average Total Leave Days (Excluding >99th percentile) | 131.1 | 3.0 | 5.5 | 88.4 |
| Average Total Leave Days (Excluding >95th percentile) | 111.5 | 2.6 | 5.1 | 78.3 |
| Standard Deviation of Total Leave Days | 172.4 | 4.3 | 3.5 | 98.6 |
| Median Total Leave Days | 75.0 | 2.0 | 4.0 | 60.0 |
| Mode Total Leave Days | 1 | 1 | 4 | 1 |

| Summary Statistics: Avg. Annual Leave Days per Employee in Years Where Leave was Taken | Military | Jury Duty | Bereavement | Sick Leave |
|---|---|---|---|---|
| Maximum Avg. Annual Leave Days | 112 | 80 | 34 | 310 |
| 99th Percentile Avg. Annual Leave Days | 79 | 11 | 8 | 38 |
| 95th Percentile Avg. Annual Leave Days | 60 | 5 | 6 | 23 |
| Average Avg. Annual Leave Days | 25.3 | 2.2 | 3.7 | 11.2 |
| Average Avg. Annual Leave Days (Excluding >99th percentile) | 17.3 | 2.0 | 3.7 | 7.9 |
| Average Avg. Annual Leave Days (Excluding >95th percentile) | 16.6 | 1.8 | 3.5 | 7.3 |
| Standard Deviation of Avg. Annual Leave Days | 18.6 | 2.4 | 1.3 | 8.6 |
| Median Avg. Annual Leave Days | 22.1 | 2.0 | 3.5 | 10.5 |
| Mode Avg. Annual Leave Days | 1.0 | 1.0 | 4.0 | 1.0 |

Source: Breshears data table LeaveCalculations-Supplemental4_25_24WitML_LM; Step2-Calculations to Group Leave Periods- Part 2 Remove Zero Days.sql.
Note: Includes data for all workgroups. Average Annual Leave days is defined as the number of leave days by type divided by the number of years where the employee had the same type of leave between January 1, 2005, and December 31, 2020. Mode for non-integer values calculated using 1 decimal point. Average Annual Leave events is defined as the number of leave events by type divided by the number of years where the employee had the same type of leave between January 1, 2005, and December 31, 2020.

**Exhibit 1 to Supplemental Expert Report of David Breshears (May 3, 2024)**

Exhibit 1

JAYSON HUNTSMAN et al. v. SOUTHWEST AIRLINES CO.
Summary of Potential Compensation for Military Leave (14 days or less) Before and After DOD Offset

| Work Group | Military Leave Days | Before DOD Offset | | |
|---|---|---|---|---|
| | | Jury Duty Based: Wages Due | Bereavement Based: Wages Due | Sick Leave Based: Wages Due |
| Pilots | 152,810 | $110,958,756 | $104,802,672 | $47,612,440 |
| Flight Attendants | 7,631 | $1,657,529 | $1,378,104 | $334,827 |
| CS&S | 2,617 | $359,115 | $273,161 | $87,695 |
| Ground Ops | 28,104 | $3,886,899 | $3,116,862 | $1,438,200 |
| Tech Ops | 4,439 | $1,459,880 | $1,163,086 | $435,142 |
| Dispatch | 543 | $131,420 | $99,412 | $73,119 |
| Instructor | 2 | $619 | $619 | $619 |
| Flight Sim | 2 | $790 | $790 | $790 |
| Total | 196,148 | $118,455,008 | $110,834,707 | $49,982,831 |

| Work Group | Military Leave Days | After DOD Offset | | |
|---|---|---|---|---|
| | | Jury Duty Based: Wages Due | Bereavement Based: Wages Due | Sick Leave Based: Wages Due |
| Pilots | 152,810 | $67,718,965 | $62,272,347 | $24,189,237 |
| Flight Attendants | 7,631 | $845,606 | $629,926 | $111,594 |
| CS&S | 2,617 | $162,208 | $104,560 | $30,045 |
| Ground Ops | 28,104 | $1,096,119 | $778,219 | $314,767 |
| Tech Ops | 4,439 | $801,925 | $577,156 | $188,762 |
| Dispatch | 543 | $55,016 | $44,086 | $34,029 |
| Instructor | 2 | $124 | $124 | $124 |
| Flight Sim | 2 | $485 | $485 | $485 |
| Subtotal | 196,148 | $70,680,448 | $64,406,903 | $24,869,042 |

+

| Work Group | Military Leave Days | After DOD Offset | | |
|---|---|---|---|---|
| | | Jury Duty Based: Wages Due | Bereavement Based: Wages Due | Sick Leave Based: Wages Due |
| Estimated Wages Due for Additional Ops Class Members (in December 2021 Production) | | | | |
| Ground Ops | 3,287 | $197,124 | $115,160 | $39,256 |

+

| Work Group | | After DOD Offset | | |
|---|---|---|---|---|
| | | Jury Duty Based: Wages Due | Bereavement Based: Wages Due | Sick Leave Based: Wages Due |
| Estimates for Missing Leave Data | | | | |
| Ground Ops | | $4,137 | $2,479 | $844 |
| Tech Ops | | $5,617 | $4,220 | $1,154 |
| Dispatch | | $22,285 | $20,850 | $21,262 |
| Subtotal | | $32,039 | $27,549 | $23,261 |

| Total | 199,435 | $70,909,611 | $64,549,612 | $24,931,560 |

13

**Excerpts from Expert Report of David Breshears (Dec. 22, 2021)**

*Pilots*
24. To study the duration of leave lengths for Pilots, I have relied on SWA-Huntsll-005842 – CONFIDENTIAL.xlsx, SWA-Huntsll-005973 – CONFIDENTIAL.xlsx, and SWA-Huntsll 009090A – CONFIDENTIAL.csv, which appear to be Pilot military and non-military leave

**Excerpts from Expert Report of David Breshears (Dec. 22, 2021)**

*Pilots*
24. To study the duration of leave lengths for Pilots, I have relied on SWA-Huntsll-005842 – CONFIDENTIAL.xlsx, SWA-Huntsll-005973 – CONFIDENTIAL.xlsx, and SWA-Huntsll 009090A – CONFIDENTIAL.csv, which appear to be Pilot military and non-military leave data from September 25, 2004 to March 11, 2021.

*Flight Attendants*
26. To study the duration of leave lengths for Flight Attendants, I have relied on SWA-Huntsll 001647 – CONFIDENTIAL.xlsx, SWA-Huntsll-005879 – CONFIDENTIAL.xlsx through SWA-Huntsll-005892 – CONFIDENTIAL.xlsx, SWA-Huntsll-005974 – CONFIDENTIAL.xlsx through SWA-Huntsll-005975 – CONFIDENTIAL.xlsx, SWA-Huntsll 009812 CONFIDENTIAL.xlsx, SWA-Huntsll 011159 CONFIDENTIAL.xlsx, and SWA-Huntsll 011160 CONFIDENTIAL.xlsx, which appear to be Flight Attendant military and non-military leave data from March 31, 2003 to March 1, 2021.

*CS&S*
29. To study the duration of leave lengths for the Customer Support & Services ("CS&S") work group, for purposes of this report, I have relied on the "Emp_Daily 2007-2012" and "Emp_Daily 2013-2019" tabs in SWA-Huntsll 009256 – CONFIDENTIAL.xlsx9 and the "Leave_w_sched" tab in SWA-Huntsll 009809 CONFIDENTIAL.xlsx10 , as this CS&S military and non-military leave data from October 9, 2007 to May 20, 2021 was provided by shift date (which I have assumed to reflect the first and last day of the leave). I have also relied on the entries with a leave begin date prior to October of 2007 in SWA-Huntsll 009810 CONFIDENTIAL.xlsx, as this period is not covered in the files listed above.

*Ops*
31. To study the duration of leave lengths for employees in the Ground Ops and Tech Ops work groups (referred to together as "Ops"), I have relied on 65 Excel files which appear to be Ops military and non-military leave data from January 1, 2005 to February 28, 2021.

*Dispatchers*
35. To study the duration of leave lengths for Dispatchers, I have relied on SWA-Huntsll-005976A – CONFIDENTIAL.xlsx and SWA-Huntsll 009811 CONFIDENTIAL.xlsx, which appear to be Dispatcher military and non-military leave data from July 1, 2012 to February 28, 2021.

*Flight Simulator Technicians*
37. To study the duration of leave lengths for Flight Simulator Technicians ("Flight Sim Techs"), I have relied on SWA-Huntsll-009174 – CONFIDENTIAL.xlsx14 and SWA-Huntsll 009814 CONFIDENTIAL.xlsx, which appear to be Flight Sim Tech military and non-military leave data from January 27, 2010 to February 7, 2021.

*Flight Instructors*
39. To study the duration of leave lengths for Flight Instructors, I have relied on SWA-Huntsll 009173 – CONFIDENTIAL.xlsx15 and SWA-Huntsll 011163 CONFIDENTIAL.xlsx16 , which appear to be Flight Instructors military and non-military leave data from January 2, 2013

14

to February 11, 2021

15

# Exhibit C: Notice email and text

Subject: Southwest – Notice of Settlement

You are receiving this email because Southwest's records show that you are eligible to participate in a proposed settlement against Southwest.  Additional information is contained in the attached Notice.  To learn more about the settlement, or to elect electronic payment, please visit [**website**].  For questions about the settlement, contact the Settlement Administrator at [**administrator email and phone number**] or Outten & Golden LLP at [insert phone number] or SouthwestSettlement@outtengolden.com and mention the Southwest Settlement**.**

You are receiving this text because Southwest's records show that you are eligible to participate in a proposed settlement against Southwest.  To learn more about the settlement, or to elect electronic payment, please visit [**website**].  For questions about the settlement, contact the Settlement Administrator at [**administrator email and phone number**] or Outten & Golden LLP at [insert number] or SouthwestSettlement@outtengolden.com and mention the Southwest Settlement**.**

# Exhibit D: Claim Form

SOUTHWEST SHORT-TERM MILITARY LEAVE LITIGATION

CLASS ACTION SETTLEMENT CLAIM FORM

*Huntsman v. Southwest Airlines Co.,* Case No. 19-cv-00083-JSC (N.D. Cal.)

If you received this Claim Form along with the Class Notice, it is because you have been identified as an employee of Southwest Airlines between October 10, 2004 and December 31, 2012 who also served in the military.  Southwest no longer has military leave data for certain employees from October 10, 2004, and December 31, 2012.  If you took short-term military leave (of 14 days or fewer) during that period, you must complete the following Declaration and send it to the Settlement Administrator to receive a share of the Settlement.

<u>Declaration</u>

I was employed by Southwest Airlines at some point between October 10, 2004 and December 31, 2012.  I took short-term military leave (of 14 days or fewer) from my employment with Southwest Airlines during the following time periods (check all that apply):

☐ October 10, 2004 – December 31, 2004

☐ January 1, 2005 – December 31, 2005

☐ January 1, 2006 – December 31, 2006

☐ January 1, 2007 – December 31, 2007

☐ January 1, 2008 – December 31, 2008

☐ January 1, 2009 – December 31, 2009

☐ January 1, 2010 – December 31, 2010

☐ January 1, 2011 – December 31, 2011

☐ January 1, 2012 – December 31, 2012

By checking one or more of the above boxes, I hereby submit a claim for compensation under the Settlement for my short-term military leave between October 10, 2004 and December 31, 2012.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____.

(date)

Name (printed):

Address:

19

(signature)

Phone Number:

Email Address:

20