1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7   JAYSON HUNTSMAN,                    Case No. 3:19-cv-00083-JSC
8              Plaintiff,
9        v.                            **ORDER RE: MOTION FOR**
                                       **PRELIMINARY APPROVAL OF**
10  SOUTHWEST AIRLINES CO.,            **CLASS ACTION SETTLEMENT**
              Defendant.               Re: Dkt. No. 219
11
12
13        Plaintiff Jayson Huntsman filed this action on behalf of himself and similarly situated

14  Southwest employees alleging Southwest Airlines' policy of refusing to provide paid leave for

15  periods of short-term military leave violates USERRA because Southwest provides paid leave for

16  other comparable short-term absences from work.  After five years of litigation, the parties

17  reached a class action settlement and now seek preliminary approval of the settlement.  (Dkt. No.

18  219.[1])  Having considered the parties' submissions, having had the benefit of oral argument on

19  November 20, 2025, and having reviewed Plaintiff's supplemental submission, the Court

20  GRANTS preliminary approval of the class action settlement.

21                              **BACKGROUND**

22        The Court assumes the parties' familiarity with the lengthy procedural history of this

23  action and incorporates Plaintiff's discussion of it by reference. (Dkt. No. 219 at 9-11.)

24                        **THE SETTLEMENT AGREEMENT**

25  **A.      The Settlement Class**

26        The Agreement defines the Settlement Class as

27  ─────────────────────

28  [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
    ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

> all current or former employees of Southwest who, during their employment with Southwest at any time from October 10, 2004 through January 1, 2026, have taken short-term military leave from their employment with Southwest (i.e., military leave that lasted 14 days or fewer) and were subject to a CBA, except for employees subject to the agreement between Southwest and Transport Workers Union Local 550 covering meteorologists.

(Dkt. No. 220-1, Settlement Agreement at § I(F).)  This settlement class definition modifies the certified class definition by adding the end date of January 1, 2026.

### B.    Payment Terms

Under the Settlement Agreement, Defendant will pay $18,500,000 ("Cash Settlement Amount").  (*Id*. at § V(1).)  From this amount, Plaintiff will seek the following distributions:

1. Attorneys' fees of up to one-third ($6,105,000) of the Cash Settlement Amount (Dkt. No. 220, Scimone Decl. at ¶ 37);

2. Litigation Expenses of $707,314.30 (*Id*.);

3. Service awards for Plaintiff Huntsman and proposed additional class representative David Cash of $25,000 each (Dkt. No. 220-1 at § IX(2)); and

4. Settlement Administration costs of no more than $17,500 (Dkt. No. 220, Scimone Decl. at ¶ 35.).

The remaining Net Settlement Amount will be divided between Class Members according to the Plan of Allocation set forth in the Settlement Agreement.  (*Id*. at §§ VI(1)-(2); VII.)  The Plan of Allocation contemplates the settlement proceeds will be divided between Class Members pro rata based on the amount of their claim, which is based on their rate of pay and dates of short-term military leave.  (*Id*. at § VII.)

### C.    Injunctive Relief

In addition to the monetary settlement, beginning in 2026, Defendant will provide service member employees with up to ten days of paid short-term military leave per calendar year.  (*Id*. at ¶ IV(1)(a).)  The daily pay will be an approximation of the difference between the employee's Southwest pay and their military pay with a minimum payment of $30/day.  (*Id*. at § IV(1)(b).)

### D.    Scope of Release

Class members who do not opt-out of the settlement will release Defendant:

1

2    from all claims or causes of action, whether in law or equity, whether
      known or unknown, that were or could have been pled based on the
3    identical factual predicate in the Complaint, including any claim
      under USERRA Section 4316(b) for damages, prospective relief, or
4    any other form of relief arising from or based on short-term military
      leaves taken from October 10, 2004 through January 1, 2026.

5    (Dkt. No. 220-1 at § XIV(1).)

6           Upon the effective date of the settlement (31 days after final approval), the Class

7    Representatives will also release Defendant:

8    from all claims, obligations, demands, actions, rights, charges, suits,
      debts, causes of action, and liabilities against the Releasees, of
9    whatever kind and nature, character, and description, whether in law
      or equity, whether sounding in tort, contract, federal, state and/or local
10   law, statute, ordinance, regulation, common law, or other source of
      law or contract, whether known or unknown, and whether anticipated
11   or unanticipated, from the beginning of time through the Effective
      Date, including, but not limited to, all claims arising from or related
12   to their employment with Southwest under any federal, local or state
      statute or regulation, provided, however, that notwithstanding the
13   foregoing, nothing contained in this release shall in any way diminish
      or impair (i) any claims they may have that cannot be waived under
14   applicable law, (ii) their rights under this Agreement, or (iii) their
      rights to vested benefits under employee benefit plans. This general
15   release includes, but is not limited to, a release of all claims under
      USERRA; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§
16   2000(e) et seq.; the Age Discrimination in Employment Act, 29
      U.S.C. §§ 621 et seq., as amended by the Older Workers Benefit
17   Protection Act of 1990; Section 1981 of the Civil Rights Act of 1866,
      42 U.S.C. § 1981; the Equal Pay Act of 1963, 29 U.S.C. § 206 and
18   the Lilly Ledbetter Fair Pay Act; the Sarbanes-Oxley Act of 2002; the
      Dodd-Frank Wall Street Reform and Consumer Protection Act; the
19   Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq.; the Consolidated
      Omnibus Budget Reconciliation Act of 1985, 42 U.S.C. § 1395(c);
20   Executive Order 11141; Section 503 of the Rehabilitation Act of
      1973, 29 U.S.C. §§ 701, et seq.; the Employee Retirement Income
21   Security Act of 1974, 29 U.S.C. § 1001 , et seq.; the Americans with
      Disabilities Act; the Worker Adjustment and Retraining Notification
22   Act; the Family and Medical Leave Act; the National Labor Relations
      Act; the Immigration Reform and Control Act; the Occupational
23   Safety and Health Act; the Fair Credit Reporting Act; the California
      Fair Employment and Housing Act, Cal. Govt. Code § 12940 et seq.;
24   the California Family Rights Act, Cal. Govt. Code§ 12945.2; the
      California Labor Code, including but not limited to Section 132a,
25   Sections 200 et seq. and Sections 1025 et seq., as well as the Private
      Attorneys General Act; the California Government Code; the
26   California Constitution; California Unfair Competition Law, Cal.
      Bus. & Prof. Code§ 17200 et seq.; any amendments to the foregoing
27   statutes; and any other laws and/or regulations relating to
      employment, compensation or employment discrimination in any
28   state where they have performed work or would have standing to

3

assert a claim.

(*Id*. at § XIV(2)(a).)  The Class Representatives also expressly waive all claims under California Civil Code 1542.  (*Id*. at § XIV(2)(b).)  However, the Class Representative's release does not prevent them from filing a charge or complaint with the Equal Employment Opportunity Commission or similar state or federal agency.  (*Id*. at § XIV(2)(c).)

### E.    Notice

Plaintiff has selected ILYM as the Settlement Administrator.  (Dkt. No. 220 at ¶¶ 33-35.) Defendant will provide ILYM with Class Member contact information by February 6, 2026.  (Dkt. No. 220-1 at § III(5).)  ILYM will then provide notice by (1) U.S. Mail; (2) email; (3) text;  and (4) posting on a dedicated website.   (*Id*. at § III(3).)

### F.    Opt-Outs and Objections

Class members will have 60 days from the date of notice to request exclusion (opt-out) or object to the settlement.

## DISCUSSION

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

## I.    CLASS CERTIFICATION

A court may preliminarily certify a settlement class if all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met. *See* Fed. R. Civ. P. 23. Here, the Court already certified a class under Rule 23(b)(3). (Dkt. No. 95) Thus, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding

4

United States District Court
Northern District of California

1  which certification was granted." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018

2  Amendment.

3       The Settlement Agreement slightly modifies the class definition to clarify the end date for

4  the class period is January 1, 2026. (Dkt. No. 220-1 at § I(F).) Plaintiff also seeks appointment of

5  David Cash, a current Southwest employee and Reservist, as a substitute class representative

6  because Mr. Huntsman retired from the military while this case was pending such that he does not

7  have standing to seek programmatic relief. (Dkt. No. 220, Scimone Decl. at ¶ 21.) Mr. Cash is an

8  adequate representative under Rule 23(a)(4) and his substitution as a class representative is

9  appropriate under the circumstances here. *See United States Parole Comm'n v. Geraghty*, 445

10 U.S. 388, 415 n.8 (1980) ("If the named plaintiff's own claim becomes moot after certification, the

11 court can re-examine his ability to represent the interests of class members. Should it be found

12 wanting, the court may seek a substitute representative or even decertify the class."); *see also*

13 *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 n.6 (9th Cir. 2003) ("If [plaintiff]

14 initially had a viable stacking claim that later became moot, then our law in an appropriate case

15 would permit substituting proper class representatives to allow the suit to proceed.").

16       Accordingly, the Court grants preliminary approval of the Settlement Class and appoints

17 David Cash as a Class Representative.

18 **II.       PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT**

19       Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of a

20 certified class—or a class proposed to be certified for purposes of settlement—may be settled ...

21 only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the

22 unnamed members of the class from unjust or unfair settlements affecting their rights." *In re*

23 *Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). So, before a district court approves a

24 class action settlement, it must conclude the settlement is "fundamentally fair, adequate and

25 reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

26       In determining whether a class action settlement agreement meets this standard, the court

27 may consider some or all of the following factors:

28       (1) the strength of the plaintiff's case; (2) the risk, expense,

5

> complexity, and likely duration of further litigation; (3) the risk of
> maintaining class action status throughout the trial; (4) the amount
> offered in settlement; (5) the extent of discovery completed and the
> stage of the proceedings; (6) the experience and views of counsel; (7)
> the presence of a governmental participant; and (8) the reaction of the
> class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). Whether a

settlement agreement has been negotiated before a class has been certified or after, the court must

also undertake an additional search for more "subtle signs that class counsel have allowed pursuit

of their own self-interests and that of certain class members to infect the negotiations." *Briseño v.*

*Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The Ninth Circuit has identified three such

signs:

> 1) when counsel receive a disproportionate distribution of the
>    settlement, or when the class receives no monetary distribution
>    but class counsel are amply rewarded;
>
> 2) when the parties negotiate a "clear sailing" arrangement providing
>    for the payment of attorneys' fees separate and apart from class
>    funds, which carries the potential of enabling a defendant to pay
>    class counsel excessive fees and costs in exchange for counsel
>    accepting an unfair settlement on behalf of the class; and
>
> 3) when the parties arrange for fees not awarded to revert to
>    defendants rather than be added to the class fund.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation

marks and citations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed

settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does

not grant improper preferential treatment to class representatives or other segments of the class;

(3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo*

*Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018)

(citation omitted).

### A.    Whether the Settlement is Fair, Adequate, and Reasonable

#### 1.    Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v.*

*Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To

1   approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient

2   investigation of the facts to enable the court to intelligently make ... an appraisal of the

3   settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Courts thus have

4   "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel

5   conducted prior to reaching an agreement." *Id*.

6     The settlement was reached on a fully developed record after several years of discovery.

7   Over this time, Class Counsel obtained and reviewed thousands of pages of discovery, volumes of

8   electronic data from both Southwest and the Department of Defense, responses to six sets of

9   interrogatories and 44 requests for admission, and took and defended more than 20 depositions

10  including Southwest's quantitative expert. (Dkt. No. 220, Scimone Decl. at ¶¶ 14-15.)  Southwest

11  then moved to decertify the class and after that motion was fully briefed, the parties reached the

12  settlement after a full-day mediation session with a mediator with expertise in employee benefits

13  class actions.  (*Id*. at ¶ 16.)  The settlement thus appears the product of serious, informed, non-

14  collusive negotiations. This factor weighs in favor of approval.

15       **2.**  **Lack of Preferential Treatment**

16    The Court next considers whether the Settlement Agreement provides preferential

17  treatment to any class member. The Ninth Circuit has instructed district courts to be "particularly

18  vigilant" for signs counsel have allowed the "self-interests" of "certain class members to infect

19  negotiations." *In re Bluetooth*, 654 F.3d at 947.

20    The only preferential treatment is the service award for Plaintiff Jayson Huntsman and

21  Class Representative David Cash which is subject to Court approval.  Such "[i]ncentive awards

22  are fairly typical in class action cases ... to compensate class representatives for work done on

23  behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the

24  action." *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958 (9th Cir. 2009) (cleaned up). While the

25  Court has concerns regarding the $25,000 service awards sought here as it is substantially higher

26  than amounts typically awarded by courts in this Circuit, *see, e.g*., *Staton v. Boeing Co*., 327 F.3d

27  938, 976-78 (9th Cir. 2003), the Court will defer ruling on the appropriateness of the amount

28  requested until final approval. At this stage, there is no indication the service awards in general

United States District Court
Northern District of California

1    constitute "preferential treatment" such that it would defeat preliminary approval.

2                    **3.**       **Range of Possible Approval**

3          The third factor the Court considers is whether the settlement is within the range of

4    possible approval. To evaluate whether the settlement amount is adequate, "courts primarily

5    consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*,

6    2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiff's case.

7          The Settlement Agreement provides for a Settlement Fund of $18.5 million. (Dkt. No. 220-

8    1, Settlement Agreement at § V(1).))  Given the 2,791 identified Class Members, the net average

9    recovery (after deducting for attorneys fees) assuming this amount were distributed equally would

10   be $4,421 per Class Member.  (Dkt. No. 220, Scimone Decl. ¶ 23.)  Plaintiff contends this per-

11   class-member recovery is within the range of other USERRA class settlements and provides

12   several examples.  (Dkt. No. 219 at 16 (collecting cases).)  Plaintiff's expert calculated the

13   maximum class recovery at $70,909,611 through 2021, using jury leave as a comparator (before

14   prejudgment interest).  (Dkt. No. 220, Scimone Decl. ¶ 28.)  When bereavement leave was used as

15   a comparator the recovery diminished to $64,549,612 in damages, and to $24,931,560 when sick

16   leave was used as a comparator.  (*Id.*)  The $18.5 million recovery therefore represents 74.2% of

17   the lowest damages scenario and 26% of the highest.  (*Id.*)  Although Class Counsel has

18   confidence in the strength of their case, there were risks of continued litigation including

19   decertification as that motion remained pending when the case settled.  (*Id.* at ¶ 31.)  Class

20   Counsel notes no USERRA paid-leave class has proceeded to trial.  (*Id.*)

21         Under these circumstances, the Court agrees the risks and costs of continued litigation

22   balanced against the relief here warrant preliminary approval and comment from class members.

23                   **4.**       **Obvious Deficiencies**

24         Finally, the Court considers whether there exist any obvious deficiencies in the settlement

25   agreement. *Harris*, 2011 WL 1627973, at *8. This factor weighs in Plaintiff's favor as no obvious

26   deficiencies exist on the face of the settlement agreement.

27                                                   \* \* \*

28         Having weighed the relevant factors, the Court preliminarily finds the settlement

8

1    agreement is fair, reasonable, and adequate, and GRANTS preliminary approval.

2    **III.    CLASS NOTICE PLAN**

3           For any class certified under Rule 23(b)(3), class members must be afforded "the best

4    notice that is practicable under the circumstances, including individual notice to all members who

5    can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly

6    state the following:

7                   (i) the nature of the action; (ii) the definition of the class certified; (iii)
                    the class claims, issues, or defenses; (iv) that a class member may
8                   enter an appearance through an attorney if the member so desires; (v)
                    that the court will exclude from the class any member who requests
9                   exclusion; (vi) the time and manner for requesting exclusion; and (vii)
                    the binding effect of a class judgment on members under Rule
10                  23(c)(3).

11   Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the

12   settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

13   forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)

14   (cleaned up).

15          As discussed above, Plaintiff proposes providing notice by mail in addition to email, text,

16   and posting on a case-specific website. (Dkt. No. 220-1 at § III(3).)  For any mailed notices that

17   are returned as undeliverable, the Settlement Administrator will do further research to identify an

18   updated address.  (*Id*. at §§ III(4), VII(2)(a).)  The long form mailed notice, and email and text

19   notices generally comply with Rule 23(c). The email and text notice advise Class Members how to

20   seek additional information about the settlement (through the website and by contacting the

21   Settlement Administrator). (Dkt. No. 220-1 at 57-58.)  The long form notice to be mailed to Class

22   Members clearly and concisely provides an overview of the lawsuit and clear instructions for how

23   to obtain more information. (Dkt. No. 220-1 at 43.)  At the preliminary approval hearing the Court

24   expressed concern regarding blank information on the notice (such as the case-specific website)

25   and the lack of clear language regarding how class members could view the motion for attorneys'

26   fees and costs and object to the request for attorneys' fees and costs.  Plaintiff has since submitted

27   a revised notice that adequately addresses the Court's concerns.  (Dkt. No. 229.)  The notice shall

28   also be revised to note the class members can attend the final approval hearing in person or via

United States District Court
Northern District of California

9

1    Zoom via the link here: https://cand.uscourts.gov/judges/corley-jacqueline-scott-jsc/.

2    **IV.    ATTORNEYS' FEES AND COSTS**

3          Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action

4    where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However,

5    "courts have an independent obligation to ensure that the award, like the settlement itself, is

6    reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

7    Where a settlement produces a common fund for the benefit of the entire class, courts have

8    discretion to employ either the lodestar method or the percentage-of-recovery method to determine

9    whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has

10   established a benchmark of 25 percent of the common fund for attorneys' fees calculations under

11   the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ...

12   established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations

13   under the percentage-of-recovery approach."). Although "[a] district court may depart from the

14   benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately

15   awarded." *Id*. at 1256-57.

16         "The lodestar figure is calculated by multiplying the number of hours the prevailing party

17   reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

18   hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The

19   resulting figure may be adjusted upward or downward to account for several factors, "including

20   the quality of representation, the benefit obtained for the class, the complexity and novelty of the

21   issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation

22   omitted). The party requesting fees bears the burden "of submitting billing records to establish that

23   the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196,

24   1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys'

25   own affidavits—that the requested rates are in line with those prevailing in the community for

26   similar services by lawyers of reasonably comparable skill, experience and reputation," *Camacho

27   v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation

28   omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery

United States District Court
Northern District of California

10

method is used, the district court perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

The Settlement Agreement provides Class Counsel will file a motion for attorneys' fees and costs, but will not seek more than one-third of the Settlement Amount.  (Dkt. No. 220-1 at § IX(1)-(2).)  The Agreement also states Class Counsel may request service awards of up to $25,000 for Mr. Huntsman and Mr. Cash.  (*Id*.)  The Settlement Agreement does not include a provision prohibiting Southwest from objecting to any request for attorneys' fees and costs.  According to Class Counsel, their current lodestar is $3,577,431.00 from 3,903.27 billed hours, and their costs are $707,314.30, including $603,034.87 in expert fees.  (Dkt. No. 220, Scimone Decl. at ¶ 37.)  A fee award of one-third of the Settlement Amount would be $6,105,000 which would reflect a multiplier of approximately 1.72.

Plaintiff shall submit a motion for attorneys' fees, including declarations and detailed billing summaries, so the Court may determine an appropriate lodestar figure, and to allow Settlement Class Members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d at 995 (holding that class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice).  Counsel shall also submit detailed information supporting their request for $707,314.30 in costs.

## CONCLUSION

For the reasons stated above, the Court GRANTS preliminary approval of the class action settlement as follows:

1) This action is provisionally certified as a class action, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23. The Court preliminarily certifies the following class:

> all current or former employees of Southwest who, during their employment with Southwest at any time from October 10, 2004 through January 1, 2026, have taken short-term military leave from their employment with Southwest (i.e., military leave that lasted 14 days or fewer) and were subject to a CBA, except for employees

subject to the agreement between Southwest and Transport Workers Union Local 550 covering meteorologists.

2) David Cash is conditionally appointed as Class Representative for the Settlement Class.

3) Outten & Golden LLP and The Barton Law Firm are conditionally appointed as Class Counsel for the Settlement Class.

4) ILYM Group, Inc. is appointed as the Settlement Administrator.

5) Southwest will provide the Settlement Administrator with contact information for each Class Member by February 6, 2026.

6) The Settlement Administrator shall provide notice to the class in accordance with the notice plan above by February 13, 2026.

7) Plaintiff shall file copies of the notices within 10 days of dissemination of notice.

8) Class Counsel shall file their motion for attorneys' fees, costs, and service awards for the Class Representatives, and all supporting documentation and papers, by 7 days after the notice date.

9) Any objections are due by April 14, 2026.

10) Plaintiffs shall file their Motion for Final Approval by April 30, 2026. The motion shall include the information suggested by the Northern District of California Procedural Guidance for Class Action Settlements.

11) The parties shall appear before this Court for a final approval hearing on May 14, 2026 at 10:00 a.m. in Courtroom 8, 450 Golden Gate Ave., San Francisco, California.


**IT IS SO ORDERED.**

Dated: December 11, 2025

JACQUELINE SCOTT CORLEY
United States District Judge